UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

MARY M. TARDIF,                                              **FIRST AMENDED**
                                                            **COMPLAINT**
                                        Plaintiff,
                                                            **13-civ-4056 (LTS)**
                -against-
                                                            **JURY TRIAL**
                                                            **DEMANDED**
CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN                                   **ECF**
O'CONNELL, DEPUTY INSPECTOR EDWARD
WINSKI, POLICE OFFICER JAMES MCNAMARA,
POLICE OFFICER ALENA AMINOVA, POLICE
OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX
SCHMIDT, DEPUTY INSPECTOR DANIEL MULLIGAN,
AND JOHN DOE NYPD OFFICERS ##1-11

                                        Defendants.
------------------------------------------------------------------------ x

     Plaintiff, MARY M. TARDIF, by her attorneys, STEFAN H. KRIEGER and GIDEON

ORION OLIVER, for her COMPLAINT against Defendants, alleges the following:

### PRELIMINARY STATEMENT

1.      Plaintiff brings this combined civil rights, Americans with Disabilities Act, and

state law action pursuant to the First, Fourth, and Fourteenth Amendments of the United

States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 12102, and the laws of the State of

New York.

2.      The claims arise from a series of incidents in connection with police responses to

the Occupy Wall Street protests beginning on March 17, 2012 and continuing until April

16, 2012. Plaintiff was deprived of her federal constitutional rights to engage in protected

expression; her federal constitutional rights to be free from false arrest, excessive force,

1

deliberate indifference to a serious medical condition, and unconstitutional conditions of confinement; her federal statutory right to be free from discrimination based on her disability under the Americans With Disabilities Act, 42 U.S.C. § 12102, and her New York State common law rights to be free from assault and battery and false arrest when Defendant police officers of the New York City Police Department, acting in their official capacities under color of state law:

    a.   Physically restrained and arrested Plaintiff and threw her to the ground, kicked her, and held her in custody where she experienced a seizure despite repeated requests for medical attention for her serious medical condition;

    b.   Grabbed Plaintiff and tossed her to the ground and obstructed medical personnel's efforts to address Plaintiff's injuries, thereby causing further injury; and

    c.   Chased, tackled, and arrested Plaintiff and denied Plaintiff medical attention while she suffered multiple seizures in their custody.

3.      Plaintiff seeks compensatory and punitive damages for the reasons set forth below.

## JURISDICTION AND VENUE

4.      This action is brought pursuant to the First, Fourth, and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 12102, and the laws of the State of New York. This Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343 (a)(3), and 1343(a)(4), as this is a civil action arising under the United States Constitution, the laws of the United States, and the laws of the State of New York. This Court has jurisdiction over the supplemental claims arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

5.     Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because the claims arose in this district.

## **INTRODUCTION**

6.     Plaintiff became involved in the Occupy Wall Street movement when she was assigned to provide medical care during one of the demonstrations.

7.     Until the Summer of 2012, Plaintiff was employed in Emergency Medical Services in her pursuit of becoming a Doctor of Medicine with a specialty in neurology.

8.     Plaintiff's interest in neurology began when she was diagnosed with epilepsy at the age of 19.

9.     Plaintiff attended Occupy Wall Street demonstrations to provide medical care and to support the movement.

10.     During several of the demonstrations, police officers employed by the New York Police Department subjected Plaintiff to repeated, direct, and sometimes violent abuses.

11.     The violent nature of these actions by the police officers resulted in several hospitalizations.

12.     Some actions by the police officers also resulted in arrests and confinement where her epileptic condition was often ignored and not accommodated.

13.     Plaintiff experienced many seizures while in custody because her condition was ignored, and even mocked, by police officers.

14.     Plaintiff's epileptic condition has now significantly worsened, causing Plaintiff to lose her job, her ability to travel independently, and her ability to care for herself.

## PARTIES

15.      Plaintiff MARY M. TARDIF ("Plaintiff") is a resident of New York City.  She is twenty-four years old, 5'1", approximately 180lbs, and suffers from epilepsy. On March 17, 21, and 22, 2012, and April 16, 2013, Plaintiff participated in demonstrations associated with the Occupy Wall Street ("OWS") movement.

16.      Defendant CITY OF NEW YORK ("City") is a municipal corporation organized under the laws of the State of New York. The New York City Police Department ("NYPD") is an agency of the City and its officers are employees and agents of the City.

17.      Defendant JOHN O'CONNELL is an Inspector for Counterterrorism and employee of the NYPD. Inspector O'Connell is sued individually and in his official capacity.

18.      Defendant EDWARD J. WINSKI, Midtown South Precinct, is an employee and agent of the NYPD. On the dates of the incidents, he was assigned to the 1st Precinct. Deputy Inspector Winski is sued individually and in his official capacity.

19.      Defendant JAMES MCNAMARA is a Deputy Chief and employee of the NYPD. Deputy Chief McNamara is sued individually and in his official capacity.

20.      Defendant ALENA AMINOVA, Shield #12222, is a police officer and employee of the NYPD. Officer Aminova is sued individually and in her official capacity.

21.      Defendant KENDAL CREER, Shield #24657, of the Patrol Boro Manhattan South Task Force, is a police officer and employee of the NYPD. Officer Creer is sued individually and in her official capacity.

