UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

MARY M. TARDIF,

               Plaintiff

       -against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, INSPECTOR JOHN
O'CONNELL, DEPUTY INSPECTOR EDWARD
WINSKI, POLICE OFFICER JAMES
MCNAMARA, POLICE OFFICER ALENA
AMINOVA, POLICE OFFICER KENDAL
CREER, POLICE OFFICER MARSHA RUMBLE,
POLICE OFFICER FELIX SCHMIDT, DEPUTY
INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD
OFFICERS ## 1-9,

               Defendants.

------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/23/17_

OPINION AND ORDER

13 CV 4056 (KMW)

KIMBA M. WOOD, DISTRICT JUDGE:


       The parties have filed cross-motions for reconsideration of this Court's March 22, 2017

Opinion and Order (O & O, [Doc. No. 187]), which adopted in part Magistrate Judge Fox's Report

and Recommendation (R & R, [Doc. No. 178]) on Defendants' motion for summary judgment

(Doc. No. 164). For the reasons set forth below, Plaintiff's motion is GRANTED in part and

DENIED in part. Defendants' motion is also GRANTED in part and DENIED in part.

1

## I. **BACKGROUND**

On June 13, 2013, Plaintiff Mary Tardif commenced this action for damages against the City of New York ("the City"), and various NYPD officers. (Compl. [Doc. No. 1]). Her claims arose out of the NYPD's response to her involvement in Occupy Wall Street protests in March and April of 2012. Plaintiff's complaint contained allegations of false arrest, excessive force, deliberate indifference to a serious medical condition, unconstitutional conditions of confinement, violations of the Americans with Disabilities Act, assault and battery, First Amendment retaliation, malicious prosecution, and tortious conduct by the City under the doctrine of *respondeat superior.* *Id.*

Plaintiff has since filed two amended complaints, the second of which was docketed on January 15, 2016 ("TAC") [Doc. No. 135]). The parties initially participated in mediation, as part of this District's process for resolving § 1983 litigation. The parties were unable to reach a settlement. Defendants filed a motion for summary judgment on June 1, 2016 (Doc. No. 164). The motion was fully submitted on July 15, 2016 (Doc. No. 177). Magistrate Judge Fox issued his Report and Recommendation on February 6, 2017. (Doc. No. 178). The parties filed objections to Magistrate Judge Fox's Report and Recommendation on February 21, 2017. (Doc. Nos. 179 - 181). The parties each responded to these objections on March 7, 2017. (Doc. Nos. 182, 183). This Court issued its Opinion and Order adopting in part Magistrate Judge Fox's Report and Recommendation on March 22, 2017. (Doc. No. 187). The parties each filed their motions for reconsideration on April 21, 2017. (Doc. Nos. 190 - 193).

2

## II. STANDARD GOVERNING A MOTION FOR RECONSIDERATION

"[R]econsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *In re Health Mgmt. Sys., Inc. Sec. Litig.,* 113 F.Supp.2d 613, 614 (S.D.N.Y. 2000) (Berman, J.) (internal quotation marks omitted). To prevail on a motion for reconsideration and reargument, "the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Montanile v. Nat'l Broad. Co.,* 216 F.Supp.2d 341, 342 (S.D.N.Y. 2002) (Marrero, J.). "A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor may it be used as a vehicle for relitigating issues already decided by the Court." *Davidson v. Scully,* 172 F.Supp.2d 458, 461 (S.D.N.Y. 2001) (Leisure, J.). The standard is "strict in order to dissuade repetitive arguments on issues that have already been considered fully by the court." *Travelers Ins. Co. v. Buffalo Reinsurance Co.,* 739 F.Supp. 209, 211 (S.D.N.Y.1990) (Cannella, J.) (quoting *Caleb & Co. v. E.I. DuPont de Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y. 1985) (Sweet, J.)).

## III. DISCUSSION

### A. Plaintiff's Motion for Reconsideration

Plaintiff asks this Court to reconsider every claim on which it granted summary judgment in favor of Defendants. The Court will address each of her claims in turn, in the order in which they were presented in her motion.

