UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

MARY M. TARDIF,

                                                        Plaintiff,

                        -against-                                    13 Civ. 4056 (KMW)(KNF)

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY
INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES
MCNAMARA, POLICE OFFICER ALENA AMINOVA,
POLICE OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT,
DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS
##1-9,

                                                        Defendants.

-------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTIONS *IN LIMINE*

### ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    Brachah Goykadosh
        *Assistant Corporation Counsel*
        Special Federal Litigation Division
        (212) 356-3523

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ........................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... vi

PRELIMINARY STATEMENT ............................................................................... 2

ARGUMENT .......................................................................................................... 3

       POINT I ......................................................................................................... 3

       PLAINTIFF SHOULD BE PRECLUDED
       FROM ARGUING FAILED THEORIES OF
       LIABILITY AND INTRODUCING
       EVIDENCE CONCERNING FAILED
       CLAIMS ........................................................................................................ 3

       A.  Plaintiff Should Be Precluded from Introducing
             Evidence about Failed Claims. ............................................................ 3

       B.  Plaintiff Should Be Precluded from Testifying
             about Any Purported Damages Arising from
             Failed Claims. ..................................................................................... 4

       C.  Plaintiff Should Be Precluded from Arguing or
             Eliciting Testimony Regarding Certain
             Members of Service. ........................................................................... 5

       D.  The Court Should Instruct the Jury that
             Plaintiff's Arrest on April 16, 2012 Was
             Lawful. ................................................................................................ 6

       POINT II ....................................................................................................... 6

       PLAINTIFF SHOULD BE PRECLUDED
       FROM REFERRING TO PLAINTIFF'S
       COUNSEL AS STUDENTS, INTERNS, OR
       REFERRING TO THE HOFSTRA LAW
       CLINIC ......................................................................................................... 6

POINT III ...................................................................................... 8

PLAINTIFF SHOULD BE PRECLUDED
FROM REFERRING TO THE CITY OF NEW
YORK ............................................................................................. 8

A.   Plaintiff Should Be Precluded from Calling
     Defense Counsel "City Attorneys."................................................... 8

B.   Plaintiff Should Be Precluded from Including
     the City of New York in the Caption to This
     Action and on the Verdict Sheet. ........................................................ 9

C.   Plaintiff Should Be Precluded from Inquiring
     about Any City of New York Training, Policy,
     Practices. ............................................................................................ 10

POINT IV ...................................................................................... 11

PLAINTIFF SHOULD BE PRECLUDED
FROM TESTIFYING ABOUT OR OFFERING
EVIDENCE CONCERNING THE NEW
YORK CITY POLICE DEPARTMENT
PATROL GUIDE .......................................................................... 11

POINT V ........................................................................................ 16

PLAINTIFF SHOULD BE PRECLUDED
CALLING CERTAIN WITNESSES AT TRIAL ............................. 16

A.   Plaintiff Should Be Precluded from Calling
     Members of Service with No Personal
     Knowledge. ........................................................................................ 16

B.   Plaintiff Should Be Precluded from Calling
     Mandy Quinn (formerly known as Tony Zilka),
     Daniel Shockley, Stephanie Shockley, or
     Maxine Dade as Witnesses. ............................................................... 16

POINT VI ...................................................................................... 19

PLAINTIFF SHOULD BE PRECLUDED
DESIGNATING THE DEPOSITIONS OF
CERTAIN INDIVDIUALS AS PART OF HER
CASE IN CHIEF .......................................................................... 19

POINT VII .................................................................................. 21

PLAINTIFF SHOULD BE PRECLUDED
FROM TESTIFYING OR INTRODUCING
EVIDENCE ABOUT THE CAUSATION OF
ANY SEIZURES OR ANY MEDICAL
DAMAGES ................................................................................. 21

POINT VIII ............................................................................... 23

PLAINTIFF SHOULD BE PRECLUDED
FROM TESTIFYING ABOUT OR
INTRODUCING ANY EVIDENCE ABOUT
BEING A MEDIC ...................................................................... 23

POINT IX .................................................................................. 25

PLAINTIFF SHOULD BE PRECLUDED
INTRODUCING TESTIMONY OR
ARGUMENT ABOUT DEFENDANTS'
INTERACTIONS WITH OTHER
ARRESTEES ............................................................................. 25

POINT X .................................................................................... 26

PLAINTIFF SHOULD BE PRECLUDED
FROM ELICTING TESTIMONY OR
ARGUING ABOUT OTHER INSTANCES OF
ALLEGED POLICE ACTIONS RELATED TO
THE OCCUPY WALL STREET MOVEMENT ............................... 26

POINT XI .................................................................................. 27

PLAINTIFF SHOULD BE PRECLUDED
FROM ELICTING TESTIMONY OR
ARGUING ABOUT OTHER INSTANCES OF
ALLEGED POLICE ACTIONS GENERALLY ................................ 27

POINT XII ................................................................................. 28

PLAINTIFF SHOULD BE PRECLUDED
FROM ARGUING ABOUT WHAT
DEFENDANTS COULD OR SHOULD HAVE
DONE ........................................................................................ 28

POINT XIII .............................................................................................. 29

PLAINTIFF SHOULD BE PRECLUDED
FROM QUESTIONING DEFENDANTS
ABOUT THE APPROPRIATE CONDUCT
FOR "HUMAN BEINGS" .................................................................... 29

POINT XIV ............................................................................................. 29

DEFENDANTS RESERVE THEIR RIGHT TO FILE
SUPPLEMENTAL MOTIONS IN LIMINE ...................................... 29

CONCLUSION ..................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams.,
  262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................20

Barnes v. Anderson,
  202 F.3d 150 (2d Cir. 1999)....................................................................22

Bornstein v. Monmouth Cty. Sheriff's Office,
  658 Fed. App'x 663 (3d Cir. 2016)........................................................12

Bradley v. City of Ferndale,
  148 Fed. App'x 499 (6th Cir. 2005) .......................................................12

Brown v. City of New York,
  862 F.3d 182 (2d Cir. 2017)....................................................................14

Brown v. City of New York,
  No. 13-cv-1018 (KBF), 2016 U.S. Dist. LEXIS 53365 (S.D.N.Y. Apr. 20,
  2016) ........................................................................................................14

Buchwald v. Renco Grp., Inc.,
  No. 13 Civ. 7948 (AJN), 2014 U.S. Dist. LEXIS 118239 (S.D.N.Y. Aug. 22,
  2014) ...................................................................................................19, 20

Bynum v. Metro. Transp. Auth.,
  No. 01 CV 7945 (CLP), 2006 U.S. Dist. LEXIS 98617 (E.D.N.Y. Nov. 21,
  2006) ........................................................................................................17

Carey v. Piphus,
  435 U.S. 247 (1978)..................................................................................4

Castro v. City of New York,
  No. 06-CV-2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723 (E.D.N.Y.
  Aug. 10, 2009) .........................................................................................17

Coitrone v. Murray,
  642 F. App'x 517 (6th Cir. 2016) ...........................................................14

Collado v. City of New York,
  No. 11 Civ. 9041 (DAB), 2017 U.S. Dist. LEXIS 161094 (S.D.N.Y. Sep. 27,
  2017) ........................................................................................................15

Darnell v. Pineiro,
    849 F.3d 17 (2d Cir. 2017)....................................................................................14

Desmond v. City of New York,
    88 N.Y.2d 455, 669 N.E.2d 472, 646 N.Y.S.2d 492 (1996).....................................13

