UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------

MARY M. TARDIF,

                                    Plaintiff,

                                                        **13-civ-4056
                                                        (KMW)(KNF)**

        -against-


CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN
O'CONNELL, DEPUTY INSPECTOR EDWARD WINSKI,
POLICE OFFICER JAMES MCNAMARA, POLICE
OFFICER ALENA AMINOVA, POLICE OFFICER
KENDAL CREER, POLICE OFFICER MARSHA
RUMBLE, POLICE OFFICER FELIX SCHMIDT, DEPUTY
INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD
OFFICERS ##1-9

                                    Defendants.

----------------------------------------------------------------------

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTIONS *IN LIMINE***


Dated:  January 16, 2018

Community Legal Assistance Corp. Stefan
H. Krieger (SK1748)
Theo Liebmann
108 Hofstra University Joan F. Axinn
Hall Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463-6078

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) (646) 263-3495

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... i

STATEMENT OF RELEVANT FACTS....................................................................................1

 I.  THIS COURT SHOULD PRECLUDE ANY SPECIFIC EVIDENCE OF THE CAUSES
     OF PLAINTIFF'S PRE-EXISTING PTSD OR PRIOR MENTAL HEALTH HISTORY.......2

        A.  THIS COURT SHOULD PRECLUDE ANY EXAMINATION OF WITNESSES
            ELICITING THE SPECIFIC CAUSES OF PLAINTIFF'S PRE-EXISTING PTSD
            OR PRIOR MENTAL HEALTH HISTORY .................................................................3

        B.  THIS COURT SHOULD PRECLUDE ANY EXAMINATION OF DEFENDANTS'
            EXPERT WITNESS ELICITING THE SPECIFIC CAUSES OF PLAINTIFF'S
            PRE-EXISTING PTSD OR PRIOR MENTAL HEALTH HISTORY. ..........................5

 II.  THIS COURT SHOULD PRECLUDE ANY EVIDENCE OF PLAINTIFF'S
      RECREATIONAL DRUG USE. ......................................................................................6

 III.  THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE DIMENSIONS OF THE
       PAVING STONES IN EXHIBIT 31. ...............................................................................7

 IV.  THIS COURT SHOULD PRECLUDE DEFENDANTS FROM CALLING AS A
      WITNESS A MEMBER OF THE NYPD COMMUNICATIONS DIVISION ......................9

 V.  PURSUANT TO FED. R. CIV. P. 16, THIS COURT SHOULD REQUIRE DEFENDANTS
     TO STIPULATE TO THE UNCONTESTED FACTS SET FORTH IN EXHIBIT
     10................................................................................................................................10

 VI.  THIS COURT SHOULD REQUIRE THE PARTIES TO REFER TO WITNESSES
      MARIJADE STRUM SUMMERS AND MANDY QUINN BY THEIR CORRECT NAMES
      AND FEMININE PRONOUNS. ....................................................................................12

 VII.  PLAINTIFF REQUESTS THAT THIS COURT ALLOW THE PARTIES TO USE TRIAL
       DIRECTOR SOFTWARE FOR PROJECTION OF EXHIBITS DURING THE TRIAL......13

    CONCLUSION ...............................................................................................................14

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Berger v. Brannan*, 172 F.2d 241, 243 (10th Cir. 1949),....................................................................11

*Birney v. New York City Dept. of Health and Mental Hygiene*,
    No. 103363/2011, 2012 WL 975082  Sup. Ct. N.Y. Cty March 16, 2012)......................12,13

*Brooklyn Heights Ass'n v. Nat'l Park Serv.,* 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011) ........8

*Coleman v. Home Depot, Inc.*306 F.3d 1333, (3d Cir. 2002)........................................................3,4

*Gullo v. City of New York*, 540 Fed. App'x 45, 47 (2d Cir. 2013). .................................................10

*Holcomb v. Aetna Life Ins. Co.*, 255 F.2d 577, 580 (10th Cir. 1958).............................................11

