UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY M. TARDIF,

Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES MCNAMARA, POLICE OFFICER ALENA AMINOVA, POLICE OFFICER KENDAL CREER, POLICE OFFICER MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT, DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS ##1-9,

Defendants.

---

**PLAINTIFF'S PRE-TRIAL BRIEF ON QUALIFIED IMMUNITY**

**13-civ-4056 (KMW)(KNF)**

**PLAINTIFF MARY TARDIF'S**
**PRE-TRIAL BRIEF ON QUALIFIED IMMUNITY**

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) (646) 263-3495

Community Legal Assistance Corp.
Stefan H. Krieger (SK1748)
Theo Liebmann
108 Hofstra University
Joan F. Axinn Hall
Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463-6078

## TABLE OF CONTENTS

**TABLE OF CONTENTS**……………………………………………………………i

**TABLE OF AUTHORITIES**…..……………………………………………………ii

**POINT I**

**SPECIAL INTERROGATORIES REGARDING FACTUAL DISPUTES RELEVANT TO THE COURT'S QUALIFIED IMMUNITY ANALYSIS MAY BE APPROPRIATE AFTER THE JURY RETURNS A VERDICT FOR PLAINTIFF**………………………………………………………..….1

**POINT II**

**EXISTING PRECEDENT HAS PLACED THE RELEVANT CONSTITUTIONAL QUESTIONS BEYOND DEBATE SUCH THAT THE UNLAWFULNESS OF DEFENDANTS' CONDUCT WAS CLEARLY ESTABLISHED**………………………………….............2

**A. ON APRIL 16, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANTS RUMBLE'S AND SCHMIDT'S FAILURE TO OBTAIN TIMELY MEDICAL ATTENTION FOR MS. TARDIF AMOUNTED TO INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS**…………………………………………………………..….6

**B. ON APRIL 16, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANTS RUMBLE AND SCHMIDT CREATED UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT IN THE PRISONER TRANSPORT VEHICLE**…………………………13

**C. ON MARCH 21, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANT MCMANUS'S CONDUCT IN SHOVING PLAINTIFF OFF OF HER CRUTCHES WAS AN UNREASONABLE AND EXCESSIVE USE OF FORCE**………………………………………..16

**CONCLUSION**…..……………………………………………………………25

**TABLE OF AUTHORITIES**

*Ali v Szabo*, 81 F Supp 2d 447 (S.D.N.Y. 1999) ……………………………………19, 20

*Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113 (2d Cir. 2004) ……………………17

*Anderson v Creighton*, 483 US 635 (1987)………………………..…………………..4

*Bell v. Wolfish*, 441 U.S. 520 (1976)…………………………………………...…14, 22

*Bilal v NY City Dept. of Corr*., 08 Civ. 6664 (DLC),
2010 US Dist LEXIS 45425 (S.D.N.Y. May 10, 2010)………………………….13

*Bilal v White*, 494 F App'x 143 (2d Cir 2012)……………………………………...12

*Boomer v. Lanigan*, 00 CIV. 5540 (DLC),
2001 US Dist LEXIS 20838 (S.D.N.Y. Dec. 17, 2001)………………...……….11

*Boomer v Lanigan*, 00 Civ. 5540 (DLC),
2002 US Dist LEXIS 20514 (S.D.N.Y. Oct. 24, 2002)………………………….11

*Bradway v Town of Southampton*, 826 F Supp 2d 458 E.D.N.Y. 2011)……………..8, 13

*Brooks v. Warden*, 800 F.3d 1295, 2015 WL 5157339 (11th Cir. 2015)………………15

*Brown v. City of New* York, 798 F.3d 94 (2d Cir. 2015)…………………………...3, 17

*Brosseau v Haugen*, 543 US 194 (2004)……………………………………………….5

*Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009)……………………………………7

*Caravalho v. City of New York*, 13-cv-4174 (PKC)(MHD),
2016 U.S. Dist. LEXIS 44280 (S.D.N.Y. Mar. 31, 2016)………………………17

*Chance v. Armstrong*, 143 F.3d 698 (2d Cir. 1998)……………………………..……12

*Coollick v. Hughes*, 699 F.3d 211 (2d Cir. 2012)……………………………………....1

*County of Sacramento v. Lewis*, 118 S.Ct. 1708 (1998)…………………………… 20, 21

*Cuffee v City of NY,* No. 15cv8916 (PGG) (DF),
2017 US Dist LEXIS 31604 (S.D.N.Y. Mar. 3, 2017)…………………………14

*Cuffee v City of NY*, 2017 US Dist LEXIS 44552, (S.D.N.Y. Mar. 27, 2017)……....14, 16

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017)……………………………….....13, 15, 16

*Davies v City of Lakewood*, No. 14-cv-01285 (RBJ),
2016 US Dist LEXIS 18355, (D Colo Feb. 16, 2016)……………………………4

*Demata v NY State Corr. Dep't of Health Servs.*, No. 99-0066, 198 F.3d 233 (table),
published in full at 1999 U.S. App. LEXIS 22955 (2d Cir Sep. 17, 1999)……...12

*DeSpain v. Uphoff*, 264 F.3d 965 (10th Cir. 2001)……………………………...…15

*Edwards v David*, No. 15-cv-9086,
2017 US Dist LEXIS 94515 (ND Ill June 20, 2017)…………………………..…16

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976)…………………………………………11, 12

*Farmer v. Brennan*, 511 U.S. 825 (1994)……………………………………………14, 15

*Fera v City of Albany,* 568 F Supp 2d 248 (N.D.N.Y. 2008)……………………………..9

*Flemming v Kelsh*, No. 9:13-CV-758 (LEK/ATB),
2016 US Dist LEXIS 47218 (N.D.N.Y. Apr. 5, 2016)………………………..….14

*Fruit v. Norris*, 905 F.2d 1147 (8th Cir. 1990)……………………………….....14, 15

*Garcia v. Does*, 779 F3d 84 (2d Cir. 2016)……………………………………………….3

*Gaston v. Coughlin*, 249 F.3d 156 (2d Cir. 2001)……………………………….…16

*Gersbacher v. City of NY*, No. 1:14-CV-7600 (GHW),
2017 WL 4402538 (S.D.N.Y. Oct. 2, 2017)……………………………………....7

*Gonzalez-Fuentes v. Molina,* 607 F.3d 864 (1st Cir. 2010)…………………………….20

*Graham v. Connor*, 490 U.S. 386 (1989)……………………………...…17, 18, 19, 21-23

*Hall v. Bennett*, 379 F.3d 462 (7th Cir. 2004)………………………………………...14

*Harrington v Vadlamudi*, No. 9:13-CV-0795 (BKS/DJS),
2016 US Dist LEXIS 105631 (N.D.N.Y. Aug. 9, 2016)………………………...10

*Hathaway v. Coughlin*, 37 F.3d 63 (2d Cir. 1994),
*cert. denied*, 513 U.S. 1154, (1995)…………………………………………….…9

*Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176 (11th Cir. 1994)…………………...10

*Hope v. Pelzer,* 536 U.S. 730 (2002)…………………………………………………..4, 5

*Hudson v. Palmer*, 468 U.S. 517 (1984)……………………………………………………14

*Jabbar v. Fischer*, 683 F.3d 54 (2d Cir. 2012)………………………….………………16

*Jackson v. Johnson*, 118 F.Supp.2d 278 (N.D.N.Y. 2000), *appeal dismissed in relevant* part, 13 Fed. Appx. 51, 2001 WL 735902 (2d Cir. June 27, 2001). ………………………………………9

*Jackson v Tellado*, 236 F Supp 3d 636 (E.D.N.Y. 2017)………………..……………..3

*Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973), *cert. denied*, 414 U.S. 1033 (1973) ………………….……………17, 18, 20-24

*Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246 (2d Cir. 2001)……….4, 23-24

*Kelly v. Alameda Cnty. Sheriff Dep't*, No. C-96-0309 (EFL), 1996 U.S. Dist. LEXIS 15202 (N.D.Cal. Oct. 7, 1996) (Dkt. No. 65-12)……….11

*Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015)… ………………….……………18-23

*Liberta v City of Rome*, No. 6:10-CV-1104 (DNH), 2012 US Dist LEXIS 27007 (N.D.N.Y. Feb. 29, 2012) ……………….……11

*Liscio v. Warren*, 901 F.2d 274 (2d Cir. 1990)……………………………………..11

*McBride v. Deer,* 240 F.3d 1287 (10th Cir. 2001)……………………………………..15

*McConville v Montrym*, No. 3:15-cv-00967 (MAD/DEP), 2016 US Dist LEXIS 75125 (N.D.N.Y. June 9, 2016) ……………………….......8

*McKenna v. Wright,* 386 F.3d 432 (2d Cir. 2004)….…………………….………………1

*Mills v. Fenger*, 216 F. App'x 7 (2d Cir. 2006)…………………………………….....11

*Morgan v. County of Nassau*, 720 F. Supp. 2d 229 (E.D.N.Y. 2010)……………………9

*Pearson v. Callahan,* 555 U.S. 224 (2009)… ……………….……………………….3

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002). ………//……….…………………….…4

*Robinson v. Via*, 821 F.2d 913 (2d Cir. 1987)… ………………….…………………….24

*Rochin v. California,* 342 U.S. 165 (1952)………………………………………17, 20, 24

*Rodriguez v. Phillips*, 66 F.3d 470 (2d Cir. 1995)………………………………….....23

*Rucks v City of NY*, 96 F Supp 3d 138 (S.D.N.Y. 2015)… ……………………………………2

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d. Cir. 2007) ……………………………………4

*Saucier v. Katz,* 533 U.S. 194 (2001)…. ……………………………………………………3, 4

*Scott v. Fischer*, 616 F3d 100 (2d Cir. 2010)…. ……………………………………………..3

*Smith v. Carpenter*, 316 F.3d 178 (2d Cir. 2003)… ……………………………………..10, 12

*Tardif v City of NY*, No. 13-CV-4056 (KMW) (KNF),
2017 US Dist LEXIS 18097 (S.D.N.Y. Feb. 6, 2017)…. ……………………………………7

*Tardif v City of NY*, No. 13 CV 4056 (KMW),
2017 US Dist LEXIS 41318 (S.D.N.Y. Mar. 21, 2017)…. ……………………………..17

*Tardif v. City of New York*, No. 13 CV 4056 (KMW),
2017 U.S. Dist. LEXIS 135607 (S.D.N.Y. Aug. 23, 2017)……3, 8, 13, 17, 23-24

*Tellier v. Fields,* 280 F.3d 69 (2d Cir. 2000)……… …………………………………….....1

*Terebesi v. Torreso*, 764 F.3d 217 (2d Cir. 2014),
*cert. denied*, 135 S. Ct. 1842 (2015)…… ……………………………………………2, 3

*Thompson v. Carter*, 284 F.3d 411 (2d Cir. 2002) ……………………………………...10, 11

*Tierney v. Davidson*, 133 F.3d 189 (2d Cir. 1998)… …………………………………17, 24

*Tolan v. Cotton*, 134 S. Ct. 1861 (2014)….. ……………………………………………4, 5

*United States v. Lanier,* 520 U.S. 259 (1997)….. ……………………………………………..5

*Vining v Dept. of Corr.,* 2013 US Dist LEXIS 136195 (S.D.N.Y. Apr. 5, 2013)…………9

*Weigel v. Broad*, 544 F.3d 1143 (10th Cir. 2008),
*cert. den'd,* 2009 U.S. LEXIS 3582 (May 18, 2009)…… ……………………………3

*Weyant v. Okst,* 101 F.3d 845 (2d Cir. 1996)… ……………………………………………..12

*White v. Pauly*, 137 S.Ct. 548 (2017)… …………………………………………………….…4

*Willey v. Kirkpatrick*, 801 F.3d 51 (2d Cir. 2015). ……………………………………………15

*Williams v. MCC Inst.,* No. 97 Civ.5352 (LAP),
1999 WL 179604 (S.D.N.Y. Mar. 31, 1999)… ……………………………………..11

*Wilson v. Seiter*, 501 U.S. 294 (1991)…. ………………….……………………….……...15

*Wright v Wilburn*, 194 FRD 54 (N.D.N.Y. 2000)…… …………………….………………..3

*Youngblood v Johnson*, No. 10-CV-752 (MAD/CFH),
2013 US Dist LEXIS 87820 (N.D.N.Y. Apr. 30, 2013)…. …………………….….10

*Zellner v. Summerlin,* 494 F.3d 344 (2d Cir. 2007)……. ………………………………...1

*Ziglar v Abbasi*, ___US___ , ___, 137 S Ct 1843 (2017)… …………………..………….4

**<u>U.S. CONSTITUTION</u>**

Fourteenth Amendment……………………..…………………………..……….*passim*

Plaintiff makes this submission in response to Defendants' Pre-Trial Brief on Qualified Immunity and Special Interrogatories (Dkt. 237, "Ds' Br.").

## POINT I

### SPECIAL INTERROGATORIES REGARDING FACTUAL DISPUTES RELEVANT TO THE COURT'S QUALIFIED IMMUNITY ANALYSIS MAY BE APPROPRIATE AFTER THE JURY RETURNS A VERDICT FOR PLAINTIFF

A motion for judgment based on qualified immunity "may only be granted when a court finds that an official has met his or her burden demonstrating that *no* rational jury could conclude '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012). It is Defendants' burden to show that the right was not clearly established, *see Tellier v. Fields,* 280 F.3d 69, 84 (2d Cir. 2000), or that Defendants' conduct was objectively reasonable, *see McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).

