UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

MARY M. TARDIF,

                                       Plaintiff,

                 -against-                           13 Civ. 4056 (KMW)(KNF)

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY
INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES
MCNAMARA, POLICE OFFICER ALENA AMINOVA,
POLICE OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT,
DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS
##1-9,

                                    Defendants.

-------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    Brachah Goykadosh
        *Assistant Corporation Counsel*
        Special Federal Litigation Division
        (212) 356-3523

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................. ii

TABLE OF AUTHORITIES ........................................................................... iv

PRELIMINARY STATEMENT ...................................................................... 2

ARGUMENT .................................................................................................. 2

POINT I ......................................................................................... 2

THE COURT SHOULD NOT PRECLUDE
EVIDENCE OF PLAINTIFF'S MENTAL
HEALTH HISTORY ....................................................................... 2

POINT II ........................................................................................ 3

THE COURT SHOULD NOT PRECLUDE
EVIDENCE OF PLAINTIFF'S DRUG USE ................................... 3

POINT III ....................................................................................... 4

THE COURT SHOULD NOT TAKE
JUDICIAL NOTICE OF THE DIMENSIONS
OF PAVING STONES .................................................................... 4

POINT IV ....................................................................................... 6

THE COURT SHOULD ALLOW A MEMBER
OF NYPD COMMUNICATIONS DIVISION
TO TESTIFY .................................................................................. 6

POINT V ......................................................................................... 9

THE COURT SHOULD NOT COMPEL
DEFENDANTS TO STIPULATE TO
PLAINTIFF'S LIST OF "FACTS" ................................................. 9

POINT VI ............................................................................................. 13

THE COURT SHOULD NOT COMPEL
DEFENDANTS TO REFER TO PLAINTIFF'S
WITNESSES—WHEN REFERRING TO
PLAINTIFF'S WITNESSES IN 2012—BY
THEIR CURRENT NAMES AND
PRONOUNS ........................................................................................ 13

POINT VII............................................................................................ 14

THE COURT SHOULD NOT ALLOW
PLAINTIFF TO USE THE TRIAL DIRECTOR
SOFTWARE ........................................................................................ 14

CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Berger v. Brannan,
  172 F.2d 241 (10th Cir. 1949) ...................................................................................10

Matter of Birney v. N.Y.C. Dep't of Health & Mental Hygiene,
  2012 NY Slip Op 50520(U), 34 Misc. 3d 1243(A), 950 N.Y.S.2d 607 (Sup.
  Ct.) .......................................................................................................................14

Bynum v. Metro. Transp. Auth.,
  No. 01-cv-7945 (CLP), 2006 U.S. Dist. LEXIS 98617 (E.D.N.Y. Nov. 21,
  2006) ......................................................................................................................6

Cabrera v. Schafer,
  178 F. Supp. 3d 69 (E.D.N.Y. 2016) ..........................................................................4

Canadian St. Regis Bank of Mohawk Indians v. New York,
  No. 5:82-CV-0783, 2013 U.S. Dist. LEXIS 112860 (N.D.N.Y. July 23, 2013) .....................4

Castro v. City of New York,
  No. 06-CV-2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723 (E.D.N.Y.
  Aug. 10, 2009) .........................................................................................................7

Demirovic v. Ortega,
  No. 15-cv-327 (CLP), 2017 U.S. Dist. LEXIS 170206 (E.D.N.Y. Oct. 13,
  2017) ......................................................................................................................9

Effie Film, LLC v. Pomerance,
  909 F. Supp. 2d 273 (S.D.N.Y. 2012)..........................................................................4

Glidepath Holding v. Spherion Corp.,
  590 F. Supp. 2d 435 (S.D.N.Y. 2007)........................................................................10

Holcomb v. Aetna Life Ins. Co.,
  255 F.2d 577 (10th Cir. 1958) ..................................................................................10

Lebada v. N.Y.C. Dep't of Educ.,
  No. 14 Civ. 758 (LAK) (GWG), 2016 U.S. Dist. LEXIS 18461 (S.D.N.Y.
  Feb. 8, 2016) ...........................................................................................................9

Nibbs v. Goulart,
  822 F. Supp. 2d 339 (S.D.N.Y. 2011)..........................................................................3

iv

Outman v. Waldron,
    No. 9:14-CV-540, 2016 U.S. Dist. LEXIS 110412 (N.D.N.Y. Aug. 19, 2016) ..................... 14

