# EXHIBIT 2 – GOLDMAN DEPOSITION (REDACTED)

ORIGINAL

1

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ----------------------------------------X
     MARY M. TARDIF,
 3

 4                               PLAINTIFF,

 5
            - against -         Case No.
 6                              13-CV-4056 (LTS)(FM)

 7   CITY OF NEW YORK, NEW YORK CITY
     POLICE DEPARTMENT, INSPECTOR JOHN
 8   O'CONNELL, DEPUTY INSPECTOR EDWARD
     WINSKI, POLICE OFFICER JAMES
 9   MCNAMARA, POLICE OFFICER ALENA
     AMINOVA, POLICE OFFICER KENDAL CREER,
10   POLICE OFFICER MARSHA RUMBLE, POLICE
     OFFICER FELIX SCHMIDT, DEPUTY
11   INSPECTOR DANIEL MULLIGAN, AND
     JOHN DOE NYPD OFFICERS ##1-11,
12
                               DEFENDANTS.
13   ----------------------------------------X

14            DATE: February 5, 2015

15            TIME: 10:53 a.m.

16

17            EXAMINATION BEFORE TRIAL of an Expert Witness

18   on behalf of the Plaintiff, DR. ROBERT GOLDMAN, taken by

19   the Defendants, pursuant to Notice and the Federal Rules

20   of Civil Procedure, held at the offices of the New York

21   City Law Department, 100 Church Street, New York, New

22   York 10007, before a Notary Public of the State of New

23   York.

24

25
```

```
 1            F E D E R A L   S T I P U L A T I O N S

 2

 3       IT IS HEREBY STIPULATED AND AGREED by and between

 4   the counsel for the respective parties herein that the

 5   sealing, filing and certification of the within

 6   deposition be waived; that the original of the

 7   deposition may be signed and sworn to by the witness

 8   before anyone authorized to administer an oath, with the

 9   same effect as if signed before a Judge of the Court;

10   that an unsigned copy of the deposition may be used with

11   the same force and effect as if signed by the witness,

12   30 days after service of the original & 1 copy of same

13   upon counsel for the witness.

14

15       IT IS FURTHER STIPULATED AND AGREED that all

16   objections except as to form, are reserved to the time

17   of trial.

