UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------
MARY M. TARDIF,

                                                  Plaintiff,

             -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN
O'CONNELL, DEPUTY INSPECTOR EDWARD
WINSKI, POLICE OFFICER JAMES MCNAMARA,
POLICE OFFICER ALENA AMINOVA, POLICE
OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX
SCHMIDT, DEPUTY INSPECTOR DANIEL
MULLIGAN, SERGEANT THOMAS MCMANUS,
AND JOHN DOE NYPD OFFICERS ##1-9

                                                  Defendants.
------------------------------------------------------------------

**13-civ-4056
(KMW)(KNF)**

# MEMORANDUM IN OPPOSITION OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT OPINION OF ROBERT GOLDMAN, Psy.D

Dated: February 6, 2018

                                              Community Legal Assistance Corp.
                                              Stefan H. Krieger (SK1748)
                                              Theo Liebmann
                                              108 Hofstra University Joan
                                              F. Axinn Hall Hempstead,
                                              New York 11549
                                              lawshk@hofstra.edu
                                              (516) 463-6078

                                              Gideon Orion Oliver (GO 8799)
                                              277 Broadway, Suite 1501
                                              New York, New York 10007
                                              Gideon@GideonLaw.com
                                              (646) (646) 263-3495

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................i

ARGUMENT ....................................................................................................................1

    I.    DR. GOLDMAN'S TESTIMONY REGARDING THE EXACERBATION OF PLAINTIFF'S PTSD IS ADMISSIBLE PURSUANT TO FED. R. EVID. 702 ........1

        A.  Dr. Goldman is Qualified to Testify as an Expert Witness about the Exacerbation of Plaintiff's PTSD..................................................................2

        B.  Dr. Goldman's Specialized Knowledge Will Assist the Trier of Fact in Understanding the Evidence and Determining a Fact at Issue ..............................5

        C.  Dr. Goldman's Expert Opinion on the Exacerbation of Plaintiff's PTSD is Based on Sufficient Facts and Data..........................................................8

        D.  Dr. Goldman's Expert Opinion on the Exacerbation of Plaintiff's PTSD is the Product of Reliable Principles and Method......................................................10

        E.  Dr. Goldman's Expert Opinion is Not Speculative or Conjectural .......................11

    II.   DR. GOLDMAN'S TESTIMONY IS ADMISSIBLE UNDER FED. R. EVID. 401 AND 403 ................................................................................................14

        A.  Dr. Goldman's Testimony is Not Duplicative ........................................14

        B.  Any Prejudicial Effect of Dr. Goldman's Testimony Does Not Substantially Outweigh the High Probative Value of the Testimony ....................... 15

CONCLUSION ………………………………………………………………………………16

# TABLE OF AUTHORITIES

**Cases**                                                                                                                                            **Page(s)**

*Ashley v. City & Cty. of San Francisco*, No. CV-12-00045-JST KAW, 2013 WL 2386655 (N.D. Cal. May 30, 2013) .................................................................................................... 10

*Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18 (2d Cir. 1996) .................................................. 11

*Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725, 2003 U.S. Dist. LEXIS 6150 (S.D.N.Y. Apr. 11, 2003) ....................................................................... 2

*Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164 (2d Cir. 2000) .................................. 15

*Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) ................................................. *passim*

*Discepolo v. Gorgone*, 399 F. Supp. 2d 123 (D. Conn. 2005) ........................................... 6, 13, 14

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ............................................................................. 11

*Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp. 3d 379 (S.D.N.Y. 2017) .................................. 8

*In re Fosamax Prod. Liab. Litig.*, 807 F. Supp. 2d 168 (S.D.N.Y. 2011), *aff'd*, 707 F.3d 189 (2d Cir. 2013), and *aff'd,* 509 F. App'x 69 (2d Cir. 2013) ...................................... 3

*Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558 (S.D.N.Y. 2007) ................................ 15

*McCullock v. H.B. Fuller Co.*, 61 F.3d 1038 (2d Cir. 1995) ...................................................... 3, 4

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005) .......................................................... 2, 5

*Raposo v. United States*, No. 01 CIV. 5870 (DAB), 2004 WL 1043075 (S.D.N.Y. May 7, 2004) ................................................................................................................ 10

*S.E.C. v. Moran*, No. 95 CIV. 4472 (BN), 1995 WL 785953 (S.D.N.Y. Oct. 31, 1995) ................ 5

*Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2015 WL 6444620 (S.D.N.Y. Oct. 23, 2015) .............................................................................................................. 8, 11

*Scott v. City of New York*, 591 F. Supp. 2d 554 (S.D.N.Y. 2008) ................................................ 13

*Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202 (2d Cir. 1984) ............................................ 11

*United States v. Amuso,* 21 F.3d 1251 (2d Cir. 1994) ............................................................. 5, 14

*United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991)..................................................................7

*United States v. Downing*, 609 F. Supp. 784 (E.D. Pa.), *aff'd,* 780 F.2d 1017
    (3d Cir. 1985)........................................................................................................ 13-14

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001)....................................................................7


**Rules**     **Page(s)**

Fed. R. Evid. 401 .......................................................................................................................14
Fed. R. Evid. 403 ...................................................................................................................14, 15
Fed. R. Evid. 702 ................................................................................................................ *passim*
Fed. R. Evid. 703 ...................................................................................................................11, 15

# I. DR. GOLDMAN'S TESTIMONY REGARDING THE EXACERBATION OF PLAINTIFF'S PTSD IS ADMISSIBLE PURSUANT TO FED. R. EVID. 702.

Plaintiff Mary Tardif brings this action for damages against Defendants City of New York and various NYPD officers arising from Occupy Wall Street ("OWS") protests in which Plaintiff participated. (Dkt. 135). In support of her claims for damages, Plaintiff submitted the report of Dr. Robert Goldman, a Doctor of Psychology. (Decl. of Stefan H. Krieger, Exh. 1). Throughout their motion to preclude the expert opinion of Dr. Goldman, Defendants claim—without adequate analysis—that Dr. Goldman is not qualified to give an expert opinion pursuant to Fed. R. Evid. 702.[1] For all the following reasons, Defendants' motion to preclude the expert testimony of Dr. Goldman should be denied.

In reaching his opinion, Dr. Goldman engaged in an extensive examination to diagnose Plaintiff. This examination included a six-hour clinical interview of Plaintiff that spanned over the course of one week. (*Id.* at 1). During this clinical interview, Dr. Goldman made observations of Plaintiff's behavior and administered objective psychological testing. (*Id.*). This testing consisted of the Minnesota Multiphasic Personality Inventory-Second Edition ("MMPI-II"), as well as the Millon Clinical Multiaxial Inventory-Third Edition ("MCMI-III") (*Id.*), both of which are the "gold-standard testing of personality inventory." (Decl. of Stefan H. Krieger, Exh. 2 at 50). Dr. Goldman also reviewed Plaintiff's neurologist records that ranged from 2009

---

[1] Defendants have violated Fed. R. Civ. P. 30(e)(1) by failing to provide Dr. Goldman with a transcript of his deposition testimony until after the filing of their motion papers. (*See* Decl. of Stefan H. Krieger, ¶¶ 9, 12, 14). The federal stipulations at the beginning of the deposition transcript show that Plaintiff made a request to review the transcript at Dr. Goldman's deposition. (*See* Decl. of Stefan H. Krieger, Exh. 2 at 3). Dr. Goldman had a right to review his deposition testimony and correct it as necessary, and the court reporter recognized this right by attaching an errata sheet to the back of the transcript. (*Id.* at 160). When confronted with this failure, Defendants' stated they would send Plaintiff proof of service of the transcript. (Decl. of Stefan Krieger, ¶ 18). Instead, nearly three years after the deposition, Defendants sent Plaintiff a copy of the transcript. Because Dr. Goldman has only now been provided a copy of his deposition testimony (*See* Decl. of Stefan H. Krieger, ¶ 16), Plaintiff reserves the right to submit the errata sheet from Dr. Goldman within 30 days of Plaintiff's receipt of the transcript.

through 2012, as well as Plaintiff's medical records generated from January 12, 2012 through April 17, 2012. (Decl. of Stefan H. Krieger, Exh. 1 at 1). Finally, Dr. Goldman also reviewed Plaintiff's deposition transcript. (*Id.*).

Dr. Goldman's comprehensive examination led him to conclude that Plaintiff's preexisting Post-Traumatic Stress Disorder ("PTSD") was exacerbated by the NYPD conduct challenged in this case. (Decl. of Stefan H. Krieger, Exh. 1 at 7-9). Dr. Goldman concludes that "the violent physical arrests as described in the body of [Dr. Goldman's] report, the lack of medical attention by the police and her subsequent seizures are what currently render Mary Tardif traumatized, faced with great difficulty in her daily functioning." (*Id*. at 9).

