UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------
MARY M. TARDIF,

                        Plaintiff,

           -against-

CITY OF NEW YORK, NEW YORK CITY POLICE
DEPARTMENT, INSPECTOR JOHN
O'CONNELL, DEPUTY INSPECTOR EDWARD
WINSKI, POLICE OFFICER JAMES MCNAMARA,
POLICE OFFICER ALENA AMINOVA, POLICE
OFFICER KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER FELIX
SCHMIDT, DEPUTY INSPECTOR DANIEL
MULLIGAN, SERGEANT THOMAS MCMANUS,
AND JOHN DOE NYPD OFFICERS ##1-9

                        Defendants.
--------------------------------------------------------------------------

**13-civ-4056
(KMW)(KNF)**

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE***

Dated: February 6, 2018
       Hempstead, New York

Community Legal Assistance Corp.
Stefan H. Krieger (SK1748)
Theo Liebmann
108 Hofstra University
Joan F. Axinn Hall
Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463-6078

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) 263-3495

# TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………………………………………i

ARGUMENT …………………………………………………………………………………..1

I.     BECAUSE OF THE LACK OF SPECIFCITY IN DEFENDANTS' MOTION, THIS COURT SHOULD DENY THEIR MOTION TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE CONCERNING FAILED CLAIMS……………………………………………………………………..1

     A.  Defendants' Motion to Preclude Plaintiff from Introducing Evidence Concerning Dismissed Claims Fails to Identify Specific Evidence They Seek to Preclude…………………………………………………………………1

     B.  Defendants Motion to Preclude Plaintiff from Introducing Evidence Concerning Damages from Dismissed Claims Fails to identify Specific Evidence They Seek to Preclude…………………………………………………………………...2

     C.  Defendants' Motion to Preclude Any Argument or Testimony About Other Members of the Service is Overbroad……………………………………………3

     D.  Defendants' Motion for An Instruction that Plaintiff's Arrest on April 16, 2012 Was Lawful Should Be Rejected……………………………………………4

II.    THIS COURT SHOULD DETERMINE IN ITS DISCRETION HOW THE PARTIES SHOULD REFER TO THE HOFSTRA LAW CLINIC'S LAW STUDENT INTERNS……………………………………………………………5

III.   PLAINTIFF SHOULD BE ALLOWED TO REFER TO THE CITY OF NEW YORK………………………………………………………………………..6

     A.  Plaintiff Should Be Allowed to Refer to Defendant City of New York's Attorneys As the "Attorneys for Defendant City of New York……………………………...7

     B.  Because of the Lack of Specificity in Defendants' Motion, This Court Should Deny Defendants' Motion to Include Inquiries About Any City of New York Training, Policy, or Practices……………………………………………...9

IV.   THE PATROL GUIDE PROVISIONS PROFFERED BY PLAINTIFF ARE ADMISSIBLE IN EVIDENCE……………………………………………...9

     A.  The Patrol Guide "Use of Force" Provisions Are of Consequence to the Determinations of the Issues Pertaining to the Reasonableness Elements of Plaintiff's Use of Force Claims……………………………………………9

B. The Patrol Guide Provisions on Medical Treatment are of Consequence to the Issue of the Reasonableness of Defendant Rumble and Schmidt's Response to Plaintiff's Seizure in the Patrol Wagon .................................................................13

C. The Probative Value of the Patrol Guide Provisions is not Substantially Outweighed by any Confusion to the Jury…………………………………………14

V. PLAINTIFF IS PERMITTED TO CALL CERTAIN WITNESSES AT TRIAL…………………………………………………………………………15

A. Plaintiff is Permitted to Call as Witnesses NYPD Members who Have Personal Knowledge of the Claims in This Case…………………………………………..15

B. Since Plaintiff Has Complied with Fed. R. Civ. P. 26 in Disclosing the Contact Information for Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxine Dade, Plaintiff is Permitted to Call These Individuals as Witnesses at Trial…………………………………………………………………………15

1. Mandy Quinn…………………………………………………………16

2. Daniel and Stephanie Shockley…………………………………………17

3. Maxine Dade…………………………………………………………..17

C. Defendants Personal Knowledge Objection to the Testimony of Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxine Dade is Premature................18

VI. UNDER FED. R. CIV. P. 32, PLAINTIFF IS ALLOWED TO OFFER INTO EVIDENCE DEPOSITION EXCERPTS OF DEFENDANTS AND AGENTS OF THE DEFENDANT CITY OF NEW YORK…………………………………………18

VII. SINCE PLAINTIFF IS NOT SEEKING DAMAGES FOR CAUSATION OF HER SEIZURES, DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF THE CAUSATION OF SEIZURES IS MOOT…………………………………20

VIII. PLAINTIFF SHOULD BE PERMITTED TO TESTIFY ABOUT HER BEING A MEDIC………………………………………………………………………...20

IX. PLAINTIFF IS PERMITTED TO INTRODUCE EVIDENCE AND ARGUMENTS ABOUT DEFENDANTS' INTERACTION WITH OTHER ARRESTEES……………………………………………………………………….22

X. PLAINTIFF IS PERMITTED TO OFFER EVIDENCE ABOUT OTHER INSTANCES OF POLICE CONDUCT WHICH RELATE TO CLAIMS IN THIS CASE…………..................................................................................................23

XI.    SINCE PLAINTIFF HAS STIPULATED NOT TO INQUIRE IN REGARD TO
       POLICE CONDUCT AGAINST ALL PERSONS OTHER THAN PLAINTIFF
       GENERALLY, DEFENDANTS' MOTION TO PRECLUDE THIS EVIDENCE
       IS MOOT…………...................................................................................................24

XII.   PLAINTIFFF SHOULD BE PERMITTED TO ARGUE WHAT DEFENDANTS
       COULD OR SHOULD HAVE DONE…………………………………………..24

XIII.  PLAINTIFF SHOULD BE ALLOWED TO QUESTION DEFENDANTS
       RUMBLE AND SCHMIDT ABOUT THE APPROPRIATE CONDUCT FOR
       "HUMAN BEINGS."………………………………………………………………25

## Table of Authorities

**Cases**                                                                    **Page(s)**

86 U.S.L.W. 3236, 86 U.S.L.W. 3238 (Nov. 13, 2017) (No. 17-21) ...............................................4

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293 (S.D.N.Y. 2009) ...20

*ATM One, LLC v. Landaverde*, 2 N.Y.3d 472 (2004) ....................................................................5

*Blake v. City of New York, 05 CV 6652*(BSJ), 2007 U.S. Dist. LEXIS 95913 (S.D.N.Y.
    July 13, 2007)..................................................................................................................7, 8

*Brown v City of New York*, 798 F.3d 94 at fn. 11 (2d Cir. 2015) ...................................................11

*Buchwald v. Renco Grp., Inc.,* No. 13-CV-7948(AJN), 2014 WL 4207113 (S.D.N.Y.
    Aug. 25, 2014) ........................................................................................................................20

*Collado v. City of New York*, 2017 U.S. Dist. LEXIS 161094 (S.D.N.Y.
    Aug. 5, 2015) .............................................................................................................10, 13, 14

*Community Counselling Service, Inc. v. Reilly*, 317 F.2d 239 (4th Cir. 1963)............................19

*Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017) .....................................................................13, 14

