UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MARY M. TARDIF,

                                        Plaintiff,

              -against-                        13 Civ. 4056 (KMW)(KNF)

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES MCNAMARA, POLICE OFFICER ALENA AMINOVA, POLICE OFFICER KENDAL CREER, POLICE OFFICER MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT, DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS ##1-9,

                                        Defendants.

------------------------------------------------------------------------x


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT OPINION OF ROBERT GOLDMAN, PsyD**

        **ZACHARY W. CARTER**
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        *Attorney for Defendants*
        100 Church Street
        New York, New York 10007

        By:    Brachah Goykadosh
                 *Assistant Corporation Counsel*
                 Special Federal Litigation Division
                 (212) 356-3523

# **TABLE OF CONTENTS**

**Page**

TABLE OF CONTENTS ....................................................................................................... ii

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT .......................................................................................................................... 2

        POINT I ...................................................................................................... 2

        PLAINTIFF FAILS TO COGENTLY
        EXPLAIN WHY DR. GOLDMAN IS
        QUALIFIED ............................................................................................... 2

        POINT II ..................................................................................................... 5

        PLAINTIFF FAILS TO COGENTLY
        EXPLAIN WHY DR. GOLDMAN'S
        OPINION IS RELIABLE ........................................................................... 5

        POINT III .................................................................................................... 7

        PLAINTIFF FAILS TO COGENTLY
        EXPLAIN WHY DR. GOLDMAN'S
        OPINION IS RELEVANT OR HELPFUL ................................................ 7

CONCLUSION ........................................................................................................................ 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

Bah v. City of New York,
   No. 13-cv-6690 (PKC), 2017 U.S. Dist. LEXIS 13285 (S.D.N.Y. Jan. 31,
   2017) ...................................................................................................................................4

Dura Auto. Sys. of Ind., Inc. v. CTS Corp.,
   285 F.3d 609 (7th Cir. 2002) ................................................................................................3

In re Fosamax Prod. Liab. Litig.,
   807 F. Supp. 2d 168 (S.D.N.Y. 2011)................................................................................3, 4

Estate of Jaquez v. City of New York,
   104 F. Supp. 3d 414 (S.D.N.Y. 2015)....................................................................................3

McCullock v. H.B. Fuller, Co.,
   61 F.3d 1038 (2d Cir. 1995)..................................................................................................4

United States v. Downing,
   609 F. Supp. 784 (E.D. Pa. 1985) .........................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------x

MARY M. TARDIF,

                              Plaintiff,

           -against-                      13 Civ. 4056 (KMW)(KNF)

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, INSPECTOR JOHN O'CONNELL, DEPUTY INSPECTOR EDWARD WINSKI, POLICE OFFICER JAMES MCNAMARA, POLICE OFFICER ALENA AMINOVA, POLICE OFFICER KENDAL CREER, POLICE OFFICER MARSHA RUMBLE, POLICE OFFICER FELIX SCHMIDT, DEPUTY INSPECTOR DANIEL MULLIGAN, SERGEANT THOMAS MCMANUS, AND JOHN DOE NYPD OFFICERS ##1-9,

                              Defendants.

-------------------------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO PRECLUDE THE EXPERT OPINION OF ROBERT GOLDMAN, PsyD

### PRELIMINARY STATEMENT

      Defendants moved to preclude the testimony of Robert Goldman, PsyD, at trial. Plaintiff opposed, claiming that his testimony "makes the existence of [p]laintiff's [exacerbated] damages more likely." (See Plaintiff's Opposition (hereinafter "Pl. Opp.") at 15). Plaintiff fails to explain, however, how Dr. Goldman's credentials and purported testimony meet the bar set in Daubert. He is **not** an expert in exacerbated-PTSD and its implications, the area that plaintiff wishes to have him testify about. Furthermore, despite claims by both Dr. Goldman and plaintiff about the "abundance of research" in support of plaintiff's position (Pl. Opp. at 6), further probing reveals the contrary. Simply, Dr. Goldman has no specialized knowledge in the specific

area of why a person who suffers from PTSD may choose to continue to protest and did not rely on reliable research methods in reaching his conclusion. For the reasons described in this reply memorandum of law in further support of defendants' <u>Daubert</u> motion, it would be a error to admit Dr. Goldman's opinion. The Court should, in performing its gatekeeping function, reject Dr. Goldman's opinion and preclude his testimony.