22.      Defendant MARSHA RUMBLE, is a large, African-American female police officer and employee of the NYPD. She was present on the night of April 16, 2012 at 37 Wall Street. Officer Marsha Rumble is sued individually and in her official capacity.

23.      Defendant FELIX SCHMIDT, is a short, brown-haired, male, retired police officer formerly of Midtown South Task Force.  He was present on the night of April 16, 2012 at 37 Wall Street and later transported Plaintiff and other arrestees to the 6th Precinct.  Former Officer Felix Schmidt is sued individually and in his official capacity.

24.      Defendant DANIEL MULLIGAN, is a large, male, police officer and employee of the NYPD.   He was wearing a white police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place. He is sued individually and in his official capacity.

25.      JOHN DOE #1 is a male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place. He is sued individually and in his official capacity.

26.      JOHN DOE #2 is a male police officer, approximately 5'3", and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place. He is sued individually and in his official capacity.

27.      JOHN DOE #3 is a large male police officer and employee of the NYPD whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place. He is sued individually and in his official capacity.

28.     JOHN DOE #4 is a large male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place. He is sued individually and in his official capacity.

29.     JOHN DOE # 5 is a large male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform on the day of March 17, 2012, on Liberty Street between Broadway and Trinity Place directing arrestees into the police wagon. He is sued individually and in his official capacity.

30.     JOHN DOE #6 is a large, Caucasian, male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was working in the 20th Precinct between 4:00PM on March 17, 2012 and March 18, 2012. He is sued individually and in his official capacity.

31.     JOHN DOE #7 is a large, Caucasian, male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was working in the 20th Precinct between 4:00PM on March 17, 2012 and March 18, 2012. He is sued individually and in his official capacity.

32.     JOHN DOE #8 is a short, brown-haired male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff. He was wearing a blue police uniform on the night of March 21, 2012 and early morning of March 22, 2012 at Union Square Park.  He is sued individually and in his official capacity.

33.     JOHN DOE #9 is a Caucasian male officer and employee of the NYPD whose identity is presently unknown to Plaintiff. He has blue eyes, is approximately 5'6" tall, and was wearing a police uniform with a white-collared shirt on the night of March 21, 2012 and

early morning of March 22, 2012 at Union Square Park. He is sued individually and in his official capacity.

34.     JOHN DOE #10 is a large, male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a police uniform at Zuccotti Park on the morning of March 22, 2012. He is sued individually and in his official capacity.

35.     JOHN DOE #11 is a short, male police officer and employee of the NYPD, whose identity is presently unknown to Plaintiff.  He was wearing a blue police uniform at 37 Wall Street on the night of April 16, 2012. He is sued individually and in his official capacity.

## ALLEGATIONS

### March 17, 2012 to March 18, 2012

36.     At approximately 2:00 p.m. on March 17, 2012, Plaintiff was on the sidewalk of Liberty Street between Trinity Place and Broadway.

37.     Defendant NYPD Officers were positioned opposite 1 Liberty Plaza.

38.     Defendants Officer Creer, Deputy Inspector Mulligan, and Does ##1-4 approached Plaintiff and Doe #1 immediately yelled at Plaintiff, "Stop resisting!"

39.     Plaintiff replied that she was not resisting.

40.     Defendants Officer Creer, Deputy Inspector Mulligan, and Does ##1-4 replied, "You cannot stand still on the sidewalk."

41.     Plaintiff and her friends began to dance.

42.     Defendants Officer Creer, Deputy Inspector Mulligan, and Does ##1-4 forcefully grabbed and restrained Plaintiff, tightly zip-tied her wrists, and placed her under arrest at approximately 2:30PM.

43.     Plaintiff was charged with Resisting Arrest and two counts of Disorderly Conduct.

44.     Once the zip-ties were secure and Plaintiff could not move her arms, Defendants Officer Creer, Deputy Inspector Mulligan, and Does ##1-4 threw Plaintiff onto the concrete sidewalk and repeatedly kicked Plaintiff in the legs and lower body.

45.     Plaintiff was then placed in the police van next to an injured woman screaming in pain.

46.     When Plaintiff tried to provide medical assistance to the injured woman, Defendant John Doe #7 forcefully grabbed Plaintiff by the neck and, while choking her, warned her to remain seated.

47.     Plaintiff was transported to the 7th Precinct where she was fingerprinted and searched and her belongings were taken.

48.     At approximately 5:00 p.m., Plaintiff was transported to the 20th Precinct, which she was told was the "Medical" Precinct.

49.     Upon arrival at the "Medical" Precinct, Plaintiff promptly informed Defendants John Does ## 6-7 that her epileptic condition required a strict medication schedule, and her medication was located in her backpack.

50.     Plaintiff did not have her backpack, which contained her medication, because her belongings were located at the 7th Precinct in NYPD possession.

51.     Plaintiff's scheduled dosage time was 10:00 p.m.

52.     While in the holding cell, Plaintiff asked Does ## 6-7 for medical attention at least four times.

53. Defendants Does ## 6-7 ignored all of Plaintiff's requests and said they "would get to it."

54. At approximately 8 p.m., Plaintiff became frustrated with Defendants Does ## 7-8 lack of response and asked them if she could speak with the sergeant, but they said that he was "busy."

55. Plaintiff was never allowed to speak with the sergeant.

56. Plaintiff then started to feel dizzy, developed a headache, and started to worry that she would soon experience a seizure.