Respondeat Superior *Claim*

Plaintiff laid out her *respondeat superior* allegations in the Ninth Cause of Action of her Third Amended Complaint. She stated that "the defendant officers were engaged in governmental activity as on duty New York City police officers when they falsely arrested Plaintiff without probable cause, used excessive force in the course of arresting Plaintiff, were deliberately indifferent to Plaintiff's serious medical condition, and subjected Plaintiff to unconstitutional conditions of confinement." She further alleged that "[t]he defendant officers' willful and tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest." (TAC, ¶¶ 230-31). Earlier in her complaint, Plaintiff specified that her claims of false arrest, excessive force, deliberate indifference to a medical condition, and unconstitutional conditions of confinement all arose under § 1983. (TAC, ¶¶ 147, 156, 172, 185).

In recommending summary judgment in favor of Defendants in his Report and Recommendation, Magistrate Judge Fox relied on well-settled principles articulated in *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978). He explained that the City cannot be held liable on a *respondeat superior* theory when the underlying claims alleged arise under § 1983, unless the Plaintiff can prove the alleged constitutional violations occurred pursuant to a municipal policy or custom. (R & R, 17-18). Magistrate Judge Fox further concluded that Plaintiff could not prove that "any violation of her constitutional rights was caused by an action pursuant to a policy or custom of the City." *Id.* at 18. In recommending that all claims against the City of New York be dismissed on *Monell* grounds, Magistrate Judge Fox did not distinguish

4

between Plaintiff's predicate claims that arose under state law (her assault and battery claim) and those that arose under federal law (her § 1983 claims). However, in adopting Magistrate Judge Fox's recommendation, this Court noted that Plaintiff's complaint clearly limited her *respondeat superior* allegations to her four § 1983 claims, rendering summary judgment on *Monell* grounds appropriate even though Plaintiff's complaint contained one cause of action that arose under New York State law. (O & O, 10-11).

Plaintiff now argues that the Court did not construe her *respondeat superior* claims liberally enough in adopting Magistrate Judge Fox's recommendation that the claims be dismissed, and that the Court was required to construe her insufficient pleadings in her favor if her claim might otherwise have been grounded in the factual record. First, she argues that she meant to assert *respondeat superior* liability with respect to her New York State law assault and battery allegations (a claim that the Court could not have dismissed on *Monell* grounds), despite the fact that her Third Amended Complaint indicated otherwise. Second, she contends that the factual record made clear that she asserted *respondeat superior* liability with respect to her assault and battery claim. Plaintiff fails to note that she was granted leave to file an amended complaint two separate times. Plaintiff thus had three opportunities over the course of more than one year to adequately plead her *respondeat superior* claims, and each time failed to do so.

However, despite Plaintiff's deficient pleadings, she is correct that under Rule 56(f)(2) of the Federal Rules of Civil Procedure, it is permissible for a district court to grant summary judgment on "grounds not raised by a party" only "[a]fter giving notice and a reasonable time to respond." *See also Willey v. Kirkpatrick*, 801 F.3d 51, 62–63 (2d Cir. 2015). Defendants did not

argue that Plaintiff's *respondeat superior* claims must be dismissed on *Monell* grounds in any of their summary judgment briefing. The first time Defendants contended that *Monell* required dismissal Plaintiff's *respondeat superior* claims was in their March 7, 2017 Memorandum in Opposition to Plaintiff's Objections to Magistrate Judge Fox's Report and Recommendation (Doc. No. 183). In fact, Defendants made no mention at all of Plaintiff's *respondeat superior* claims in their June 1, 2016 Memorandum of Law in Support of their Motion for Summary Judgment. Defendants did once reference Plaintiff's *respondeat superior* claims in their July 15, 2016 Reply to Plaintiff's Opposition to their Motion for Summary Judgment, but they did not offer any ground for dismissal of those claims. (Def. Reply, 1 [Doc. No. 177]).

Because Plaintiff concedes that, despite her pleadings, she cannot and never intended to maintain a claim of *respondeat superior* liability with respect to her federal § 1983 claims, the Court declines to revisit its decision to grant summary judgment in this respect. (Pl's Mem. in Supp, 4 [Doc. No. 191]). However, because Defendants failed to address Plaintiff's *respondeat superior* claims in their summary judgment briefing, and because the record does reflect Plaintiff's intention to seek *respondeat superior* liability with respect to her New York State law claim,[1] the Court preserves for trial Plaintiff's *respondeat superior* claim only with respect to her underlying state law assault and battery allegation.[2] Her motion for reconsideration of this Court's decision to

---

[1] *See* Plaintiff's July 1, 2016 Memorandum in Opposition to Defendant's Motion for Summary Judgment (Doc. No. 174).