Eng v. Blood,
    No. 04 Civ. 1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802 (N.D.N.Y.
    July 17, 2008)......................................................................................................4

Gersbacher v. City of New York, et al.,
    14 Civ. 7600 (GHW)............................................................................................6

Graham v. Connor,
    490 U.S. 386 (1989)...........................................................................................12

Greenidge v. Ruffin,
    927 F.2d 789 (4th Cir. 1991) ..............................................................................11

Hart v. RCI Hosp. Holdings, Inc.,
    90 F. Supp. 3d 250 (S.D.N.Y. 2015).......................................................................6

Estate of Jaquez v. Flores,
    10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 42579 (S.D.N.Y. Mar. 30, 2016) ..............21, 22

Jean-Laurent v. Hennessy,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) .....................................................................9

Kolb v. Cty. of Suffolk,
    109 F.R.D. 125 (E.D.N.Y. 1985) ..........................................................................20

Loria v. Gorman,
    306 F.3d 1271 (2d Cir. 2002)................................................................................4

Luitpold Pharm., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie,
    No. 11 Civ. 681 (KBF), 2015 U.S. Dist. LEXIS 123591 (S.D.N.Y. Sep. 16,
    2015) ................................................................................................................19

Napier v. Bossard,
    102 F.2d 467 (2d Cir. 1939) (Hand, L. J.) ...........................................................20

Patterson v. Balsamico,
    440 F.3d 104 (2d Cir. 2006)................................................................................17

Romero v. Bd. Of Cty. Comm'rs,
    60 F.3d 702 (10th Cir. 1995) .........................................................................12, 14

Salim v. Proulx,
    93 F.3d 86 (2d Cir. 1996)............................................................................11

Schumer v. Caplin,
    241 N.Y. 346, 150 N.E. 139 (1925)............................................................13

Simpson v. City of New York,
    No. 12 Civ. 6577 (KBF), 2015 U.S. Dist. LEXIS 138723 (S.D.N.Y. Oct. 9,
    2015) ........................................................................................................8, 10

Smith v. City of New York,
    No. 12 Civ. 4922 (NRB), 2015 U.S. Dist. LEXIS 102669 (S.D.N.Y. Aug. 4,
    2015) ............................................................................................................13

Smith v. Freland,
    954 F.2d 343 (6th Cir. 1992) ......................................................................11

Soley v. Wasserman,
    No. 08 Civ. 9262 (KMW), 2013 U.S. Dist. LEXIS 99969 (S.D.N.Y. July 16,
    2013) ............................................................................................................20

Spencer v. Int'l Shoppes, Inc.,
    902 F. Supp. 2d 287 (E.D.N.Y. 2012) ..........................................................3

Stephenson v. Doe,
    332 F.3d 68 (2d Cir. 2003)..........................................................................14

Stern v. Shammas,
    No. 12 Civ. 5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879 (E.D.N.Y.
    July 27, 2015)................................................................................................9

Tardif v. City of New York,
    No. 13 Civ. 4056 (KMW), 2017 U.S. Dist. LEXIS 135607 (S.D.N.Y. Aug. 23,
    2017) ............................................................................................................14

Turner v. White,
    443 F. Supp. 2d 288 (E.D.N.Y. 2006) ........................................................22

United States v. Thorn,
    446 F.3d 378 (2d Cir. 2006)..........................................................................3

Wilhelm v. State Traffic Safety Com.,
    230 Md. 91, 185 A.2d 715 (1962) ..............................................................22

Williams v. McCarthy,
    No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151 (S.D.N.Y. Oct. 25,
    2007) ............................................................................................................9

<u>Woods v. Jefferson Cty Fiscal Court,</u>
    2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003) ........................................................12

<u>Zellner v. Summerlin,</u>
    494 F.3d 344 (2d Cir. 2007) ...................................................................................................14

**Statutes**

42 U.S.C. § 1983 ................................................................................................................1, 4, 14

**Other Authorities**

Fed. R. Civ. P. 26 ....................................................................................................................16, 17

Fed. R. Civ. P. 37(c)(1) .................................................................................................................18

Fed. R. Evid. 401 ...................................................................................................................7, 24

Fed. R. Evid. 402 ........................................................................................................... *passim*

Fed. R. Evid. 403 ........................................................................................................... *passim*

Fed. R. Evid. 602 ..................................................................................................................16, 18

Fed. R. Evid. 611 ...........................................................................................................................19

Fed. R. Evid. 702 ...........................................................................................................................24

Fed. R. Evid. 801(c) ......................................................................................................................27

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------x

MARY M. TARDIF,

                                     Plaintiff,

                -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY
INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES
MCNAMARA, POLICE OFFICER ALENA AMINOVA,
POLICE OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT,
DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS
##1-9,

                                Defendants.

------------------------------------------------------------------------------x

13 Civ. 4056 (KMW)(KNF)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTIONS *IN LIMINE*

      Plaintiff Mary M. Tardif brings this action against defendants Sergeant McManus, Police

Officer Rumble, Police Officer Schmidt, and the City of New York (collectively "defendants")

alleging violations of her civil rights under 42 U.S.C. § 1983. She alleges: that (1) defendant

Sergeant McManus employed excessive force against her on March 21, 2012 in violation of her

Fourteenth Amendment rights; state law claims of assault and battery and *respondeant superior*

arising from that alleged act; and that (2) defendants Police Officers Rumble and Schmidt were

deliberately indifferent on April 16, 2012 in violation of her Fourteenth Amendment rights. After

extensive motion practice, this case will proceed to trial on these narrow issues.[1]

---

[1] The parties disagree about the scope of plaintiff's *respondeat superior claim*. (Docket Entry Nos. 211, 215, 216).
Defendants do not discuss the four additional incidents that plaintiff believes gives rise to *respondeat superior*

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in support of their motion seeking the following *in limine* relief: plaintiff be precluded from: (1) introducing evidence concerning failed claims; (2) referring to plaintiff's counsel as students, interns, or referring to the Hofstra Law Clinic; (3) referring to the City of New York; (4) testifying about or offering evidence concerning the NYPD Patrol Guide; (5) calling certain witnesses at trial; (6) designating the depositions of certain individuals as part of her case in chief; (7) testifying about the causation of any seizures or any medical damages; (8) testifying or introducing evidence about being a medic; (9) eliciting testimony or arguing about other alleged instances of police misconduct related to Occupy Wall Street concerning plaintiff; (10) eliciting testimony or arguing about other alleged instances of police misconduct concerning plaintiff generally; (11) introducing testimony or argument about defendants' interactions with other arrestees; (12) arguing about what defendants could have or should have done; and (13) questioning defendants about the appropriate conduct for "human beings."[2]

---

herein.  Should the Court find that plaintiff's *respondeat superior* claim is as broad as she claims, defendants respectfully reserve the right to move *in limine* on points related to this larger *respondeat superior* claim.

[2] Plaintiff stipulates that:

- Plaintiff will not argue any failed theories of liability.
- Plaintiff will not suggest that the individual defendants will be indemnified by the City of New York.
- Plaintiff will not suggest any dollar amount for damages to the jury.
- Plaintiff will not introduce evidence about the exacerbation of her epilepsy.
- Plaintiff will not mention her epilepsy or seizures when testifying about the March 21, 2012 incident.
- Plaintiff will not elicit testimony or argue about other instances of alleged police misconduct, against persons other than plaintiff, related to the Occupy Wall Street movement.
- Plaintiff will not elicit testimony or argue about other instances of alleged police misconduct, against persons other than plaintiff, generally.
- Plaintiff will not inquire about defendants' disciplinary histories.