*Kassner v. 2d Ave. Delicatessen, Inc.*, 496 F.3d 229, 243, 244 (2d. 2007) ...................................10

*Nibbs v. Goulart*, 822 F. Supp. 339, 346 (S.D.N.Y. 2011).................................................................7

*Old Chief v. United States,* 519 U.S. 172, 190 (1997)......................................................................5

*Outman v. Waldron*, No. 9:14-CV-540, 2016 WL 4435234 (N.D.N.Y. Aug. 19, 2016) …...........12

*Rahman v. Schriro,* 22 F. Supp. 3d 305 (S.D.N.Y. 2014) .................................................................8

*Saudi v. Valmet-Appelton, Inc.,* 419 F.R.D. 128, 132-34 (E.D. Wis. 2003)...................................10

*U.S. v. Bethlehem Steel*, 157 F. Supp. 877, 880 (S.D.N.Y. 1958) ...................................................11

*United States v. Gabinskaya*, 829 F.3d 127, 134 (2d Cir. 2016) ......................................................3

**Rules**

Fed. R. Evid. 202(b)(2) ...................................................................................................................... 8

Fed. R. Evid. 401 .................................................................................................................................7

Fed R. Evid. 403 ................................................................................................................3, 4, 5, 6, 7

Fed R. Evid 703 .............................................................................................................................5, 6

Fed. R. Civ. P. 16(b)(4)....................................................................................................................9

Fed. R. Civ. P. 26(a)(1)(A)(i) .........................................................................................................9

Fed. R. Civ. P. and 37(b)(2)(A)(ii)................................................................................................10

## STATEMENT OF RELEVANT FACTS

Plaintiff Mary Tardif brings this action for damages against Defendants City of New York ("City") and various NYPD officers arising from Occupy Wall Street ("OWS") protests in which Plaintiff participated.  (Dkt. 135).  The claims that remain for trial are against Defendant McManus for the use of excessive force and assault and battery against Plaintiff at a protest on March 21, 2012; against Defendants Rumble and Schmidt for deliberate indifference to Plaintiff's medical condition and unconstitutional conditions of confinement resulting from their failure to respond adequately to Plaintiff's epileptic seizure when they were transporting her to the precinct after her arrest at an April 16, 2012 protest; and against Defendant City on a *respondeat superior* theory for Sergeant Mattera's assault and battery at a March 21 protest, for Sergeant McManus's assault and battery at another March 21 protest, and for Lieutenant DeStefano's and Officer Aminova's assaults and batteries at the protest on April 16, 2012.   (Dkt. 202).

Plaintiff seeks damages against Defendants on all these claims for psychological damages, including Post-Traumatic Stress Disorder (PTSD), Defendants' violation of civil rights, compensatory damages, and punitive damages.  (Exh. 1).

1

███████████████████████████████████████████████████████

(Exh. 2 at Confidential –P82-83).  Both Plaintiff's and Defendant's experts refer to these

medical records and findings, (*see, e.g.,* Exh. 3 at 3, 7 and Exh. 4 at 5), and, based on these

records, Plaintiff's expert rendered an opinion that Defendants' conduct in this case

exacerbated Plaintiff's pre-existing PTSD.  (Exh. 3 at 9).

█████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████  (Exh. 4 at 30).

Plaintiff has offered to stipulate that she experienced PTSD prior to January, 2012 and

that she received mental health treatment prior to January, 2012.  (Exh. 10 ¶¶11-12).

███████████████████████████████████████████

████  (*See, e.g.*, Exh. 2 at Confidential P 84).  ████████████████████

███████████████████████████████  (*See, e.g.,* Exh. 4 at

4, 6, 10, 12, 18).