Defendants' arguments that they should be entitled to qualified immunity depend almost entirely on their asserted versions of the facts, *see* Ds' Br. at pp. 10-11. Those arguments are, in effect, attempted end-runs around this Court's denial of Defendants' bids for summary judgment on these claims, given that this Court has ruled that there remain factual disputes, which preclude granting summary judgment. Of course, such factual disputes are for a jury to decide and preclude a grant of qualified immunity. *See Zellner v. Summerlin,* 494 F.3d 344, 368 (2d Cir. 2007) (citing cases). "To the extent that a particular finding of fact is essential to a determination by the court that the defendant is entitled to qualified immunity, it is the responsibility of the defendant to request that the jury be asked the pertinent question." *Id.*

"[T]he Second Circuit has endorsed the mechanism of submitting a general verdict to the jury, to be followed up with special interrogatories relevant to qualified immunity if the jury finds in favor of the plaintiff on any of the counts." *Rucks v City of NY*, 96 F Supp 3d 138, 153, n 7 (S.D.N.Y. 2015) (citing cases). Accordingly, special interrogatories regarding factual disputes relevant to the Court's qualified immunity analysis may be appropriate after the jury returns a verdict for Plaintiff.[1]

## POINT II

### EXISTING PRECEDENT HAS PLACED THE RELEVANT CONSTITUTIONAL QUESTIONS BEYOND DEBATE SUCH THAT THE UNLAWFULNESS OF DEFENDANTS' CONDUCT WAS CLEARLY ESTABLISHED

As mentioned above, Defendants' premature arguments that they should be entitled to qualified immunity depend almost entirely on their asserted versions of the facts, *see* Ds' Br. at pp. 10-11. Although it is Defendants' burden to demonstrate that Ms. Tardif's rights were not "clearly established" at the time Defendants violated them, aside from citing to their version of facts, Defendants cite no caselaw showing that Ms. Tardif's rights were not clearly established in March and April of 2012.

"To determine whether the relevant law was clearly established, [courts] consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014), *cert. denied*, 135 S. Ct. 1842, 191 L. Ed. 2d 723 (2015). "Even if this or other circuit courts have not

---

1 The Court should decline Defendants' invitation to "determine qualified immunity before a trial or before the jury reaches a verdict," *see* Ds' Br. p. 2 n. 2, particularly given the Court's determinations that there are issues of fact for a jury to decide, which preclude Defendants from entitlement to qualified immunity as a matter of law without a trial, there is no way to determine qualified immunity before a trial.

explicitly held a … course of conduct to be unconstitutional, the unconstitutionality of that law or course of conduct will nonetheless be treated as clearly established if decisions by this or other courts 'clearly foreshadow a particular ruling on the issue.'" *Scott v. Fischer*, 616 F3d 100, 104-05 (2d Cir. 2010) (internal citations omitted), *cert. denied,* 483 U.S. 1020, (1987); *accord, Terebesi*, 764 F.3d at 231; *c.f. Garcia v. Does*, 779 F3d 84, 95 n. 12 (2d Cir. 2016).

In determining whether a right was "clearly established," the focus is not on the abstract matter of its constitutional source, but on the officer's duties to act or refrain from acting under the circumstances, and whether a reasonable officer with the same training, experience, and knowledge in the situation would have had "fair notice" that their act or failure to act violated established legal duties or rules relevant to the circumstances confronted by the officer.

"The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz,* 533 U.S. 194, 202 (2001). That inquiry turns on "the objective reasonableness of the action taken, assessed in light of the rules that were clearly established at the time it was taken." *Pearson v. Callahan,* 555 U.S. 224, 244 (2009).[2]

---

2 Relatedly, the NYPD Patrol Guide sets forth the standards of care police officers are required to utilize, and it is appropriate to consider the Patrol Guide in determining whether a particular act or failure to act was objectively reasonable or unreasonable under the circumstances. *See, e.g., Brown v. City of New* York, 798 F.3d 94, 101 at n. 11 (2d Cir. 2015); *Tardif v. City of New York*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, at *18-19 (S.D.N.Y. Aug. 23, 2017). Further, "[t]he reasonableness of an officer's actions must be assessed in light of the officer's training." *Weigel v. Broad*, 544 F.3d 1143, 1154-55 (10th Cir. 2008), *cert. den'd,* 2009 U.S. LEXIS 3582 (May 18, 2009) (cited in *Jackson v Tellado*, 236 F Supp 3d 636, 665, n 27 (E.D.N.Y. 2017) (same)); *see also Wright v Wilburn*, 194 FRD 54, 61-62 (N.D.N.Y. 2000) ("[d]efendant's conduct must be judged based on the objective reasonableness standard of a properly trained

When an officer's duty to act or refrain from acting under the circumstances is "clearly established" because existing precedent provides "fair notice", an officer cannot prevail on the second prong of the qualified immunity analysis by claiming, or pointing to, confusion over the right's constitutional source. The "proper inquiry is whether the right itself—rather than its source—is clearly established." *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d. Cir. 2007); *see, e.g., Poe v. Leonard*, 282 F.3d 123, 137-39 (2d Cir. 2002).

> The contours of the right must be sufficiently clear that a reasonable official would understand that *what he is doing* violates that right. This is not to say that *an official action* is protected by qualified immunity unless *the very action* in question has previously been held unlawful, … but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v Creighton*, 483 US 635, 640 (1987) (emphasis added); *accord, Ziglar v Abbasi*, ___US___ , ___, 137 S Ct 1843, 1866-1867 (2017).

Against that backdrop, the Supreme Court has held that "courts should define the 'clearly established' right at issue on the basis of the 'specific context' of the case." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014), *quoting Saucier,* 533 U.S. at 201 and *citing Anderson*, 483 U.S. at 640-41; *see also White v. Pauly*, 137 S.Ct. 548, 552 (2017). In considering the "specific context" or "particularized facts" of the case, "officials can still be on notice that their conduct violates established law even in novel factual circumstances," *Hope v. Pelzer,* 536 U.S. 730, 741 (2002), and "the absence of legal precedent addressing an identical factual scenario does not necessarily yield a conclusion that the law is not clearly established". *Johnson v. Newburgh Enlarged Sch. Dist.,* 239

---

police officer"); *Davies v City of Lakewood*, No. 14-cv-01285 (RBJ), 2016 US Dist LEXIS 18355, at *8, n 2 (D Colo Feb. 16, 2016) ("an officer's training is relevant to the reasonableness of his conduct, and admissible").

F.3d 246, 251 (2d Cir. 2001). "Of course, in an obvious case, the[] standards [from a prior case] can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau v Haugen*, 543 US 194, 199 (2004), citing *Hope,* 536 U.S. at 738 as one such "case where the Eighth Amendment violation was 'obvious'"). "'[T]he salient question … is whether the state of the law' at the time of an incident provided 'fair warning' to the defendants 'that their alleged [*conduct*] was unconstitutional.'" *Tolan*, 134 S. Ct. at 1866, *quoting Hope*, 536 U.S. at 741(alteration in original) (emphasis added).