Patterson v. Balsamico,
    440 F.3d 104 (2d Cir. 2006) ......................................................................................................... 7

Triola v. Snow,
    No. 01-cv-1603, 2006 U.S. Dist. LEXIS 13146 (E.D.N.Y. Mar. 15, 2006) ............................. 6

United States v. Bethlehem Steel Corp.,
    157 F. Supp. 877 (S.D.N.Y. 1958) ........................................................................................... 11

Vasconcellos v. City of New York,
    12 Civ. 8445, 2015 U.S. Dist. LEXIS 121572 (S.D.N.Y. Sept. 9, 2015) ......................... 12, 13

Weinrib v. Winthrop-University Hosp.,
    No. 14-cv-953 (JFB) (AKT), 2016 U.S. Dist. LEXIS 37102 (E.D.N.Y. Mar.
    22, 2016) ................................................................................................................................... 10

## Other Authorities

Fed. R. Civ. P. 16 ............................................................................................................................ 8, 10

Fed. R. Civ. P. 26 ............................................................................................................................ 6, 7

Fed. R. Civ. P. 37 .............................................................................................................................. 6

Fed. R. Evid. 201 .............................................................................................................................. 4

Fed. R. Evid. 403 .............................................................................................................................. 5

Fed. R. Evid. 611 ............................................................................................................................ 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

MARY M. TARDIF,

                                            Plaintiff,

                    -against-                                    13 Civ. 4056 (KMW)(KNF)

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY
INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES
MCNAMARA, POLICE OFFICER ALENA AMINOVA,
POLICE OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT,
DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS
##1-9,

                                            Defendants.

-------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTIONS *IN LIMINE*

      Plaintiff initiated this civil rights action in 2013.  After a nearly half-decade, trial looms

in this matter.  Out of the litany of civil rights violations that plaintiff Mary Tardif claims she

suffered, only two remain for a jury to consider.  Despite the narrowness of the remaining claims,

the defenses available are broad.  In her motions *in limine*, plaintiff attempts to chip away at

those defenses by asking the Court withhold from the jury relevant information.  (See Plaintiff's

Memorandum of Law in Support of her Motions *In Limine* (hereinafter "Pl. Mem.").  Should the

Court grant plaintiff's motions *in limine*, what will be presented to the jury is not a story

but a snapshot. Moreover, although plaintiff fashions her submission to the Court as seeking *in

limine* relief, this label is not accurate.  Plaintiff asks for rulings beyond evidence.  She also asks

that the Court judicially notice irrelevant and potentially cumulative information and that the

Court compel defendants to stipulate to what plaintiff characterizes as "uncontested facts," which would ultimately minimize the important role live testimony plays at trial.

For the reasons described herein, plaintiff's motions *in limine* should be denied.

## PRELIMINARY STATEMENT

Defendants submit this memorandum of law in opposition to plaintiff's motions *in limine*, arguing herein that the Court:  (1) should not preclude evidence of plaintiff's mental health history; (2) should not preclude evidence of plaintiff's "recreational" drug use; (3) should not take judicial notice of the dimensions of paving stones; (4) should allow a member of the New York City Police Department Communications division to testify about the contents of the SPRINT Report; (5) should not compel defendants to stipulate to plaintiff's list of facts; (6) should not compel defendants to refer to plaintiff's witnesses—when referring to plaintiff's witnesses' actions, appearance, and gender in 2012—by their current names and female pronouns; and (7) should not allow plaintiff to use the Trial Director software.

## ARGUMENT

### POINT I

### THE COURT SHOULD NOT PRECLUDE EVIDENCE OF PLAINTIFF'S MENTAL HEALTH HISTORY

Defendants at this time do not anticipate cross-examining plaintiff on her ███████ ████████████████████████████████████████████████████████.  However, as plaintiff is seeking compensation for emotional damages, she may open the door to this line of examination.  Moreover, plaintiff wishes to shut off an entire avenue of cross-examination by stipulating to a "fact"—that she had PTSD prior to this incident.  Plaintiff fails to explain why a stipulation is the most appropriate trial action.  As discussed *infra* at Point V, defendants should not be required to stipulate to any purported "fact."  Finally, defendants respectfully refer the

Court to defendants' opposition to plaintiff's <u>Daubert</u> motion for why plaintiff's motion should be denied and defendants' expert should be permitted to testify.