18

19              *      *      *      *

20

21

22

23

24

25
```

DR. GOLDMAN

1    the jail, I see ten to fifteen clients a day.

2        Q.    As a Psy.D, is the appropriate term "clients"

3    or "patients" or can you use those --

4        A.    You can use them interchangeably.

5    Unfortunately in the jail we call them inmates.

6        Q.    Do you know approximately how many patients

7    you've treated with PTSD?

8        A.    In the jail, I would say about close to ten to

9    twenty percent of the clients I see in the jail have

10   some form of, you know, PTSD traits or actual PTSD.

11       Q.    Perhaps I've already asked you this, Dr.

12   Goldman, but have you ever prepared an expert witness

13   report that was used in a court of law?

14       A.    Sure.

15       Q.    That would be with respect to the visit --

16       A.    Yes, absolutely.

17       Q.    Have you ever prepared an expert report in

18   connection with a federal lawsuit?

19       A.    Not lawsuit, but I have in a criminal federal

20   case where they were seeking for a possible downward

21   departure where there was a request to do an evaluation

22   on an individual and I believe she had PTSD.

23       Q.    Do you recall her name?

24       A.    No.

25       Q.    Do you recall how long ago that was?

DR. GOLDMAN

1    about how they present so it's sort of backwards in the

2    sense that I'm looking at do they -- what are they

3    experiencing, what are they -- how are they acting, how

4    are they presenting to me and then also, in this case, I

5    look at the psychometric testing to develop some form of

6    hypotheses as to draw an opinion on, so it's a number

7    of -- it's those factors I look into, not to necessarily

8    be the fact finder, but to more look at how the person

9    is presenting.

10        Q.   Isn't it true that the MMPI is based on her

11   answers, isn't it a self-reporting --

12        A.   Right.

13        Q.   -- exam?

14        A.   But it also has what's called a validity and

15   reliability index score so it's the gold-standard

16   testing of personality inventory and so is the MCMI.

17        Q.   So the test is concerned with her

18   truthfulness, why aren't you?

19             MS. PLUSHANSKI:  Objection, relevancy.

20        A.   I'm concerned with her truthfulness in terms

21   of the reporting of her symptomatology and what she's

22   experiencing, so the test won't ask her about the facts

23   as to what happened with the arrest or anything like

24   that.

25             It will assess what she's experiencing

DR. GOLDMAN

1    remember seeing them.

2        Q.    In Mary's medical records, it indicates that

3    ████ ███ ████ ██████ ████████████████████████████

4    correct?

5        A.    Right, right, right.

6        Q.    Did you review any of her records from ████

7    █████

8        A.    No.

9        Q.    Do you think that Mary's prior psychiatric

10    records would have been necessary in making a proper

11    psychological evaluation of her?

12        A.    Again, it would have been helpful but I still

13    felt comfortable what I -- with given with what I had.

14        Q.    So in preparing your expert witness report, it

15    wasn't necessary for you to see any of Mary's

16    psychiatric medical records prior to January of 2012,

17    correct?

18        A.    Correct.  I mean, I felt I had enough of a

19    picture with everything.

20        Q.    Well, not with everything, what you were

21    given.

22              Can you explain to me what a

23    comprehensive psychological evaluation would consist of?

24        A.    It would consist of records.

25        Q.    Records?

DR. GOLDMAN

1    A.    Medical records.  It would consist of -- It

2    really depends in part on the referral question asked,

3    in this case it was for a psychological evaluations for

4    assessing her current level of -- her level of

5    psychological functioning, so I would look at her

6    previous psychological records and also do the clinical

7    interview as well as the psychometric testing, the MMPI

8    and the MCMI.

9        Q.    So a psychological evaluation would include

10   her current complaints, correct?

11       A.    Right.

12       Q.    Would it include her present psychological and

13   medical history, her current?

14       A.    It might, yeah.

15       Q.    Would a psychological evaluation include her

16   past medical history and psychological history?

17       A.    Yes.

18       Q.    Would a psychological evaluation include

19   social and family history?

20       A.    Yes.

21       Q.    Would it include occupational history?

22       A.    Yes.

23       Q.    Did you consider all of those factors in

24   preparing your expert witness report?

25       A.    To the best of my ability, that's what I can

DR. GOLDMAN

1  do.

2      Q.   You state in your report, Dr. Goldman, that

3  Mary is paranoid walking down the street, that she

4  doesn't like places where they are police officers,

5  correct?

6          MS. PLUSHANSKI:  What page are you referring

7      to?

8          MS. ROBINSON:  Page 5, paragraph 3.

9      A.   Right.

10     Q.   Correct?

11     A.   Yes.

12     Q.   In your report, I believe it's further down on

13 that page, you refer to Mary's deposition testimony --