Under rule 702, a qualified expert may testify in the form of an opinion if: "(a) the expert's … specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Dr. Goldman satisfies all of these requirements.

### A. Dr. Goldman is Qualified to Testify as an Expert Witness about the Exacerbation of Plaintiff's PTSD.

In order to determine whether a witness is qualified to render an expert opinion, a court "must first ascertain whether the proffered expert has the educational background or training in a relevant field." *Cary Oil Co., Inc. v. MG Refining & Marketing, Inc.*, No. 99 Civ. 1725, 2003 U.S. Dist. LEXIS 6150, at *4 (S.D.N.Y. Apr. 11, 2003) (citation omitted). "It is a well-accepted principle that rule 702 embodies a liberal standard of admissibility for expert opinions, representing a departure from the previously widely followed, and more restrictive, standard of [*Frye*]." *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005).

Examining Dr. Goldman's educational background and professional experience, it is clear that Dr. Goldman is qualified to testify as an expert witness regarding the exacerbation of Plaintiff's PTSD. Dr. Goldman is a New York State Licensed Psychologist with a Doctor of Psychology (Psy.D.).[2] (Decl. of Stefan H. Krieger, Exh. 1 at 13). Dr. Goldman has been a supervising psychologist at the Suffolk County Mental Health Unit for over four years, where he conducts forensic evaluations for jail inmates and provides counseling for incarcerated individuals. (*Id.* at 14). Dr. Goldman has treated "ten to twenty percent of the clients [he] see[s] in the jail" for "some form of … PTSD traits or actual PTSD." (Decl. of Stefan H. Krieger, Exh. 2 at 17). Dr. Goldman has been a director at Psychological Restorative Solutions, PC for ten years, where he provides therapy, therapeutic visitations, individual counseling, and forensic evaluations. (Decl. of Stefan H. Krieger, Exh. 1 at 15). Dr. Goldman was a supervising psychologist at the Suffolk County Department of Probation for eight years, where he conducted psychological assessments and forensic evaluations to adjudicated juvenile delinquents and persons in need of supervision. (*Id.* at 14). This experience qualifies Dr. Goldman to testify as an expert about PTSD under the applicable law.

Furthermore, contrary to Defendants' assertion that Dr. Goldman's advanced degree in psychology does not qualify him as an expert, (*Id.* at 7), courts have held otherwise. *See, e.g.*, *In re Fosamax Prod. Liab. Litig.*, 807 F. Supp. 2d 168, 185 (S.D.N.Y. 2011), *aff'd,* 707 F.3d 189 (2d Cir. 2013), and *aff'd,* 509 F. App'x 69 (2d Cir. 2013) (stating that the fact that the expert was a rheumatologist did not prohibit the expert from testifying about a specific bone disease); *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043 (2d Cir. 1995) (stating that suggestion that expert had to be a specialist in environmental medicine to provide expert testimony was an

---

[2] Defendants' immaterial comments that Dr. Goldman "is not a medical doctor," (Dkt. 229 at 2), and that he "is affiliated with Hofstra University," (*Id.* at 5), are at best relevant to a weak line of cross examination, but are irrelevant to his qualifications under rule 702.

3

unwarranted expansion of the gatekeeper role announced in *Daubert*). Here, just because Dr. Goldman is a psychologist does not mean he cannot testify about PTSD, a specific psychological disorder. Dr. Goldman's expert opinion is not based solely on his educational background, but also his clinical experience with PTSD, as he has treated numerous patients with "some form of … PTSD traits or actual PTSD." (Decl. of Stefan H. Krieger, Exh. 2 at 17).