*De Michele v. City of New York*, No. 09 CIV. 9334 PGG, 2012 WL 4354763 (S.D.N.Y.
    Sept. 24, 2012) .......................................................................................................................11

*Galapo v. City of New York*, 95 N.Y.2d 568 (2000)....................................................................12

*Gersbacher v. City of New York*, No. 1:14-CV-7600-GHW, 2017 WL 4402538
    (S.D.N.Y. Oct. 2, 2017) ......................................................................................................4, 13

*Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.,* No. 13-CV-11544, 2015 WL 4934628
    (E.D. Mich. Aug. 18, 2015) ....................................................................................................9

*Greenridge v. Ruffin*, 927 F.2d 789 (4th Cir. 1991) ...................................................................12

*Hart v. RCI Hosp. Holdings, Inc.,* 90 F. Supp. 3d 250 (S.D.N.Y. 2015).........................................4

*Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167 (2d Cir. 1968) ....................................8

*James v. Kaskiw*, No. 9:13-CV-526, 2014 WL 3845086 (N.D.N.Y. Aug. 5, 2014) ....................25

*Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529 (E.D.N.Y. 2011)...................................................7

*King v. Macri*, 993 F.2d 294 (2d Cir. 1993) ................................................................................24

*Kingsley v. Hendrickson*, 135 S. Ct. 2466 ...................................................................................10

*Kolb v. Suffolk Cty.,* 109 F.R.D. 125 (E.D.N.Y. 1985)..................................................................20

*Lozman v. City of Rivera Beach*, 681 Fed. Appx 746 (11th Cir. 2017)...........................................4

*Morales v. New York Dep't of Labor*, No. 06-CV-899(MAD), 2012 WL 2571292
      (N.D.N.Y. July 3, 2012)...............................................................................................1, 18

*Napier v. Bossard*, 102 F.2d 467 (2d Cir. 1939)...........................................................................19

*New York State Tenants & Neighbors Coal., Inc. v. Nassau Cty. Rent Guidelines Bd.,* 53
      A.D.3d 550, 861 N.Y.S.2d 766 (2008) .................................................................................5

*Ngassaki v. Holder*, 538 F. App'x 28 (2d Cir. 2013) .....................................................................5

*Old Chief v. United States*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997) .................21

*Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121 (E.D.N.Y. 2013) .....................................5

*Salim v. Proulx*, 93 F.3d 86 (2d Cir. 1996)..................................................................................12

ii

*Simpson v. City of New York*, No. 12 Civ. 6577(KBF), 2015 U.S. Dist. LEXIS 138723 *16

(S.D.N.Y. Oct. 9, 2015) (S.D.N.Y. Oct. 9, 2015) ...................................................................7

*Smith v. City of New York*, No. 12 CIV. 4922 NRB, 2015 WL 4643125

(S.D.N.Y. Aug. 5, 2015) ...........................................................................................11

*Stern v. Shammas*, No. 12-CV-5210(NGG), 2015 WL 4530473 (E.D.N.Y. July 27, 2015)...........7

*Tomingas v. Douglas Aircraft Co.,* 45 F.R.D. 94 (S.D.N.Y. 1968)................................................18

*TVT Records v. Island Def Jam Music Grp.,* 250 F. Supp. 2d 341 (S.D.N.Y. 2003) ......................1

*Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL 3125314

(S.D.N.Y. Oct. 25, 2007) .............................................................................................7

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2003)..................................................................11

**Rules**

Fed. R. Civ. P. 26...................................................................................................................15

Fed. R. Civ. P. 32(a)(3)...........................................................................................................18

Fed. R. Evid. 401 ........................................................................................... *passim*

Fed. R. Evid. 403 ........................................................................................... *passim*

Fed. R. Evid. 404(b)(2)..........................................................................................................22

General Municipal Law § 205-e, ..............................................................................................12

**Other Authorities**

1 Kenneth S. Broun, et al., *McCormick on Evidence* § 185 (7th ed. 2013) .....................................6

8A Charles Alan Wright & Arthur R. Miller Fed. Prac. & Proc. Civ. § 2145 (3d ed.) .................19

https://buildtheblock.nyc.................................................................................................................25

https://www.youtube.com/watch?v=AULPTw41Osg&feature=youtu.be....................................25

I.    **BECAUSE OF THE LACK OF SPECIFCITY IN DEFENDANTS' MOTION, THIS COURT SHOULD DENY THEIR MOTION TO PRECLUDE PLAINTIFF FROM INTRODUCING EVIDENCE CONCERNING FAILED CLAIMS.**

    A.  **Defendants' Motion to Preclude Plaintiff from Introducing Evidence Concerning Dismissed Claims Fails to Identify Specific Evidence They Seek to Preclude.**

Without a specific factual context, courts refrain from deciding evidentiary issues *in limine*. *See, e.g., Morales v. New York Dep't of Labor*, No. 06-CV-899(MAD), 2012 WL 2571292, at *2 (N.D.N.Y. July 3, 2012) (in a discrimination case, denying motion *in limine* to preclude all evidence relating to a workers' compensation claim because the court held that it was unable to rule on the evidentiary issue outside a factual context); *TVT Records v. Island Def Jam Music Grp.*, 250 F. Supp. 2d 341, 345 (S.D.N.Y. 2003) (in an interference with contract action, declining to rule on a motion to preclude evidence of collateral legal disputes between the parties because in the absence of context, the court could not categorically conclude that such evidence is not relevant to matters raised by the case, nor could it properly weigh its probity).

In this case, without reference to any specific evidence—or, for that matter, citation to any applicable case law—Defendants move to preclude Plaintiff from introducing "any evidence or testimony regarding the claims previously dismissed by the Court." (Dkt. 232 at 12).[1] Without a factual context, however, it is impossible for this Court to decide such a blanket motion *in limine*. While, for example, Plaintiff acknowledges that she is prohibited from re-litigating the false arrest claim for the protest on April 16, 2012, the fact that she was arrested and detained in the patrol wagon that day—evidence that is regarding the false arrest claim—

---

[1] Oddly, although Defendants acknowledge that Plaintiff stipulates that she will not *argue* any failed theories of liability at trial (Dkt. 232 at 11 n.2), on the very next page, they argue the point as if it is in dispute. (*Id.* at 12).

certainly is probative to the remaining unconstitutional conditions of confinement claim.

Defendants simply ignore these kinds of probity issues and make conclusory arguments,

unsupported by any evidence in the record, that the admission of such evidence would drain their

resources and would be unduly prejudicial.  Fed. R. Evid. 403 only precludes evidence when the

prejudicial effect of that evidence *substantially outweighs* the probative value.  Without a

specific factual context and with unsubstantiated claims of prejudice, it is impossible for this

Court to engage in such balancing.

> **B. Defendants' Motion to Preclude Plaintiff from Introducing Evidence Concerning Damages from Dismissed Claims Fails to identify Specific Evidence They Seek to Preclude.**

Similar to their motion to preclude evidence in regard to failed claims, Defendants'

motion to bar Plaintiff from presenting evidence on any purported damages fails to identify

specific evidence they seek to preclude.  Defendants simply rehash the liability claims that have

been dismissed and those that remain and—except for a vague reference to "medical records and

damages testimony that has no plausible connection to the two incidents at issue"—point to no

particular evidence they seek to bar.  (Dkt. 232 at 13-14).[2]  For that reason, such a blanket

motion should be denied.