<u>ARGUMENT</u>

POINT I

<u>PLAINTIFF FAILS TO COGENTLY EXPLAIN WHY DR. GOLDMAN IS QUALIFIED</u>

Plaintiff[1] first argues that Dr. Goldman is qualified because of his "education background and professional experience." (Pl. Opp. at 3). Plaintiff focuses on Dr. Goldman's irrelevant

---

[1] As plaintiff addresses her meritless arguments regarding Dr. Goldman's deposition transcript, defendants now feel obligated to address the same argument that plaintiff tucked in a footnote.

In an effort to litigate this matter with good will, defendants offered to send their pre-trial submissions to plaintiff for her review in advance of filing so that she could ensure that no information that she deemed confidential was revealed. Defendants sent these documents, including excerpts from the deposition transcript of Dr. Robert Goldman to plaintiff on January 15, 2018 by email.

On Friday, January 26, 2018, plaintiff by letter accused defendants of failing to comply with Rule 30(e)(1) of the Federal Rules of Civil Procedure, requested that defendants amend their <u>Daubert</u> motion to eliminate any references to Goldman's testimony, and threatened to move to suppress defendants' use of Goldman's deposition testimony pursuant to Rule 32(d)(4) of the Federal Rules of Civil Procedure. In response, in an email on January 26, 2018, defendants informed plaintiff that she had not complied with the rule's requirement of requesting the transcript. Defendants requested that plaintiff inform them by January 29, 2018 whether she intended to proceed with her anticipated motion to suppress.

On Monday, January 29, 2018, in a telephone conversation initiated by plaintiff's counsel, plaintiff's counsel asked defense counsel to send him any memorialization of the transcript being sent to plaintiff. The undersigned informed plaintiff's counsel that she would double-check with the attorney who handled discovery in this matter in 2015, when the deposition of Dr. Goldman was conducted, but would not be able to get back to plaintiff's counsel immediately as that attorney was out for the day.

Defense counsel then asked plaintiff's counsel whether he had complied with the "request" portion of the Federal Rules. Plaintiff's counsel informed the undersigned that he had not, as he assumed that defendants did not "get" anything out of Dr. Goldman's deposition transcript and would not want to spend taxpayer resources on ordering a transcript. Defense counsel repeatedly asked plaintiff's counsel what authority he intended to rely on in the motion to suppress and was told that defendants would see the authority in plaintiff's memorandum of law. Defense counsel informed plaintiff's counsel that she believed this anticipated motion by plaintiff was frivolous.

2

experience treating incarcerated individuals who have "some form of PTSD traits or actual PTSD." (Pl. Opp. at 3) (citations and ellipses omitted). Moreover, plaintiff cites to two irrelevant cases for why she believes that Dr. Goldman's advanced degree alone qualifies him as an expert. Plaintiff is wrong.

First, that a percentage of the jail population that Dr. Goldman treats suffers from PTSD does not imbue him with expert authority. Indeed, plaintiff proffers no argument that Dr. Goldman is actually an expert in PTSD. Similarly in Jaquez, which defendants cited to in their moving papers and which plaintiff makes no effort to distinguish from this instant matter in her opposition, just because a psychologist "may see some of everything […] it does not make [him] an expert[] in everything." Estate of Jaquez v. City of New York, 104 F. Supp. 3d 414, 429 (S.D.N.Y. 2015). See also Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 614 (7th Cir. 2002) ("A scientist, however well credentialed he may be, is not permitted to be the mouthpiece of a scientist in a different specialty. That would not be responsible science").