57. Plaintiff told Defendants Does ## 6-7 that she was experiencing a headache and continued to ask for medical attention.

58. Plaintiff's headache worsened.

59. Plaintiff soon lost consciousness while in the holding cell.

60. Plaintiff awoke to an EMT attending to her and asked what happened.

61. Another NYPD officer responded that she called an ambulance and explained that she has an epileptic daughter and believed that Plaintiff had just experienced a seizure.

62. Plaintiff was transported to Bellevue Hospital at approximately 2:00 a.m., four hours after her scheduled dosage time.

63. Plaintiff was given medication and discharged shortly thereafter.

64. Plaintiff was then placed alone in a holding cell and fell asleep.

65. Plaintiff missed her next scheduled dosage time at 10 a.m.

66. Approximately eight hours later, on March 18, 2013, Plaintiff woke up on the concrete floor of the cell to EMTs attending her after she had experienced a second seizure.

67.     At approximately 2:00 p.m. Plaintiff returned to Bellevue Hospital to receive medical attention.

68.     Approximately one hour later, Plaintiff returned to 20th Precinct.

69.     Plaintiff was then arraigned and released on her own recognizance.

### March 21, 2012 – March 22, 2012

70.     On March 21, 2012, at approximately 2:00 a.m., Plaintiff attended an event with Occupy Wall Street supporters in Union Square Park.

71.     A large group of approximately two hundred NYPD Officers was also present.

72.     Officers formed a circle in the south end of the park using metal barricades and told everyone present to "attend their property."

73.     Plaintiff and others stood with their belongings between their legs.

74.     The circle of officers in the park then expanded outwards and, without warning, used the metal barricades and their batons to push people out of the park towards the street.

75.     Defendant John Doe # 8 pushed Plaintiff in the chest with his baton, causing Plaintiff to fall backward.

76.     After Plaintiff stood up, Defendant John Doe #9 grabbed Plaintiff from the back of her neck and waist, picked her up, and tossed her to the ground.

77.     Plaintiff landed on her head and lost consciousness.

78.     Plaintiff awoke while an EMT attempted to place her on a backboard and repeatedly asked her name.

79.     As the EMTs attempted to safely move Plaintiff onto the backboard, Officers rushed the crowd and the EMTs dropped the backboard.

80.     Plaintiff then felt sharp pain in her right leg and ankle causing her to scream in

pain.

81.     Plaintiff then looked up and saw Officers walking on her right leg and ankle.

82.     Officers then followed Plaintiff into the ambulance and delayed her transportation

to the hospital by insisting on interrogating her.

83.     Plaintiff was eventually transported to Beth Israel Hospital at approximately 4:00

a.m. where she was treated for a concussion and given a soft cast and crutches for an

ankle sprain.

84.     Beth Israel Hospital released Plaintiff at 7:00 a.m. on March 22, 2012 and

Plaintiff, using crutches, immediately returned to Occupy Wall Street demonstrations in

Zuccotti Park.

85.     Defendant John Doe #10, without warning, came out of a group of nearby NYPD

officers, and approached Plaintiff while she was speaking with a friend.

86.     Defendant John Doe #10 pushed Plaintiff in the chest and knocked her off her

crutches.

### March 23, 2012

87.     On March 23, 2012, at approximately 8:00 p.m., Plaintiff went to Union Square to

provide medical assistance to Occupy Wall Street supporters.

88.     Plaintiff began to feel dizzy and lost consciousness.

89.     Plaintiff experienced several seizures, and an ambulance transported her to Beth

Israel Hospital.

90.     The attending ER Neurologist warned Plaintiff that her epilepsy had significantly

worsened and urged her to remain in Beth Israel Hospital for care and observation.

91.     Plaintiff remained at Beth Israel Hospital for approximately four-and-a-half days.

**April 16, 2012**

92.     On the morning of April 16, 2012, Plaintiff sat on the sidewalk of Nassau Street and Wall Street with a group of approximately forty other members of the Occupy Wall Street movement.

93.     Soon thereafter, NYPD Officer Colleen Henry and NYPD Sergeant John Slayne arrested Plaintiff. Plaintiff was subsequently charged with two counts of disorderly conduct, obstruction of government administration, and resisting arrest.

94.     These charges were later dismissed on November 26, 2012.

95.     At approximately 8:30 p.m. on April 16, 2012, Plaintiff was released on her own recognizance.

96.     At approximately 9 p.m. on April 16, 2012, Plaintiff arrived at Federal Hall at 37 Wall Street, New York, New York to participate in a peaceful demonstration.

97.     Upon Plaintiff's arrival, both demonstrators and NYPD officers were already gathered at the Federal Hall.

98.     The demonstrators were confined to the federal steps designated as a "First Amendment Zone."

99.     NYPD officers, some of whom Plaintiff recognized from that morning, stood in a line approximately 10 feet away from the federal steps.

100.     At approximately 9:45 p.m., an individual who was not participating in the demonstration punched a demonstrator in the face.

101.     The demonstrator was arrested.  The person unaffiliated with the demonstration who had punched him was not arrested.

102.    In response to this arrest, the remaining demonstrators began to chant.

103.    Police officers removed the arrested demonstrator from the area.

104.     At this time, the chanting substantially subsided and the officers returned to the

line approximately 10 feet away from the federal steps where Defendant Inspector

O'Connell stood with Defendant John Doe #11.