[2] The Court preserves for trial Plaintiff' *respondeat superior* claim because it also denies Defendants' motion for reconsideration of this Court's previous decision to deny summary judgment on plaintiff's underlying assault and battery claim, as indicated on page 12 of this Opinion and Order.

6

adopt Magistrate Judge Fox's recommendation that all of Plaintiff's *respondeat superior* claims be dismissed is thus granted in part, and denied in part.[3]

### *Americans with Disabilities Act Claim*

The Court granted summary judgment for Defendants on Plaintiff's Americans with Disabilities Act ("ADA") claim on the ground that Plaintiff failed to allege that any denial of treatment occurred because of her disability, as is required in order to assert a valid ADA claim. Plaintiff alleges that the Court overlooked dispositive law, *Henrietta D. v. Bloomberg*, 331 F.3d 261 (2d Cir. 2003) ("*Henrietta D*"). Specifically, Plaintiff alleges that pursuant to *Henrietta D.*, Plaintiff need not allege that any denial of medical treatment was the result of discrimination based on a disability when bringing an ADA claim under a "reasonable accommodation" theory. Plaintiff misconstrues *Henrietta D.*, and ignores controlling law that mandates that reasonable accommodation claims must still be premised on a denial of treatment due to one's disability. *Henrietta D* did note, as Plaintiff suggests, that a Plaintiff alleging a failure to provide reasonable accommodation need not prove that a "comparison class" of "similarly situated individuals are being given preferential treatment." *Id.* at 273. However, *Henrietta D.* also clearly held that in order to establish a reasonable accommodation claim under the ADA, a plaintiff must demonstrate that (1) she is a "qualified individual" with a disability; (2) that the defendants are subject to the

---

[3] Plaintiff appears to also ask the Court to preserve for trial her *respondeat superior* claim with respect to her deliberate indifference to a medical condition allegations. The Court declines to do so, as Plaintiff's Third Amended Complaint and all subsequent briefing clearly indicates that this claim arises under § 1983. *See* (TAC ¶ 172).

ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities. *Id.* at 272 (citing *Doe v. Pfrommer,* 148 F.3d 73, 82 (2d Cir.1998)). The fact that Plaintiff advances a reasonable accommodation claim thus does not eliminate the requirement that she show that any denial of treatment was due to her disability. In fact, the Second Circuit has made clear that in order to allege a violation of the ADA on a reasonable accommodation theory, "there must be something different about the way the plaintiff is treated by reason of ... disability." *Id.* at 276.

The undisputed portion of the factual record does not support a finding that any failure on the part of the NYPD to provide Plaintiff with her epilepsy medication was motivated by reason of her disability. In her motion for reconsideration, Plaintiff simply urges the Court to view the undisputed factual record differently than it did in its previous Opinion and Order. The Court declines to do so, and it declines to reconsider its decision to grant Defendants' motion for summary judgment on Plaintiff's ADA claim.

### *False Arrest, Malicious Prosecution, and First Amendment Retaliation Claims*

The Court adopted Magistrate Judge Fox's recommendation that Plaintiff's false arrest, First Amendment retaliation, and malicious prosecution claims be dismissed because probable cause existed for her April 16, 2012 arrest, and probable cause to arrest remains an absolute defense to false arrest, malicious prosecution, and First Amendment retaliation claims. (O & O at 1-3, 9-10 (citing *Savino v. City of New York,* 331 F.3d 63 (2d Cir. 2003); *Posr v. Court Officer Shield*

8

*#207*, 180 F.3d 409 (2d Cir. 1999); *Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996); *Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). *See also Fabrikant v. French*, 691 F.3d 193, 215-216 (2d Cir. 2012) ("[Defendant's] claims of malicious prosecution, unreasonable search and seizure, and first Amendment retaliation fail because defendants had probable cause ...").

Plaintiff now argues that the Court unfairly construed the factual record in Defendants' favor. The Court disagrees, and notes once again that disagreement with the legal conclusion the Court draws from the undisputed factual record is not a ground for reconsideration. In making his initial determination that probable cause existed, Magistrate Judge Fox thoroughly and fairly reviewed both the facts on which the parties agreed and those that were in dispute. Because the Court maintains its agreement with Magistrate Judge Fox that probable cause existed for Plaintiff's April 16, 2012 arrest, the Court denies Plaintiff's motion for reconsideration with regard to her false arrest, First Amendment retaliation, and malicious prosecution claims.