Therefore, defendants do not move on these issues.

## ARGUMENT

### POINT I

**PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING FAILED THEORIES OF LIABILITY AND INTRODUCING EVIDENCE CONCERNING FAILED CLAIMS**

**A. Plaintiff Should Be Precluded from Introducing Evidence about Failed Claims.**

Based on the law of the case doctrine, plaintiff's presentation of her case-in-chief should be restricted. Specifically, many of plaintiff's claims did not survive motion practice. These rulings are the law of the case and should not be re-litigated at trial. See generally United States v. Thorn, 446 F.3d 378 (2d Cir. 2006) ("The law of the case doctrine counsels against revisiting our prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"); Spencer v. Int'l Shoppes, Inc., 902 F. Supp. 2d 287, 296 (E.D.N.Y. 2012). Plaintiff should be precluded from raising any of these claims at trial or introducing evidence concerning those failed claims. Simply, the Court should not allow Plaintiff the opportunity to re-litigate these already-dismissed claims.

Likewise, allowing at trial any evidence or testimony regarding the claims previously dismissed by the Court would be unduly prejudicial as defendants have already expended significant resources briefing these claims on motions and would be required to expend additional resources preparing for the potential defense of these issues at trial. Lastly, allowing evidence or testimony on a myriad of claims previously advanced by plaintiff, and dismissed by the Court, would confuse the issues and could result in an unfair or inconsistent verdict. Any evidence regarding claims that previously have been adjudicated and dismissed by the Court should be barred as irrelevant to plaintiff's remaining claims.

3

**B. Plaintiff Should Be Precluded from Testifying about Any Purported Damages Arising from Failed Claims.**

Plaintiff should be barred from presenting testimony or evidence on any purported damages—physical or psychological—stemming from dismissed claims. See Eng v. Blood, No. 04 Civ. 1146 (NAM)(GHL), 2008 U.S. Dist. LEXIS 54802, *9-11 (N.D.N.Y. July 17, 2008) (barring testimony or evidence on emotional damages stemming from dismissed claim as not relevant to remaining claim). The purpose of § 1983 is to adopt to the constitutional context "the common law of torts [which] has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights.'" Carey v. Piphus, 435 U.S. 247, 257 (1978). The Second Circuit has held that in § 1983 cases, the plaintiff must prove that the defendant's actions are the proximate cause of plaintiff's injuries. See, e.g., Loria v. Gorman, 306 F.3d 1271, 1287 (2d Cir. 2002).

Here, this Court has already decided that, as a matter of law, plaintiff's claims for *respondeat superior*,[3] Americans with Disability Act violation, false arrest, malicious prosecution, and First Amendment retaliation fail. It has already been established that these complained-of actions did not violate plaintiff's legal rights. Because those claims have been dismissed, so should those corresponding claims for damages pertaining to alleged injuries arising from those claims. Based on the law of the case, the only police actions that can be considered at trial as a cause for injury (thus entitling plaintiff to damages) are those by defendant McManus on March 21, 2012 and by defendants Rumble and Schmidt on April 16, 2012. Because any physical and emotional damages allegedly sustained during her arrests and other claims are no longer viable for trial, plaintiff's potential damages award is limited to compensation arising from the alleged conduct by defendants McManus, Rumble, Schmidt.

---

[3] Besides for that related to the alleged assault and battery by Defendant McManus on March 21, 2012.

4

Thus, plaintiff should be prohibited from arguing injury by reference to medical records and damages testimony that has no plausible connection to the two incidents at issue. Similarly, plaintiff should be precluded from testifying about any physical or psychological injuries that she may have sustained while being arrested on April 16, 2017 because she is not entitled to recover damages for those alleged injuries.

### C. Plaintiff Should Be Precluded from Arguing or Eliciting Testimony Regarding Certain Members of Service.

Similarly, plaintiff should be precluded from arguing or eliciting testimony about certain members who were once defendants to this action or who were never defendants to this action. To be clear, only three individual defendants remain to this action—defendants McManus, Rumble, and Schmidt. There are no other defendants. Plaintiff should not be given latitude to argue or introduce testimony about other members of service.

More specifically, plaintiff should not be able to argue or elicit testimony about the fact that Officer Aminova was once a defendant to this action. Although Officer Aminova is a witness to the April 16, 2012 incident and will testify about this incident, there are no claims asserted against her. Informing the jury that claims were once asserted against Officer Aminova or referring to her as a defendant confuses the jury. Moreover, there is no probative value to informing the jury that Officer Aminova was once a defendant. Contrastingly, the prejudice to defendants should any sort of testimony or evidence of this sort be admitted is high. At the risk of speculation, any testimony or introduction of evidence about the fact that Aminova was once a defendant to this action only serves to dupe the jury into believing there are more parties against whom liability can be imputed. This should be avoided. Thus, plaintiff should not be able to argue that Officer Aminova was once a defendant and to avoid confusion, the Court should instruct the jury that plaintiff cannot claim any liability or damages for actions by Aminova.

**D. The Court Should Instruct the Jury that Plaintiff's Arrest on April 16, 2012 Was Lawful.**

Similarly, for clarity, the Court should instruct the jury regarding its prior rulings. The Court should instruct the jury that plaintiff's arrest, on April 16, 2012 including the reasonable force used in effecting it, was lawful and cannot be the basis for a finding of liability or an award of damages. See Hart v. RCI Hosp. Holdings, Inc., 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015) (holding that the ruling on summary judgment that the "dancers at the Club were employees" was "law of the case", that "the Court will notify the jury of that ruling[,]" and "it will not be re-litigated at trial"); see also Gersbacher v. City of New York, et al., 14 Civ. 7600 (GHW) (Docket Entry No. 165) ("Defendant's request for a jury instruction on the lawfulness of plaintiff's arrest is granted."). The jury should be told plaintiff's arrest was proper and not constitutionally-violative. The purpose of this instruction would be to avoid any juror confusion. The jury may naturally be led to believe that because they are assessing the events inside the paddy wagon, they should also assess the constitutionality of plaintiff's arrest. The jury may be interested in compensating plaintiff for the overall incident, rather than assessing the single claim before them. To avoid this, the Court should instruct the jury that plaintiff's arrest was lawful and tightly focus the jury's attention on this one remaining claim.

**POINT II**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO PLAINTIFF'S COUNSEL AS STUDENTS, INTERNS, OR REFERRING TO THE HOFSTRA LAW CLINIC**

Plaintiff is represented by Gideon Orion Oliver, Stefan Krieger, and Theodor Liebmann. (See generally Docket Sheet). Students from a law clinic at the Maurice A. Deane School of Law at Hofstra Law School also assist with plaintiff's representation. To the extent that these

students participate in any aspect of the trial before the jury, plaintiff should be precluded from referring to her counsel team as "students," "interns," or referring to the Hofstra Law clinic.

That students represent plaintiff is irrelevant to plaintiff's claims and defenses. See FED. R. EVID. 402. Her representation has no tendency to make a fact more or less probable; nor is it of any consequence in determining the action. See FED. R. EVID. 401. Furthermore, alerting the jury to the fact that plaintiff is represented by law students holds no probative value and prejudices defendants. See FED. R. EVID. 403. Plaintiff's claims do not hinge on her representation. Instead, alerting the jury to the fact that law students are assisting in plaintiff's representation may cause the jury to accommodate errors, sympathize with the law students, and worse, confuse plaintiff's inability to prove her claims by a preponderance of the credible evidence with her representation's inexperience. The jury may be inclined to believe that because plaintiff is represented by law students, weaknesses in plaintiff's case should be forgiven. This may mislead the jury to afford plaintiff's representation greater latitude in their courtroom conduct. In sum, alerting the jury to the fact that law students represent plaintiff is an implicit instruction to the jury to hold plaintiff's counsel to a different standard than defense counsel. This unfair and unnecessarily prejudices defendants and defense counsel.