I.    **THIS COURT SHOULD PRECLUDE ANY SPECIFIC EVIDENCE OF THE CAUSES OF PLAINTIFF'S PRE-EXISTING PTSD OR PRIOR MENTAL HEALTH HISTORY.**

As discussed in the Statement of Facts, the record contains evidence that before the

incidents challenged in this case, Plaintiff suffered from PTSD ████████████████

█████████████████████████████████████████

█████████████████████████  While Plaintiff has agreed to stipulate she experienced

PTSD prior to January, 2012 and that she received mental health treatment prior to January, 2012, she objects to the examination of any witness concerning the specific causes of Plaintiff's pre-existing PTSD or specific evidence in regard to her mental health history.

### A.   THIS COURT SHOULD PRECLUDE ANY EXAMINATION OF WITNESSES ELICITING THE SPECIFIC CAUSES OF PLAINTIFF'S PRE-EXISTING PTSD OR PRIOR MENTAL HEALTH HISTORY.

Under Evid. 403, a court "may exclude evidence if its probative value is substantially outweighed by a danger of … undue delay [and] wasting time."  While Plaintiff acknowledges that her pre-existing PTSD and prior mental health history is probative in regard to her claims for psychological and emotional damages, she objects to the examination of any non-expert witness as to the specific causes of her pre-existing PTSD or specific evidence about her prior mental health history because such evidence would unduly delay the case and be a waste of time for the parties and the jury.  Plaintiff has agreed to stipulate that she experienced PTSD prior to January, 2012 and that she received mental health treatment prior to January, 2012. (Exh. 10 ¶¶11-12)  That stipulation should suffice.

When the admission of evidence with limited probative value is substantially outweighed by the dangers posed by diverting the jury's attention from the issues in the case, that evidence can be excluded under Fed. R. Evid. 403 because of the potential for undue delay, confusion, and waste of time.  *United States v. Gabinskaya*, 829 F.3d 127, 134 (2d Cir. 2016) (in a case against a defendant for conspiracy to commit fraud, affirming exclusion of evidence of the employment by defendant's co-conspirators of unethical lawyer because it could easily have confused the jury and wasted time by diverting attention from the evidence relevant to defendant's conduct to the details of the lawyer's unethical behavior); *Coleman v.*

3

*Home Depot, Inc.*306 F.3d 1333, (3d Cir. 2002) (affirming exclusion of an EEOC Letter of

Determination in a Title VII case because it had limited probative value and its admission

could result in a trial within a trial about the employment histories of former employees).

In this case, the specific cause of Plaintiff's preexisting PTSD— ███████████

███████—has limited probative value.  Plaintiff is not alleging that Defendant's conduct

caused her to develop PTSD; rather, she asserts that Defendant's conduct *exacerbated* her

preexisting PTSD.  (Exh. 3 at 9).  Accordingly, since specific evidence of prior traumatic

events in Plaintiff's life does not make it more probable or not that Defendants' conduct

exacerbated her PTSD, it has limited probative value.  Likewise, specific evidence of

Plaintiff's prior mental health—███████████████—does not make it

more probable than not that her PTSD was exacerbated by the challenged incidents in this

case.

On the other side of the scale, the dangers of undue delay, confusion, and waste of time

are substantial here.  If Defendants are permitted to examine witnesses on the specific causes

of her preexisting PTSD or her prior mental health history, Plaintiff will need to present

evidence explaining why Defendants' conduct–not the abuse by her mother or the mental

problems she has suffered–resulted in an exacerbation of her PTSD.  The jury likely will be

focused on those details of Plaintiff's prior problems, and a trial within a trial about side

matters will result, and thereby, cause confusion for the jury.