Citing *Tolan*'s "fair warning" as the fundamental touchstone to determining whether government officials are on notice regarding the unconstitutionality of particular duties to act or refrain from acting, the Supreme Court has expressly rejected a requirement that previous cases be "fundamentally similar," holding that even "materially similar" facts are not necessary to a finding that officers were on notice that their conduct would violate clearly established legal duties. *See Hope,* 536 U.S. at 741 (citing and discussing *United States v. Lanier,* 520 U.S. 259, 269-71 (1997) (discussing the "fair warning" standard)).

> In some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful,' *Anderson, supra*, at 640.

*Lanier,* 520 U.S. at 271, *quoted in Hope*, 536 U.S. at 740-41.

As seen below, in March and April of 2012, existing precedent, including caselaw based on facts sufficiently similar to the salient facts in this case, clearly established that Defendants' conduct was unconstitutional, such that every reasonable official with their

training and experience and knowing what they knew at the time would have understood that their conduct was unlawful. Moreover, a reasonable jury could find that there was no "mistake" and that Defendants' conduct was plainly incompetent, and not entitled to the sort of "breathing room" that qualified immunity jurisprudence affords officers who act competently and in good faith.

### A. ON APRIL 16, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANTS RUMBLE'S AND SCHMIDT'S FAILURE TO OBTAIN TIMELY MEDICAL ATTENTION FOR MS. TARDIF AMOUNTED TO INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS

With respect to the relevant April 16, 2012 events, in sum and substance, the evidence will show that that Defendants Rumble and Schmidt were indifferent to Plaintiff's serious medical condition when she experienced an epileptic seizure in the back of prisoner transport wagon in their custody, and they did not provide Plaintiff with prompt medical assistance by waiting at or near the arrest location for an ambulance to arrive, or transporting her directly to a hospital. The evidence will show that the NYPD's policies and practices required that prisoners needing emergency medical treatment in such a life-threatening situation should be transported directly to the nearest hospital. Nevertheless, Defendants Rumble and Schmidt instead transported Ms. Tardif to an NYPD Precinct, as she experienced a seizure. Other arrestees who were in the back of the patrol wagon screamed for help. Ms. Tardif vomited repeatedly, including in her hair. Her head banged against the metal floor of the van, which tore at her face as she seized. Defendants Rumble and Schmidt were feet away. They could see Ms. Tardif and hear the other arrestees screaming for help. When the vehicle arrived at an NYPD Precinct, Defendants Rumble and Schmidt removed Ms. Tardif from the vehicle and placed her in

a holding cell. It was only after Plaintiff had been transported to and lodged at the NYPD Precinct that an ambulance eventually arrived and Plaintiff received medical care.

To prevail on Plaintiff's deliberate indifference to a serious medical condition claim against either Defendant Rumble or Schmidt, Ms. Tardif must prove that: (1) Plaintiff had a serious medical condition; (2) Plaintiff was at risk of harm due to her serious medical condition; (3) the Defendant either knew or should have known of Plaintiff's serious medical condition and need for assistance; (4) the Defendant failed to take reasonable measures to address Plaintiff's medical needs; and (5) Plaintiff was harmed by the Defendant's failure to take reasonable measures to address her medical needs. *See Gersbacher v. City of NY*, No. 1:14-CV-7600 (GHW), 2017 WL 4402538 (S.D.N.Y. Oct. 2, 2017); *see also Tardif v City of NY*, No. 13-CV-4056 (KMW) (KNF), 2017 US Dist LEXIS 18097, at *49 (S.D.N.Y. Feb. 6, 2017) ("A claim for deliberate indifference to the medical needs of a pre-trial detainee in state custody is analyzed under the Fourteenth Amendment, requiring the plaintiff to establish that she 'had a 'serious medical condition'' that 'was met with 'deliberate indifference,'' namely, that the defendant 'knew of and disregarded an excessive risk to [the plaintiff's] health or safety and that [the defendant] was both . . . aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and . . . also drew the inference.' *Caiozzo v. Koreman*, 581 F.3d 63, 72 (2d Cir. 2009) (citations and quotation marks omitted)").

As this Court found in denying Defendants' bid for reconsideration:

> Plaintiff can maintain her deliberate indifference claim … with respect to her April 16, 2012 term of custody. … [M]aterial facts remain in dispute with respect to whether Officers Rumble and Schmidt's decision to not immediately attend to Plaintiff's seizure while effectuating her April 16,

> 2012 arrest amounted to knowing disregard of Plaintiff's health or safety. For example, the parties continue to dispute how and when the officers responded to Plaintiff's seizure, as well as whether Plaintiff's epilepsy was sufficiently serious as to warrant certain medical care. *See* (Pl's Resp. to 56.1 Statement, 61-64 [Doc. No. 160]); (Def. Mem. in Supp, 11 [Doc. No. 165]).
>
> The parties also dispute whether the NYPD Patrol Guide actually required the officers to transport Plaintiff to the nearest hospital directly from her place of arrest, or whether it allowed them to place her in a holding cell briefly, before transporting her to the hospital. (*Cf.* Pl's Mem. in Opp'n, 12-13 [Doc. No. 174] *with* Def Reply, 7-8 [Doc. No. 197]).
>
> Whether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity. *See Smith v. City of New York*, 2015 U.S. Dist. LEXIS 102669, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (Buchwald, J.). ("The [NYPD] Patrol Guide has frequently been accepted as evidence of the standard of care to be exercised by a police officer.").

*Tardif v City of NY*, No. 13 CV 4056 (KMW), 2017 US Dist LEXIS 135607, at *17-19 (S.D.N.Y. Aug. 23, 2017).

Defendants cite no Second Circuit (or any other) authority to support their assertion that Plaintiffs' rights were not "clearly established."

It was clearly established on April 16, 2012 that, when a government agent has custody of a pre-trail detainee who apparently experiences a serious medical condition such as an epileptic seizure, their responsibility is to obtain emergency medical care on an urgent basis. "Courts have repeatedly found that officers are sufficiently aware of a detainee's medical symptoms, for the purposes of the subjective analysis, where the detainee displays obvious signs of distress in the officers' presence." *McConville v Montrym*, No. 3:15-cv-00967 (MAD/DEP), 2016 US Dist LEXIS 75125, at *19 (N.D.N.Y. June 9, 2016) (citing, *inter alia*, *Bradway v Town of Southampton*, 826 F Supp 2d 458, 472 (E.D.N.Y. 2011) ("finding that the officers were aware of detainee's medical

condition where the officers witnessed the detainee's drug consumption, he told the officers of his drug consumption and displayed signs of distress"); *see also Vining v Dept. of Corr.,* 2013 US Dist LEXIS 136195, at *15 (S.D.N.Y. Apr. 5, 2013) ("When a plaintiff alleges deliberate indifference to the need for medical treatment, the critical question with respect to an arresting officer's subjective intent is whether the injury would have appeared 'urgent' to the officer and, if so, whether the officer either denied medical care entirely or 'deliberately ignored that need [for medical care] for an unreasonable period of time'" (citing *Morgan v. County of Nassau*, 720 F. Supp. 2d 229, 239 (E.D.N.Y. 2010) (police denied prompt medical care in face of obvious need to protester who was knocked unconscious by police horse, where need for urgent medical attention was obvious)); *Fera v City of Albany,* 568 F Supp 2d 248, 253-54 (N.D.N.Y. 2008) (taking into account arresting officers' knowledge of trespassing arrestee had just experienced a seizure, and her report that she was about to experience a seizure, in determining that a jury could find that leaving her handcuffed in back of a police wagon, where she experienced a seizure that caused her to lose consciousness, constituted excessive force); *see also Jackson v. Johnson*, 118 F.Supp.2d 278, 291 (N.D.N.Y. 2000) (observing that if government agents detaining youth in facility "thought that [he] was in medical distress, they should have acted upon that perception"), *appeal dismissed in relevant* part, 13 Fed. Appx. 51, 2001 WL 735902 (2d Cir. June 27, 2001).