**POINT II**

**THE COURT SHOULD NOT PRECLUDE
<u>EVIDENCE OF PLAINTIFF'S DRUG USE</u>**

Plaintiff argues that evidence of her "recreational" drug use should be precluded because "[n]o evidence has been produced [to support that plaintiff] was under the influence of any illegal drugs at the time of the challenged incidents." (Pl. Mem. at 7).

In support of this argument, plaintiff cites to one non-binding case, <u>Nibbs v. Goulart</u>, 822 F. Supp. 2d 339 (S.D.N.Y. 2011). <u>Nibbs</u> is distinct from this instant matter. First, in <u>Nibbs</u>, the plaintiff was only claiming "injuries resulting from loss of his constitutional rights." <u>Id.</u> at 346. Here, plaintiff is claiming psychological injuries. Her ███████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████ followed by her post-traumatic stress disorder diagnosis in 2012, are part of one narrative. In essence, the April 16, 2012 incident cannot and should not be extrapolated from both plaintiff's mental health history and her ████ ████. Second, in <u>Nibbs</u>, there was "no expert testimony or evidence to substantiate any purported relevance of his drug use to Nibbs's damages claim." <u>Id.</u> But here, defendants' expert *has* considered plaintiff's ██████████████████ in reaching certain conclusions.

In sum, any introduction of plaintiff's ██████ relates to her claim of PTSD and is relevant and should not be precluded.

3

**POINT III**

**THE COURT SHOULD NOT TAKE JUDICIAL NOTICE OF THE DIMENSIONS OF PAVING STONES**

Plaintiff requests that the Court take judicial notice and also instruct the jury that the paving stones shown in her exhibit are a certain size.  The Court should deny this request.

"The list of facts judicially noticed in federal courts is long, diverse, educational, and, at times, improbable." Effie Film, LLC v. Pomerance, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012) (citing cases).  Under Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of any "adjudicative fact" that: "(1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). "In a civil case, once the court takes judicial notice of adjudicative facts under Rule 201(c), 'there is to be no evidence before the jury in disproof,' and '[t]he judge instructs the jury to take judicially noticed facts as established.'" Cabrera v. Schafer, 178 F. Supp. 3d 69, 72 (E.D.N.Y. 2016), quoting Fed. R. Evid. 201, Advisory Committee Note G.  "Accordingly, '[b]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b).'" Cabrera, 178 F. Supp. 3d 69, quoting Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc., 146 F.3d 66, 70 (2d Cir. 1998); see also Ellis v. Harpercollins Publrs., Inc., 99 Civ. 12123 (DLC), 2000 U.S. Dist. LEXIS 8598, at *7 n.6 (S.D.N.Y. June 21, 2000) (citation omitted); Canadian St. Regis Bank of Mohawk Indians v. New York, No. 5:82-CV-0783, 2013 U.S. Dist. LEXIS 112860, at *44 (N.D.N.Y. July 23, 2013) ("With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly

4

based, and no reason to depart from it is apparent") (quoting Fed. R. Evid. 201, Advisory Committee Note B))."

First, the authenticity and accuracy of the Exhibit 31 has not yet been established.  Thus, plaintiff's request for a jury instruction regarding the size of paving stones in an unauthenticated document is premature and attenuated, at best.

Second, plaintiff conclusorily asserts that "these regulations will help the jury determine the distance between Sergeant McManus and [p]laintiff[.]"  (Pl. Mem. at 8).  It is unclear why this will help the jury in any determination; any instruction about the size of paving stones to "determine the distance" between defendant McManus and plaintiff encourages the jury to engage in speculation, confuse the issues, and misleads the jury.  Specifically, even if the photo is authenticated, plaintiff is obscured in the photo.  In the photo, one can see one crutch, a hand, but that is it.[1]  The photo is a snapshot, not a video.  It is a moment frozen in time.  It does not demonstrate what happened before or after, or even everything that was happening in that second as plaintiff is not visible and the photo is blurry.  Any potential determination based on the size of the paving stones in the photograph fails to account for the fact that we cannot see plaintiff and that the parties in the photograph may have been moving before the photo was taken.  Thus, any judicial notice and subsequent instruction about the size of the paving stones to the jury does nothing but mislead the jury and confuse issues.  See FED. R. EVID. 403.  It should therefore be precluded.

---

[1] Upon information and belief, the two other women in the photo, one with her back to the camera and her hair in a bun and the other wearing a light-blue hat are not plaintiff.