14     A.   Yes.

15     Q.   -- in which she stated mentally I can't take

16 any more of it.  I am tired.  I am stressed out.  I

17 can't handle it anymore.  I can't be around it anymore.

18 I can't so I do a lot of activism on Facebook.

19     A.   That's right.

20     Q.   Are you aware that Mary was present at two

21 Eric Garner protests in December of 2014, a few weeks

22 ago?

23          MS. PLUSHANSKI:  Objection.  Assumes facts not

24      in evidence.

25     A.   I'm not.

DR. GOLDMAN

1    perceives that to be any greater or lesser than the two

2    arrests?

3         A.    I think it depends upon where she is in her

4    life span development and there are other things to

5    consider along the way as to what she perceived to be.

6         Q.    Well, after meeting her and preparing your

7    expert report, did Mary say to you that she considered

8    the severity of the two arrests to be equal to or

9    greater than ███████████████████████████████████

10   ██████████

11        A.    She would say that, but I don't know if I

12   necessarily, you know, agree only because --

13        Q.    She would say what?

14        A.    That the arrests were more traumatic for her.

15        Q.    Did she, in fact, say that to you or you're

16   just guessing as to what she would say?

17        A.    I'm just guessing because in her mind, as I

18   said, she's ████████████████████████████████████

19   but, again, I still think it's a fresh -- it's still --

20   and my opinion is it's still a wound that, you know,

21   that may have scabbed up but she's fragile.

22        Q.    So she could be suffering currently from

23   posttraumatic stress syndrome from ██████████████████

24   ████████████████████████████████████ is that

25   correct?

DR. GOLDMAN

1      A.   The difference is -- yeah, the only thing is

2   that the symptomatology that she reports to have is

3   different than what she had ████████████████████

4   ████ and what she reports to that.

5      Q.   But, again, you haven't reviewed any medical

6   records of Mary's psychiatric condition prior to January

7   of 2012 --

8      A.   That's correct.

9      Q.   You state in your report on page 7, the last

10   paragraph, that the second criterion required for a

11   diagnosis of posttraumatic stress disorder is the

12   persistent re-experiencing of the event, correct?

13      A.   Right.

14      Q.   You state that the second criterion is met in

15   your report because Mary dreams about being locked in

16   cells and perceives that she's going to be arrested when

17   she sees a police officer, correct?

18      A.   Yes.

19      Q.   Assuming that it's correct that Mary attended

20   two recent Eric Garner demonstrations and if it's true

21   that Mary marched up the West Side Highway with hundreds

22   of other protestors, no doubt that protest was attended

23   by probably a lot of police officers --

24      A.   Right.

25      Q.   Have you seen any photographs of the event or

DR. GOLDMAN

1       Q.    -- PTSD?

2       A.    Yes.

3       Q.    You state in your report that while it may be

4   difficult to parse out which traumatic event in Mary's

5   life is responsible for her current level of distress,

6   does that make sense to you?

7       A.    Yeah.

8       Q.    Yes, I see.  That it's difficult?

9       A.    It is, I mean --

10      Q.    To parse out exactly which traumatic event in

11  her life is responsible for her current level of

12  distress?

13      A.    Psychology does its best to be an exact

14  science but it can't be.

15      Q.    You state in your report that Mary's diagnosis

16  of posttraumatic stress disorder was rekindled in your

17  words by the two arrests and by the police failing to

18  give her Lamictal despite pleas, correct?

19      A.    Yes.

20      Q.    Is "rekindling" a term of art that's used in

21  psychology?

22      A.    No, I think it's more -- triggering is what I

23  mean by . . .

24      Q.    Do you know whether police generally dispense

25  medications to arrestees, if you know?

DR. GOLDMAN

                    C E R T I F I C A T E

1

2

3    STATE OF NEW YORK    )
                                  :  SS.:
4    COUNTY OF KINGS      )

5

6        I, MILLIE YEE, a Notary Public for and within the

7    State of New York, do hereby certify:

8        That the witness whose examination is hereinbefore

9    set forth was duly sworn and that such examination is a

10   true record of the testimony given by that witness.

11       I further certify that I am not related to any of

12   the parties to this action by blood or by marriage and

13   that I am in no way interested in the outcome of this

14   matter.

15       IN WITNESS WHEREOF, I have hereunto set my hand

16   this 12th day of February 2015.

17

18                    *Millie Yee*

19   _____
                    MILLIE YEE

20

21

22

23

24

25

**Diamond Errata Sheet**

Plaintiff(s): _____

_____

Defendant(s):_____

_____

| Page | Line | Correction | Reason for Correction |
|------|------|------------|------------------------|
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |
|      |      |            |                        |

Date: _____

Name of Witness: _____

Subscribed and sworn to before me

This _____ of _____ 20____