Defendants assert, with no evidentiary support, that Dr. Goldman's experience in treating "'close to ten to twenty percent of the clients [that he sees] in jail [who] have some form of … PTSD traits or actual PTSD' is a far cry from actually being an expert on [PTSD]." (Dkt. 229 at 7). Defendants disingenuously fail to include the number of clients Dr. Goldman sees in jail *per day*—"ten to fifteen." (Decl. of Stefan H. Krieger, Exh. 2 at 17). This equates to over 200 individuals with PTSD traits or actual PTSD that Dr. Goldman has seen in the past four years alone.[3] This practical experience more than qualifies Dr. Goldman to render an opinion about the exacerbation of Plaintiff's PTSD and is certainly not a "far cry" from being qualified. *See McCullock*, 61 F.3d at 1043 (holding that expert's background and practical experience qualify as "specialized knowledge" gained through "experience, training, or education" under rule 702, and that opponent's quibble with the expert's alleged shortcomings were properly explored on cross examination and went to the weight, not admissibility, of the testimony). As such, Defendants' contention that Dr. Goldman's experience consisting of treating "ten to twenty percent" of patients "with some form of … PTSD traits or actual PTSD" is insufficient to qualify him as an expert can properly be explored on cross examination and is not a basis for precluding

---

[3] Dr. Goldman has been conducting forensic evaluations for jail inmates for over four years. (Decl. of Stefan H. Krieger, Exh. 1 at 14). Assuming, *arguendo*, that Dr. Goldman saw ten clients in jail for one day per week for the past four years, that equates to a total of 2,080 clients. Ten percent of those clients with some form of PTSD traits or actual PTSD would equal 208 clients. That total grows exponentially by increasing the number of days per week Dr. Goldman sees clients in jail, as well as the percentage of those clients with PTSD.

Dr. Goldman from rendering an expert opinion regarding the exacerbation of Plaintiff's PTSD. Dr. Goldman is similarly qualified to testify about Plaintiff's other diagnoses, namely major depressive disorder and generalized anxiety disorder, based on his same educational background and clinical experience.

While Defendants are correct in stating that Dr. Goldman has never testified as an expert in regard to PTSD before, for this argument to disqualify Dr. Goldman as an expert in this case would prevent the qualification of any new expert witness in any case. That a witness has never previously testified as an expert before is not a basis to prevent that witness from offering an expert opinion. *See S.E.C. v. Moran*, No. 95 CIV. 4472 (BN), 1995 WL 785953, at *2 (S.D.N.Y. Oct. 31, 1995) (where motion to preclude the expert testimony was denied, even though the expert had never previously testified as an expert). Taken to its logical extent, no person could ever testify as an expert because they would never be able to have a first opportunity to give expert testimony. Certainly the "liberal standard of admissibility for expert opinions" does not include prior expert qualification as a requirement for qualification in the present case. *Nimely*, 414 F.3d at 395.

### B. Dr. Goldman's Specialized Knowledge Will Assist the Trier of Fact in Understanding the Evidence and Determining a Fact at Issue.

Under rule 702, an expert may testify in the form of an opinion if the expert's specialized knowledge will help the trier of fact to understand the evidence or in determining a fact at issue. *See also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591-92 (1993) ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."). Testimony is properly characterized as "expert" if it concerns matters the average jurors are not capable of understanding on their own. *See United States v. Amuso*, 21 F.3d 1251, 1263 (2d Cir. 1994).

Dr. Goldman's testimony would provide "a valid scientific connection to the pertinent inquiry" because PTSD concerns matters that average jurors are not capable of understanding on their own. Dr. Goldman's knowledge and experience would aid the jury in understanding Plaintiff's claims for damages by explaining what PTSD is and how it affects Plaintiff, and how the events in question exacerbated Plaintiff's pre-existing PTSD.

Dr. Goldman's testimony would also provide an explanation to the jury for why Plaintiff, who suffers from PTSD, would choose to return to OWS protests even after being arrested. Dr. Goldman explains that "[w]hile this [behavior] may seem counterintuitive, the symptoms of PTSD can increase the likelihood that a person may unwittingly place herself in harm's way of another traumatic event." (Decl. of Stefan H. Krieger, Exh. 1 at 9). "Indeed, courts in other jurisdictions have accepted expert testimony on PTSD generally as reliable and have permitted PTSD expert testimony to explain a plaintiff's behavior which, to the ordinary lay person, may seem bizarre and inconsistent … ." *Discepolo v. Gorgone*, 399 F. Supp. 2d 123, 127–28 (D. Conn. 2005) (citations omitted) (denying motion to preclude expert testimony where although there were disputes in regard to the expert's conclusions, the methods used were nonetheless acceptable). Dr. Goldman also cites references in support of his opinion and relies on the "abundance of research that demonstrates that those who are exposed to an initial trauma are at risk for additional trauma exposure" to explain the reasoning behind his expert opinion. (Decl. of Stefan H. Krieger, Exh. 1 at 9). Dr. Goldman's specialized knowledge of this research would assist the trier of fact in understanding why Plaintiff would choose to continue to protest while suffering from PTSD and how the NYPD conduct challenged in this case exacerbated Plaintiff's PTSD.