Nevertheless, just as Plaintiff stipulated that she will not argue any claims that have been

dismissed, (Dkt. 232 at 11 n.2), she agrees that she will not present testimony or evidence of

physical or psychological damages resulting solely from dismissed claims.  Thus, for example,

---

[2] Defendants continue to posit as given that the *respondeat superior* claims against Defendant City of New York for the assaults and batteries by John Doe #8, Sergeant Mattera, Lieutenant DeStefano, and Officer Aminova have been dismissed.  (Dkt. 232 at 13-14).  This Court has not yet rendered an opinion after the briefing on that issue.  (Dkt. 211, 215, and 216).  Accordingly, the issue whether the damages Plaintiff sustained while she was arrested on April 16, 2012 are relevant at trial has not yet been determined.

2

she has not identified any medical records in the Joint Pretrial Order concerning the March 17, 2012 denial of medical care. (Dkt. 224 at 25-28). Plaintiff will only seek damages proximately caused and/or caused in fact by the incidents alleged for the claims remaining at trial.

### C. Defendants' Motion to Preclude Any Argument or Testimony About Other Members of the Service is Overbroad.

On its face, Defendants' request that "Plaintiff should not be given latitude to argue or introduce testimony about other members of the service" is absurd. (*See* Dkt. 232 at 14). Again, without any reference to a specific factual context, this motion is too overbroad. Obviously, Plaintiff may have to introduce testimony in regard to other members of the service to provide context for evidence about the incidents in the case. In regard to the medical indifference claim, for example, Plaintiff may present evidence concerning the process by which Plaintiff was detained by non-defendant members of the service in the patrol wagon or the actions of such members who escorted her from the wagon at the precinct. Given such a blanket request, this Court should reserve any rulings on issues related to other members of the service to trial.

In regard to Officer Aminova, Plaintiff stipulates that she will not assert claims that were once asserted against Officer Aminova or contend that she is a defendant. If, however, on the briefing of the *respondeat superior* issue, this Court allows the claim to proceed to trial for Officer Aminova's assaults and batteries, Plaintiff will obviously seek damages against Defendant City of New York for her actions. And Defendants' request that the jury be instructed that "plaintiff cannot claim any liability or damages for actions of Aminova" will be moot. (*See* Dkt. 232 at 14).

3

**D.  Defendants' Motion for An Instruction that Plaintiff's Arrest on April 16, 2012 Was Lawful Should Be Rejected.**

After devoting three pages of their memorandum to arguing that Plaintiff should be precluded from referring to dismissed claims, Defendants surprisingly then move for an instruction relating to the April 16, 2012 arrest.[3]  They fail, however, to explain why this fact is relevant to the case.  In the only case cited by Defendants with any analysis of the issue, the jury was instructed in regard to a prior ruling in the case because that ruling pertained to an element at issue in the case.  *Hart v. RCI Hosp. Holdings, Inc.*, 90 F. Supp. 3d 250, 261 (S.D.N.Y. 2015) (in a Fair Labor Standards Act case, holding that a prior ruling that dancers were employees was relevant to establish defendants' state of mind as to the plaintiffs' employment status).[4]  Unlike in *Hart,* Defendants in this case have not shown how the lawfulness of the April 16 arrest is of consequence to any element in this case.

Since Plaintiff will not argue or present any evidence in regard to the legality of the April 16 arrest, it is hard to fathom, as Defendants surmise, how the jury will be confused on that issue.  If anything, such an instruction itself will confuse the jury since this Court would be raising an issue which is neither material nor probative to the claims in the case.[5]

---

[3] Contrary to this Court's Individual Practices, in the Joint Pretrial Order, Defendants failed to list this point as a motion *in limine*.  (Dkt. 224 at 33-34).

[4] The other case cited by Defendants on this issue, *Gersbacher v. City of New York*, 14 Civ. 7600(GHW), Dkt. 165, is simply a one-sentence docket entry with no analysis whatsoever of the issue.  For this reason, it provides no support for an instruction in this case.

[5] By the time of trial, the entire issue of the constitutional validity of the April 16 arrest may need to be reexamined by this Court.  In its decision on reconsideration, this Court held that probable cause is an "absolute defense" to a first amendment retaliation claim.  (Dkt. 202 at 8).  The Supreme Court, however, has granted *certiorari* on that issue and should be rendering a decision in the case later this year.  *Lozman v. City of Rivera Beach*, 681 Fed. Appx 746 (11th Cir. 2017), *cert. granted,* 86 U.S.L.W. 3236, 86 U.S.L.W. 3238 (Nov. 13, 2017) (No. 17-21).  That decision may require further reconsideration of Plaintiff's first amendment retaliation claim by this Court.

## II.    THIS COURT SHOULD DETERMINE IN ITS DISCRETION HOW THE PARTIES SHOULD REFER TO THE HOFSTRA LAW CLINIC'S LAW STUDENT INTERNS.

The New York Corporation Counsel makes the *ad hominem* and bizarre suggestion that the Hofstra Law Clinic treats its representation in this case as a "game," "play acting," and "nothing but an educational activity."  (Dkt. 232 at 17).  For the past fifty years, legal interns in the Hofstra Law Clinic have represented disadvantaged individuals in numerous fora: the Second Circuit Court of Appeals, the United States District Court for the Eastern District of New York, the New York Court of Appeals, the New York Supreme Court, Second Department, and many others.  *See, e.g.*, *Ngassaki v. Holder*, 538 F. App'x 28 (2d Cir. 2013); *Rivera v. Inc. Vill. of Farmingdale*, 29 F. Supp. 3d 121 (E.D.N.Y. 2013); *ATM One, LLC v. Landaverde*, 2 N.Y.3d 472 (2004); *New York State Tenants & Neighbors Coal., Inc. v. Nassau Cty. Rent Guidelines Bd.*, 53 A.D.3d 550, 861 N.Y.S.2d 766 (2008).  At no time in this history has any court questioned the quality of the interns' representation or their compliance with ethical standards.[6]  And, in fact, before any Clinic student will be certified to practice in this Court, Hofstra Law School Dean, Judge Gail Prudenti, will have to certify that the student is "qualified, … to provide … legal representation."

As to the substance of Defendants' motion to prelude reference to the Hofstra Law Clinic, they bewilderingly rely on Fed. R. Evid. 401 to 403.  Those provisions are evidentiary rules, not standards for courtroom management.  Plaintiff has no intent to introduce evidence that

---

[6] In fact, in 2016, the Clinic received the prestigious award for *Excellence in a Public Interest Case* from the national Clinical Legal Education Association for its  "groundbreaking, multi-plaintiff housing discrimination litigation that lasted for over 10 years" in *Rivera v. Incorporated Village of Farmingdale*, No. 06-2613 (E.D.N.Y.). https://www.americanbar.org/content/dam/aba/administrative/legal_education_and_admissions_to_the_bar/council_reports_and_resolutions/June2016CouncilOpenSession/2016_june_clea_report.authcheckdam.pdf.

her representatives include law student interns.  Accordingly, these rules are inapposite to Defendants' motion.  In regard to the issue of courtroom management, Plaintiff believes that this Court is in the best position to determine whether the jury should be informed that Plaintiff is represented by attorneys from the Hofstra Law Clinic and law student interns from the Clinic authorized to practice pursuant to this Court's rules.  If this Court does allow the jury to be informed on this issue, any confusion about the role of the students at trial may be allayed.  Of course, if the jury is so informed, Plaintiff agrees to an instruction that the role of law student interns at the trial should in no way influence its deliberations—either in favor of or against Plaintiff.