Second, plaintiff argues that Dr. Goldman's advanced degree in psychology qualifies him as an expert and cites to two unavailing cases. (Pl. Opp. at 3). Specifically, in In re Fosamax Prod. Liab. Litig., 807 F. Supp. 2d 168, 185 (S.D.N.Y. 2011), "users of bisphosphonate drugs […] developed a rare condition called osteonecrosis of the jaw […] Symptoms can include pain, swelling, and purulent secretion." Id. at 174. The issue was whether a specialization in oral or maxillofacial surgery was the only way to become familiar with issues relating to the treatment of bone diseases. The Court in In re Fosamax allowed the expert to testify "so long as he bases

---

About an hour later the undersigned sent plaintiff's counsel the deposition transcript—which he still had not explicitly asked for—by email. Though plaintiff claims that Dr. Goldman has only been provided with his deposition transcript three years after its occurrence, the reason for that is that plaintiff—plainly and as her counsel admits—did not ask defendants for the transcript prior to then. Furthermore, though plaintiff states that the federal stipulations at the beginning of the deposition transcript show that she requested to review the transcript, the federal stipulations contain no such clause or obligation that obviates Rule 30(e)(1)'s "request" requirement.

3

this opinion on his experience as a rheumatologist." Id.  It is unclear why the same would apply here and plaintiff offers no analysis in its support.  In McCullock v. H.B. Fuller, Co., 61 F.3d 1038 (2d Cir. 1995), the expert testimony was admitted because of the expert's "extensive practical experience."  Id. at 1043.  Indeed, the moving party's "quibble" rested on the expert's "academic training" and other alleged short-comings appropriate for cross-examination.  Id. But here, defendants take no issue with Dr. Goldman's academic training.  It is practical experience in treating PTSD that Dr. Goldman lacks and it is this reason why McCullock is inapposite.  Like in Bah v. City of New York, No. 13-cv-6690 (PKC), 2017 U.S. Dist. LEXIS 13285, at *32-33 (S.D.N.Y. Jan. 31, 2017), none of Dr. Goldman's teaching and lecture experience, professional affiliations, or professional experiences concern PTSD.  (See Goldman Report, annexed to the Declaration of Brachah Goykadosh dated January 16, 2018 (hereinafter "Goykadosh Decl.") at Docket Entry No. 228, Exhibit "A" at 14-17).

Finally, plaintiff does not claim that Dr. Goldman is an expert in PTSD-exacerbation, which is the reason why plaintiff claims Dr. Goldman should be able to testify.  (Pl. Opp. at 14).  Given that plaintiff is pursuing an attenuated theory of damages—that her PTSD was exacerbated—she needs an expert who can testify to this specifically.  Dr. Goldman cannot.  Indeed, although she claims that Dr. Goldman's "specialized knowledge in this research would assist the trier of fact in understanding why [p]laintiff would choose to continue to protest while suffering from PTSD and how the NYPD conduct challenged in this case exacerbated [p]laintiff's PTSD," (Pl. Opp. at 6), Dr. Goldman has no "specialized knowledge" in this area of psychology.  (See Goldman Report, Goykadosh Decl., Exhibit "A" at 14-17), see also infra at Point II (discussing Dr. Goldman's lack of reliable research and methods).

Thus, despite plaintiff's accusations of "disingenuousness" by defendants and speculation by plaintiff's counsel in a footnote that does not specifically bear on this case (Pl. Opp. at 4), that Dr. Goldman may encounter ten to fifteen individuals with PTSD in jail daily does not qualify him as an expert on PTSD, the same way that an emergency room physician who sees ten to fifteen heart attacks every day is not a cardiothoracic surgeon. Essentially, plaintiff is arguing that an advanced degree in psychology coupled with some exposure in the field qualifies an individual as an expert in any specific psychological disorder. Defendants ask the Court to reject the slippery slope plaintiff invites it to slide down.