105.    Referring to the man who punched the arrested demonstrator, Plaintiff asked

Defendant Inspector John O'Connell and Defendant John Doe #11, "Why the fuck can't

you arrest that guy?"

106.    Immediately in response to this statement, Defendant Inspector O'Connell looked

directly at plaintiff, pointed at her, and exclaimed "unreasonable noise."

107.    Fearing police reaction to her comment, Plaintiff decided to leave the

demonstration with an acquaintance.

108.    Unknown to Plaintiff, Defendant O'Connell again pointed toward Plaintiff, stated

that he had "seen her on the line" and ordered subordinate officers, Defendants John

Does #11, Officer Schmidt, and/or Officer Rumble to place Plaintiff under arrest.

109.    Half a block away from the demonstration at Federal Hall, Plaintiff heard

someone running behind her.

110.    Defendant Officer Rumble suddenly and forcefully separated Plaintiff and her

acquaintance by grabbing the acquaintance from behind and throwing the acquaintance

against a wall and away from Plaintiff.

111.    Defendant Officer Rumble and Officer Schmidt and John Doe #11 tackled

Plaintiff from behind, grabbed plaintiff by her hair, and forcefully slammed Plaintiff's

head against the pavement and the side of the Federal building's brick wall.

112.     Plaintiff's acquaintance simultaneously begged Defendant Officer Rumble to be careful because Plaintiff suffered from a head condition.

113.     Defendant Officer Rumble and Defendant Officer Schmidt and Defendant Officer John Doe #11 proceeded to slam Plaintiff's face into the pavement a second time.

114.     As Plaintiff entered the police van, Defendant Deputy Chief McNamara told Defendants Officer Rumble and Officer Schmidt that he knew Plaintiff and that she was "trouble."

115.     Once in the police van, Plaintiff began to feel nauseous, threw up several times, and lost consciousness.

116.     Plaintiff began to experience a seizure.

117.     The other arrestees in the police van began shouting to Defendants Officer Rumble and Officer Schmidt that Plaintiff was experiencing a seizure and required immediate medical assistance.

118.     Defendants Officer Rumble and Officer Schmidt refused to provide immediate medical assistance and stated, "There is nothing we can do until we get to the Precinct."

119.     When the police van began to move, Plaintiff continued to experience a seizure causing her to fall from her seat and collapse to the floor of the police van.

120.     While experiencing a seizure Plaintiff rolled on the floor of the police van and repeatedly struck her head on the metal seats.

121.     The other arrestees of the police van continued to beg Defendants Officer Rumble and Officer Schmidt to provide medical attention to Plaintiff and urged them to go straight to the emergency room.

122. Defendants Officer Rumble and Officer Schmidt refused to provide medical attention.

123. Defendants Officer Rumble and Officer Schmidt also refused to take Plaintiff to the hospital.

124. When the police van arrived at the 6th Precinct, Defendants Officer Rumble and Officer Schmidt did not offer Plaintiff assistance and forced Plaintiff to walk into the Precinct.

125. Defendants Officer Rumble and Officer Schmidt placed Plaintiff alone in a holding cell for about an hour where she experienced another seizure.

126. Plaintiff was admitted to Beth Israel Hospital at approximately 11:00 p.m. under the supervision of Defendant Officer Aminova.

127. Defendant Officer Aminova laughed at Plaintiff while at the hospital and would not let Plaintiff wash the vomit out of her own hair.

128. Plaintiff received treatment for her seizures and was discharged into police custody at approximately 1:30 a.m.

129. Defendant Officer Aminova eventually charged plaintiff with Disorderly Conduct and Resisting Arrest.

130. On October 26, 2012, both charges against Plaintiff were dismissed.

## Damages

131. Before the uses of forces and denials of medical care described herein, Plaintiff's epilepsy was manageable with a regimented schedule for taking her medicine.

132. Plaintiff experienced a seizure once or twice a month.

133.     Although limited, Plaintiff was able to work part-time, and travel, cook, and generally care for herself without assistance.

134.     She had some limitations in her motor skills but was able to occasionally participate in her hobbies of martial arts and painting.

135.     As a result of the uses of forces and denials of medical care described herein, Plaintiff's seizures have been unpredictable and unmanageable and seizure activity has dramatically increased.

136.     Plaintiff has lost her independence and requires almost constant supervision because even minor events can trigger a seizure.

137.     Plaintiff has worsened motor skills, trouble sleeping, and experiences memory loss.

138.     Plaintiff's neurologist revoked Plaintiff's driver's license during the summer of 2012.

139.     Plaintiff is now unemployed because her job with Emergency Medical Services requires a driver's license.

140.     Plaintiff cannot travel alone, cook without supervision, or participate in her hobbies of drawing and martial arts.

141.     More than thirty days have elapsed since the Notice of Claim was timely filed prior to the filing of this Complaint.

## FIRST CAUSE OF ACTION

### VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURE – FALSE ARREST
(Fourth and Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)

142.     Plaintiff incorporates by reference paragraphs 1-140 as if set forth herein.

143.      By the conduct described in paragraphs 92-113 and 128-129, Defendants
Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and John Doe
# 11, deprived Plaintiff of her clearly established constitutional right to be free from false
arrest.