**B. Defendant's Motion for Reconsideration**

Defendants move for reconsideration on every claim for which this Court denied summary judgment. The Court addresses each in turn.

*Excessive Force Claim against Sergeant McManus*

In her Third Amended Complaint, Plaintiff asserted that Officer McManus's March 21, 2012 use of force violated both her Fourth and Fourteenth Amendment rights. Defendants now argue that the Court erred in preserving this claim for trial for two reasons. First, they argue that

Plaintiff cannot assert that her Fourth Amendment right was violated because she was not subject to a Fourth Amendment seizure on that day. Second, they argue that Officer McManus's contact with Plaintiff does not satisfy the heightened evidentiary standard necessary to succeed on a Fourteenth Amendment excessive force claim.

As an initial matter, defendants are correct to note that although Plaintiff had an altercation with NYPD officers while attending a March 21, 2012 Occupy Wall Street protest, she was not ultimately arrested on that day. They are also correct in asserting that Plaintiff's Fourth Amendment claim must be dismissed. In order for Plaintiff to adequately allege that her Fourth Amendment right was violated during her altercation with Sergeant McManus, Plaintiff must have been seized by the officer. A seizure requires "a governmental termination of freedom of movement through means intentionally applied." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998) (quoting *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989)) (emphasis removed). Plaintiff was not arrested or stopped in the course of a police investigation. She was free to leave the demonstration both before and after she encountered Officer McManus. She thus was not subject to a Fourth Amendment seizure on March 21, 2012, and her Fourth Amendment right was not violated.

In determining whether Plaintiff has shown a genuine dispute of material fact with respect to whether her Fourteenth Amendment right was violated, the Court must assess whether the officer's use of force "shocks the conscience, offends a sense of justice or runs counter to the decencies of civilized conduct." *Rochin v. California*, 342 U.S. 165, 175 (1952). The Second Circuit has laid out a four-part test for determining whether use of force meets this standard. The

10

Court must consider: "[1] the need for the application of force, [2] the relationship between the need and the amount of force that was used, [3] the extent of injury inflicted, and [4] whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

In this case, Sergeant McManus used an open hand to push the Plaintiff to the ground as she stood on her crutches. (Def. Mem. in Opp'n, 10 [Doc. No. 195]). Defendants continue to argue that this conduct did not violate Plaintiff's Fourteenth Amendment right because she has not shown that she was seriously injured, and because any force used was *de minimus*. *Id.* While a jury might well reach that conclusion, it would be inappropriate for the Court do so at this stage; the parties continue to dispute the need for and nature of Sergeant McManus's use of force on the Plaintiff, as well as the circumstances leading up to the altercation between Plaintiff and Sergeant McManus. (Pl's Resp. to 56.1 Statement, 36-38, 79 [Doc. No. 160]). *See also Caravalho v. City of New York*, 2016 WL 1274575 (S.D.N.Y. Mar. 31, 2016) (Castel, J.) (denying summary judgment on a similar claim of excessive force arising out of an Occupy Wall Street protest); *Bogart v. City of New York*, 2016 WL 4939075 (S.D.N.Y. Sept. 6, 2016) (Buchwald, J.) (holding that an officer's punching an Occupy Wall Street protester in the face while not actually effectuating her arrest precluded summary judgment); *Acosta v. City of New York*, 2012 WL 1506954, (S.D.N.Y. Apr. 26, 2012) (Forrest, J.) (holding that the fact that a plaintiff suffered *de minimus* injuries does not automatically warrant dismissal of an excessive force claim); *Harrell v. Cnty. of Nassau*, 2013 WL

5439137, at \*11 (E.D.N.Y. Sept. 27, 2013) (Brodie, J.) (denying defendants' motion for summary judgment when an officer "punched Plaintiff in his face without provocation.").

The Court's function here is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986). Given the fact-specific nature of excessive force inquiries, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact finder could conclude that the officer's conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123 (2d Cir. 2004). The Court maintains that a genuine dispute of material fact exists with respect to whether Sergeant McManus's conduct, given the circumstances, abrogates his entitlement to qualified immunity. Defendants have presented no overlooked facts or controlling law that warrant a finding to the contrary. The Court thus declines to revisit its decision to deny summary judgment on Plaintiff's excessive force claim.