If plaintiff is permitted to alert the jury to the fact that students are assisting in her representation, then perhaps defense counsel should alert the jury to her law school graduation year, her experience, and the number of cases that she has tried. Perhaps all counsel in any case should publish their curriculum vitae to the jury. Perhaps instead of focusing on the claims, the jury should focus on counsel. Young lawyers and lawyers-in-training—especially young female lawyers—should be given roles in trials and other court proceedings, especially in the Southern and Eastern Districts of New York, which are teaching courts. See Alan Feuer, *A Federal*

7

*Judge's New Rule: Let More Women Argue Cases.*  N.Y. TIMES, August 24, 2017 at A16.  But plaintiff should not exploit her representation's inexperience to her advantage.

This is the Southern District of New York, where Plaintiff is bringing a federal civil rights lawsuit.  Defendants take this seriously.  Defendants' names appear on a verdict sheet.  Liability and potential money damages are being asserted against them.  This is not school.  This is not a game.  This is not a play-acting, for-credit, semester-long activity to defendants.  Plaintiff's counsel should be precluded from treating it like it is.  Thus, plaintiff should be precluded from alerting the jury to the fact that law students are assisting in her representation.

**POINT III**

**PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO THE CITY OF NEW YORK**

There are no federal claims against the City of New York.  The single remaining claim against the City of New York is a state law claim of *respondeat superior*, related to the March 21, 2012 incident only.  Thus, plaintiff should be precluded from referring the City of New York.

**A. Plaintiff Should Be Precluded from Calling Defense Counsel "City Attorneys."**

Plaintiff should be precluded referring to defense counsel as "City attorneys."  This request is a "standard request in these types of actions" and the concerns underlying this request are "valid."  Simpson v. City of New York, No. 12 Civ. 6577 (KBF), 2015 U.S. Dist. LEXIS 138723, at *16 (S.D.N.Y. Oct. 9, 2015).  First, any reference would be inaccurate as it fails to account for the individual defendants.  Second, referring to defense counsel as City attorneys would be prejudicial to the officers, as it may create the impression that the City—often viewed as a deep pocket—will pay any potential verdict.  Thereby, the jury may not "critically" assess liability or damages.  Simpson, 2015 U.S. Dist. LEXIS 138723, at *16.

8

To offset this potential prejudice, defendants propose that defense counsel be identified as attorneys from the Corporation Counsel.  See Williams v. McCarthy, No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007).  Courts have routinely done this in several recent cases.  See e.g. Stern v. Shammas, No. 12 Civ. 5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879, at *27 (E.D.N.Y. July 27, 2015); Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011).  Therefore, plaintiff should be precluded from referring to defense counsel as "City attorneys."

**B. Plaintiff Should Be Precluded from Including the City of New York in the Caption to This Action and on the Verdict Sheet.**

The City of New York should be removed from the caption to this action and from the verdict sheet.  There is no claim for municipal liability.  Thus, including the City of New York in the caption and on the verdict sheet will confuse the jury.  For purposes of the trial, mentioning that the City of New York is a defendant under state law is unnecessary, prejudicial, and would only serve to confuse the jury.  See Blake v. City of New York, 05 Cv. 6652 (BSJ), 2007 U.S. Dist. LEXIS 95913, *5-6 (S.D.N.Y. July 13, 2007) (Because the individual defendants were acting within the scope of their employment when the events at issue took place, "should they be found liable no further determination need be made by the jury to establish plaintiffs' *respondeat superior* claim against the City and under these circumstances, referring to the City as a named defendant is unnecessary and could confuse the [j]ury").  That a narrow state law claim for *respondeat superior* against the City of New York remains is of no moment—this technicality should not affect the jury's analysis.

Specifically, the City of New York would be liable under *respondeat superior* in the event the jury determines that plaintiff's state law rights were violated.  Furthermore, should the jury be advised that the City of New York is a defendant under the circumstances presented

herein it would be highly prejudicial to the individual defendants. The simple fact that state law claims may remain does not in form a basis for why the jury should be advised that the City of New York is still a defendant in this case.  Moreover, whether or not the City of New York is a defendant under state law has no bearing on the jury's ultimate determination.

At the risk of speculation, plaintiff's insistence on including the City of New York in the caption and any potential desire to include the City of New York on the verdict sheet is so that the jury would be inclined to award plaintiff more money under the assumption that the City of New York is a "deep pocket" who can afford to pay a higher judgment than the individual officers would be able to on their own.  This would be highly prejudicial especially considering the fact that the mention of the City of New York is completely unnecessary in order for the jury to decide the claims at issue.  While the City of New York is still involved in this action for the purpose of a *respondeat superior* determination only, "that fact is irrelevant to the determination of liability and damages which should be based solely on the facts and law." Simpson, 2015 U.S. Dist. LEXIS 138723, at *16.  Accordingly, the jury should not be advised of the fact that the City of New York is a defendant in this matter and the City of New York should be removed from the caption and should not be included on the verdict sheet.

**C. Plaintiff Should Be Precluded from Inquiring about Any City of New York Training, Policy, Practices.**

As there is no claim for municipal liability in this action, plaintiff should be precluded from inquiring about any New York City Police Department training or from mentioning any alleged New York City Police Department policy or practice.  Any inquiries or statement by plaintiff would be irrelevant, confuse the jury, and waste time. See FED. R. EVID. 402.

## POINT IV

## PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING ABOUT OR OFFERING EVIDENCE CONCERNING THE NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE

Plaintiff should be precluded from referring to and offering any evidence of NYPD procedure or patrol guide provision.  In this case—where plaintiff brings a federal civil rights lawsuit alleging a Fourteenth Amendment violation and not a Patrol Guide violation—the Constitution controls.  The jury must determine whether plaintiff's constitutional rights were violated and not whether all parties complied with the rules and regulations set forth by the New York City Police Department.  Alleged violations of NYPD procedure by the individual defendants are irrelevant to the determination of whether plaintiff's constitutional rights were violated.  Thus, any NYPD procedure or patrol guide provision should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, the standards set forth as per NYPD procedure are merely guidelines established by NYPD and are not the standards of the United States Constitution.  The New York City Police Department Patrol Guide and the Constitution of the United States of America are not coextensive.  A particular action could potentially violate the Patrol Guide without violating the Constitution.  In light of plaintiff's claims that her constitutional rights were violated, any NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether plaintiff's constitutional rights were violated.  See FED. R. EVID. 401, 402.   See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force.") ; Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) (violations of police rules regarding backup and radios not relevant to excessive force); Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir.

1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); Woods v. Jefferson Cty Fiscal Court, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003) (in excessive force claim "whether an officer followed or violated police department policy or guidelines is not relevant under Graham v. Connor, 490 U.S. 386 (1989)").