On balance then, the significant dangers of undue delay, confusion, and waste of time

substantially outweigh the limited probative value of this evidence.  This is especially the case

because Plaintiff has agreed to stipulate to the facts of her preexisting PTSD and mental health

treatment.  (Exh. 10 ¶¶11-12).  For purposes of rule 403 balancing, a party's stipulation of a

general fact is allowed as a substitute for specific evidence proving that fact when it does not

interfere with the opposing party's presentation in the case.  *See Old Chief v. United States,*

519 U.S. 172, 190 (1997) (in a prosecution for possession of a firearm by a person with a prior

felony conviction, the Court approved the defendant's stipulation that he had a prior felony

conviction as a substitute for evidence of the name and nature of the prior conviction because

the "stipulation … neither displaces a chapter from [the prosecution's] continuous sequence of

conventional evidence nor comes across as an officious substitution, to confuse or offend or

provoke reproach").   In this case, since Plaintiff's stipulations will allow the Defendants to

argue to the jury how the preexisting PTSD and mental health history might affect damages,

the stipulations will not interfere with the narrative of their case.

> **B.    THIS COURT SHOULD PRECLUDE ANY EXAMINATION OF DEFENDANTS' EXPERT WITNESS ELICITING THE SPECIFIC CAUSES OF PLAINTIFF'S PRE-EXISTING PTSD OR PRIOR MENTAL HEALTH HISTORY.**

In drafting his report, Defendants' expert Dr. Steven Fayer quoted extensively from

Plaintiff's medical records concerning her preexisting PTSD and prior mental health history.

(*See, e.g.,* Exh. 4 at 5, 30).  Plaintiff has filed a separate motion *in limine* to preclude his

testimony in its entirety.  But, if he is allowed to testify, this Court should preclude him from

testifying in regard to the specific details from these medical records of Plaintiff's preexisting

PTSD or prior mental health history.

As shown in Part I(A), *supra,* under rule 403, Dr. Fayer should be precluded from

testifying in regard to any of the specific evidence in the medical records about the causes of

Plaintiff's preexisting PTSD or mental health history.  But, even if this Court decides to

allow exploration of those issues with lay witnesses, Fed. R. Evid. 703 provides for much

stricter limitations on admissibility of evidence by experts than those of rule 403.  Rule 703

allows an expert to render an opinion based on facts or data that otherwise would be inadmissible in evidence if experts in the particular field would reasonably rely on them.  It provides, however,

> [I]f the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their *probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.*

(Emphasis added).  This rule provides a "presumption against disclosure to the jury" of inadmissible evidence upon which an expert relies.  Fed. R. Evid. 703 advisory committee's note to 2000 amendment.

Given this presumption, Dr. Fayer should be precluded from disclosing the inadmissible facts and data contained in Plaintiff's medical records.  While Plaintiff does not dispute that, if the is allowed to testify, under rule 703, Dr. Fayer is permitted to rely on those records in forming his opinions, many of the facts and data in the reports relied on by Dr. Fayer—e.g., medical assessments of Plaintiff—would be inadmissible in evidence as hearsay or improper expert opinions.  (*See, e.g.,* Exh.4) ████████████████████████████████ ██████████████████████████████  Under the "reverse 403" analysis of rule 703, since the probative value of those facts and data are slight and the prejudicial effect on Plaintiff of a trial within a trial of her medical history are substantial, under rule 703, this Court should preclude Dr. Fayer from testifying as to the contents of Plaintiff's medical records under both rules 403 and 703.

## II.   THIS COURT SHOULD PRECLUDE ANY EVIDENCE OF PLAINTIFF'S RECREATIONAL DRUG USE.

████████████████████████████████████████████

████████████████████████████  No evidence has been produced that Plaintiff was

under the influence of any illegal drugs at the time of the challenged incidents. ██████

████████████████████████████████████ in rendering his opinion in regard to

Plaintiff's mental condition, he did not refer to her drug use.  (Exh. 4 at 24-31)

When no evidence has been produced connecting drug use to a party's claim for damages,

evidence of such use is inadmissible as irrelevant.  *Nibbs v. Goulart*, 822 F. Supp.