It was further clearly established on April 16, 2012 that, where a delay in necessary care relates to a serious medical condition that involves "'a condition of urgency, one that may produce death, degeneration or extreme pain'", *see Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted), *cert. denied*, 513 U.S. 1154,

(1995), such as an epileptic seizure, that delay in care can be sufficiently serious to give rise to a deliberate indifference claim.

> [I]t's the particular risk of harm faced by a prisoner due to the challenged deprivation of [or delay in] care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract, that is relevant…. *Chance[v. Armstrong*,] 143 F.3d [698, 702-03 (2d Cir. 1998)]; *cf. Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994) (explaining that the seriousness of a delay in medical treatment may be decided "by reference to the *effect* of delay in treatment. . . . consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay") (emphasis in original).

*Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).

Relatedly, a pre-trial detainee's right to receive prompt and adequate medical attention to treat an ongoing epileptic seizure – an obviously serious medical condition - was clearly established in the Second Circuit well before April 16, 2012. *See, e.g., Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (reversing dismissal of epileptic inmate's claim that denial to access to necessary medication suggested "a legitimate claim of deliberate indifference to a serious medical condition"); *Harrington v Vadlamudi*, No. 9:13-CV-0795 (BKS/DJS), 2016 US Dist LEXIS 105631, at *21-22 (N.D.N.Y. Aug. 9, 2016) ("a seizure condition is a serious medical condition and a failure to respond to an inmate's complaints regarding the possible onset of a seizure may constitute a sufficiently serious deprivation of medical care"); *Youngblood v Johnson*, No. 10-CV-752 (MAD/CFH), 2013 US Dist LEXIS 87820, at *22-3 (N.D.N.Y. Apr. 30, 2013) (recognizing that "[s]eizure conditions, namely epilepsy, constitute a serious medical condition" and holding that, where "Youngblood sought medical attention because he did not feel well" and "suffered a seizure" while he "waited to receive

emergency care" he had satisfied the "objective prong") (citing *Thompson v. Carter*, 284 F.3 at 419 and *Kelly v. Alameda Cnty. Sheriff Dep't*, No. C-96-0309 (EFL), 1996 U.S. Dist. LEXIS 15202, 1996 WL 590597, at *15 (N.D.Cal. Oct. 7, 1996) (Dkt. No. 65-12) ("fail[ing] to respond to plaintiff's statements concerning the possible onset of a seizure could well result in further significant injury or the unnecessary and wanton infliction of pain")); *Boomer v Lanigan*, 00 Civ. 5540 (DLC), 2002 US Dist LEXIS 20514, at *20 (S.D.N.Y. Oct. 24, 2002) (denying qualified immunity because "[i]gnoring requests for medical care made by a prisoner known to be an epileptic may constitute deliberate indifference to serious medical needs, particularly when it is undisputed that the inmate suffered a seizure after making those requests" ); *Boomer v. Lanigan*, 00 CIV. 5540 (DLC), 2001 US Dist LEXIS 20838, at *11 (S.D.N.Y. Dec. 17, 2001) ("Epilepsy, or an epileptic seizure, is a serious medical condition, *see Williams v. MCC Inst.,* 1999 US Dist. LEXIS 3871, No. 97 Civ.5352 (LAP), 1999 WL 179604, at *10 (S.D.N.Y. Mar. 31, 1999)" and "… It was clearly established by September 1999, that prison officials may not be deliberately indifferent to an inmate's serious medical needs" (citing *Estelle v. Gamble,* 429 U.S. 97, 104 (1976)); *accord, Liberta v City of Rome*, No. 6:10-CV-1104 (DNH), 2012 US Dist LEXIS 27007, at *9-10 (N.D.N.Y. Feb. 29, 2012) (denying motion for summary judgment on denial of medical treatment claim where, according to plaintiff, defendants knew she was having an epileptic seizure and needed emergency medical assistance, yet transported her to the police station, and denying qualified immunity "because 'a pretrial detainee's right not to be recklessly denied treatment for a serious medical condition was 'clearly established' at the time these events transpired.' *Mills v. Fenger*, 216 F. App'x 7, 11 (2d Cir. 2006) (summary order) (citing *Liscio v. Warren*, 901

F.2d 274, 276-77 (2d Cir. 1990))" and *Weyant v. Okst,* 101 F.3d 845, 857 (2d Cir. 1996) ("issue of fact precluded summary judgment where detainee was 'pale, dizzy, perspiring profusely, trembling uncontrollably, hardly able to talk, and repeatedly losing consciousness' and officer had been told that detainee was a diabetic in insulin shock").

Also well before April 16, 2012, it was clearly established that even a relatively short delay in providing emergency medical care for a serious medical condition such as the epileptic seizure Ms. Tardif experienced in the custody of Defendants Rumble and Schmidt can give rise to a Fourteenth Amendment violation, particularly given the obviously serious and potentially life-threatening nature of epileptic seizures. *See, e.g., Estelle*, 429 U.S. at 104-05 (intentionally delaying access to medical care can give rise to claim for denial of adequate medical care); *Bilal v White*, 494 F App'x 143, 146 (2d Cir 2012) (Unpublished Opinion) (recognizing deliberate indifference to serious medical need claim can lie where epileptic has seizure during the period of delay or suffered other "consequential injurious effects"); *Demata v NY State Corr. Dep't of Health Servs.*, No. 99-0066, 198 F.3d 233 (table), published in full at 1999 U.S. App. LEXIS 22955, at *4 (2d Cir Sep. 17, 1999) (Unpublished Opinion) (recognizing that delay to treat "life-threatening and fast-degenerating" condition can support deliberate indifference to medical need claim); *Smith v. Carpenter*, 316 F.3d at 185-86 ("it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in "objective terms, sufficiently serious'") (citation omitted); *Chance v. Armstrong,* 154 F.3d 698, 702-03 (2d Cir. 1998) (governmental official's act or failure to act "that evinces 'a conscious disregard of a substantial risk of serious harm'" can "rise to the level of deliberate

indifference") (citation omitted); *Bilal v NY City Dept. of Corr.*, 08 Civ. 6664 (DLC), 2010 US Dist LEXIS 45425, at *6 (S.D.N.Y. May 10, 2010) (shackled epileptic inmate who suffered seizure or seizures while in government transport van stated cognizable deliberate indifference to serious medical condition claim); *Bradway,* 826 F Supp 2d at 475 (denying qualified immunity to officers who transported arrestee who said he had ingested a large quantity of cocaine to precinct rather than directly to local hospital that was 14 minutes away).