**POINT IV**

**THE COURT SHOULD ALLOW A MEMBER OF NYPD COMMUNICATIONS DIVISION TO TESTIFY**

Plaintiff argues that defendants should be precluded from calling as a witness a member of the New York City Communications Division who will testify as to the contents of the SPRINT Report.[2] Plaintiff's arguments fail as plaintiff will not be prejudiced by having to meet the testimony of this witness.[3]

Rule 26 of the Federal Rules of Civil Procedure mandates that a party disclose the identity of witnesses and the subject of the discoverable information. See FED. R. CIV. P. 26. "The Rule also contains a duty to supplement discovery responses if it later becomes known that a response is incorrect or incomplete, unless the information has otherwise been made known to the party during the discovery process." Bynum v. Metro. Transp. Auth., No. 01-cv-7945 (CLP), 2006 U.S. Dist. LEXIS 98617, at *4 (E.D.N.Y. Nov. 21, 2006), citing FED. R. CIV. P. 26. A party that fails to amend a previous response is "not permitted to use such information as evidence, unless there is substantial justification provided for the failure and such failure is harmless." Bynum, citing FED. R. CIV. P. 37(c)(1); Triola v. Snow, No. 01-cv-1603, 2006 U.S. Dist. LEXIS 13146 (E.D.N.Y. Mar. 15, 2006) (noting that "Rule 37 specifically identifies preclusion as a possible sanction where a party offers no substantial justification for late disclosure"). In determining whether a witness should be precluded, the Court should consider: "(1) the party's explanation for the failure to comply; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to

---

[2] The SPRINT Report is listed on the proposed Joint Pre-Trial Order as defendants' Exhibit "B."

[3] Plaintiff cites to one case from Wisconsin from nearly 15 years ago in support of her argument.

prepare to meet the new testimony; and (4) the possibility of a continuance." See Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006).

In essence, plaintiff wishes to place form over substance. Here, the four factors proscribed by the Second Circuit weigh in favor of allowing this witness's testimony. First, although defendants concede that there is no explanation for their failure to disclose this witness,[4] there is no grave injustice done by this omission as this witness is not an "individual with discoverable information" about the salient facts of the case. See FED. R. CIV. P. 26(a)(1)(A)(i). Indeed, this witness will only function as a voice to explain a New York City Police Department document, the SPRINT Report, which was properly disclosed. Nothing more.

Second, this witness's testimony is important. The witness will guide the jury through the contents of the SPRINT Report. Without this witness, the jury may not be able to understand the contents of the SPRINT Report. This witness will ensure that any juror confusion is avoided. Indeed, the events of April 16, 2012 concern the lawfulness of defendants' actions in summoning an ambulance to meet plaintiff and defendants at the precinct. Thus, a witness to explain the contents of the SPRINT Report memorializing defendants' actions, is integral to advancing justice in this matter.

Third, plaintiff will suffer no prejudice by having to prepare to meet this witness's testimony. Indeed, although it is defendants' burden and not plaintiff's to demonstrate lack of prejudice, Castro v. City of New York, No. 06-CV-2253 (KAM) (RER), 2009 U.S. Dist. LEXIS 69723, at *15 (E.D.N.Y. Aug. 10, 2009) ("[t]he burden to prove . . . harmlessness rests with the party who has failed to disclose information"), plaintiff fails to even allude to, let alone

---

[4] The undersigned was not assigned to this matter until May 2017. (See Docket Entry No. 194).

articulate, any harm at all in her moving papers.[5]  That is because there is none.  Plaintiff already knows what this witness will testify to: the contents of the SPRINT Report.  The testimony will be limited to only that.  There is no "prejudice" that plaintiff will "suffer" as there in essence no new testimony that plaintiff will have to meet; plaintiff has been familiar with the contents of the SPRINT Report since it was disclosed on November 1, 2013.  This witness does not have information that plaintiff did not previously know.  This witness will not bring to light any facts that plaintiff could not have known without this witness.  This witness does not offer any personal knowledge or narrative about the facts of this case, does not profess any expert or scientific opinion about the facts of this case; this witness will just explain the SPRINT Report. This is helpful to everyone—the jury, the Court, defendants, and even plaintiff.  In fact, as plaintiff has included the SPRINT Report as one of her exhibits too,[6] she may actually benefit from this witness.  Her resistance to the inclusion of this witness indicates an effort to keep the jury in the dark about a crucial piece of evidence.