Defendants are plainly wrong in arguing that Dr. Goldman's testimony would be "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." (Dkt. 229 at 12 *citing United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001); *quoting United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). The court in *Mulder* held that the defense's argument—that the experts' testimony should have been barred because the matters on which they testified, and particularly the structure of a labor coalition, are common knowledge and common sense—was unfounded, because "labor coalitions and their goals are not well known or commonly understood." *Mulder*, 273 F.3d at 101. Similarly, here, PTSD is not well known or commonly understood enough for a jury to make a determination without the help of Dr. Goldman's specialized knowledge.[4]

Furthermore, unlike the police officer's testimony in *United States v. Castillo*, 924 F.2d 1227 (2d Cir. 1991) (holding it was improper for the district court to permit a police officer to testify as a narcotics expert because the testimony comprised of lay matters which a jury is capable of understanding and deciding without the expert's help), the intricacies of PTSD are not easily understood without the help of an expert witness. Whereas the police officer in *Castillo* was merely testifying about common practices of drug dealers, Dr. Goldman's testimony would encompass much more than the fundamentals of PTSD. Dr. Goldman's explanation of his diagnosis of Plaintiff and his understanding of the research on the exacerbation of PTSD would help the jury in considering Plaintiff's claims for damages.

---

[4] In contrast to Dr. Goldman's serious reliance on studies in the field, Defendants' expert, Dr. Fayer, believes that if "you Google PTSD; you're going to know all about it." (Dkt. 244-4 at 178). Expert testimony should not rely on Google searches.

7

**C. Dr. Goldman's Expert Opinion on the Exacerbation of Plaintiff's PTSD is Based on Sufficient Facts and Data.**

Under rule 702, an expert must base his testimony on sufficient facts and data. District courts have repeatedly found that reviewing deposition testimony, medical records and scientific literature on the subject matter at hand, and conducting interviews with the patient satisfies the "sufficient facts or data" requirement of rule 702. *See, e.g.*, *Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp. 3d 379, 387–88 (S.D.N.Y. 2017) (holding witness was qualified to offer expert opinion when based on interview with the patient, review of deposition testimony and records, and scientific literature on the subject matter at hand).

In *Schoolcraft v. City of New York*, for example, the expert's diagnosis included, but was not limited to "(i) a 90-minute interview with plaintiff; (ii) review of depositions by the doctors that assessed plaintiff at Jamaica Hospital; and (iii) review of medical records including plaintiff's Jamaica Hospital chart, a 2002 psychological evaluation of plaintiff, and NYPD psychologist … records on plaintiff." *Schoolcraft v. City of New York*, No. 10 CIV. 6005 RWS, 2015 WL 6444620, at *2 (S.D.N.Y. Oct. 23, 2015) (holding that this "methodology amounts to more than a diagnosis based on the patient's route recitation of symptoms, or a conclusion based only on temporal correlation").

Dr. Goldman's diagnosis of Plaintiff is similar, if not more expansive, than the expert's accepted diagnosis in *Schoolcraft*. Dr. Goldman spent six hours clinically interviewing Plaintiff over the course of one week, making observations of Plaintiff's behavior as well as administering objective psychological testing on Plaintiff. (Decl. of Stefan H. Krieger, Exh. 1 at 1). This testing consisted of the MMPI-II and the MCMI-III, (*Id.*), both of which are the "gold-standard testing of personality inventory." (Decl. of Stefan H. Krieger, Exh. 2 at 50). Dr. Goldman also reviewed Plaintiff's neurologist records that ranged from 2009 through 2012, as

well as Plaintiff's medical records generated from January 12, 2012 through April 17, 2012. (Decl. of Stefan H. Krieger, Exh. 1 at 1). Finally, Dr. Goldman also reviewed Plaintiff's deposition testimony. (*Id.*).