## III.    PLAINTIFF SHOULD BE ALLOWED TO REFER TO THE CITY OF NEW YORK.

Taken literally, Plaintiff's motion to preclude any reference to the City of New York is ludicrous.  The events that underlie the different claims in this case all occurred in Union Square and near Federal Hall in the City of New York.  The individual officers and non-defendant officers involved in these incidents were all members of the NYPD.  It would be absurd to proceed to trial in this case without any reference to the geographical area in which the events took place and the affiliation of the alleged perpetrators and their associates.  Such contextual evidence is of consequence to the determination of the case because it "fill[s] in the background of the narrative and gives it interest, color, and lifelikeness."  1 Kenneth S. Broun, et al., *McCormick on Evidence* § 185 (7th ed. 2013), citing *Old Chief v. United States*, 519 U.S. 172, 187-88 (1997).

### A.  Plaintiff Should Be Allowed to Refer to Defendant City of New York's Attorneys As the "Attorneys for Defendant City of New York."

In Defendants' *Alice in Wonderland* world, not only is it forbidden to refer to New York City as New York City but the attorneys for Defendant City of New York cannot be referred to as who they are: "Attorneys for the Defendant City of New York."  This Court has determined that the City of New York remains a defendant in this case for the various *respondeat superior* claims for the assaults and batteries of its officers.  (Dkt. 202 at 6-7).  Unlike this case, in most of the cases cited by Defendants for the proposition that it was improper for plaintiffs to refer to the City attorneys, the City had been dismissed as a party to the case.  *See Simpson v. City of New York*, No. 12 Civ. 6577(KBF), 2015 U.S. Dist. LEXIS 138723 *16 (S.D.N.Y. Oct. 9, 2015) (noting that the City of New York was *once* a defendant in the case);[7] *Williams v. McCarthy*, No. 05 CIV. 10230 (SAS), 2007 WL 3125314, at *7 (S.D.N.Y. Oct. 25, 2007) (noting that the City had moved to preclude any reference to "City attorneys" "[b]ecause the City had been dismissed from the case"); *Stern v. Shammas*, No. 12-CV-5210(NGG), 2015 WL 4530473, at *15 (E.D.N.Y. July 27, 2015) (noting that the City had been dismissed from the case); *Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011) (holding that "[b]ecause the City of New York is not a defendant in this action, the court agrees that any reference to defense counsel as "City attorneys" may unfairly prejudice defendants").

While in the only other authority cited by Defendants for the proposition that any reference to their attorneys as "Attorneys for the City of New York," *Blake v. City of New York*,

---

[7] Defendants misrepresent the holding in *Simpson* when it directly cites the case for the proposition that "[w]hile the City of New York is still involved in this action for the purpose of a *respondeat superior* determination only, 'that fact is irrelevant to the determination of liability and damages should be based solely on the facts and the law.'"  The *respondeat superior* claim in *Simpson* had been dismissed at the time of the language quoted in the decision.

05 CV 6652(BSJ), 2007 U.S. Dist. LEXIS 95913, at *5-6 (S.D.N.Y. July 13, 2007), the

*respondeat superior* claim survived, Defendants had stipulated in that case that the alleged

officer-defendants had acted in the scope of their employment.  The court held that "[u]nder

these circumstances, referring to the City as a named defendant is unnecessary and could confuse

the jury."  *Id.* at *6.  The circumstances in the instant case, however, are quite different.

Defendants have refused to stipulate to any facts whatsoever.  (See Dkt. 246-9 ¶¶ 7-8).

Moreover, unlike the claim in *Blake* where the *respondeat superior* claims sought joint liability

against both the City and a party defendant, several of Plaintiff's *respondeat superior* claims in

this case seek redress solely from the City for the assaults and batteries of non-defendant

officers.  (*See* Dkt. 211).  Accordingly, for those claims, the only party in the case that will be

held liable for these torts will be the City, and defense counsel will only be defending the City on

those claims.  For that reason, contrary to Defendants' argument, (Dkt. 232 at 19), whether the

City is a defendant under state law does have a bearing on the jury's determination.

Finally, Defendants' argument that any reference to Defendant City of New York will

prejudice the City, (Dkt. 232 at 18-19), improperly minimizes the significance of *respondeat*

*superior* liability.  Defendants' characterization of the claim as "narrow" ignores the important

policy underlying vicarious liability: "a deeply rooted sentiment that a[n] … enterprise cannot

justly disclaim responsibility for accidents which may fairly be said to be characteristic of its

activities."  *Ira S. Bushey & Sons, Inc. v. United States*, 398 F.2d 167, 171 (2d Cir. 1968)

(Friendly, J.).  In light of this policy, the jury should clearly understand that Defendant City of

New York is responsible for the assaults and batteries in this case, not just the perpetrators.  Any

"deep pocket" concerns can be addressed with an instruction to the jury that it should not

consider the City's status as a defendant in the case in its findings on compensatory damages.

*See Gonzalez Prod. Sys., Inc. v. Martinrea Int'l Inc.*, No. 13-CV-11544, 2015 WL 4934628, at

*11 (E.D. Mich. Aug. 18, 2015) (holding that a limiting instruction would allay any concerns

that the jury would consider the defendant's deep pocket).

      **B. Because of the Lack of Specificity in Defendants' Motion, This Court Should Deny Defendants' Motion to Include Inquiries About Any City of New York Training, Policy, or Practices.**

As explained in Part I(A), without a specific factual context, courts refrain from deciding

evidentiary issues *in limine*. Given Defendants' failure to point to any evidence Plaintiff plans to

proffer in regard to the City's training, policy, or practices, it is impossible for Plaintiff to

respond to the motion and for this Court to engage in any meaningful analysis of the issues under

rules 401 and 403.

**IV.    THE PATROL GUIDE PROVISIONS PROFFERED BY PLAINTIFF ARE ADMISSIBLE AS EVIDENCE.**

      **A. The Patrol Guide's "Use of Force" Provisions are of Consequence to the Determinations of the Issues Pertaining to the Reasonableness Elements of Plaintiff's Use of Force Claims.**

Plaintiff claims that Defendant McManus is liable for his use of excessive force and

assault and battery on Plaintiff on March 21, 2012 when he approached her and shoved her off

her crutches to the ground. (Dkt 135 at 17-19). Additionally, Plaintiff claims that Defendant

City of New York is liable for the assaults and batteries of Officer's Mattera and John Doe #8

earlier in the day on March 21, 2012 when John Doe #8 shoved Plaintiff in her chest with his

baton, and Officer Mattera grabbed Plaintiff from a crowd of protestors and slammed her to the

ground. (Dkt 135 at 10-11). Finally, Plaintiff claims Defendant City is liable for the assaults and

batteries of Lieutenant DeStefano and Officer Aminova on April 16, 2012, in which Officer

Aminova climbed on top of Plaintiff and shoved her onto the sidewalk, and Lieutenant

DeStefano slammed Plaintiff into the side of a building and jerked her head back as he swung her by her hair.  (Dkt 135 at 12-15).