## POINT II

### PLAINTIFF FAILS TO COGENTLY EXPLAIN WHY DR. GOLDMAN'S OPINION IS RELIABLE

Dr. Goldman's opinion is not based on sufficient facts and data. Plaintiff claims that "the fact that [her] PTSD diagnosis could possibly be in prior records does not make the fact that her PTSD was exacerbated by the challenged NYPD conduct more or less likely." (Pl. Opp. at 9). Plaintiff further argues that these "records of a prior diagnosis of PTSD would add nothing to this case or Dr. Goldman's opinion, since [p]laintiff is willing to stipulate that she suffered from PTSD prior to the incidents at issue in this case." (Pl. Opp. at 9). These arguments appear to be based on speculation, as there are no citations. It is not possible to know whether reviewing the prior records may have changed a diagnosis as these records were not reviewed. It is further meritless to state that a review of these records by a purported expert would add "nothing."

Moreover, Dr. Goldman's opinion is not based on reliable principles and methods. Plaintiff primarily relies on the fact that her expert conducted the MCMI-III test, which is a "standard" test. (Pl. Opp. at 10). But that a psychologist conducted a test to reach a determination that an individual suffered from a personality disorder he should have already

5

known that individual had, by no means makes his opinion "based on reliable principles and methods." Indeed, plaintiff continues to stress that she is seeking damages only for the "exacerbation" of her pre-existing PTSD and not claiming that defendants caused her PTSD. That her expert performed a test to determine whether plaintiff had a psychological disorder that she already acknowledges she had diagnosed prior to any interaction with defendants does not root his opinion in reliable principles and/or methods.

What truly at issue is whether Dr. Goldman relied on reliable principles and methods in assessing the alleged exacerbation of plaintiff's PTSD and his finding that "those who are exposed to an initial trauma are at risk for additional trauma exposure." (Goldman Report, Goykadosh Decl., Exhibit "A" at 9). He did not. While plaintiff and her expert both claim that there is "an abundance of research" to demonstrate this convenient finding, in actuality, plaintiff's expert cites to four sources, three articles and a book. Even a cursory review of these articles shows that Dr. Goldman's findings are not based on reliable principles and methods as this limited research primarily concerns PTSD and sexual abuse.

First, Dr. Goldman cites to an entire book, Melanie P. Duckworth & Victoria M. Follette, Retraumatization: Assessment, Treatment, and Prevention (2011), for the proposition that "there is an abundance of research that demonstrates that those who are exposed to an initial trauma are at risk for additional trauma exposure." (Goldman Report, Goykadosh Decl., Exhibit "A" at 9). Plaintiff's expert does not point to any specific article or even page in that book in support of his proposition. He then cites to three articles, Heather J. Risser, et al., PTSD as a Mediator of Sexual Revictimization: The Role of Reexperiencing, Avoidance, and Arousal Symptoms, JOURNAL OF TRAUMATIC STRESS, 19:5, 687 (2006); Emma Dunmore, et al., A Prospective Investigation of the Role of Cognitive Factors in Persistent Posttraumatic Stress Disorder

6

(PTSD) After Physical Or Sexual Assault, BEHAVIOR RESEARCH AND THERAPY, 39, 1063 (2001); and Finkelhor, D., et al., The Traumatic Impact of Childhood Sexual Abuse: A Conceptualization, AMERICAN JOURNAL OF ORTHOPSYCHIATRY, 55:4, 530 (1985). One book and three articles is not an "abundance of research." Simply, after reading three articles and a book, none of which are specifically related to the issue in this instant matter, Dr. Goldman fails to employ the investigative techniques necessary to give a reliable opinion in this case. He cannot opine on exacerbation of PTSD and cannot opine on why plaintiff would continue to protest while suffering from PTSD. (Pl. Opp. at 6). His opinion does not rest on a reliable foundation. See Daubert, 508 U.S. at 597. As his methodology is limited and is not sufficiently related to the facts of this case, the Court should perform its gatekeeping functions and reject his purported expert opinion. [2]

## POINT III

### PLAINTIFF FAILS TO COGENTLY EXPLAIN WHY DR. GOLDMAN'S OPINION IS RELEVANT OR HELPFUL

Defendants substantially rest on their moving papers for why Dr. Goldman's opinion is not helpful or relevant but address several issues here.