144.      On April 16, 2012, Defendants Inspector O'Connell, Officer Rumble, Officer
Schmidt, and John Doe# 11 , unlawfully seized Plaintiff after she left Federal Hall.
Defendant O'Connell pointed out Plaintiff and Defendant Rumble tackled Plaintiff to the
ground and pushed Plaintiff's head on the pavement while arresting and detaining her.

145.      Defendants Inspector O'Connell, Officer Aminova, Officer Rumble, Officer
Schmidt, and John Doe #11 did not have knowledge or reasonably trustworthy
information of facts and circumstances that were sufficient to warrant a reasonable belief
that Plaintiff committed or was actively committing any offense.

146.      Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, and John Doe
#11 did not have probable cause to arrest Plaintiff, nor was it objectively reasonable for
Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, and John Doe # 11 to
believe that they had probable cause to arrest Plaintiff. .

147.      By the conduct described in paragraphs 93-114 and 129-130, Defendants
Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and John Doe
#11, deprived Plaintiff of her clearly established constitutional right to be free from false
arrest.

148.      Because a reasonable officer would understand that the conduct described in
paragraphs 92-113 and 128-129 would violate Plaintiff's rights, Defendants Inspector
O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #

11 are liable to Plaintiff under the Fourth and Fourteenth Amendments and 42 U.S.C.§ 1983.

149.     Plaintiff was physically injured and otherwise injured and continues to suffer physical and other injuries as a result of the false arrests complained of herein.

### SECOND CAUSE OF ACTION

**VIOLATION OF PLAINTIFF'S FOURTH AMENDMENT RIGHT TO BE FREE OF UNREASONABLE SEARCHES AND SEIZURE – EXCESSIVE FORCE**
(Fourth and Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)

150.     Plaintiff incorporates by reference paragraphs 1-148 as if set forth herein.

151.     By the conduct described in paragraphs 36-44 and 92-113, Defendants Inspector O'Connell, Officer Rumble, Deputy Inspector Mulligan, and John Does ## 1-4 and 7-10 deprived Plaintiff of her clearly established constitutional right to be free from excessive force.

152.     On March 17, 2012, Defendants Deputy Inspector Mulligan and John Does ## 1-4 used excessive force when they forcefully grabbed and restrained Plaintiff, after she was placed under arrest, and threw her on the ground and kicked her.

153.     On March 17, 2012, Defendant John Doe #7 used excessive force when he forcefully grabbed her by the neck and, while choking her, warned her to remain seated while Plaintiff was detained in the police van.

154.     On March 21, 2012, Defendants John Does ## 8-9 used excessive force when they forcefully pushed Plaintiff in the chest with a baton causing Plaintiff to fall backward and forcefully grabbed Plaintiff from the back of her neck and waist, picked her up, and tossed her to the ground.

155.     On March 22, 2012, Defendant John Doe #10 used excessive force when he forcefully pushed Plaintiff in the chest and knocked her off her crutches.

156.     On April 16, 2012, Defendant Officer Rumble used excessive force when she forcefully tackled Plaintiff to the ground, causing her to hit her head on the pavement and pushed Plaintiff's face into the concrete while detaining and arresting her.

157.     By the conduct described in paragraphs 36-44 and 92-113, Defendants Inspector O'Connell, Officer Rumble, Deputy Inspector Mulligan, and John Does ## 1-4 and 7-10 willfully deprived Plaintiff of her constitutional right to be free from excessive force and are liable to Plaintiff under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983.

158.     Plaintiff was physically and otherwise injured as a result of the excessive force by Defendants Inspector O'Connell, Officer Rumble, Deputy Inspector Mulligan, and John Does ## 1-4, 8-10 and continues to suffer physical and other injuries.

### THIRD CAUSE OF ACTION

**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT
RIGHT TO DUE PROCESS OF LAW – DELIBERATE INDIFFERENCE TO A
SERIOUS MEDICAL CONDITION**
(Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)

159.     Plaintiff incorporates by reference paragraphs 1-157 as if set forth herein.

160.     By the conduct described in paragraphs 48-67, 75-83, 111-126Defendants Officer Rumble, Officer Schmidt and John Does ## 6-7 deprived Plaintiff of her clearly established constitutional rights to be free from deliberate indifference to a serious medical condition.

161.     On March 17, 2012 to March 18, 2012, Plaintiff had a serious medical condition because she suffered from epilepsy, which required her to receive medication on a strict schedule.

162.     From March 17, 2012 to March 18, 2012 Defendants John Does ## 6-7 knew of Plaintiff's serious medical condition because Plaintiff repeatedly informed them of her condition and repeatedly asked for medical attention.

163.     From March 17, 2012 to March 18, 2012, Defendants John Does ## 6-7 consciously disregarded Plaintiff's serious medical condition when they repeatedly ignored Plaintiff's requests for medical attention, did not let Plaintiff speak to the sergeant, and did not provide Plaintiff with medical attention.

164.     From March 17, 2012 to March 18, 2012, Defendants', John Does ##6-7, actions resulted in substantial injury because Plaintiff experienced a seizure while in their custody.

165.     On March 21, 2012, Plaintiff had a serious medical condition because she was on the ground holding her head after being tossed to the ground by Defendant John Doe #9.

166.     On March 21, 2012, Defendants NYPD Officers knew of Plaintiff's serious medical condition because Plaintiff was lying on the ground and being helped by Emergency Medical Technicians.