*Assault and Battery*

The elements of assault and battery in New York are "substantially identical" to those of a § 1983 claim for excessive force. *Caravalho*, 2016 WL 1274575, at \*22 (quoting *Posr v. Doherty*, 944 F.2d 91, 95 (2d Cir. 1991)). Because Plaintiff's excessive force claim cannot be resolved at this stage, the Court also declines to revisit its previous denial of summary judgment on Plaintiff's assault and battery claim.

12

*Deliberate Indifference to Plaintiff's Medical Condition Claim*

Defendants next argue that the Court misconstrued the factual record in preserving for trial Plaintiff's claim for deliberate indifference to a serious medical condition. Plaintiff asserted that two altercations with the police—one on March 17-18, 2012, and another on April 16, 2012—amounted to deliberate indifference to her serious (epileptic) medical condition in violation of her Fourteenth Amendment due process rights.

In preserving Plaintiff's deliberate indifference claim for trial, the Court did not specify which of these claims survived summary judgment. The Court now clarifies its decision: Plaintiff can maintain her deliberate indifference claim only with respect to her April 16, 2012 term of custody. Defendants are correct that Plaintiff cannot assert a claim of deliberate indifference against the John Doe officers whom Plaintiff alleges denied her access to her seizure medication during her March 17-18, 2012 term of confinement, because Plaintiff failed to identify those officers by the close of discovery. *See* (O & O, 6). However, material facts remain in dispute with respect to whether Officers Rumble and Schmidt's decision to not immediately attend to Plaintiff's seizure while effectuating her April 16, 2012 arrest amounted to knowing disregard of Plaintiff's health or safety. For example, the parties continue to dispute how and when the officers responded to Plaintiff's seizure, as well as whether Plaintiff's epilepsy was sufficiently serious as to warrant certain medical care. *See* (Pl's Resp. to 56.1 Statement, 61-64 [Doc. No. 160]); (Def. Mem. in Supp, 11 [Doc. No. 165]).

The parties also dispute whether the NYPD Patrol Guide actually required the officers to transport Plaintiff to the nearest hospital directly from her place of arrest, or whether it allowed

13

them to place her in a holding cell briefly, before transporting her to the hospital. (*Cf.* Pl's Mem. in Opp'n, 12-13 [Doc. No. 174] *with* Def Reply, 7-8 [Doc. No. 197]). Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity. *See Smith v. City of New York,* 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (Buchwald, J.). ("The [NYPD] Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer.").

It is the jury's role to assess these factual disputes in determining whether the officers violated Plaintiff's Fourteenth Amendment right when she experienced a seizure while in police custody. Defendant's motion for reconsideration on this claim is thus granted in part; the Court grants summary judgment in favor of Defendants with respect to Plaintiff's deliberate indifference claim based on her March 17-18, 2012 term of custody, but her claim with respect to her April 16, 2012 arrest survives for trial.

*Unconstitutional Conditions of Confinement Claims*

Plaintiff's two claims of unconstitutional conditions of confinement stem from the same facts as her deliberate indifference claims, and they relate to the same two arrests, on March 17-18, 2012 and April 16, 2012. For reasons previously stated regarding Plaintiff's inability to identify the John Doe defendants, her claim arising from her March 17-18 term of custody is dismissed. Her claim related to her April 16, 2012 term of custody survives for trial, because the same material factual disputes noted with respect to Plaintiff's deliberate indifference claim also preclude a

14

finding of summary judgment on Plaintiff's claim for unconstitutional conditions of confinement. Defendants' motion for reconsideration of this claim is thus granted in part; while the Court grants summary judgment in favor of Defendants with respect to Plaintiff's March 17-18, 2012 term of custody, her unconstitutional conditions of confinement claim relating to her April 16, 2012 arrest survives for trial.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for reconsideration is GRANTED in part and DENIED in part. Defendants' motion is also GRANTED in part and DENIED in part. The parties are directed to appear for a pretrial conference on November 1, 2017 at 11:00 a.m. This Opinion and Order resolves docket entries 190 and 192.

SO ORDERED.

Dated: New York, New York
      August 23, 2017

                                    KIMBA M. WOOD
                           UNITED STATES DISTRICT JUDGE

15