Simply, a violation of the Patrol Guide is not equivalent to or even evidence of a violation of plaintiff's constitutional rights. See e.g. Bornstein v. Monmouth Cty. Sheriff's Office, 658 Fed. App'x 663, 668 (3d Cir. 2016) (noting that in a § 1983 case, "the issue is not whether they violated internal prison policies but whether they violated the Constitution"); Bradley v. City of Ferndale, 148 Fed. App'x 499 (6th Cir. 2005) ("Officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages…[U]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force." (internal quotations omitted)); Romero v. Bd. Of Cty. Comm'rs, 60 F.3d 702, 705 (10th Cir. 1995) (noting that "violations of state law and police procedure generally do not give rise to a § 1983 claim."). Thus, the Patrol Guide has no bearing on the jury's determination of whether a violation of plaintiff's constitutional liberties occurred.  It is therefore irrelevant and should be precluded.

Second, any reference to alleged "violations" of NYPD procedure—meaning that the individual defendant, or non-party police officers, did not follow the exact guidelines—would only confuse the jury.  See FED. R. EVID. 403. The jury will be called upon to determine whether the individual defendants violated plaintiff's constitutional rights, which is to be evaluated by the jury under the Fourteenth Amendment standard.  If the jury is presented with the proffered portions of NYPD procedure, it is likely to wrongly assume that NYPD procedure sets out the

standard by which they are to evaluate the individual defendant's alleged actions, notwithstanding a contrary instruction from the Court.

Third, even if the Patrol Guide were relevant to the jury's determination and would not confuse the jury, it should still be excluded because it would not cogently advance the jury's analysis of whether plaintiff suffered an intentional constitutional violation. As the Court in Smith v. City of New York, No. 12 Civ. 4922 (NRB), 2015 U.S. Dist. LEXIS 102669, at *10 (S.D.N.Y. Aug. 4, 2015) cautioned: "the Patrol Guide does not establish a legal duty beyond the common law's 'reasonable person' standard, and that a Patrol Guide violation does not give rise to a presumption of negligence." Smith, 2015 U.S. Dist. LEXIS 102669, at *10 n.5, citing Lubecki, 758 N.Y.S.2d at 617 (App. Div. 2003); Schumer v. Caplin, 241 N.Y. 346, 150 N.E. 139 (1925) (holding that the violation of an administrative rule is only "some evidence of negligence"); cf. Desmond v. City of New York, 88 N.Y.2d 455, 464-65, 669 N.E.2d 472, 477, 646 N.Y.S.2d 492 (1996) (holding that an internal NYPD policy does not constitute a "requirement" that would support a police officer's statutory claim). Surely, if a purported Patrol Guide violation does not give rise to a presumption of mere *negligence*, it will not meet the bar of *intentional* conduct required for a civil rights violation.

Here, plaintiff argues a jury could find that defendants' conduct was unreasonable by not transporting plaintiff to the hospital because the NYPD Patrol Guide "provides that, in life threatening situations, including epilepsy, an individual must be removed directly to the hospital." See Docket Entry No. 101 at 22; Docket Entry No.196 at 16. In the Court's decision on the motion for reconsideration, the Court held that whether "the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity." Tardif v. City of

New York, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, at *19 (S.D.N.Y. Aug. 23, 2017).  But reasonableness— and ultimately qualified immunity—is not the determination that jury will make—it is one for the Court.  See Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007); Stephenson v. Doe, 332 F.3d 68, 80-82 (2d Cir. 2003).  Instead, to advance her deliberate indifference claim, plaintiff must prove to the jury that she suffered a sufficiently serious deprivation of adequate care and that defendants acted with deliberate indifference of a sufficiently culpable state of mind.  Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).  Thus, as jury's consideration is not "reasonableness," the Patrol Guide is not relevant.

Indeed, as this Court explained previously, it is the jury's role to "assess these factual disputes in determining whether the officers violated Plaintiff's Fourteenth Amendment right when she experienced a seizure while in police custody" and *not* to determine whether Defendants violated the Patrol Guide.  Tardif, 2017 U.S. Dist. LEXIS 135607, at *19.  This is because a purported Patrol Guide violation is of no moment during a federal civil rights *trial*.  The Patrol Guide is "intended to serve as a guide for the members of the Police Department." Brown v. City of New York, No. 13-cv-1018 (KBF), 2016 U.S. Dist. LEXIS 53365, at *23 (S.D.N.Y. Apr. 20, 2016) (citations and quotations omitted); see also Brown v. City of New York, 862 F.3d 182, 192 (2d Cir. 2017) ("we must reject Brown's argument that summary judgment on qualified immunity grounds was improper because the officers allegedly violated the New York City Police Department Patrol Guide directive").

That any of the NYPD's policies were not adhered to has no bearing on Plaintiff's constitutional rights.  "A city can certainly choose to hold its officers to a higher standard than that required by the Constitution without being subjected to increased liability under § 1983." Coitrone v. Murray, 642 F. App'x 517, 522 (6th Cir. 2016); Romero v. County of Lake, 60 F.3d

702, 705 (10th Cir. 1995) ("violations of state law and police procedure generally do not give rise to a 1983 claim"); see also Galapo, 95 N.Y.2d at 574-75 (2000) (NYPD Patrol Guide should be excluded from evidence because it does not create legal duties). Cf. Collado v. City of New York, No. 11 Civ. 9041 (DAB), 2017 U.S. Dist. LEXIS 161094, at *9 (S.D.N.Y. Sep. 27, 2017) (holding that "[a]lthough a violation of the Patrol Guide is not necessarily a violation of constitutional rights just as a violation of constitutional rights is not necessarily a violation of the Patrol Guide, the Patrol Guide is relevant for the same reasons as evidence of lesser degrees of force Connolly could have used […] It is relevant in determining how a reasonable officer might comport himself under the circumstances" and issuing an "appropriate limiting instruction" as to the consideration of the Patrol Guide.). While the Patrol Guide may have been relevant in the Court's determination of summary judgment, it is not relevant for the jury at trial.

That plaintiff's claim for deliberate indifference survived summary judgment does not mean that she should present it to the jury as a failure to follow the Patrol Guide. While the Patrol Guide provides guidelines, it does not create legal duties or obligations. Inviting the jury to utilize the Patrol Guide in their determination of whether plaintiff's civil rights were violated undermines the Constitution. This confuses the jury as to the distinction between policies and guidelines generated by a municipal agency and federal civil rights bastioned by the Constitution. The Patrol Guide is not relevant to any determination of whether plaintiff's constitutional rights were violated. The Court should preclude plaintiff from conflating the Patrol Guide with the Constitution.

## POINT V

## PLAINTIFF SHOULD BE PRECLUDED CALLING CERTAIN WITNESSES AT TRIAL

**A. Plaintiff Should Be Precluded from Calling Members of Service with No Personal Knowledge.**

Plaintiff should be precluded from calling Sergeant Giovanni Mattera and Police Officer Sharon DeStefano, two members of the New York City Police Department, from testifying. As discussed in defendants' memorandum of law in support of defendants' position on *respondeant superior*, although plaintiff wishes to submit a broad theory of *respondeat superior* to the jury, she cannot do so. (See Docket Entry No. 215). Sergeant Mattera and Officer DeStefano have no personal knowledge of or personal involvement in the two remaining incidents. See FED. R. EVID. 602. Thus, they should be precluded from testifying.