339, 346 (S.D.N.Y. 2011) (holding in 1983 false arrest case that defendants' evidence of

marijuana use was irrelevant because they had introduced no expert testimony or evidence to

substantiate any purported relevance of his drug use to plaintiff's damages claim).  Moreover,

the prejudicial dangers of such evidence of drug use substantially outweigh the probative

value, if any, of such evidence.  *See id.* (holding that to permit defendants to introduce

evidence of plaintiff's long-term marijuana use or to question him about the effects of

marijuana use on his memory or ability to recollect in general would be grossly prejudicial

and of indeterminate relevance without scientific evidence or expert testimony).

In this case, since Defendants have failed to produce evidence showing that Plaintiff

used recreational drugs on March 21 or April 16, ████████████████████████████

████████████████████████████████████ and their expert did not address the

use of the effects of drug use on her memory or ability to recollect, pursuant to rules 401 and

403, Defendants should be precluded from introducing evidence on Plaintiff's recreational

drug use.

## III.    THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE DIMENSIONS OF    THE PAVING STONES IN EXHIBIT 31.

One of the claims that remains for trial is against Defendant McManus for his alleged

excessive force and assault and battery against Plaintiff at Union Square Park on March 21,

7

2012.  (Dkt. 202 at 12).  An issue exists in regard to the distance between Defendant McManus and Plaintiff during this incident.

Plaintiff's Exhibit 31 for identification (Exhibit 5 to this motion) is a photograph of the incident.  This exhibit shows paving stones between Sergeant McManus and Plaintiff.  The dimensions of these paving stones are probative to show the distance between the parties.

Plaintiff moves for this Court pursuant to Fed. R. Evid. 202(b)(2) to take judicial notice of different New York City regulations which establish the dimensions for paving stones in city parks.  Under rule 202(b)(2), this Court may take judicial notice of a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See Brooklyn Heights Ass'n v. Nat'l Park Serv.,* 777 F. Supp. 2d 424, 432 n.6 (E.D.N.Y. 2011) (taking judicial notice of the Brooklyn Bridge Park website); *Rahman v. Schriro,* 22 F. Supp. 3d 305 (S.D.N.Y. 2014) (taking judicial notice of a fact sheet on the Environmental Protection Agency website).

In this case, the City of New York Parks and Recreation Tree Planting Standards §3.1.7, https://www.nycgovparks.org/pagefiles/53/Tree-Planting-Standards.pdf (Exh. 6 at 7), and the City of New York Department of Transportation Infrastructure Design Standards §3.04.2, www.nyc.gov/html/dot/downloads/pdf/nycdot-streetdesignmanual-interior-lores.pdf (Exh. 7 at 110) demonstrate that the hexagonal asphalt paving stones at Union Square Park are 8-inches by 8-inches in width, from each parallel side.  Thus, these regulations will help the jury determine the distance between Sergeant McManus and Plaintiff as reflected in Exhibit 31.

Since these regulations—adopted by an agency of Defendant City of New York—cannot reasonably be questioned, this Court should instruct the jury that the paving stones shown in Plaintiff's Exhibit 31 are 8-inches by 8-inches in width, from each parallel side.

## IV.   THIS COURT SHOULD PRECLUDE DEFENDANTS FROM CALLING AS A WITNESS A MEMBER OF THE NYPD COMMUNICATIONS DIVISION.

In the Joint Pretrial Order, Defendants have listed as a witness a "[M]ember of the NYPD Communications Division who will testify as to the contents of Spring Report." Defendants, however, never previously disclosed this individual as someone with discoverable information.  Accordingly, Defendants should be precluded from calling this witness to testify.

In the First Amended Scheduling Order in this case, this Court set as a deadline of February 27, 2015 for completion of discovery.  (Dkt. 48).  Under Fed. R. Civ. P. 26(a)(1)(A)(i), Defendants were required to initially disclose the names and contact information for each individual likely to have discoverable information in the case, and, under Fed. R. Civ. P. 26(e)(1), were required to timely supplement  their disclosures if their initial response was incomplete.  In this case, Defendants did not identify a member of the NYPD Communications Division in their initial disclosures as an individual who was likely to have discoverable information nor have they supplemented their disclosures to identify this individual.  (Exhs. 8 and 9).  Now, nearly three years after the Amended Scheduling Order's deadline for completion of discovery and without any request to the Court, Defendants have identified a new individual who purportedly has discoverable information.