In *Bradway,* the Court reasoned that "if the officers knew at the scene that Bradway had just ingested a large quantity of cocaine that would pose a serious or life-threatening danger to his health and/or he was exhibiting clear signs of distress at the scene, it would not have been objectively reasonable to transport him to the police station rather than immediately to the hospital". *Id*. The same, obvious reasoning applies here.

**B. ON APRIL 16, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANTS RUMBLE AND SCHMIDT CREATED UNCONSTITUTIONAL CONDITIONS OF CONFINEMENT IN THE PRISONER TRANSPORT VEHICLE**

This Court has ruled that Plaintiff's conditions of confinement claim is not duplicative of her medical indifference claim. *Tardif v City of NY*, No. 13 CV 4056 (KMW, 2017 US Dist LEXIS 135607, at *19-20 (S.D.N.Y. Aug. 23, 2017). Although both claims include a "deliberate indifference" component, their elements are different.[3]

In connection with Plaintiff's conditions of confinement claim, the evidence will show, in sum and substance, that Defendants Schmidt and Rumble placed Ms. Tardif in a

---

3 On Plaintiff's conditions of confinement-based claim, Plaintiff must prove: (1) Defendant detained Plaintiff; (2) the conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health; (3) Defendant acted with deliberate indifference to those conditions; and (4) Plaintiff was harmed by those conditions. *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (citing cases).

rear, caged area of their prisoner transport vehicle, with her hands cuffed behind her back, without placing her in a seatbelt. There, Ms. Tardif experienced a seizure, causing her to fall to the floor of the van, where her head banged against the metal floor, and she vomited on herself, repeatedly. Defendants simply watched as this occurred mere feet away from them, as other arrestees in the caged area with Ms. Tardif screamed for help.

In this connection, due process requires that pre-trial detainees “receive adequate food, clothing, shelter, and medical care,” and those who detain them must “'take reasonable measures to guarantee the[ir] safety.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *see also Bell v. Wolfish*, 441 U.S. 520, 535 (1976).

> The subjective prong of the deliberate indifference test is satisfied when an official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. at 847. "A risk can be so obvious that a jury may reasonably infer actual knowledge on the part of the defendant[] sufficient to satisfy the subjective component of the deliberate-indifference standard." *Hall v. Bennett*, 379 F.3d 462, 464 (7th Cir. 2004) (citing inter alia *Farmer*, 511 U.S. at 842). Common sense is relevant to deciding the obviousness of the risk. *See Fruit v. Norris*, 905 F.2d 1147, 1150-51 (8th Cir. 1990), *cited in Hall*, 379 F.3d at 465.

*Flemming v Kelsh*, No. 9:13-CV-758 (LEK/ATB), 2016 US Dist LEXIS 47218, at *25-26 (N.D.N.Y. Apr. 5, 2016); *see also Cuffee v City of NY*, 2017 US Dist LEXIS 44552, at *15 (S.D.N.Y. Mar. 27, 2017) (defendant who drove at recklessly excessive speed with detainee shackled and handcuffed in a cage such that they could not otherwise protect themselves “could rise to the level of deliberate indifference to an excessive risk to that detainee's safety”); *Cuffee v City of NY,* No. 15cv8916 (PGG) (DF), 2017 US Dist LEXIS 31604, at *21-22 (S.D.N.Y. Mar. 3, 2017) (“Moreover, given that Officer Gonzalez was the driver of the bus and that Plaintiff was seated right behind him, it is reasonable to

infer that Officer Gonzalez was either actually aware of the excessive risk to Plaintiff's safety or that the risk was obvious").

With respect to the fact that Defendants Schmidt and Rumble allowed Plaintiff to vomit on herself repeatedly, and languish in her own vomit, while in the back of the transport wagon, "[n]ot surprisingly, human waste has been considered particularly offensive so that 'courts have been especially cautious about condoning conditions that include an inmate's proximity to it.'" *McBride v. Deer,* 240 F.3d 1287, 1291-92 (10th Cir. 2001) (quoting *Fruit v. Norris,* 905 F.2d at 1150-51 (in which "common sense" made the health danger involved in "unprotected contact with human waste" for ten minutes obvious)). "Exposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the eighth amendment." *Brooks v. Warden*, 800 F.3d 1295, 2015 WL 5157339, at *7 (11th Cir. 2015) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).

In this connection, Second Circuit precedent is "clear that unsanitary conditions of confinement must be assessed according to two components, severity and duration, on a case-by-case basis." *Darnell*, 849 F.3d at 28-29, *citing Willey v. Kirkpatrick*, 801 F.3d 51, 68 (2d Cir. 2015). There is no "minimum duration" or "minimum severity"; nor is any injury required. *Willey*, 801 F.3d at 66-68; *Darnell*, 849 F.3d at 30-31. And relatedly, "[s]ome conditions of confinement may establish a[]… violation 'in combination' when each would not do so alone…. when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 U.S. 294, 304 (1991); *accord, Darnell*, 849 F.3d at 31-32 ("any condition of confinement can mutually

enforce another, so long as those conditions lead to the same deprivation….[T]he conditions must be analyzed in combination, not in isolation, at least where one alleged deprivation has bearing on another”).

Thus, although "the failure of prison officials to provide inmates with seatbelts [is] not, without more, . . . 'sufficiently serious' to constitute a[] [constitutional] violation," *Jabbar v. Fischer*, 683 F.3d 54, 58 (2d Cir. 2012) (quoting *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001)), combined with other factors, such as pulling into traffic at a high rate of speed while a prisoner was handcuffed and shackled and confined in a small, locked cage, “without any reasonable means to protect himself from impact”, may be objectively serious enough to give rise to a conditions of confinement claim, *Cuffee v City of NY*, 2017 US Dist LEXIS 44552, at *13-14 (S.D.N.Y. Mar. 27, 2017); *accord, Darnell*, 849 F.3d at 31 (citing *Jabbar*, 683 .3d at 57); *see also, e.g., Edwards v David*, No. 15-cv-9086, 2017 US Dist LEXIS 94515, at *16, n 5 (ND Ill June 20, 2017) (collecting “restraint and reckless driving” cases).

Against that backdrop, Defendants Schmit and Rumble were on notice on April 16, 2012 that, considered together, the conditions of Plaintiff’s confinement created unreasonable risks to Plaintiff’s health.