Furthermore, in an effort to avoid any potential harm, defendants offered to make this witness available for a deposition shortly after including the witness on the proposed Joint Pre-Trial Order.  When preparing the proposed Joint Pre-Trial Order in November 2017, plaintiff objected to defendants' inclusion of this witness on the proposed Joint Pre-Trial Order.  At that point, defendants offered to make this witness available for a deposition so that plaintiff could learn exactly what this witness may testify to.  Plaintiff declined to accept this offer and threatened to seek attorneys' fees for her motion to preclude defendants from calling this

---

[5] Unfortunately, plaintiff's only reason appears to be that because the Court denied her motion to amend the Second Amended Complaint under Rule 16, the Court should therefore grant plaintiff's motion to preclude.  This argument is unavailing.

[6] In plaintiff's exhibits list on the proposed Joint Pre-Trial Order she includes Exhibit "37," which bears the Bates stamp numbers for the SPRINT Report, although plaintiff does not identify it as that.

individual.  Therefore, even if there was something additional to learn, plaintiff had the opportunity to learn it but chose not to.

Fourth and finally, a continuance is not a reasonable possibility.  After a long litigation, we are on the eve of trial.  Reopening discovery, which closed long ago, would be disruptive for all involved in this litigation.  Demirovic v. Ortega, No. 15-cv-327 (CLP), 2017 U.S. Dist. LEXIS 170206, at *28 (E.D.N.Y. Oct. 13, 2017).  See also Lebada v. N.Y.C. Dep't of Educ., No. 14 Civ. 758 (LAK) (GWG), 2016 U.S. Dist. LEXIS 18461, at *22 (S.D.N.Y. Feb. 8, 2016).  But nor is there any need for a continuance or to reopen discovery.  As described *supra*, plaintiff will not be harmed by this testimony; she already knows what this witness will testify to.

Thus, the Court should allow defendants to call a member of the New York City Police Department Communications Division to explain the contents of the SPRINT Report, which plaintiff has had in her in possession and has known the contents of since November 1, 2013.

## POINT V

### THE COURT SHOULD NOT COMPEL DEFENDANTS TO STIPULATE TO PLAINTIFF'S LIST OF "FACTS"

Plaintiff asks the Court to compel defendants to stipulate to 33 discrete facts, claiming that this stipulation will "not only […] expedite the trial but will improve the quality of the trial." (Pl. Mem. at 12).  Plaintiff's overreaching statement is conclusory and wrong.  Moreover, many of these "facts" are not relevant.  Last, reciting a list of "facts" to the jury will not save time and denies the jury the opportunity to assess witnesses' testimony.

First, plaintiff misconstrues the Court's Individual Rules of Practice.  The parties are not "required," as plaintiff misrepresents, to stipulate or agree to statements of facts.  (Pl. Mem. at 10).  Rather, the Court's rule reads that the proposed joint pre-trial order shall include "[a]ny

stipulations or agreed statements of fact or law which have been agreed to by all parties."   There is no requirement for stipulation here, as plaintiff states.

Second, that defendants do not controvert a fact does not mean they are required to stipulate to that fact.  There is no law to support plaintiff's position.  As described *infra,* although plaintiff cites to a federal rule and three cases, none of these "legal authorities" stand for the proposition that defendants are required to stipulate to a fact.  As plaintiff has not provided support for her argument, the Court should disregard it.  The Court "has no obligation to consider an argument for which a party has cited no legal authority." Glidepath Holding v. Spherion Corp., 590 F. Supp. 2d 435, 459 n. 9 (S.D.N.Y. 2007).  Indeed, conclusions with no citations to the record or any legal authority for support do not constitute adequate briefing.  Weinrib v. Winthrop-University Hosp., No. 14-cv-953 (JFB) (AKT), 2016 U.S. Dist. LEXIS 37102, at *20 n.3 (E.D.N.Y. Mar. 22, 2016) (citation and quotation omitted).  For this reason alone, the Court should disregard plaintiff's motion point.

For the convenience of the Court, defendants explain why the "legal authorities" that plaintiff relies on fail.  Instead of providing adequate briefing to the Court in support of her motion to compel, plaintiff bombastically states that defendants' position is "prohibited" by Rule 16 of the Federal Rules of Civil Procedure.  (Pl. Mem. at 11).  Rule 16 contains no clause or language "prohibiting" defendants from not stipulating to a list of facts.  See FED. R. CIV. P. 16.