Defendants' main contention seems to be that Dr. Goldman did not review Plaintiff's medical records from prior to 2012. (Dkt. 229 at 10). However, those medical records would have no bearing on the issues in this case and would not have affected Dr. Goldman's diagnosis of Plaintiff. Defendants argue that reviewing those records would be "important because, as Dr. Goldman concedes, 'it is possible that [plaintiff's post-traumatic stress disorder diagnosis] could be in her ███████████████████████████████████" (Dkt. 229 at 10). But the fact that Plaintiff's PTSD diagnosis could possibly be in prior records does not make the fact that her PTSD was exacerbated by the challenged NYPD conduct more or less likely. Dr. Goldman testified that, in rendering his opinion, he in fact considered all factors that would be reflected in those prior records. (Decl. of Stefan H. Krieger, Exh. 2 at 98-100). While Defendants believe this to be "troubling[]," (Dkt. 229 at 11), Dr. Goldman testified that he "felt comfortable … with what [records] [he] had" and that he "had enough of a picture with everything [he had]." (Decl. of Stefan H. Krieger, Exh. 2 at 98). These records of a prior diagnosis of PTSD would add nothing to this case or Dr. Goldman's opinion, since Plaintiff is willing to stipulate that she suffered from PTSD prior to the incidents at issue in this case. (Dkt. 246-10 ¶ 12). The existence and cause of Plaintiff's PTSD from prior to 2012 are irrelevant to Dr. Goldman's expert opinion that Plaintiff's PTSD was *exacerbated* by the NYPD conduct challenged in this case.

**D. Dr. Goldman's Expert Opinion on the Exacerbation of Plaintiff's PTSD is the Product of Reliable Principles and Methods.**

Under rule 702, expert testimony must be the product of reliable principles and methods. In *Daubert*, the Supreme Court identified factors that may bear upon the reliability of proposed scientific testimony, including: (1) whether the theory or technique can be, and has been, tested; (2) whether it has been subjected to peer review and publication; (3) the known or potential error rate of the technique; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique or theory has gained widespread acceptance in the relevant scientific community. *Daubert*, 509 U.S. at 593-94 (noting that these factors do not constitute "a definitive checklist or test"); *see also* rule 702 Advisory Committee Notes.

Without analysis, Defendants argue Dr. Goldman's expert opinion is not the product of reliable principles and methods. (Dkt. 229 at 10). This assertion is completely unfounded. As part of his diagnosis of Plaintiff, Dr. Goldman used the MMPI-II and MCMI-III, which are "the gold-standard testing of personality inventory." (Decl. of Stefan H. Krieger, Exh. 2 at 50). Courts have recognized the MCMI-III as a "standard test." *See Raposo v. United States*, No. 01 CIV. 5870 (DAB), 2004 WL 1043075, at *5 (S.D.N.Y. May 7, 2004). The MCMI-III has also been tested and subjected to peer review, and has gained widespread acceptance in the field of psychology. *See Id.* (calling the MCMI-III a "standard test"); *Ashley v. City & Cty. of San Francisco*, No. CV-12-00045-JST KAW, 2013 WL 2386655, at *2 (N.D. Cal. May 30, 2013) (stating the MMPI-II and MCMI-III are standard tests that have been found by numerous courts to be proper tools for psychological assessment). Dr. Goldman also relied on "an abundance of research that demonstrates that those who are exposed to an initial trauma are at risk for additional trauma exposure." (Decl. of Stefan H. Krieger, Exh. 1 at 9) (citation omitted). Therefore, Dr. Goldman's expert opinion is the product of reliable principles and methods.

### E. Dr. Goldman's Expert Opinion is Not Speculative or Conjectural.

"Although expert testimony should be excluded if it is speculative or conjectural … other contentions that the assumptions are unfounded 'go to the weight, not the admissibility, of the testimony.'" *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996) (citation omitted). A district court has discretion under Fed. R. Evid. 703 "to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." *Shatkin v. McDonnell Douglas Corp.,* 727 F.2d 202, 208 (2d Cir. 1984). Furthermore, while a court could conclude that "there is simply too great an analytical gap between the data and the opinion proffered …," (Dkt. 229 at 9 *citing Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)), *"*where the foundation and methodology are adequately reliable to reach such a conclusion, the liberal standard of rule 702 must be heeded, even where arguments challenging the conclusion can be made. *See Daubert,* 509 U.S. at 594–95." *Schoolcraft*, 2015 WL 6444620, at *2.

Defendants again, without analysis, state that Dr. Goldman's opinion "is not gleaned by acting reasonably in making assumptions on facts." (Dkt. 229 at 10). It is unclear from Defendants' motion, however, what, if any, assumptions of fact Defendants believe Dr. Goldman made.