In considering Defendants' liability, the jury will have to determine the reasonableness of their actions.  In order to establish that Defendant's actions exhibited excessive force, Plaintiff must prove—among other things—that "[d]efendants knew that using force presented a risk of harm to plaintiff, but they recklessly disregarded plaintiff's safety by failing to take *reasonable measures* to minimize the risk of harm to plaintiff."  *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2471 (2015) (emphasis added).

Plaintiff will be offering into evidence NYPD Patrol Guide provisions on use of force to provide the jury with factors to consider in determining the NYPD members reasonableness. (Decl. of Stefan H. Krieger, Exh. 1).  Specifically, the Patrol Guide provides, "The primary duty of all members of the service is to preserve human life.  Only that amount of force necessary to overcome resistance will be used."  (*Id.*).  When a police officer at the scene of an incident is determining what amount of force necessary, he/she must "use minimum necessary force."  (*Id.*). When assessing such minimum force, police officers must keep in mind they are "responsible and accountable for the proper use of force under appropriate circumstances."  (*Id.*).

The Patrol Guide is therefore of consequence to determining the reasonableness of the Defendant's actions in connection with Plaintiff's claims of excessive force.  *See* rule 401.  This Court has already ruled on this matter, holding that "[w]hether the officers violated the NYPD Patrol Guide remains a significant factor to be considered in ultimately determining whether the officers' actions that day were reasonable and subject to qualified immunity."  (Dkt. 202 at 13-14). The Patrol Guide provides a standard of care which the jury can consider in determining the unreasonableness of Defendants' actions.  *See Collado v. City of New York*, (DAB) 2017 U.S.

Dist. LEXIS 161094 (S.D.N.Y. Sept. 27, 2017) (denying a motion *in limine* similar to Defendants and holding that the Patrol Guide is relevant as "evidence of lesser degrees of force [defendant] could have used"); *see generally Smith v. City of New York*, No. 12 CIV. 4922 NRB, 2015 WL 4643125, at *3 (S.D.N.Y. Aug. 5, 2015) (denying summary judgment in a negligence case and holding evidence that the Patrol Guide provides a standard of care which a jury can consider); *cf. De Michele v. City of New York*, No. 09 CIV. 9334 PGG, 2012 WL 4354763, at *21 (S.D.N.Y. Sept. 24, 2012) (finding that "[i]n the event that a defendant NYPD officer violated the NYPD Patrol Guide, that may be evidence of excessive force.").

Contrary to Defendants' argument, Plaintiff is not claiming that any violation of the Patrol Guide is "equivalent to or even evidence of a violation of plaintiff's constitutional right." (Dkt. 232 at 21). Instead, Plaintiff asserts the Patrol Guide is one factor to be considered in the jury's determination whether the Defendants' actions were reasonable in light of the circumstances surrounding their situation. *See generally Brown v City of New York*, 798 F.3d 94, 101 at fn. 11 (2d Cir. 2015) (explicitly rejecting the argument "that the Patrol Guide standard is not relevant" to a constitutional ruling on excessive force).

Similarly, Defendants' argument that the Patrol Guide does not create a presumption of liability, (Dkt. 232 at 22), confuses the issue. Plaintiff recognizes that an excessive force claim requires more than a showing of negligence and that a violation of the Patrol Guide, standing alone, will not directly create liability for Defendants. But such a violation is a factor to be considered in the jury's ultimate decision of finding liability for the Defendants' unreasonable actions.

Moreover, Defendants' argument that the Patrol Guide is irrelevant because qualified immunity is solely an issue for this Court, (Dkt 232 at 23), is simply wrong. "Whether a

defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2003). While this Court will determine in the end whether the Defendants are entitled to qualified immunity, the jury will decide all disputed facts that this Court will consider in making this determination. *Id.* at 368. One of those facts is whether the Defendants used excessive force. *See Id.* at 362. The jury, therefore, may consider whether the Defendants used minimum force in light of the circumstances before this Court renders a final decision on the objective reasonableness of that use of force. The Patrol Guide is relevant to that factual issue.

Additionally, unlike the circumstances in several of the cases cited by Defendants, Plaintiff is not offering the Patrol Guide to show any violations prior to the incidents. *See cf. Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996); *Greenridge v. Ruffin*, 927 F.2d 789, 791-92 (4th Cir. 1991).

Finally, Defendants' reliance on cases arising under New York General Municipal Law § 205-e, (Dkt 232 at 24), is misplaced. That section permits officers or their supervisors to recover for injuries caused by negligent failure to comply with a "well-developed body of law and regulation," that "imposes clear duties." *Galapo v. City of New York*, 95 N.Y.2d 568, 574-75 (2000). The courts have held that the Patrol Guide is not part of a duly-enacted body of law and regulation. *Id.* at 574. Plaintiff in this case, however, does not claim that the Patrol Guide creates legal duties and only offers it as evidence of the unreasonableness of the force used by NYPD officers. That is a far cry from arguing that the Patrol Guide creates legally-enforceable duties.

**B. The Patrol Guide Provisions on Medical Treatment are of Consequence to the Issue of the Reasonableness of Defendant Rumble's and Schmidt's Response to Plaintiff's Seizure in the Patrol Wagon.**

Plaintiff also brings a claim of deliberate indifference to a serious medical condition against Defendants Rumble and Schmidt for their unreasonable failure to provide prompt medical attention when she experienced a seizure in the back of their patrol wagon.

In order to establish Defendants' liability on this claims, Plaintiff must prove by a preponderance of the evidence that "the conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health," and that "Defendants failed to take reasonable measures to address Plaintiff's medical needs." *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017); *Gersbacher v. City of New York*, No. 1:14-CV-7600-(GHW), 2017 WL 4402538 (S.D.N.Y. Oct. 2, 2017). Plaintiff plans to offer into evidence Patrol Guide provisions on treatment of prisoners needing medical assistance. (Decl. of Stefan H. Krieger, Exh. 2). According to the Patrol Guide, "IN ALL LIFE THREATENING SITUATIONS, APPARENT HEART ATTACK, BREATHING DIFFICULTIES, SERIOUS FRACTURES, SEVERE HEMORRHAGING, EPILEPSY… A PRISONER WILL BE REMOVED TO THE NEAREST HOSPITAL." In addition, it states "[w]hen prisoner requires medical/psychiatric treatment: (1) uniformed officers should request ambulance and remove prisoner to hospital directly from place of arrest, if necessary." *Id.* That provision provides a standard of care which the jury can consider as a factor in determining the reasonableness of the Defendant's actions in attending to Plaintiff's medical needs. For that reason, it is relevant evidence. *See Collado v. City of New York*, 2017 U.S. Dist. LEXIS 161094 at *9.

Defendants summarily dispute the relevance of these Patrol Guide provisions with little analysis. Defendant's only argument in terms of this claim is that the reasonableness of

13

Defendants' conduct is not an issue for the jury's consideration of such a claim. (Dkt 232 at 23). The very case cited by Defendants for their argument, *Darnell v. Pineiro*, 849 F. 3d 17, 29 (2d. Cir. 2017), belies this argument. In *Darnell*, the Court observed that in determining whether a defendant acted with "deliberate indifference," a determination must be made by the jury whether a "reasonable" person knew or should have known about the seriousness of a prisoner's medical condition. *Darnell*, 849 F.3d at 29 (citations omitted). Defendants' state of mind is not an issue for qualified immunity but a disputed issue of fact for the jury to decide. In this case, then, one of the factors the jury should be able to consider in determining whether a reasonable person would have known or should have known that Plaintiff needed immediate assistance for her serious medical condition is the Patrol Guide provisions on medical treatment of prisoners.