First, plaintiff posits that Dr. Goldman's opinion is helpful because, as plaintiff conclusorily and repeatedly asserts, an expert is necessary to aid the jury in understanding the "intricacies of PTSD." (Pl. Opp. at 7). Yet, she fails to cite to even one case where the Court held that a jury could not understand PTSD without an expert's guidance. A psychological

---

[2] As with their continued accusations throughout their submissions to the Court, plaintiff's counsel accuses defendants of "deceptively" leaving out the full answer by Dr. Goldman at his deposition. (Pl. Opp. at 12). Simply, counsel did not cite to page 121 and therefore did not include it. It is not the undersigned's practice to inconvenience the Court by annexing an entire deposition transcript. Moreover, it is unclear why plaintiff believes the additional testimony by Dr. Goldman that appears on page 121 is relevant. That "colloquy" does not go to Dr. Goldman's prior guess, rather it further explained the basis for his guess. Plaintiff's attempted "clean-up" of her expert's testimony does nothing but attack counsel for no reason and unnecessarily confuse the issues.

disorder is not the same as the structure of a labor coalition. (Pl. Opp. at 7). She also fails to explain why a jury cannot understand her narrative on her PTSD.

In response to plaintiff's argument that Dr. Goldman's testimony would "provide an explanation for the jury for why [p]laintiff who suffers from PTSD, would choose to return to [Occupy Wall Street] protests even after being arrested," (Pl. Opp. at 5), defendants respectfully refer the Court to Point II of the reply *supra*. Contrary to plaintiff's representation, Dr. Goldman has no "specialized knowledge" in this area. See *supra* at Point II (see also (See Goldman Report, Goykadosh Decl., Exhibit "A" at 14-17). Moreover, the issue is not what plaintiff frames it as: specifically, what any expert might provide testimony on is not why plaintiff would return to protests *after being arrested*, but why she would return after experiencing an alleged seizure in a patrol wagon that she claims exacerbated her PTSD.[3]

Finally, although psychology "may deal with perceptions," as plaintiff asserts (Pl. Opp. at 13), she does not meaningfully address the concerns raised in defendants' moving papers regarding Dr. Goldman's limitation of his opinion solely to plaintiff's perception. (See Def. Mem. at 14, citing Goldman Deposition, Goykadosh Decl., Exhibit "B" at 23:4-11). The one case cited to by plaintiff, United States v. Downing, 609 F. Supp. 784 (E.D. Pa. 1985), for the proposition that "psychology by its very nature deals with perceptions," does not advance her argument. (Pl. Opp. at 13). In this pre-Daubert case, the issue was expert testimony by a psychologist about the "unreliability of eyewitness identifications." Id. at 785. The expert testimony "focused on conclusions which ha[d] been drawn from research on perception and

---

[3] The Court has already dismissed plaintiff's claims for false arrest.

8

memory." Id. at 790. Thus, the issue was not whether a purported expert limited the basis for his opinion solely to a plaintiff's perception, but research on perception. This is distinct.[4]

Second, Dr. Goldman's opinion is not relevant. As explained *supra*, Dr. Goldman has no "specialized knowledge" and cannot explain plaintiff's "choice to return to […] protests." (Pl. Opp. at 14). It may "make the existence of plaintiff's damages more likely" (Pl. Opp. at 15) and that is why the opinion is startling in its lack of reliability.

No speculation is necessary. Plaintiff wants Dr. Goldman to testify as an expert because he—conveniently but sans authority—provides an unsupported explanation for her repeated return to protests despite her allegedly exacerbated PTSD. It would be an error if the Court permitted Dr. Goldman to testify as an expert in this case. His opinion falls short of the Daubert and Rule 702 requirements and should be precluded.

## CONCLUSION

For the foregoing reasons and those in defendants' moving papers, defendants respectfully request that the Court grant their Daubert motion in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
       February 20, 2018

ZACHARY W. CARTER
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By:       /s/
     Brachah Goykadosh
     *Assistant Corporation Counsel*
     Special Federal Litigation Division

---

[4] As part of counsel's Rule 11 obligations, he must ensure that "legal contentions are warranted by existing law." FED. R. CIV. P. 11(b)(2).

9