167.     On March 21, 2012, Defendants John Does ## 6-7 consciously disregarded Plaintiff's serious medical condition when they rushed the crowd of protestors in Plaintiff's direction and Defendant Officers trampled over Plaintiff's leg.

168.     On March 21, 2012, Defendants John Does ##6-7 actions resulted in substantial injury because Plaintiff was subsequently treated for a sprained ankle.

169.     On April 16, 2012, Plaintiff had a serious medical condition because she suffered from epilepsy and was experiencing almost seizures while in police custody.

170.     On April 16, 2012, Defendants Officer Rumble Officer Schmidt knew of Plaintiff's serious medical condition because the other arrestees in the police van repeatedly informed Defendants that Plaintiff was experiencing seizures and required immediate medical attention.

171.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt consciously disregarded Plaintiff's serious medical condition when they outright denied all arrestees' requests to provide medical attention to Plaintiff, and then placed Plaintiff alone in a holding cell as soon as they arrived at the Precinct.

172.     On April 16, 2012, Defendants', Officer  Rumble and Officer Schmidt, actions resulted in substantial injury because Plaintiff continued to experience seizures while in the police van and experienced another seizure while in the holding cell at the Precinct.

173.     By the conduct described in paragraphs 48-67, 75-83, 111-126Defendants Officer Rumble, Officer Schmidt, and John Does ## 6-7 violated Plaintiff's constitutional right to due process of law and are liable to Plaintiff under the Fourteenth Amendment and 42 U.S.C. § 1983.

174.     Plaintiff was physically and otherwise injured as a result of the deliberate indifference of Defendants Officer Rumble, Officer Schmidt, and John Does ## 6-7and continues to suffer physical and other injuries.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF PLAINTIFF'S FOURTEENTH AMENDMENT
RIGHT TO DUE PROCESS OF LAW – UNCONSTITUTIONAL CONDITIONS OF
CONFINEMENT**
(Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)

21

175.     Plaintiff incorporates by reference paragraphs 1-173 as if set forth herein.

176.     By the conduct described in paragraphs 48-67 and 113-126, Defendants Officer

Rumble, Officer Schmidt, and John Does ## 6-7 deprived Plaintiff of her clearly

established constitutional right to constitutional conditions of confinement. From March

17, 2012 to March 18, 2012, Plaintiff's basic human needs included taking her epilepsy

medication on a strict schedule.

177.     From March 17, 2012 to March 18, 2012 Defendants John Does ## 6-7 knew of

Plaintiff's basic human need because Plaintiff repeatedly informed them of her condition

and repeatedly asked for medical attention.

178.     From March 17, 2012 to March 18, 2012, Defendants John Does ## 6-7

consciously disregarded Plaintiff's basic human needs when they repeatedly ignored

Plaintiff's requests for medical attention and did not let Plaintiff speak to the sergeant

179.     From March 17, 2012 to March 18, 2012, Defendants John Does ## 6-7 did not

discharge their duty to protect Plaintiff when they did not provide Plaintiff with medical

attention.

180.     From March 17, 2012 to March 18, 2012, Defendants John Does' ##6-7 actions

resulted in substantial injury because Plaintiff experienced a seizure while in their

custody.

181.     On April 16, 2012, Plaintiff's basic human needs included immediate medical

attention while she was experiencing continuous seizures while in police custody.

182.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt knew of

Plaintiff's basic human need because the other arrestees in the police van repeatedly

informed Defendants that Plaintiff was experiencing seizures and required immediate

medical attention.

183.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt consciously

disregarded Plaintiff's basic human need when they ignored all the arrestees' requests for

immediate medical attention for Plaintiff.

184.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt failed to

discharge their duty to protect Plaintiff because they outright denied all arrestees'

requests to provide medical attention, and then placed Plaintiff alone in a holding cell as

soon as they arrived at the Precinct.

185.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt actions

resulted in substantial injury because Plaintiff continued to experience seizures while in

the police van and experienced another seizure while in the holding cell at the Precinct.

186.     By the conduct described in paragraphs 48-67 and 113-126, Defendants Officer

Rumble, Officer Schmidt, and John Does ## 6-7 violated Plaintiff's constitutional right to

due process of law and are liable to Plaintiff under the Fourteenth Amendment and 42

U.S.C. § 1983.

187.     Plaintiff was physically and otherwise injured as a result of the unconstitutional

conditions of confinement by Defendants Officer Rumble, Officer Schmidt, and John

Does ## 6-7 and continues to suffer from her physical and other injuries.

## FIFTH CAUSE OF ACTION

### DISCRIMINATION BASED ON PLAINTIFF'S DISABILITY
(Americans with Disabilities Act, 42 U.S.C. § 12102)

188.     Plaintiff incorporates by reference paragraphs 1-186 as if set forth herein.

23

189.     By the conduct described in paragraphs 48-67 and 113-126, Defendants New

York City Police Department and New York City deprived Plaintiff of her clearly

established federal statutory right to be free from discrimination based on her disability.

190.     The NYPD is a public entity because it is an agent and instrumentality of New

York City and provides public services, activities, and programs.

191.     Plaintiff's epilepsy qualifies as a disability under the Americans with Disabilities

Act ("ADA") because it is a mental and physical impairment that substantially limits her

major life activities of travelling, sleeping, cooking, working, caring for herself, and

thinking.