**B. Plaintiff Should Be Precluded from Calling Mandy Quinn (formerly known as Tony Zilka), Daniel Shockley, Stephanie Shockley, or Maxine Dade as Witnesses.**

Plaintiff failed to disclose Mandy Quinn—formerly known as Tony Zilka—as part of her obligatory Rule 26 disclosures. (See Plaintiff's Initial Disclosures, annexed to the Declaration of Brachah Goykadosh dated January 16, 2018 (hereinafter "Goykadosh Decl."), Exhibit "A"). During discovery, plaintiff refused to provide any contact information for Tony Zilka despite repeated requests by defendants. (See Letters from Amy Robinson to Stefan H. Krieger dated January 23, 2015 and June 1, 2015, annexed to the Goykadosh Decl., Exhibit "B"). Regardless, defendants attempted to subpoena Zilka twice. (See Subpoenas, annexed to the Goykadosh Decl., Exhibit "C"). Furthermore, while plaintiff provided email addresses and telephone numbers in a supplemental disclosure for Daniel Shockley and Stephanie Shockley. (See Letter from Plaintiff dated March 10, 2015, Goykadosh Decl., Exhibit "I"). Defendants made repeated attempted to contact the Shockleys based on the information provided to them by plaintiff but were unable to get in touch with them and learn the extent of their discoverable information.

16

Moreover, plaintiff only provided Maxine Dade's telephone number in a supplemental disclosure. (See Supplemental Disclosure dated April 2, 2015, annexed to the Goykadosh Decl., Exhibit "D"). Furthermore, plaintiff only stated that the Shockleys may possess discoverable information about the March 21, 2012 incident and the April 16, 2012 incident and that Maxine Dade may have information about the March 21, 2012 incident without specifying which of the two March 21, 2012 incidents she was referring. (See Letter from Plaintiff dated March 10, 2015, Goykadosh Decl., Exhibit "I;" see also Supplemental Disclosure, Goykadosh Decl., Exhibit "B"). Now, plaintiff—who failed to fully comply with the requirements of Rule 26(a)(1)(A)(i)—wishes to have her cake and eat it too. She wishes to call as witnesses for trial individuals who were essentially incommunicado, incognito, and who have miraculously appeared for trial. The Court should preclude this.

A party who fails to disclose information pursuant to Rule 26 or fails to amend a previous response is not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless. See Bynum v. Metro. Transp. Auth., No. 01 CV 7945 (CLP), 2006 U.S. Dist. LEXIS 98617, at *1 (E.D.N.Y. Nov. 21, 2006) (citing Fed. R. Civ. P. 37(c)(1)). In determining whether a witness should be precluded, the court should consider: "(1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006). It is the plaintiff's burden to establish lack of prejudice, not defendants' burden. See Castro v. City of New York, No. 06-CV-2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723, at *6 (E.D.N.Y. Aug. 10, 2009).

By virtue of defendants' inability to contact Zilka, the Shockleys, and Dade, and by virtue of Zilka's failure to appear for depositions, defendants were prevented from learning the substance of their testimony. If plaintiff learned their whereabouts or obtained updated contact information, she should have supplemented her disclosures with this information so that defendants could have enjoyed a fair opportunity to depose these individuals and learn about any information they might have. She failed to do so. Thus, they should be precluded from giving testimony at trial.

It would be unfairly prejudicial to allow these witnesses to testify at trial after plaintiff failed to provide updated contact information for either of these witnesses without any explanation in violation of Rule 37(c)(1) and now plaintiff miraculously knows their whereabouts. Defendants would be highly prejudiced by their re-appearance in the matter at this late stage in the case because defendants may have learned new or different information during their depositions and may have changed their defense strategy had defendants had the opportunity to depose these witnesses back when this case was still in its discovery stage from 2013 to 2015. Thus, plaintiff should be precluded from now calling these witnesses for the trial.

Furthermore, besides for Mandy Quinn (formerly known as Tony Zilka), it is not clear whether these individuals even have any personal knowledge of the incidents. See FED. R. EVID. 602. As discussed *supra*, the only remaining claims took place later in the day on March 21, 2012 and inside the paddy wagon on April 16, 2012. That Dade and the Shockleys may have knowledge of the events taking place earlier in the day on March 21, 2012 is of no moment. That the Shockleys may have observed plaintiff's arrest on April 16, 2012 is again of no moment because the only claim that survives is plaintiff's deliberate indifference claim for the events occurring inside the paddy wagon, for which the Shockleys were not, upon information and

belief, present.  Thus, even if plaintiff had properly disclosed the contact information for these individuals as is required by the Federal Rules, they have no relevant testimony to offer and any testimony by them would waste the Court's, the jury's, and the taxpayer's limited time.  Thus, their testimony should be precluded.[4]

**POINT VI**

**PLAINTIFF SHOULD BE PRECLUDED DESIGNATING THE DEPOSITIONS OF CERTAIN INDIVDIUALS AS PART OF HER CASE IN CHIEF**

Plaintiff wishes to designate excerpts from the deposition testimony of ten members of NYPD.  Under Rule 611(a), the Court can "exercise reasonable control over the mode and order" of "presenting evidence so as to make those procedures effective for determining the truth and protect avoid wasting time. See FED. R. EVID. 611; Buchwald v. Renco Grp., Inc., No. 13 Civ. 7948 (AJN), 2014 U.S. Dist. LEXIS 118239, at *5-6 (S.D.N.Y. Aug. 22, 2014). The Court should exercise that control here and preclude plaintiff's designation of deposition excerpts in support of her case in chief, with, of course, the exception of impeachment.

First, some of the deposition testimony pertains to claims that are no longer a part of this action, i.e. the testimony of Sergeant Mattera, Inspector Pilecki, Police Officer Merritz-Saccente, Deputy Chief O'Connell, Deputy Chief McNamara, and Police Officer DeStefano.   The depositions of these individuals are not relevant, offer no probative value, would only confuse the jury.  See also Luitpold Pharm., Inc. v. ED. Geistlich Sohne A.G. Fur Chemische Industrie, No. 11 Civ. 681 (KBF), 2015 U.S. Dist. LEXIS 123591, at *44 (S.D.N.Y. Sep. 16, 2015) ("None of this testimony is probative of a fact in issue. The entirety of his proposed testimony on this

---

[4] Should the Court deny this motion *in limine*, defendants respectfully request that the Court allow defendants the opportunity to depose these individuals in advance of trial.

issue is a sideshow that, even if relevant — and the Court finds it difficult to imagine how it could be — would be confusing, misleading, and a waste of the jury's time. The Court finds that those considerations substantially outweigh any de minimis probative value."). The depositions of these individuals do not address the two remaining claims in this action—what occurred inside the paddy wagon on April 16, 2012 and what occurred later in the day on March 21, 2012—nor do these individuals have any first-hand knowledge of the limited potentially relevant facts. These designated depositions are nothing but a sideshow.  Thus, these deposition designations should be summarily precluded. See FED. R. EVID. 402, 403.  See also Soley v. Wasserman, No. 08 Civ. 9262 (KMW), 2013 U.S. Dist. LEXIS 99969, at *4 (S.D.N.Y. July 16, 2013) (granting objections to the designation of depositions related to previously dismissed claims).

Second, in "light of the importance that each side attaches to the witnesses in question and the preference for live testimony dictated by both common sense and Second Circuit case law," plaintiff should be precluded from offering depositions in lieu of live testimony. Buchwald, 2014 U.S. Dist. LEXIS 118239, at *6-7, citing Napier v. Bossard, 102 F.2d 467, 469 (2d Cir. 1939) (Hand, L. J.) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.").   This Circuit "think[s] the deposition incompetent."  Napier, 102 F.2d at 468. See also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Ams., 262 F.R.D. 293, 300-01 (S.D.N.Y. 2009); Kolb v. Cty. of Suffolk, 109 F.R.D. 125 (E.D.N.Y. 1985) (citing cases) ("Clearly, testimony by deposition is less desirable than oral testimony and should be used as a substitute only under very limited circumstances."). It is unclear why the jury—which should hear testimony live, assess the credibility of witnesses, and evaluate the claims before it—should be bored by the designated depositions instead of live testimony.   And where defendants will testify in person, also presenting depositions is

cumulative and wastes the jury's time.  See FED. R. EVID. 403.  Furthermore, as the declarants

are not unavailable as delineated by Rule 804, there is no reason for why their depositions should

be offered instead of in person testimony.  See FED. R. EVID. 804.