As this Court found in denying large portions of Plaintiff's motion to amend her Second Amended Complaint, under Fed. R. Civ. P. 16(b)(4), a scheduling order may only be modified for good cause and with the judge's consent.  (Dkt. 117 at 7; Dkt. 150 at 8).  Whether good cause exists depends primarily on the diligence of the moving party in seeking to meet

9

the deadline in the scheduling order.  *Kassner v. 2d Ave. Delicatessen, Inc.*, 496 F.3d 229, 243, 244 (2d. 2007).  While prejudice to the nonmoving party may be considered, that factor alone is not sufficient to satisfy the good cause requirement of rule 16.  *Gullo v. City of New York*, 540 Fed. App'x 45, 47 (2d Cir. 2013).

In this case, Defendants have not even attempted to demonstrate good cause to this Court with an appropriate motion to amend the Scheduling Order, but have simply just listed the name of the undisclosed individual in the Joint Pretrial Order.  Moreover, it is hard to imagine any reasonable explanation for Defendants' three-year delay in identifying this individual.

In this context, pursuant to Fed. R. Civ. P. and 37(b)(2)(A)(ii), this Court should preclude Defendants from presenting as a witness any member of the NYPD Communications Division.  *See, e.g., Saudi v. Valmet-Appelton, Inc.,* 419 F.R.D. 128, 132-34 (E.D. Wis. 2003) (precluding testimony of witnesses under rule 37, because the party who violated a scheduling order failed to show a substantial justification for his delay and noting that "[w]hen one party does not disclose, the responding party cannot conduct necessary discovery, or prepare to respond to witnesses that have not been disclosed").

## V.  PURSUANT TO FED. R. CIV. P. 16, THIS COURT SHOULD REQUIRE DEFENDANTS TO STIPULATE TO THE UNCONTESTED FACTS SET FORTH IN EXHIBIT 10.

Under section 3(A)(vii) of this Court's Individual Practice Order, in preparation for the final pretrial conference, the parties are required to include in their Joint Pretrial Order "[a]ny stipulations or agreed statement of facts."  Defendants have refused to agree to any statements of fact in this case—even those that are indisputably uncontested.  Since this

10

position is prohibited by Fed. R. Civ. P. 16, this Court should compel Defendants to stipulate to the uncontested facts in this case.

Rule 16 provides that a court may require parties to appear for a pretrial conference for the purpose of "expediting the disposition of the action"; "discouraging wasteful pretrial activities"; and "improving the quality of the trial through more thorough preparation." In light of these purposes, a court has the authority to compel parties to stipulate to uncontested facts. *See Holcomb v. Aetna Life Ins. Co.*, 255 F.2d 577, 580 (10th Cir. 1958), *cert. denied*, 358 U.S. 879 (1958) (holding that "[a] pre-trial conference is more than a mere conference at which the court seeks to eliminate groundless allegations or denials and the court has the power to compel the parties to agree to all facts concerning which there can be no real issue"); *Berger v. Brannan*, 172 F.2d 241, 243 (10th Cir. 1949), *cert. denied*, 337 U.S. 941 (1949) (observing that "[t]he spirit of a pre-trial procedure is not only to call the parties together and ask them to stipulate as to all matters concerning which there can be no dispute, but to compel them to stipulate."); *see generally U.S. v. Bethlehem Steel*, 157 F. Supp. 877, 880 (S.D.N.Y. 1958) (Weinfeld, J.) (ordering parties to a pretrial conference at which they "will be called upon to stipulate the non-disputed evidential facts").