### C. ON MARCH 21, 2012, IT WAS CLEARLY ESTABLISHED THAT DEFENDANT MCMANUS’S CONDUCT IN SHOVING PLAINTIFF OFF OF HER CRUTCHES WAS AN UNREASONABLE AND EXCESSIVE USE OF FORCE

With respect to Plaintiff’s Fourteenth-Amendment-based excessive force claim against Defendant McManus arising from his shoving her off of her crutches on March 21, 2012, the evidence will show that Defendant McManus stepped out of a line of officers, approached Ms. Tardif, and shoved her off her crutches without justification,

sending her tumbling backward and causing her buttocks to strike the ground as another protesters partially caught her and broker her fall.

"Given the fact-specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable fact-finder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford,* 361 F.3d 113, 123 (2d Cir. 2004) (Sotomayor, J.).

It is thus usually appropriate to "leave[] the factual determination of excessiveness to a jury, whose collective common sense, informed by their life experiences, may well exceed that of all the members of this panel". *Brown v. City of New York,* 798 F.3d at 103.

As this Court held,

> Because a reasonable jury could find that Defendant McManus's use of force on the Plaintiff was "objectively unreasonable in light of the facts and circumstances confronting [him]," *Caravalho v. City of New York*, 2016 U.S. Dist. LEXIS 44280, 2016 WL 1274575 at *9 (quoting *Graham v. Connor*, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (Castel, J.)), the Court declines to dismisses Plaintiff's excessive force claim against Sergeant McManus.

*Tardif v City of NY*, No. 13 CV 4056 (KMW), 2017 US Dist LEXIS 41318, at *7 (S.D.N.Y. Mar. 21, 2017); *see also Tardif v City of NY*, No. 13 CV 4056 (KMW), 2017 US Dist LEXIS 135607, at *15-16 (S.D.N.Y. Aug. 23, 2017) (citing and collecting Fourteenth Amendment-based excessive force cases involving pushes and punches).

This Court cited and relied on Second Circuit precedent in denying Defendants' reconsideration motion as to this claim, including *Tierney v. Davidson*, 133 F.3d 189, 199 (2d Cir. 1998) (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973) (Friendly, C.J.), *cert. denied*, 414 U.S. 1033 (1973) (discussed below). *Tardif v City of NY*, No. 13

CV 4056 (KMW), 2017 US Dist LEXIS 135607, at *15 (S.D.N.Y. Aug. 23, 2017). This Court's decision, and the weight of authority, are on Plaintiff's side. Defendants cite no Second Circuit (or any other) authority to support their assertion that Plaintiffs' rights were not "clearly established." The focus at pp. 12-14 of Ds' Br. on Fourth Amendment excessive force cases holding that pushes and shoves are nothing less than an attempted end run around this Court's orders denying their bids to dismiss Plaintiff's Fourteenth Amendment-based excessive force claim against Defendant McManus, and this Court should reject them as such.

On March 21, 2012, Ms. Tardif's Fourteenth Amendment-based right to be free from excessive force in the form of Defendant McManus's shove was clearly established because caselaw put Defendant McManus on notice that the shove was an objectively unreasonable application of force under the circumstances. The Fourteenth Amendment protects against the government's unreasonable interference with a person's bodily integrity. *Rochin v. California,* 342 U.S. 165, 172 (1952) (police attempting to force a suspect's mouth open and forcing a suspect to endure stomach-pumping shocked the conscience). "[A]pplication of undue force by law enforcement officers deprives a suspect of liberty without due process of law." *Johnson v. Glick*, 481 F.2d at 1032, partially abrogated on other grounds by *Graham v. Connor*, 490 U.S. 386 (1989).

To prevail on a Fourteenth Amendment-based excessive force claim, a plaintiff must prove that the force used was objectively unreasonable under the circumstances. *Kingsley v. Hendrickson*, 135 S. Ct. 2466 (2015). Objective reasonableness

> turns on the "facts and circumstances of each particular case." *Graham* v. *Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). A court must make this determination from the perspective of a reasonable

> officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight.

*Kingsley v Hendrickson*, ___US___ , ___, 135 S Ct 2466, 2473 (2015). The Supreme Court "has "stressed that a court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer." *Id.* at 2474.

In this connection, although Defendants argue (again) that the Fourteenth Amendment standard is "more stringent" than the Fourth Amendment standard, as *Kingsley* makes clear, and as Plaintiff argued the last several times Defendants made the same failed arguments, that is not so. Objective reasonableness is the touchstone of both *Graham* and *Kingsley*. And beyond that, whether "force is applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" – a factor Defendants rely on in painting the Fourteenth Amendment as "more stringent" - is not a factor to be considered post-*Kingsley*; and certainly not in a non-seizure, non-prisoner context.

In order to be considered constitutionally "excessive," the force used must have been intentional, as opposed to merely negligent, and it must have amounted to "an abuse of power [that] shock[s] the conscience in a constitutional sense." *Ali v Szabo*, 81 F Supp 2d 447, 454-455 (S.D.N.Y. 1999) (citing cases). Defendants say that the shocks the conscience standard is "more stringent" than the Fourth Amendment objective reasonableness standard articulated in *Graham* and discussed in *Kingsley*. However, as seen below, outside of a pre-trial or post-conviction detention in a jail or prison, particularly post-*Kingsley*, the amorphous "shocks the conscience" language[4] has given

---

4 The '"shocks-the-conscience' test has been labeled 'admittedly imprecise,' 'virtually standardless,' somewhat amorphous, and laden with subjective assessments.

way to an "objective reasonableness" standard, and making out a Fourteenth Amendment-based excessive force claim where the use of force occurs outside the context of a detention or arrest is not the nearly insurmountable burden Defendants make it out to be at pp. 12-14 of Ds' Br. "Since the 'rules of due process are not . . . subject to mechanical application,' the concept of 'conscience shocking,' varies according to the different environments in which the alleged excessive force occurs." *Ali v Szabo*, 81 F Supp 2d at 455, quoting *County of Sacramento v. Lewis*, 118 S. Ct. 1078, 1718-19 (1998).

The test factored prominently in the Second Circuit's seminal 1973 decision in *Johnson v. Glick*. There, given the pre-trial (as opposed to post-conviction) environment in which the prison official's alleged conduct occurred, the Second Circuit did not apply the Eighth Amendment's heightened "cruel and unusual punishment" standard, appropriate in the cases convicted criminals, but rather the Fourteenth Amendment's substantive due process-based prohibition on the "application of undue force by law enforcement officers [that] deprives a suspect of liberty without due process of law", which applies equally to a person who is suspected of a crime, but out on bail. *See Johnson v. Glick*, 481 F.3d at 1030-32. Utilizing the "shocks the conscience" standard announced in the Supreme Court's 1952 *Rochin* decision at 342 U.S. at 172 to "at least poin[t] the way," the Court articulated four factors to be considered in the case of a pre-trial detainee:

---

Descriptions of what actions qualify as conscience-shocking often descend into a morass of adjectives that are as nebulous as they are pejorative, including truly irrational, extreme and egregious, truly outrageous, uncivilized, and intolerable, and stunning." *See Gonzalez-Fuentes v. Molina,* 607 F.3d 864, 880 (1st Cir. 2010) (internal citations omitted).