Plaintiff then cites to a string of non-binding, outdated, and unpersuasive cases to support her position.  For instance, in Holcomb v. Aetna Life Ins. Co., 255 F.2d 577 (10th Cir. 1958), the issue was not a motion to compel a party to agree to a set of facts; plaintiff manipulates dicta from half-a-century old Tenth Circuit case and attempts to present it as a holding.  The second case that plaintiff cites to, Berger v. Brannan, 172 F.2d 241 (10th Cir. 1949), concerns "general

denial [by a party] and await[ing] the outcome of a long expensive trial, to see whether such a denial was sustained."   As evidence by plaintiff's counsel declaration, defendants are not "denying" facts.  Finally, plaintiff's citation to <u>United States v. Bethlehem Steel Corp.</u>, 157 F. Supp. 877, 880 (S.D.N.Y. 1958) is nonsensical.  This case does not stand for the proposition that parties are required to stipulate to "non-controverted" facts.  The language quoted by plaintiff is from a scheduling order.  As there is no articulated legal basis for plaintiff's position—which appears to be: if a fact is uncontroverted, the Court should compel defendants to stipulate to it— the Court should disregard it.

Plaintiff then states that defendants' position "makes no sense."  (Pl. Mem. at 11). Plaintiff believes that stipulating to certain facts "not only will expedite the trial but improve the quality of the trial."  (Pl. Mem. at 11).  Plaintiff then states that defendants' position undermines "efficient judicial management."  (Pl. Mem. at 12).  Plaintiff offers no legal support for these three contentions.  She does not explain how stipulating to certain facts will "expedite" or "improve the quality of the trial."[7]  Even accepting these conclusory statements—which have no legal support and no illuminating explanations accompanying them—plaintiff is still wrong.

Simply, even if a fact is uncontroverted, that does not mean the parties must stipulate to that fact.   Under Rule 611(a), the Court can "exercise reasonable control over the mode and order" of "presenting evidence so as to make those procedures effective for determining the truth and protect avoid wasting time."  <u>See</u> Fed. R. Evid. 611.  Allowing these facts to be presented through witnesses would be the most effective method for determining the truth.  Instead of hearing facts from the Court, the jury will hear facts from the witness and evaluate the witness's testimony and credibility.  Moreover, these 33 facts—which, for instance, concern, among other

---

[7] Defendants are unsure what plaintiff means by the phrase "improve the quality of the trial."

things, the City of New York (¶¶ 1, 2);[8] the employment of members of service at the time of the incident and whether they were acting within the scope of their employment (¶¶ 3, 4, 5, 6, 7 8, 17, 18, ); plaintiff's epilepsy and mental health (¶¶9, 10, 11, 12); the New York City Police Department Patrol Guide (¶13)[9]; plaintiff's actions on March 21, 2012 (¶¶ 14, 15, 16)— are not relevant and/or are not so complicated or lengthy that the jury's and Court's time would be "wasted" by questioning witnesses regarding these facts instead of stipulating to them. Thus, the Court should exercise its reasonable control over the mode of presenting evidence in this matter and allow the evidence to be presented through witnesses and not through stipulation.

Last, some of the information that plaintiff wishes to compel defendants to stipulate to is not evidence and is not relevant. Thus, these "facts" should not be presented to the jury. First, plaintiff cites to defendants' responses to her 56.1 statement as proof that certain information is "fact." (¶¶27, 31, 32, 33). Although the parties addressed plaintiff's legally-unsupported desire to introduce a 56.1 statement as evidence in a footnote on the proposed joint pre-trial order, defendants address this issue again here. A statement in a 56.1 statement is not evidence. The facts in a 56.1 statement are for the purpose of a summary judgment motion and the moving party can present different and/or conflicting facts at any trial in this matter. "The Rule 56.1 Statement is *not evidence*; it is a procedural mechanism that allows a party to make a motion for summary judgment even when there will be disputed issues of fact at the trial." Vasconcellos v. City of New York, 12 Civ. 8445, 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015) (emphasis added). Local Civil Rule 56.1 "means a party can 'admit' facts that it intends to dispute at trial without suffering any prejudice – the 'admission' …neither binds the party going

---

[8] Defendants have moved *in limine* to preclude any reference to the City of New York.