Contrary to Defendants' argument that there is "too great an analytical gap between the data and the opinion proffered," (Dkt. 229 at 9 *citing Gen. Elec. Co*, 522 U.S. at 146), Dr. Goldman relied on the "abundance of research that demonstrates those who are exposed to an initial trauma are at risk for additional trauma exposure." (Decl. of Stefan H. Krieger, Exh. 1 at 9). Furthermore, Dr. Goldman explained in his deposition testimony how he was able to conclude that "the violent physical arrests as described in the body of [Dr. Goldman's] report,

the lack of medical attention by the police and [Plaintiff's] subsequent seizures are what currently render [Plaintiff] traumatized, faced with great difficulty in her daily functioning." (*Id.*). This research and testimony demonstrates that there is no analytical gap between Dr. Goldman's opinion that Plaintiff's PTSD was exacerbated by the NYPD conduct challenged in this case and the underlying principles and methods.

While Defendants argue that Dr. Goldman "bases his expert opinion that the April 16, 2012 arrest was more traumatic for plaintiff than the ███████████ ) ███████████ ) on a 'guess,'" (Dkt. 229 at 11-12), Defendants deceptively left out the full answer by Dr. Goldman at his deposition.[5] The following exchange occurred between counsel for Defendants and Dr. Goldman:

| | |
|---|---|
| Ms. Robinson: | Well, after meeting with [Plaintiff] and preparing your expert report, did [Plaintiff] say to you that she considered the severity of the two arrests to be equal to or greater than the ███████████ ) ███████████ ) |
| Dr. Goldman: | She would say that, but I don't know if I necessarily, you know, agree only because -- |
| Ms. Robinson: | She would say what? |
| Dr. Goldman: | That the arrests were more traumatic for her. |
| Mr. Robinson: | *Did she, in fact, say that to you or you're just guessing as to what she would say?* |
| Dr. Goldman: | *I'm just guessing because in her mind, as I said, she's ███████████ ) ███████████, but, again, I still think it's a fresh -- it's still -- and my opinion is it's still a wound that, you know, that may have scabbed up but she's fragile.* |
| Ms. Robinson: | So she could be suffering currently from posttraumatic stress syndrome from the ███████████ ) ███████████; is that correct? |

---

[5] Strangely, Defendants have omitted page 121 of Dr. Goldman's deposition testimony from their deposition excerpts, which provides the full colloquy on this issue. (*See* Dkt. 229 at 12; Goykadosh Decl., Exh. B).

12

> Dr. Goldman: The difference is -- yeah, *the only thing is that the symptomology that she reports to have is different than what she had after she ▮▮▮▮▮▮▮▮▮▮▮▮ and what she reports to that*.

(Decl. of Stefan H. Krieger, Exh. 2 at 120-21) (emphasis added). As is apparent from this colloquy, contrary to Defendants' claim that Dr. Goldman's opinion is based on a "guess," he only guessed as to what *Plaintiff would say* about what was more traumatic for her. Dr. Goldman's opinion that "the violent physical arrests …, the lack of medical attention by the police and [Plaintiff's] subsequent seizures are what currently render [Plaintiff] traumatized, faced with great difficulty in her daily functioning," (Decl. of Stefan H. Krieger, Exh. 1 at 9), is certainly not based on a "guess." Rather, as Dr. Goldman stated in his deposition, it is based on the different symptomology that Plaintiff reports about the ▮▮▮▮▮▮▮▮▮▮▮▮ and what Plaintiff reported after the NYPD conduct challenged in this case.

Defendants seem troubled by Dr. Goldman's opinion that "it may be difficult to parse out which traumatic event in [Plaintiff's] life is responsible for her current level or distress." (Decl. of Stefan H. Krieger, Exh. 1 at 9). Dr. Goldman explains, however, that this issue arises because "[p]sychology does its best to be an exact science but it can't be." (Decl. of Stefan H. Krieger, Exh. 2 at 134). But this does not render Dr. Goldman's testimony inadmissible. *See, e.g.*, *Scott v. City of New York*, 591 F. Supp. 2d 554, 562 (S.D.N.Y. 2008) (stating permissible experts are not limited to specialists in the hard sciences and mathematical disciplines; they include authorities in areas such as industrial psychology); *Discepolo*, 399 F. Supp. 2d at 129 (holding expert's testimony was admissible where the expert was able to isolate a majority of plaintiff's problems and symptoms as consistent with sexual abuse). Defendants also argue that Dr. Goldman's opinions are based on "perceptions." (Dkt. 229 at 14). But psychology by its very nature deals with perceptions. *See, e.g.*, *United States v. Downing*, 609 F. Supp. 784, 786 (E.D.