### C. The Probative Value of the Patrol Guide Provisions is not Substantially Outweighed by any Confusion to the Jury.

Defendants express concern that any reference to violation of the NYPD procedure would confuse the jury because it would assume "that NYPD procedure sets out the standard by which they are to evaluate the individual defendant's alleged actions, notwithstanding a contrary instruction from the court." (Dkt. 232 at 12). They have not demonstrated, however, how any purported risk of confusion *substantially outweighs* the probative value of the Patrol Guide. Even assuming *arguendo* that there is potential for any confusion, this purported problem can easily be addressed with an appropriate jury instruction. *See Collado v. City of New York*, No. 11 Civ. 9041 (DAB), 2017 U.S. Dist. LEXIS 161094, at *9 (S.D.N.Y. Sep. 27, 2017) (denying a motion *in limine* to bar introduction of Patrol Guide provisions but allowing "an appropriate limiting instruction as to any consideration of the NYPD Patrol Guide"). Plaintiff has proposed such an instruction. (Dkt. 234 at 19) ("The procedures outlined in the Patrol Guide provide

guidelines to NYPD officers on proper responses in certain situations.  It does not, however,

contain distinct instructions for every situation that arises").

**V.    PLAINTIFF IS PERMITTED TO CALL CERTAIN WITNESSES AT TRIAL**.

    **A.    Plaintiff is Permitted to Call as Witnesses NYPD Members Who Have Personal Knowledge of the Claims in This Case.**

In moving to preclude Plaintiff from calling Sergeant Mattera and Lieutenant DeStefano

as witnesses, Defendants continue to argue the issue of *respondeat superior* claims for those

individuals' assault and batteries.  That issue has been thoroughly briefed by the parties.  (Dkts.

211, 215, and 216).  The decision on that issue will moot this motion.

    **B.    Since Plaintiff Has Complied with Fed. R. Civ. P. 26 in Disclosing the Contact Information for Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxine Dade, Plaintiff is Permitted to Call These Individuals as Witnesses at Trial.**

Based on cherry-picked references to the record, Defendants assert that Plaintiff did not

comply with Fed. R. Civ. P. 26(a)(1)(B), which requires parties to provide other parties with the

names, address, and telephone numbers of each individual likely to have discoverable

information. The full record of these disclosures—which Defendants have failed to provide—

show that Plaintiff complied with that rule.

    **1.    Mandy Quinn.**

15

Defendants claim that "plaintiff refused to provide any contact information for Mandy Quinn[8]—despite being asked to do so, on several different occasions." (Dkt. 232 at 25). This is a blatant misrepresentation of the record.

In support of their argument that Plaintiff refused to provide contact information as to Ms. Quinn, Defendants attach as exhibits two letters from Amy Robinson to Stefan H. Krieger dated January 23, 2015, and June 1, 2015 requesting this information. But they disingenuously fail to provide this Court with Plaintiff's responses to these documents.

In regard to the January 23, 2015 request, Plaintiff responded on January 26, 2015. In that letter, Plaintiff provided Defendants with contact information for Mandy Quinn. (See Decl. of Stefan H. Krieger, Exh. 3). The information included the name of Ms. Quinn's attorney and the attorney's office address and telephone number. Defendants never once notified Plaintiff of any problems with contacting Ms. Quinn through her attorney. (Decl. of Stefan H. Krieger ¶ 12).

And in response to Defendants' June 1, 2015 letter, Plaintiff sent a letter to Defendants on June 3, 2015. (Decl. of Stefan H. Krieger, Exh. 4). In that letter, Plaintiff informed Defendants that she had reviewed her files and found that Defendants were incorrect in their assertion that Plaintiff had failed to provide "any contact information" concerning Mandy Quinn. Plaintiff referenced her January 26, 2015, letter in which Plaintiff had provided Defendants with Ms. Quinn's attorney's name, telephone number, and office address. Furthermore, Plaintiff informed Defendant that because the June 1, 2015, deadline for serving subpoenas had passed, Plaintiff would object to any attempt to depose Ms. Quinn and that she intended to include Ms. Quinn on her witness list in the pretrial order.

---

[8] Despite Plaintiff's request that Defendants refer to Ms. Quinn by her present name, offensively, they repeatedly continue to refer to her by her former name.

16

Accordingly, the full discovery record demonstrates that Defendants' accusation that Plaintiff "refused" to provide contact information for Ms. Quinn is false. Plaintiff disclosed this information but Defendants apparently did not follow through in contacting Ms. Quinn's attorney.

### 2.    Daniel and Stephanie Shockley.

Defendants acknowledge that Plaintiff provided Defendants with contact information for the Shockleys on March 10, 2015. (Dkt. 231-9). In that letter, Plaintiff informed Defendants of email addresses and telephone numbers for each of them. Indeed, one week after this letter, Defendants' informed Plaintiff that Defendants had contacted the Shockleys and asked them for their availability. (Decl. of Stefan H. Krieger, Exh. 5).

The fact that Defendants did not follow up with the Shockleys is obviously not Plaintiff's responsibility. Since 2015, Plaintiff has been in contact with the Shockleys both at the phone number and email address provided in the March 10 letter. (Decl. of Stefan H. Krieger ¶¶ 13-15). Plaintiff's only obligation under rule 26 was to disclose contact information to Defendants, not schedule depositions for them.[9]

### 3.    Maxine Dade.

Defendants' one-sentence complaint that Plaintiff only disclosed Ms. Dade's telephone number in a supplementary disclosure is bewildering. The Federal Rules of Civil Procedure allow a party to supplement or correct its disclosure. Rule 26 (e)(1)(A). It is hard to understand why Plaintiff should be precluded from calling a witness because she complied with the rules.

Contrary to Defendants' argument that these witnesses have "miraculously" appeared for trial (Dkt. 232 at 27), there is nothing miraculous about it. Plaintiff performed her due diligence

---

[9] In light of Defendants' lack of diligence, their request to now depose them, (Dkt. 232 at 28 n.4), should be denied for failure to show good cause for not meeting the discovery deadline. Rule 16(b)(4).

in providing contact information for these witnesses. Defendants dropped the ball on following through on the information provided and now chooses to disingenuously blame Plaintiff to distract attention from their own shortcomings.

### C.    Defendants' Personal Knowledge Objection to the Testimony of Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxine Dade is Premature.

Having failed to depose Ms. Quinn, the Shockleys and Ms. Dade, Defendants now seek to preclude their testimony because "it is not clear" whether these individuals have personal knowledge of the challenged incidents. Such a baseless, conclusory assertion of Defendants certainly does not provide the necessary factual context for a ruling on a motion *in limine*. *See Morales v. New York Dep't of Labor*, No. 06-CV-899*(MAD), 2012 WL 2571292, at *2. Any objection to these witness's testimony should be made when and if any of these witnesses testify.

### VI.    UNDER FED. R. CIV. P. 32, PLAINTIFF IS ALLOWED TO OFFER INTO EVIDENCE DEPOSITION EXCERPTS OF DEFENDANTS AND AGENTS OF THE DEFENDANT CITY OF NEW YORK.