192.     From March 17, 2012 to March 18, 2012, Defendants NYPD and New York City

discriminated against Plaintiff when John Does ##6-7 failed to provide Plaintiff with

reasonable accommodations for her epileptic condition while she was in their custody by

repeatedly ignoring Plaintiff's requests for medical attention as she was about to suffer

from seizures, failing to provide medical attention after she experienced a seizure, and

placing Plaintiff alone in a holding cell for several hours the next day in spite of the

danger this presented to Plaintiff given her epileptic condition.

193.     On March 17, 2012 to March 18, 2012, Defendants NYPD and New York City's

lack of accommodations caused Plaintiff to not be able to take a meaningful part in public

services because her health and safety was at greater risk than other arrestees when she

experienced multiple seizures while in custody.

194.     Because of Defendants' failure to provide reasonable accommodations for

Plaintiff's epileptic condition, Plaintiff missed her scheduled dosage times and

experienced multiple seizures while in their custody.

195.     On April 16, 2012, Defendants Officer Rumble and Officer Schmidt knew of

Plaintiff's disability because the other arrestees in the police van repeatedly informed

Defendants that Plaintiff was experiencing seizures and required immediate medical

attention.

196.     On April 16, 2012, Defendants NYPD and New York City discriminated against

Plaintiff when Defendants Officer Rumble and Officer Schmidt failed to provide

reasonable accommodations for Plaintiff's epileptic condition while she was in their

custody because they did not provide medical attention to Plaintiff when she experienced

seizures, forced Plaintiff to walk after she experienced seizures, and placed Plaintiff alone

in a holding cell in spite of the danger this presented to Plaintiff given her epileptic

condition.

197.     On April 16, 2012, Defendants NYPD and New York City's lack of

accommodations caused Plaintiff to not be able to take a meaningful part in public

services because her health and safety was at greater risk than other arrestees when she

fell onto the floor of the police van, experienced continuous seizures during

transportation, was forced to walk after experiencing seizures, and experienced another

seizure while alone in a holding cell.

198.     Because of Defendants' failure to provide reasonable accommodations for

Plaintiff's epileptic condition, Plaintiff experienced multiple seizures while in their

custody, which exacerbated Plaintiff's epileptic condition.

199.     By the conduct described in paragraphs 48-67 and 113-126, Defendants NYPD

and New York City violated Plaintiff's federal statutory right to be free from

discrimination because of her disability, and her right to reasonable accommodations for

25

her disability, and are liable to Plaintiff under the Americans with Disabilities Act, 42

U.S.C. § 12102.

### SIXTH CAUSE OF ACTION

### ASSAULT AND BATTERY
(New York State Law Claim)

200.     Plaintiff incorporates by reference paragraphs 1-198 as if set forth herein.

201.     The conduct described in paragraphs 36-44, 46, 75-81, and 85-86 constitutes

assault and battery.

202.     On March 17, 2012, Defendants Officer Creer, Deputy Inspector Mulligan, and

John Does ## 1-4 placed Plaintiff in imminent apprehension of harm or offensive contact

when they approached and surrounded Plaintiff, and yelled at Plaintiff to stop resisting

arrest when she was not resisting.

203.     On March 17, 2012, Defendants Officer Creer, Deputy Inspector Mulligan, and

John Does ## 1-4, without consent, made intentional, offensive bodily contact with

Plaintiff when they forcefully grabbed and restrained Plaintiff, after she was placed under

arrest, and threw her on the ground and kicked her.

204.     On March 17, 2012, John Doe #7, without consent, made intentional, offensive

bodily contact with Plaintiff when he forcefully grabbed her by the neck and choked her.

205.     On March 21, 2012, Defendant John Doe #10 placed Plaintiff in imminent

apprehension of harm or offensive contact when he, without warning, left a group of

NYPD officers located yards away, and approached Plaintiff.

206.     On March 21, 2012, Defendant John Doe # 8, without consent, made intentional,

and offensive bodily contact with Plaintiff when he forcefully pushed Plaintiff, without

her consent, in the chest with his baton causing Plaintiff to fall backward.

207.     On March 21, 2012, Defendant John Doe # 9, without consent, made intentional,

and offensive bodily contact with Plaintiff when he forcefully grabbed Plaintiff, without

her consent, from the back of her neck and waist, picked her up, and threw her to the

ground.

208.     On March 22, 2012, Defendant John Doe #10, without consent, made intentional,

and offensive bodily contact with Plaintiff when he pushed Plaintiff, without her consent,

in her chest off her crutches.

209.     By the conduct described in paragraphs 36-44, 46, 75-81, and 85-86, Defendants

Officer Creer Deputy Inspector Mulligan, and John Does ## 1-4, 8-10 assaulted and

battered Plaintiff and are liable to Plaintiff under New York State Tort Law.

210.     Plaintiff was physically and otherwise injured as a result of the assault and battery

by Defendants Officer Creer, Deputy Inspector Mulligan, and John Does ## 1-4, 8-10 and

continues to suffer physically.

## SEVENTH CAUSE OF ACTION

### VIOLATIONS OF PLAINTIFF'S
### FIRST AMENDMENT RIGHTS –RETALIATION AGAINST PLAINTIFF FOR
### EXERCISING HER FIRST AMENDMENT RIGHTS
(First Amendment and Fourteenth Amendment to the U.S. Constitution, 42 U.S.C. § 1983)

211.     Plaintiff incorporates by reference paragraphs 1-210 as if set forth herein.

212.     By the conduct described in paragraphs 92-113, Defendants Deputy Inspector

O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe

#11, deprived Plaintiff of her clearly established constitutional rights to be free from

retaliation based upon the exercise of her First Amendment rights.