**POINT VII**

**PLAINTIFF SHOULD BE PRECLUDED
FROM TESTIFYING OR INTRODUCING
EVIDENCE ABOUT THE CAUSATION OF
ANY SEIZURES OR ANY MEDICAL
DAMAGES**

Plaintiff should be precluded from introducing evidence or testimony that defendants'

actions caused her to experience seizures.  Specifically, plaintiff should be precluded from

testifying that: (1) her arrest on April 16, 2012 caused her to experience the alleged seizure inside

the police wagon; (2) that defendants Rumble and Schmidt's actions on April 16, 2012 affected

her epilepsy; (3) that any action by defendant McManus on March 21, 2012 caused her to

experience a subsequent seizure; or (4) broadly, that any police action, at any time, caused her to

experience a seizure at any time.  Simply, expert testimony is required to prove causation.

Plaintiff is not a doctor.  Allowing expert testimony from plaintiff about the causation of any

seizures, without an actual expert to guide the jury, invites the jury to engage in rank speculation.

Therefore, it should be summarily precluded.

"In any action to recover damages for personal injuries […] a verdict for the plaintiff

based on mere speculation as to the cause of the injuries […] cannot be allowed to stand.  There

must be proof that the wrongful act complained of was the proximate cause of the injuries."

Estate of Jaquez v. Flores, 10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 42579, at *7 (S.D.N.Y.

Mar. 30, 2016) (citation and quotation omitted).  "[E]xpert medical opinion evidence is usually

required to show the cause of an injury or disease because the medical effect on the human

system of the infliction of injuries is generally not within the sphere of the common knowledge

21

of the lay person." Jaquez, 2016 U.S. Dist. LEXIS 42579, at *7, quoting Barnes v. Anderson, 202 F.3d 150, 159 (2d Cir. 1999) (quotations omitted). Whether expert medical opinion evidence is required depends on the complexity of the injury and the likelihood that an ordinary person would come into contact with that injury. Jaquez, 2016 U.S. Dist. LEXIS 42579, at *7-8 (citation omitted). "For simple and familiar injuries, expert opinion is not necessarily required." Id. at *8. "Where, however, the nexus between the injury and the alleged cause would not be obvious to the lay juror, expert evidence is often required to establish the causal connection between the [incident] and some item of physical or mental injury." Id., quoting Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (quotations omitted). This is particularly true "in a case such as this, where an injury has multiple potential etiologies." Jaquez, 2016 U.S. Dist. LEXIS 42579, at *8 (citations and quotations omitted). A District Court in this Circuit previously determined that a "plaintiff's claim that he suffered seizures as a result of the alleged head trauma is not something that jurors could determine from their own knowledge or experience." Turner v. White, 443 F. Supp. 2d 288, 297 (E.D.N.Y. 2006) (citation omitted). The same holds true here.

In this case, plaintiff has suffered from seizures since 2006 and was diagnosed with epilepsy in 2009. (Relevant Excerpts from the Declaration of Mary Tardif (hereinafter "Tardif Declaration"), Goykadosh Decl., Exhibit "E"). Allowing plaintiff testifies about the causation of any seizures invites "a jury of laymen, unskilled in medical science, to attempt to answer such a question would permit the rankest kind of guesswork, speculation and conjecture." Wilhelm v. State Traffic Safety Com., 230 Md. 91, 101, 185 A.2d 715, 719 (1962). This is because medical evidence relating to causes of injury to the human body is not normally considered to dwell within the common knowledge of a layperson. Barnes, 202 F.3d at 159. A lay juror cannot draw

a reasonable inference about the medically complicated questions of causation without expert evidence. Jurors are not medically-trained professionals. The etiology of seizures is not within the jury's ken. Their role is not to conduct a diagnosis of the symptoms plaintiff claims she presented following her interactions with officers and speculate as to if this may have triggered a seizure. For this causal connection to be introduced to the jury, plaintiff must offer expert testimony. But as plaintiff has no evidence to produce, beyond her own testimony, she cannot carry her burden to sustain this claim. Therefore, plaintiff cannot seek any damages or testify about the causation of any seizures. Thus, plaintiff should be precluded from introducing evidence or testimony about the causation of her seizures.

**POINT VIII**

**PLAINTIFF SHOULD BE PRECLUDED FROM TESTIFYING ABOUT OR INTRODUCING ANY EVIDENCE ABOUT BEING A MEDIC**

Plaintiff should be precluded from testifying or introducing any evidence about being a medic. The testimony and evidence precluded should include—but not be limited to—plaintiff's training as a medic; plaintiff's activities as a medic during the Occupy Wall Street Movement otherwise; or any nuanced understanding that plaintiff may believe she may have of the practice, science, art, or administration of medicine. Any such testimony is irrelevant, has no probative value, will confuse the issues, mislead the jury, and waste time. See FED. R. EVID. 401, 402, 403.

Plaintiff previously testified obtaining a certificate from American Medical Academy for Emergency Medical Services. (See Relevant Excerpts from 50-h Hearing Transcript of Mary Tardif (hereinafter "50-h Hearing Transcript"), annexed to the Goykadosh Decl., Exhibit "F" at 5:10-13). She further testified to working for a volunteer ambulance service. (50-h Hearing Transcript, Goykadosh Decl., Exhibit "F" at 5:25, 6:2-9). She has affirmed that she "act[ed] as a

street medic" at Occupy Wall Street Events, where she "provided medical care to injured persons" and "patrolled for anything from slip and falls to police brutality," which she apparently treated with the supplies in her backpack.  (Tardif Declaration, Goykadosh Decl., Exhibit "E" at ¶¶ 16, 17, 18, 19, 20).  Any such testimony should be precluded at trial.

First, that plaintiff may have training as a medic or have acted as a freelance street medic at an Occupy Wall Street event is not relevant.  It has no tendency to make any fact more or less probable, nor is it of any consequence in determining the action.  FED. R. EVID. 401.  Plaintiff's purported profession and her activities at other Occupy Wall Street protests and marches are of no moment in determining whether defendants Rumble and Schmidt were deliberately indifferent on April 16, 2012 and whether defendant McManus employed excessive force and assaulted and battered her on March 21, 2012.  In other words, whether plaintiff is a medic or not has no bearing on the determination that the jury will make at trial.  The questions for the jury will not turn on whether plaintiff is a medic.  Thus, any testimony regarding being a medic will only result in wasted time, is not relevant, and should be precluded.

Second, if the Court allows plaintiff to testify to her freelance medic activities or that she received training in emergency medical services, this will confuse the issues and mislead the jury.  See FED. R. EVID. 403.  As discussed *supra* at Point VII, plaintiff cannot herself establish a causal connection between her epilepsy, seizures, and any police actions, as she is not a doctor or expert.  Introducing testimony or evidence about being a medic, however, may mislead the jury into believing that plaintiff possesses some qualified knowledge, skill, or training.  See FED. R. EVID. 702.  The jury may believe that plaintiff can dispense medical knowledge, because of her training and activities.  But as she is not an expert, she cannot.  And the jury should not be misled into thinking she can.  Thus, any testimony about plaintiff being a medic should be precluded.