In this case, Defendants have refused to stipulate to any facts, even such facts as "[t]he City of New York is a municipal corporation organized under the laws of the State of New York" and "[t]he New York City Police Department is an agency of the City." (Exhs. 9 and 10). When Plaintiff requested that Defendants stipulate to facts that are undisputed on the record, Defendants responded that they were not controverting any facts; they were just not stipulating to any facts in a joint pretrial order. (*See* Exh. 9). This position makes no sense given that the purpose of the joint pretrial order is to set the stage for the final pretrial

11

conference.  The parties' stipulations as to undisputed facts—which eliminate the necessity

for presentation of evidence on clearly undisputed issues at trial—not only will expedite the

trial but will improve the quality of the trial. [1]

Accordingly, to achieve the purposes of rule 16, given Defendants' acknowledgement

that they do not dispute any of the facts proffered as undisputed by Plaintiff, this Court

should compel Defendants to stipulate to facts which are undisputed.

**VI.    THIS COURT SHOULD REQUIRE THE PARTIES TO REFER TO WITNESSES MARIJADE STRUM SUMMERS AND MANDY QUINN BY THEIR CORRECT NAMES AND FEMININE PRONOUNS.**

Two of Plaintiff's witnesses are transgender. Their names and gender presentation

were different on the date of the underlying incident.  Plaintiff requests an order requiring

that Ms. Marijade Storm Summers and Ms. Mandy Quinn be identified at trial exclusively by

their correct, current names and that the following pronouns be used to identify and address

them at trial: "she," "her," and "hers"

Mis-gendering a transgender person, or referring to them by their former name, is not

simply a form of disrespect; it is a widely recognized form of discrimination.  The lack of

recognition of a transgender individual's correct gender may cause harm to the individual's

physical and/or mental health.  Courts have repeatedly referred to transgender litigants by

their correct names and gender pronouns. *See, e.g., Outman v. Waldron*, No. 9:14-CV-540,

2016 WL 4435234 *1 n.1 (N.D.N.Y. Aug. 19, 2016) (recognizing the importance of using

correct name and gender pronouns in the case of transgender litigant); *Birney v. New York*

---

[1] If all parties adopted the position presently taken by Defendants – refusing to stipulate to facts they admit are undisputed, one of the major purposes of final pretrial orders – efficient judicial management – would be undermined.

*City Dept. of Health and Mental Hygiene*, No. 103363/2011, 2012 WL 975082 *8 (Sup. Ct. N.Y. Cty March 16, 2012) (criticizing the "ignorance" of the New York City Law Department for its improper use of female pronouns for a male transgender individual).

Allowing Defendants to mis-gender a transgender witness on the stand will harm the witness, prejudice the Plaintiff, and create trial management problems for the Court. Requiring all parties to refer to Ms. Summers and Ms. Quinn by their names and feminine pronouns would prevent discrimination against the witnesses and would in no way prejudice the Defendants.

## VII.   PLAINTIFF REQUESTS THAT THIS COURT ALLOW THE PARTIES TO USE TRIAL DIRECTOR SOFTWARE FOR PROJECTION OF EXHIBITS DURING THE TRIAL.

Plaintiff is using Trial Director software to upload all of its proposed exhibit and deposition excerpts for presentation of these materials at trial and has offered to allow Defendants to upload their exhibits.

Plaintiff requests permission to use this technology at trial.  Pursuant to Part 6 of this Court's Trial Procedures, before trial, she will provide this Court and Defendants with hard copies of all the exhibits and deposition excerpts for review.  At trial, Plaintiff can provide a technologist from the Hofstra School of Law's IT Department to operate the laptop, or, if the Court prefers, will utilize the staff of this Court's Office of Courtroom Technology/AV services.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that this Court grant her motions in

limine.

Hempstead, NY 11549
January 16, 2018

Respectfully   submitted,

Community Legal Assistance Corp.
Stefan H. Krieger (SK1748)
Theo Liebmann
108 Hofstra University
Joan F. Axinn Hall
Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463-6078

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) 263-3495

14