> The management by a few guards of large numbers of prisoners, not usually the most gentle or tractable of men and women, may require and justify the occasional use of a degree of intentional force. Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights. In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.

*Johnson v. Glick*, 481 F.3d at 1033; *compare with Graham v. Connor,* 490 U.S. at 396-97 (where there is a seizure or an arrest, the Fourth Amendment applies; determining whether an officer's uses of force was objectively reasonable involves undertaking a fact-intensive inquiry considering the totality of the circumstances of the particular case, in which courts look to factors including, but not limited to, the severity of the crime or offense, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to flee).

The key holding in *Kingsley* is that "a defendant's state of mind is not a matter that a plaintiff is required to prove" in a Fourteenth Amendment excessive force case, 135 S.Ct. at 2472, because "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable," *id*. at 2473. Objective reasonableness is a standard that cannot be applied mechanically. *Id., citing County of Sacramento v. Lewis,* 523 U.S. 833, 850 (1998). "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" 135 S.Ct. at 2483, *quoting Graham*, 490 U.S. at 396. The objective reasonableness standard articulated in *Kingsley* is "consistent with" the Court's "use of an objective 'excessive force' standard where

officers apply force to a person who, like Kingsley, has been accused, but not convicted of a crime, but who, unlike Kingsley, is free on bail." 135 S.Ct. at 2483, citing *Graham*.

*Kingsley* makes clear that "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm" is not to be considered in determining whether a particular use of force was "objectively unreasonable." *Kingsley* recognized that the pre-trial detention-based concerns that animated the Second Circuit in *Johnson v. Glick* to identify that factor were tied to interests specific to in the pretrial detention environment, which are not in play when a use of force is challenged in a non-seizure, non-detention context. *See, e.g., Kingsley*, 135 S. Ct. at 2473 (in the jail environment, "[a] court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in the[] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security'") (quoting *Bell v. Wolfish*, 441 U.S. at 540.

The *Kingsley* Court explicitly rejected the argument "that the plaintiff must prove that the use of force was not 'applied in a good-faith effort to maintain or restore discipline' but, rather, was applied 'maliciously and sadistically to cause harm" in favor of an "objective reasonableness" standard. 135 S.Ct. at 2474-76. *Kingsley* further rejected the view that "malicious and sadistic purpose to cause harm" factor was "a *necessary* condition for liability" in the first place. 135 S.Ct. at 2476 (emphasis in original); *see also id.* at 2469 ("in *Johnson v. Glick*, 481 F.2d 1028 (2d Cir), a malicious-and-sadistic-purpose-to-cause-harm factor was not suggested as a *necessary* condition for liability, but

as a factor, among others, that might help show that the use of force was excessive") (emphasis in original).

Omitting the "malicious and sadistic purpose to cause harm" factor entirely, the *Kingsley* Court offered the following non-exclusive list of factors "to illustrate the types of objective circumstances potentially relevant to a determination of excessive force" in a prison facility:

> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

135 S.Ct. at 2473 (citing *Graham*, 490 U.S. at 396).

According to the *Kinglsey* Court, "objective reasonableness" has long been the standard in considering Fourteenth Amendment-based excessive force claims. That fact is borne out in the cases themselves. Between *Johnson v. Glick* in 1972 and *Kingsley* in 2015, the Second Circuit, and District Courts, have repeatedly applied Fourteenth Amendment due process principles in "non-seizure, non-prisoner" contexts, such that Defendant McManus was on notice that shoving Ms. Tardif was objectively unreasonable on March 21, 2012. *See, e.g., Tardif v City of NY*, No. 13 CV 4056 (KMW), 2017 US Dist LEXIS 135607, at *15-16 (collecting District Court cases).

For example, in 1995, the Second Circuit first "held that individuals possess a Fourteenth Amendment substantive due process right 'in the non-seizure, non-prisoner context' to be free from excessive force employed by government actors acting under color of government authority." *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d at 253, citing and discussing *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995). Two

years later, in *Robinson v. Via*, 821 F.2d 913 (2d Cir. 1987), the Court said that where the allegations were that a government official "'pushed [the plaintiff] against the inside of the door of her car, 'yanked' her out, 'threw [her] up against the fender,' and 'twisted [her] arm behind [her] back'" without arresting her, and in the face of conflicting credibility determinations and versions of events to be decided by the jury, Robinson's Fourteenth Amendment-based excessive force claim should have survived summary judgment, re-emphasizing the principle that "[t]he intentional use of excessive force by a public official violates constitutionally created substantive due process rights." *Robinson*, 821 F.2d at 923-25 (citing *Rochin*, 342 U.S. at 172; *Johnson v. Glick*, 481 F.2d at 1032). Then, applying Fourteenth Amendment due process principles to the non-seizure, non-prisoner context at issue in *Tierney v. Davidson,* 133 F.3d at 199, the Second Circuit held that it was "de minimis, necessary, appropriate, and benign" when a defendant hit the plaintiff with the baton after she joined and physically participated in an ongoing physical struggle between the police and her son, and another officer grabbed her arm to stop her from following her arrested son outside. Next, in *Johnson v. Newburgh Enlarged School Dist.*, 239 F.3d 246 (2d Cir. 2001), the Second Circuit considered an attack in which a public school teacher dragged, choked, and punched a minor student, causing the student to suffer head trauma, lacerations, and bruising, requiring hospital treatment, as well as emotional injuries, determining that the right to be free from being subjected to unreasonable force by a government official such as a school teacher had been clearly established in this Court's 1995 *Rodriguez* decision. This Court explained that "[t]his right to be free from excessive force is an across-the-board constraint on all government officials." *Johnson v. Newburgh*, 239 F.3d at 253.

As mentioned above, in addition to the Second Circuit cases discussed above, and other Circuit Court caselaw, United States District Court decisions within this Circuit have consistently upheld Fourteenth Amendment-based excessive force claims in the non-seizure, non-detention context, which are predicated on police pushes or shoves, including this Court's own decision at *Tardif v City of NY*, No. 13 CV 4056 (KMW), 2017 US Dist LEXIS 135607, at *15-16 (collecting cases).

Based on the foregoing, and other caselaw, Defendant McManus was on sufficient notice that his shoving Ms. Tardif off her crutches was an excessive use of force under the circumstances.

## CONCLUSION

**WHEREFORE**, Plaintiff respectfully prays that the Court will deny Defendants' qualified immunity-based affirmative defenses.

DATED: Brooklyn, NY
February 6, 2018

/S/

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) (646) 263-3495

Community Legal Assistance Corp.
Stefan H. Krieger (SK1748)
Theo Liebmann
108 Hofstra University
Joan F. Axinn Hall
Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463-6078