[9] Defendants have moved *in limine* to preclude any reference to the New York City Police Department Patrol Guide.

forward if the motion is denied nor can it be admitted in evidence at trial." Id. at *2-3. Second, information related to plaintiff's dismissed *respondeat superior* claim (¶¶ 4, 5, 6, 18, 19, 20, 21, 22) is not relevant. (Docket Entry No. 215). See FED. R. EVID. 401. Therefore, it should not be presented to the jury in any fashion, by stipulation or through testimony.

## POINT VI

**THE COURT SHOULD NOT COMPEL DEFENDANTS TO REFER TO PLAINTIFF'S WITNESSES—WHEN REFERRING TO PLAINTIFF'S WITNESSES IN 2012—BY THEIR CURRENT NAMES AND PRONOUNS**

Plaintiff creates an issue where there is none. She asks the Court to compel the parties to refer to her two transgender witnesses—MariJade Storm Summer, previously known as James Amico, and Mandy Quinn, previously known as Tony Zilka—by their current names and female pronouns. As defendants previously told plaintiff when the parties met and conferred, defendants have no objection to referring to these witnesses—and any person—by whatever name and pronoun they prefer. This is just a matter of respect and sensitivity.

That plaintiff engages in a sanctimonious tirade about alleged future discrimination by defendants and purports that "[a]llowing [d]efendants to mis-gender a transgender witness on the stand will harm the witness, prejudice the [p]laintiff and create trial problems for the Court," (Pl. Mem. at 13) when this is not at issue for defendants is not only baffling, it is offensive to defendants.

Defendants will refer to all witnesses by their names and preferred-pronouns. But as defendants explained to plaintiff, because these witnesses presented as male at the time of the incident, when referring to the incident, the video, and the events of 2012, defendants may need to use the male pronoun and may ask that these witnesses identify themselves in any video, for

13

clarity. This is not a jab at either Mandy Quinn or MariJade Storm Summers' personhood. Indeed, this is not even an issue—significant or otherwise— in determining whether plaintiff has proven her claims by a preponderance of the credible evidence. Rather, this is an effort to present facts clearly to a jury.

This is all to say, that defendants will only use the male pronoun or ask the witnesses whether they presented as male in 2012, when appropriate. One cases that plaintiff cites to weighs in favor of the approach that defendants suggest. In <u>Outman v. Waldron</u>, No. 9:14-CV-540 (MAD/DEP), 2016 U.S. Dist. LEXIS 110412 (N.D.N.Y. Aug. 19, 2016), the Court explained that it would "refer to [the plaintiff] using feminine pronouns *where appropriate*." (emphasis added). While defendants have no intention of engaging in the conduct referred to as "ignorance" by the state court in <u>Matter of Birney v. N.Y.C. Dep't of Health & Mental Hygiene</u>, 2012 NY Slip Op 50520(U), ¶ 10, 34 Misc. 3d 1243(A), 1243A, 950 N.Y.S.2d 607 (Sup. Ct.)—i.e., referring to a litigant by the wrong pronoun—where appropriate, that is when referring to the events of 2012, defendants may need to refer to these witnesses' former names and ask them to identify themselves,  not out of ignorance but a desire to present a coherent and sensible narrative to the jury. This is not discriminatory.

**POINT VII**

**THE COURT SHOULD NOT ALLOW PLAINTIFF TO USE THE TRIAL DIRECTOR SOFTWARE**

Plaintiff requests permission to use Trial Director software. Plaintiff offers no reason—compelling or otherwise—for why she is entitled to use this software. Nor does she bother explain why the use of Trial Director software is necessary in this case. It is unclear why plaintiff cannot use the current technology in the courtroom, like all other litigants who appear before the Court. It is further unclear why the Trial Director software is a preferred method of

technology.  Finally, and perhaps most importantly, it is unclear *how* plaintiff intends to exploit any exhibits on the Trial Director software.   Defendants cannot adequately address a point that plaintiff fails to adequately brief.

Simply, defendants do not know and plaintiff does not attempt to explain how plaintiff will use the Trial Director software at trial.  Defendants can only surmise that the Trial Director software is an unnecessary bell and whistle.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants respectfully request that the Court deny plaintiff's motions *in limine* in their entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      February 6, 2018

**ZACHARY W. CARTER**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By:           /s/
        Brachah Goykadosh
        *Assistant Corporation Counsel*
        Special Federal Litigation Division

cc:      All counsel of record (by ECF only)