Pa.), *aff'd,* 780 F.2d 1017 (3d Cir. 1985) (stating that the court was satisfied with the expert's background as a cognitive psychologist, which was a specialty in the field of psychology concerning perceptions). Defendants' argument in this regard goes to the weight, not the admissibility, of the opinion.

## II. DR. GOLDMAN'S TESTIMONY IS ADMISSIBLE UNDER FED. R. EVID. 401 AND 403.

Defendants argue that Dr. Goldman should be precluded from testifying because his testimony is not relevant and is substantially more prejudicial than probative. But the bar for relevancy is low. Under Fed. R. Evid. 401, "evidence is relevant if: (a) it has *any* tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." (Emphasis added). Furthermore, Under Fed. R. Evid. 403, evidence may be excluded only "if its probative value is *substantially* outweighed by a danger of … unfair prejudice … or needlessly presenting cumulative evidence." (Emphasis added).

### A. Dr. Goldman's Testimony is Not Duplicative.

Contrary to Defendants' argument, Dr. Goldman's testimony would not mirror that of any other fact witness called to testify at trial because he would add his specialized knowledge to the facts he has learned through his diagnosis of Plaintiff. Dr. Goldman would also explain Plaintiff's choice to return to the OWS protests, "which, to the ordinary lay person, may seem bizarre and inconsistent … ." *See Discepolo*, 399 F. Supp. 2d at 127–28 (citations omitted). Thus, it would not be manifest error for Dr. Goldman to testify, because he is not mirroring Plaintiff's testimony, and his expert opinion is "beyond the ken of the average juror." *Amuso*, 21 F.3d at 1263. Simply put, no other Plaintiff witness can testify about the exacerbation of Plaintiff's PTSD without the testimony being in the form of an expert opinion.

Nor would his testimony be used simply as a conduit for "introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 666 (S.D.N.Y. 2007) (excluding testimony that was nothing but conduit testimony from an expert on a matter outside his field of expertise that would not assist the jury). Rule 703—which allows disclosure of inadmissible evidence by an expert if the probative value of the evidence in helping the jury evaluate his opinion substantially outweighs the prejudice—provides a mechanism for this Court to control such disclosure.

**B. Any Prejudicial Effect of Dr. Goldman's Testimony Does Not Substantially Outweigh the High Probative Value of the Testimony.**

Defendants' Hail Mary argument is that Dr. Goldman's expert opinion is substantially more prejudicial than probative.

Dr. Goldman's expert opinion is highly probative for all the reasons stated above. *See supra* section I(B). Moreover, Defendants have not identified any substantial prejudicial effect of Dr. Goldman's testimony besides their contention that it would be "cumulative" or "waste[] the jurors' time." (Dkt. 229 at 16). Dr. Goldman would be testifying regarding how the NYPD conduct challenged in this case exacerbated Plaintiff's PTSD. This is one of Plaintiff's claims for damages and is therefore highly probative.

"Virtually all evidence is prejudicial to one party or another." *Costantino v. David M. Herzog, M.D., P.C.*, 203 F.3d 164, 174 (2d Cir. 2000). Otherwise, the evidence would not be relevant. Therefore, "to justify exclusion under rule 403 the prejudice must be *unfair*." *Id.* (emphasis in original). Dr. Goldman's expert opinion is highly probative as it makes the existence of Plaintiff's damages more likely. Defendants have not demonstrated that Dr. Goldman's testimony would "needlessly waste[] the jurors' time" and amount to the type of prejudice or unfairness that would substantially outweigh the probative value of the evidence.

15

## CONCLUSION

For the foregoing reasons, Defendants' motion to preclude the expert opinion of Robert Goldman, Psy.D. should be denied in its entirety.

Dated: Hempstead, New York
February 6, 2018

Respectfully submitted,

Community Legal Assistance Corp.
Stefan H. Krieger (SK 1748)
Theo Liebmann
108 Hofstra University Joan
F. Axinn Hall Hempstead,
New York 11549
lawshk@hofstra.edu
(516) 463-6078

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) 263-3495

Student Intern Dylan Nesturrick of the
Hofstra Law Clinic assisted in the
preparation of this memorandum.