Pursuant to this Court's Individual Practices, in the Joint Pretrial Order, Plaintiff has designated deposition testimony of Defendants and agents of Defendant City of New York she plans to offer in her case-in-chief. (Dkt. 224 at 15-25; Dkt. 236). These excerpts can be used at trial pursuant to Fed. R. Civ. P. 32(a)(3): "An adverse party may use *for any purpose* the deposition of a party or anyone who, when deposed was the party's … managing agent." For purposes of the deposition rules, "[t]he term 'managing agent' should not be given too literal an interpretation but rather should depend largely on whether the interests of the individual involved are identified with those of his principal and on the nature of his 'functions, responsibilities and authority … *respecting the subject matter of the litigation*.'" *Tomingas v. Douglas Aircraft Co.*, 45 F.R.D. 94, 96 (S.D.N.Y. 1968) (citation omitted) (emphasis in original).

Defendants do not dispute that Plaintiff has the right to use these deposition excerpts pursuant to rule 32(a)(3) but argue that she should be precluded from using excerpts for claims that are no longer part of the action.  (Dkt. 232 at 19).  All of Plaintiff's designated excerpts, however, concern claims that remain for trial.  Defendants cannot—and do not—contest that the excerpts from Defendants McManus, Rumble, and Schmidt concern existing claims.  The remaining deposition excerpts concern the *respondeat superior* claim against the City for the assault and battery of Sergeant Mattera (Sergeant Mattera, Inspector Pilecki, and Officer Merritz-Saccente) and the *respondeat superior* claim for the assaults and batteries of Lieutenant DeStefano and Officer Mattera (Lieutenant DeStefano, Officer Aminova, Deputy Chief O'Connell, and Deputy Chief McNamara).  Since all these excerpts address remaining claims, contrary to Defendants' argument, they are probative.

Defendants' argument that the courts prefer live as opposed to deposition testimony simply disregards the dictates of rule 32(a)(2).  That rule allows for the use of the deposition of an adverse party or its agent "for any purpose," including in its case-in-chief:

> It has been consistently held that th[is] Rule permits a party to introduce, as part of his substantive proof, the deposition of his adversary, and *it is quite immaterial that the adversary is available to testify at the trial or has testified there*. Thus applied, the Rule is a restatement of the long recognized rule of evidence that statements of a party which are inconsistent with his claim in litigation are substantively admissible against him.

*Community Counselling Service, Inc. v. Reilly*, 317 F.2d 239, 243 (4th Cir. 1963) (Haynsworth, J.) (emphasis added); *see generally* 8A Charles Alan Wright & Arthur R. Miller Fed. Prac. & Proc. Civ. § 2145 (3d ed.).  All the cases cited by Defendants on this issue address the use of *nonparty* depositions—situations that do not concern the use of adverse party depositions under rule 32(a)(3).  *See Napier v. Bossard*, 102 F.2d 467, 468 (2d Cir. 1939) (attempted introduction of a deposition of a person who "was not a party to the controversy in which it was used");

19

*Buchwald v. Renco Grp., Inc.*, No. 13-CV-7948(AJN), 2014 WL 4207113, at *1 (S.D.N.Y. Aug. 25, 2014) (denying request to have testimony of nonparty witnesses presented through depositions rather than live testimony); *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009) (denying request for trial subpoenas for nonparties who wanted to rely on deposition testimony); *Kolb v. Suffolk Cty.*, 109 F.R.D. 125, 126-27 (E.D.N.Y. 1985) (noting that because the depositions sought to be introduced were not covered by rule 32, live testimony was required).

Of course, at trial, Defendants may interpose specific evidentiary objections to different excerpts. But their present motion—requesting a blanket preclusion of all deposition excerpts because the excerpts are not relevant to existing claims and are prohibited by the preference for live testimony—must be rejected because rule 32(a)(3) clearly allows their admission.

## VII.  SINCE PLAINTIFF IS NOT SEEKING DAMAGES FOR CAUSATION OF HER SEIZURES, DEFENDANTS' MOTION TO PRECLUDE EVIDENCE OF THE CAUSATION OF SEIZURES IS MOOT.

Defendants devote more than two pages of their memorandum arguing that Plaintiff should be precluded from seeking damages for causation of her seizures. (Dkt. 232 at 31-32). Plaintiff, however, does not seek such damages. (*See* Decl. of Stefan H. Krieger, Exh. 6).[10] Since she will not be presenting any evidence on that issue at trial, this motion is moot.

## VIII.  PLAINTIFF SHOULD BE PERMITTED TO TESTIFY ABOUT HER BEING A MEDIC.

In an effort to sanitize the case to eliminate any evidence of Plaintiff's personhood, Defendants also move, pursuant to rules 401 to 403, to preclude Plaintiff from presenting any evidence of "plaintiff's training as a medic, [her] activities as a medic during the Occupy Wall

---

[10] While Defendants acknowledge that Plaintiff has stipulated "not to mention her epilepsy or seizures when testifying about the March 21, 2012 incident" (Dkt. 232 at 11 n.2), they waste Plaintiff's and this Court's time requesting that relief in their motion. (*Id*. at 21).

Street Movement, or any other nuanced understanding that plaintiff may believe she may have of the practice, science, art, or administration of medicine." (Dkt 232 at 32).

Defendants' argument that evidence of Plaintiff's training as a medic is "of no consequence" to the particular claims in dispute ignores the meaning of that term. As the Advisory Committee notes to rule 401 state, "The facts to which the evidence is directed need not be in dispute. … Evidence which is essentially background in nature can scarcely be said to involve disputed matter, yet it is *universally* offered as an aid to understanding." (citation) (emphasis added.) As Justice Souter wrote,

> A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it. People who hear a story interrupted by gaps of abstraction may be puzzled at the missing chapters, and jurors asked to rest a momentous decision on the story's truth can feel put upon at being asked to take responsibility knowing that more could be said than they have heard. A convincing tale can be told with economy, but when economy becomes a break in the natural sequence of narrative evidence, an assurance that the missing link is really there is never more than second best.

*Old Chief v. United States*, 519 U.S. 172, 189, 117 S. Ct. 644, 654, 136 L. Ed. 2d 574 (1997). In this case, Plaintiff's role as a medic in the Occupy Wall Street protests which are the focus of this case will aid the jury in understanding the full context of the challenged incidents.

Similarly, and even more important, this evidence is relevant to refute one of Defendants' defenses. Defendants argue that Plaintiff's Post-Traumatic Stress Disorder ("PTSD") could not have been exacerbated by the NYPD conduct in this case because, even after the incidents in this case, she continued to participate in Occupy protests. (Dkt 246-4 at 28). Plaintiff will present evidence, however, that one of the primary reasons she continued to participate in these protests was the importance she saw in her role as a medic. Accordingly, evidence of Plaintiff's activities as a medic are of consequence to and probative of the element of her damages for exacerbation of her PTSD.

21

Given that this evidence is both material and probative of Plaintiff's damages, Defendants' rule 403 argument fails. Defendants raise concerns that this evidence "*may* mislead the jury into believing that plaintiff possesses some qualified knowledge, skill, or training." (Dkt. 232 at 24) (emphasis added). But given that Plaintiff will not be presented as an expert witness, Defendants cannot meet its heavy burden of establishing that their speculation about jury confusion substantially outweighs the probative value of this evidence.