213.     On April 16, 2012, Plaintiff was exercising her First Amendment right to free

speech.

214.     On April 16, 2012, Defendants Inspector O'Connell, Officer Rumble, Officer

Schmidt, and Officer John Doe# 11, unlawfully seized Plaintiff after she left Federal

Hall. Defendant Inspector O'Connell pointed towards plaintiff instructing officers to

"watch out over there." Immediately after Plaintiff asked "Why the fuck can't you arrest

that guy?" Defendant Inspector O'Connell instructed Plaintiff's arrest.

215.     Defendants Inspector O'Connell, Officer Aminova, Officer Rumble, Officer

Schmidt, and Officer John Doe #11 did not have knowledge or reasonably trustworthy

information of facts and circumstances that were sufficient to warrant a reasonable belief

that Plaintiff committed or was actively committing any offense.

216.     Plaintiff's speech was chilled while exercising her First Amendment Rights

217.     Plaintiff experienced a direct prohibition of her speech for an ascertainable period

of time as she was compelled to leave a demonstration for fear of retaliation and was

arrested while removing herself from the demonstration.

218.     Plaintiff's expressive activity was completely frustrated for the duration of her

arrest and detention.

219.     Plaintiff continues to fear retaliation for her expressive activity.

220.     The chilling of Plaintiff's speech was the direct result of Defendants Inspector

O'Connell, Officer Rumble, Officer Schmidt, and John Doe #11 retaliation.

221.     By the conduct described in paragraphs 92-113, Defendants Inspector O'Connell,

Officer Rumble, Officer Schmidt, Officer Aminova, and John Doe #11, deprived Plaintiff

of her clearly established constitutional right to free expression and to be free from

retaliation on upon the exercise of her First Amendment rights.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF PLAINTIFF'S
### FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE
### SEIZURES – MALICIOUS PROSECUTION
(Fourth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983)

222.    Plaintiff incorporates by reference paragraphs 1-221 as if set forth herein.

223.    By the conduct described in paragraphs 92-114 and 127-129,Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11, willfully deprived Plaintiff of her clearly established Fourth Amendment right to be free from unreasonable seizures and malicious prosecution

224.    On April 16, 2012, Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11 maliciously, willfully, and unlawfully arrested Plaintiff and caused her to be prosecuted.

225.    Defendant Inspector O'Connell lacked probable cause to order Plaintiff's arrest for disorderly conduct and resisting arrest.

226.    Defendants Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11 did not have probable cause to arrest and charge Plaintiff with disorderly conduct and resisting arrest.

227.    Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11 acted with malice against Plaintiff by initiating criminal proceedings without probable cause and with a motive other than obtaining justice.

228.    The criminal proceedings were terminated in Plaintiff's favor when all charges were dismissed on October 26, 2012.

229.     The actions taken by Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and John Doe #11, separately and in concert constituted malicious prosecution of Plaintiff.

230.     Plaintiff was physically and otherwise injured as a result of the malicious prosecution by Defendants O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11 and continues to suffer physical and other injuries.

231.     Defendants Inspector O'Connell, Officer Rumble, Officer Schmidt, Officer Aminova, and Officer John Doe #11 are liable to Plaintiff under the Fourth and Fourteenth Amendments and 42 U.S.C § 1983.

## NINTH CAUSE OF ACTION

### RESPONDEAT SUPERIOR

232.     Plaintiff incorporates by reference paragraphs 1-231 as if set forth herein.

233.     The defendant officers were engaged in governmental activity as on duty New York City police officers when they falsely arrested Plaintiff without probable cause, used excessive force in the course of arresting Plaintiff, were deliberately indifferent to Plaintiff's serious medical condition, and subjected Plaintiff to unconstitutional conditions of confinement.

234.     The defendant officers' willful and tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

235.     As a result of the defendant officers' tortious conduct in the course of their employment and in furtherance of the business of Defendant City of New York, Plaintiff was damaged.

## JURY DEMAND

236.      Plaintiff demands a trial by jury.


**WHEREFORE**, Plaintiff respectfully requests that this Court:

1.  Award Plaintiff damages in an amount to be determined at trial;

2.  Award Plaintiff punitive damages for Defendants' willful and malicious violations of

    Plaintiff's rights;

3.  Award Plaintiff reasonable attorney's fees and costs as authorized under 42 U.S.C. §

    1988 and 42 U.S.C.A. § 12205; and,

4.  Grant such other further and different relief as the Court deems just and proper.


Dated: New York, New York
      November 26, 2013

                                        Community Legal Assistance Corp.


                                        Stefan H. Krieger
                                     108 Hofstra University
                                       Joan F. Axinn Hall
                                       Hempstead, NY 11549
                                       lawshk@hofstra.edu
                                       (516) 463-6078


                                     Gideon Orion Oliver [GO 8799]
                                     351 Broadway, 3rd Floor
                                     New York, New York 10013
                                     Gideon@GideonLaw.com
                                     (646) 263-3495


                                  *Student interns Jaclyn Quiles,
                          Sarah Coleman, Andrew Mantione,

and Aaron Thornburn assisted in
the preparation of this filing.