## POINT IX

## PLAINTIFF SHOULD BE PRECLUDED INTRODUCING TESTIMONY OR ARGUMENT ABOUT DEFENDANTS' INTERACTIONS WITH OTHER ARRESTEES

Plaintiff should be precluded from introducing testimony or argument about defendants' interactions with other protestors and arrestees on March 21, 2012 and April 16, 2012. Specifically, plaintiff should be precluded from presenting evidence about police interactions with people who are not her, as any interactions are not relevant as those facts are not likely to make a fact more or less probable than it would be without the evidence nor are those facts of consequence in determining the action.   More specifically, plaintiff should be precluded from offering evidence regarding defendant Rumble's interactions with plaintiff's co-arrestee Tony Zilka on April 16, 2012.  (See Excerpts from the Deposition of Marsha Rumble, annexed to the Goykadosh Decl., Exhibit "G" at 144:1-7, 145:1-5).   That Officer Rumble may have not seatbelted Zilka when he was placed in the paddy wagon is of no moment in analyzing plaintiff's claims.  Officer Aminova, not Officer Rumble, was plaintiff's arresting officer and she testified to seatbelting plaintiff inside the paddy wagon.  (See Excerpts from the Deposition of Alena Aminova, annexed to the Goykadosh Decl., Exhibit "H" at 62:22-24, 63:1-6).  The actions that Officer Rumble may have taken regarding another arrestee are of no moment in determining plaintiff's claim for deliberate indifference and should therefore be precluded as irrelevant. FED. R. EVID. 402.

Moreover, even if the Court determines that this information is relevant, its prejudice outweighs any probative value.  Specifically, this evidence may confuse the issues and mislead and unfairly inflame the jury.  The jury may be lead to believe that they should be evaluating the constitutionality of *all* of defendant Rumble's actions and not only the actions for which plaintiff

complains.   The jury may further be led to believe that Zilka is asserting a claim for a constitutional violation against Officer Rumble.  Thus, the Court should preclude any testimony or evidence about defendants' interactions with other arrestees.

### POINT X

**PLAINTIFF SHOULD BE PRECLUDED FROM ELICTING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE ACTIONS RELATED TO THE OCCUPY WALL STREET MOVEMENT**

The Court should preclude plaintiff from eliciting testimony or arguing about other instances of alleged police misconduct related to the "Occupy Wall Street" movement concerning plaintiff.   During this trial, plaintiff and her counsel may attempt to reference other cases involving the police during Occupy Wall Street related to plaintiff.   Allegations of misconduct by non-party officers that plaintiff claims to have witnessed as a protestor, that have been reported in the media, or that are related to the Occupy Wall Street movement should be precluded.  Moreover, plaintiff or her counsel may try to highlight alleged conflicts between the police and protestors during this period.   This would confuse and inflame the jury.   Such evidence is highly prejudicial and has no probative value as to the facts and circumstances of plaintiff's apprehension.   Whether some officer at some time allegedly violated the rights of plaintiff or another person's rights has no capacity to establish or refute the facts of this matter. While Occupy Wall Street provides the backdrop for the events that plaintiff complains of, it has no bearing on plaintiff's claims.   Therefore, plaintiff should be precluded from glamorizing Occupy Wall Street, dramatizing police action during Occupy Wall Street, or talking in general terms about what happened—to her or anyone else—during the Occupy Wall Street, beyond these two limited incidents.

## POINT XI

## PLAINTIFF SHOULD BE PRECLUDED FROM ELICTING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE ACTIONS GENERALLY

Similarly, the Court should preclude plaintiff from referring to other unrelated purported instances of police misconduct concerning.  Whether some other officer at some other time allegedly violated the constitutional rights of plaintiff or another person has no capacity to establish or refute the salient facts of this matter.  Furthermore, defendants in this case are also unable to defend or reject the conduct of other officers or events in other municipalities. FED R. EVID. 403.   Lastly, allowing plaintiff's counsel to make such references would allow inadmissible hearsay because plaintiff would be seeking to offer out of court statements for their truth. FED. R. EVID. 801(c).

Plaintiff should similarly be barred from using terminology and colloquialisms including but not limited to such terms or phrases "send a message." Such statements are also highly prejudicial and inflammatory. Because these terms are based on conjecture and emotion and not based on any evidence presented in this case, the defendant officers have no means to defend against their use or refute the characterization implied by the speaker. Further, usage of these terms as well as other allegations of misconduct turn plaintiff's counsel into a witness because counsel implies that they have some special knowledge of the goings on of police officers.  Any potential argument from counsel to the jury that they should "send a message" misleads them into thinking it is their role to do so when their role is simply to compensate the plaintiff should they find that she proved her case. As a result, the Court should bar plaintiff from referencing to any of these phrases or terms, other police actions generally, other lawsuits, or events reported in the media.

## POINT XII

## PLAINTIFF SHOULD BE PRECLUDED FROM ARGUING ABOUT WHAT DEFENDANTS COULD OR SHOULD HAVE DONE

Plaintiff should be precluded from offering any testimony or arguing about what she believes that defendants could or should have done. Any testimony about what defendants could or should have or could have done is irrelevant under Rule 402. The relevant issue for the jury to consider is whether the actions that defendants *did* take were lawful. Moreover, even if the evidence is deemed relevant, plaintiff's personal opinion about what police action would have been more appropriate has no probative value to the case should be precluded under Rule 403.

The determination to be made by the jury is whether the *actual* conduct that took place was lawful. Providing plaintiff with the opportunity to hypothesize and imagine alternate realities about what may have happened if defendants chose different actions is beyond the scope of this narrow litigation. Indeed, typical jury instructions for excessive force claims clearly direct the jury not to examine any use of force with 20/20 hindsight: and most certainly not to examine the least amount of force. If jurors so are instructed, it is simply not logical to allow testimony or other evidence in contradiction to these instructions. Testimony from plaintiff about what the police could or should have done will confuse the jury by intermingling hypothetical assertions with fact. Any testimony that the defendants could have or should have taken another course of action is wholly irrelevant to whether plaintiff's rights were violated and invites the jury to engage in rank speculation. Therefore, any testimony by plaintiff about what officers could have or should have done has no probative value, is unduly prejudicial, and should be precluded.

## POINT XIII

## PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING DEFENDANTS ABOUT THE APPROPRIATE CONDUCT FOR "HUMAN BEINGS"

During her deposition, defendant Rumble was questioned about the appropriate conduct for human beings.  Specifically, plaintiff's counsel inquired of defendant Rumble about whether since plaintiff is "another human being," defendant Rumble was concerned about her.  (See Rumble Deposition, Goykadosh Decl., Exhibit "G" at 160:22-25).  This line of questioning is not only borderline harassment, it is irrelevant.  This is not a court of feelings but a court of law. That plaintiff believes she was entitled to more concern or sympathy from defendants because of her seizure does not create a constitutional violation.  Moreover, by questioning defendants about the appropriate conduct for "human beings," plaintiff attempts to detract from the duties and responsibilities of law enforcement officers.  This line of questioning has no probative value beyond inflaming the jury.  It invites the jury to engage in rank speculation.  It was inappropriate—and objected to—when asked at the deposition.  It should be precluded at trial.

## POINT XIV

## DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*

Defendants respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that the Court grant their motions in their entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      January 16, 2018

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By:            /s/
      Brachah Goykadosh
      *Assistant Corporation Counsel*
      Special Federal Litigation Division

cc:     All counsel of record (by ECF only)