## IX. PLAINTIFF IS PERMITTED TO INTRODUCE EVIDENCE AND ARGUMENTS ABOUT DEFENDANTS' INTERACTION WITH OTHER ARRESTEES.

Just as with Defendants' argument that Plaintiff should be precluded from referring to the City of New York, their blanket request to preclude any evidence of Defendants' interactions with other arrestees is ridiculous. The events underlying several of the claims in this case—most importantly, the communications between other arrestees and Defendants Rumble and Schmidt in the patrol wagon on April 16, 2012—involved arrestees other than the Plaintiff. The interactions with these other arrestees are crucial to telling the entire story of the incidents. Under Defendants' proposed order, Plaintiff would be barred from presenting any evidence of those communications in the patrol wagon although they are highly probative of the element that Defendants knew or should have known of Plaintiff's serious medical condition.

In regard to Defendants' specific request to bar Plaintiff from presenting evidence of Defendant Rumble's failure to seatbelt Plaintiff's co-arrestee, Mandy Quinn, in the patrol wagon, Defendants misunderstand the purpose for which Plaintiff is offering this testimony. Plaintiff will not offer this evidence on the issue of whether she was seat belted in the patrol wagon on April 16. Rather, she is offering this evidence, pursuant to Fed. R. Evid. 404(b)(2) to show Defendant Rumble's mental state when she refused to take Plaintiff immediately to the hospital that night. At her deposition, Defendant Rumble acknowledged that she disregarded the Patrol

Guide seat belting procedures on April 16 because "there was so much confusion" that night. (Dkt. 231-7 at 144:1-7, 145:1-57).  Because of Defendant Rumble's deliberate indifference to Ms. Quinn, her safety was endangered.  Plaintiff is offering this evidence to prove that similarly, Defendant Rumble, in her confusion, *knowingly* disregarded the Patrol Guide's procedures on medical treatment of arrestees when, after Plaintiff's seizure, she failed to attend to her needs and immediately bring her to the hospital.  Just as Defendant was deliberately indifferent to Ms. Quinn's safety because of the confusion of the night, she was deliberately indifferent to Plaintiff's medical needs.

Any slight dangers of jury confusion from this evidence can easily be addressed with a limiting instruction that the jury should only consider this evidence in determining whether Defendant Rumble's knowingly failed to take reasonable measures to address Plaintiff's medical needs, and that Plaintiff has raised no claims regarding the failure to seatbelt Ms. Quinn in the patrol wagon.

## X.  PLAINTIFF IS PERMITTED TO OFFER EVIDENCE ABOUT OTHER INSTANCES OF POLICE CONDUCT WHICH RELATE TO CLAIMS IN THIS CASE.

Defendants' tenth point requests preclusion of any evidence "about other instances of alleged police actions related to the Occupy Wall Street Movement," but they fail to acknowledge that Plaintiff has already stipulated to such preclusion—except for police actions against her.  (Dkt. 232 at 11 n.2).  Accordingly, Defendants devote nearly one page of their memorandum to a moot point and again waste Plaintiff's and this Court's time.

As to the one remaining dispute on this issue—other police misconduct against Plaintiff related to Occupy Wall Street protests—Plaintiff plans to offer evidence that prior to Defendant McManus's shoving her off her crutches, Plaintiff had hobbled up and down the police line

asking officers if any of them had been at Union Square when Sergeant Mattera threw her to the ground.[11] After that inquiry, Defendant McManus shoved her. (Dkt. 214-1 ¶¶ 261-65). This evidence is probative as to Defendant McManus's intent when he shoved Plaintiff.

**XI.    SINCE PLAINTIFF HAS STIPULATED NOT TO INQUIRE IN REGARD TO POLICE CONDUCT AGAINST ALL PERSONS OTHER THAN PLAINTIFF GENERALLY, DEFENDANTS' MOTION TO PRECLUDE THIS EVIDENCE IS MOOT.**

As with Defendants' tenth point, their eleventh point wastes this Court's and Plaintiff's time by arguing a point to which Plaintiff has stipulated. Plaintiff has already stipulated to the preclusion of evidence of other police misconduct—except for police actions against her. (Dkt. 232 at 11 n.2). Since the only police misconduct on which Plaintiff plans to present evidence is the assault and battery of Sergeant Mattera and this evidence is relevant to the claim against Sergeant McManus (*see infra* Part X), Defendants' motion to preclude on this point is moot.[12]

**XII.    PLAINTIFFF SHOULD BE PERMITTED TO ARGUE WHAT DEFENDANTS COULD OR SHOULD HAVE DONE.**

Taken literally, Defendants' motion to preclude Plaintiff from *arguing* what Defendants could or should have done would bar her from presenting her entire case. This case boils down to whether Defendant McManus and NYPD members should have refrained from using force on Plaintiff and whether Defendants Rumble and Schmidt should have immediately attended to Plaintiff's medical needs. Since those are the issues that are being tried, it is hard to understand how the jury will be confused if Plaintiff argues those issues.

---

[11] Plaintiff seeks *respondeat superior* liability against Defendant City for the assault and battery of Sergeant Mattera.
[12] Without citation, Defendants also argue that "send a message" arguments to the jury are misleading. Such arguments in summation, however, are "entirely appropriate" in police misconduct cases. *King v. Macri,* 993 F.2d 294, 298 (2d Cir. 1993).

### XIII.  PLAINTIFF SHOULD BE ALLOWED TO QUESTION DEFENDANTS RUMBLE AND SCHMIDT ABOUT THE APPROPRIATE CONDUCT FOR "HUMAN BEINGS."

Finally—in over-wrought language accusing Plaintiff of "borderline harassment" and exclaiming that "This is not a court of feelings but a court of law"—Defendants move to bar Plaintiff from questioning Defendant Rumble about the appropriate conduct for treating human beings.  (Dkt. 232 at 38).  Defendants' outrage over asking an officer whether she treats arrestees as human beings is quite bizarre given the NYPD's *Build the Block* NYC public relations campaign to use "humanity" to foster community relations.  https://buildtheblock.nyc; https://www.youtube.com/watch?v=AULPTw41Osg&feature=youtu.be (video on the website in which an NYPD officer expresses his desire that he will be able to see people in the community as "human beings").  But regardless, Defendants ignore the fact that Defendant Rumble's lack of empathy in communicating with Plaintiff is relevant to a determination whether Defendant Rumble was aware of the severe nature of Plaintiff's medical condition when she simply gazed on Plaintiff writhing in pain in the patrol wagon without attending to her medical needs.  *See James v. Kaskiw*, No. 9:13-CV-526, 2014 WL 3845086, at *4 (N.D.N.Y. Aug. 5, 2014) (finding that "[w]hile irrelevant on its own, the inference can be reasonably drawn [from] defendants['] lack of empathy over a medical condition, [that] they could be aware of the existence of said medical condition").  This evidence is therefore probative of the knowledge element of Plaintiff's medical indifference claim.

Dated: Hempstead, New York
    February 6, 2018

Community Legal Assistance Corp.

Stefan H. Krieger (SK 1748)
Hofstra Law Clinic
108 Hofstra University
Joan F. Axinn Hall
Hempstead, NY 11549
Attorney for Plaintiff

Gideon Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Co-Counsel for Plaintiff

*Student interns Andre Johnson and
Christopher Milazzo of the Hofstra Law Clinic
assisted in the preparation of this response.