UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------X

MARY M. TARDIF,

                                Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT, INSPECTOR
JOHN O'CONNELL, DEPUTY INSPECTOR
EDWARD WINSKI, POLICE OFFICER
JAMES MCNAMARA, POLICE OFFICER
ALENA AMINOVA, POLICE OFFICER
KENDAL CREER, POLICE OFFICER
MARSHA RUMBLE, POLICE OFFICER
FELIX SCHMIDT, DEPUTY INSPECTOR
DANIEL MULLIGAN, SERGEANT
THOMAS MCMANUS, AND JOHN DOE
NYPD OFFICERS ## 1-9,

                                Defendants.

--------------------------------------------------X

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _10/1/18_

No. 13-CV-4056 (KMW)
**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

    This case arises out of harms allegedly suffered by Plaintiff Mary Tardif ("Tardif")

during the 2012 Occupy Wall Street protests, in which Tardif participated. Tardif brings a

variety of state and federal claims against the City of New York ("City"), the New York City

Police Department ("NYPD"), Sergeant Thomas McManus, Police Officer Marsha Rumble, and

Police Officer Felix Schmidt. At this stage in the litigation, no claims remain against Inspector

John O'Connell, Deputy Inspector Edward Winski, Police Officer James McNamara, Police

Officer Alena Aminova, Police Officer Kendal Creer, Deputy Inspector Daniel Mulligan, or John

Doe NYPD Officers #1–9.

    Pending before the Court are several pre-trial motions, namely: (1) the parties' request for

clarification as to which of Tardif's *respondeat superior* claims against the City survived

summary judgment (ECF Nos. 211, 215, 216); (2) Defendants' motion to preclude the testimony of Tardif's expert, Dr. Robert Goldman (ECF No. 227); (3) Tardif's motion to preclude the expert testimony of Defendants' expert, Dr. Steven Fayer (ECF No. 244); (4) Tardif's motions in limine seeking to exclude certain evidence and requesting other relief from the Court (ECF No. 246); (5) Defendants' motions in limine seeking to exclude certain evidence and requesting other relief from the Court (ECF No. 230); and (6) Tardif's motion to seal certain of her in limine papers (ECF No. 219).

## PROCEDURAL HISTORY

Because the Court assumes the parties' familiarity with the case, only the relevant filings and orders are summarized here.

### A. The Complaint

On June 13, 2013, Mary Tardif filed this action against the City, the NYPD, and various officers and employees of the NYPD (together, "Defendants"). (ECF No. 1.) The operative complaint is now the Third Amended Complaint ("TAC"), which Tardif filed on January 15, 2016. (ECF No. 135.) The TAC alleged the following claims:

- A claim under 42 U.S.C. § 1983 for false arrest against Inspector O'Connell and Officers Rumble, Schmidt, and Aminova (TAC ¶¶ 141–42);

- A § 1983 First Amendment retaliation claim against Inspector O'Connell, Officer Rumble, Officer Schmidt, and Officer Aminova (*id.* ¶¶ 209–10);

- A § 1983 malicious prosecution claim against Inspector O'Connell, Officer Rumble, Officer Schmidt, and Officer Aminova (*id.* ¶¶ 219–20);

- A claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102, against the NYPD and the City (*id.* ¶¶ 187–88);

- A § 1983 excessive force claim against Inspector O'Connell, Officer Rumble, Deputy

2

Inspector Mulligan, Sergeant McManus and John Does ## 1–5 and 8–9 (*id.* ¶¶ 149–50);

- A § 1983 deliberate indifference to a serious medical condition claim against Officer Rumble, Officer Schmidt, and John Does # 6–7 (*id.* ¶¶ 158–59);

- A § 1983 unconstitutional conditions of confinement claim against Officer Rumble, Officer Schmidt, and John Does # 6–7 (*id.* ¶¶ 174–75);

- New York state law claims for assault and battery against Officer Creer, Deputy Inspector Mulligan, John Does # 1–5, 8–9, and Sergeant Thomas McManus (*id.* ¶ 208); and

- A *respondeat superior* claim against the City based on "the defendant officers' tortious conduct" (*id.* ¶¶ 229–30).

## B. Summary Judgment Motion

Upon Defendants' motion, the Court granted summary judgment in favor of Defendants on several of Tardif's claims. (ECF No. 187.) The parties then filed cross-motions for reconsideration. (ECF No. 190, 192.) The following claims were dismissed as to all Defendants as a result of the summary judgment motion, and the Court declined to reconsider their dismissal: (1) the § 1983 false arrest claim;[1] (2) the ADA claim; (3) the § 1983 First Amendment retaliation claim; and (4) the § 1983 malicious prosecution claim. *See* Aug. 23, 2017 Op. & Order ("Reconsideration Op.") at 8–9 (ECF No. 202); Mar. 22, 2017 Op. & Order ("Summ. J. Op.") 3, 7, 9, 10 (ECF No. 187). In addition, all claims against the John Doe defendants were dismissed because Tardif failed to identify those defendants before the close of

---

[1] Tardif withdrew her claims for false arrest with respect to Officers Rumble and Schmidt in her summary judgment papers. *See* Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. 17 n.18 (ECF No. 174).

3

discovery. *See* Reconsideration Op. 13, 14; Summ. J. Op. 3–4, 8–9. Those claims included § 1983 claims based on excessive force and deliberate indifference to a serious medical condition, as well as state law assault and battery claims. *See id.*

With respect to the remaining § 1983 claims based on excessive force, the Court denied summary judgment as to Sergeant McManus. Reconsideration Op. 12. Tardif withdrew her excessive force claims against Inspector O'Connell, Officer Rumble, and Deputy Inspector Mulligan. Summ. J. Op. 3 (citing Pl.'s Mem. Law Opp'n Defs.' Mot. Summ. J. 5 (ECF No. 174)). Accordingly, Tardif's only remaining claim for excessive force under § 1983 is against Sergeant McManus. The Court also denied summary judgment with respect to the remaining § 1983 claims for deliberate indifference to a serious medical condition and for unconstitutional confinement. Reconsideration Op. 12. Tardif brings those claims against Officers Rumble and Schmidt, based on their conduct on April 16, 2012. *Id.* at 12. As to Tardif's remaining state law assault and battery claims, the Court dismissed those claims as against Officer Creer and Deputy Inspector Mulligan, but denied summary judgment as to Sergeant McManus. Summ. J. Op. 8–9. Accordingly, Tardif's only surviving claim for assault and battery with respect to an individual defendant is against Sergeant McManus.

This leaves Tardif's state law *respondeat superior* claims against the City of New York, which are the subject of some dispute between the parties. The Court initially granted summary judgment in favor of the City on all of Tardif's *respondeat superior* claims, but on reconsideration stated that the *respondeat superior* claim survived summary judgment "only with respect to her underlying state law assault and battery allegation." Reconsideration Op. 6. The parties disagree about which "underlying" assault and battery allegation(s) may form the basis of Tardif's *respondeat superior* claims, and the Court ordered briefing on that issue on November 15, 2017. (ECF No. 209.) That dispute is resolved later in this Opinion and Order.

4

To summarize, the following claims survive for trial: (1) a § 1983 claim for excessive force against Sergeant McManus; (2) a § 1983 claim for deliberate indifference to a serious medical condition against Officers Rumble and Schmidt, based on their conduct during Tardif's April 16, 2012, term of custody; (3) a § 1983 claim for unconstitutional conditions of confinement against Officers Rumble and Schmidt, based on their conduct during Tardif's April 16, 2012, term of custody; (4) a state law assault and battery claim against Sergeant McManus; and (5) state law claims against the City of New York based on a theory of *respondeat superior*, with the specifics to be discussed below.

## C. Pre-Trial Motions

The parties have filed several pre-trial motions. On January 9, 2018, Tardif moved to file some of her in limine motion papers under seal. (ECF No. 219.) On January 16, 2018, Defendants moved to preclude the testimony and report of Tardif's expert, Dr. Robert Goldman. (ECF No. 227.) Also on January 16, 2018, Defendants filed a motion in limine to preclude other evidence and requesting various other forms of pre-trial relief. (ECF No. 230.) On January 23, 2018, Tardif filed an amended motion to preclude the testimony of Defendants' expert witness Dr. Steven Fayer. (ECF No. 244.) Also on January 23, 2018, Tardif filed a motion in limine to preclude other evidence and requesting various other forms of pre-trial relief. (ECF No. 246.)

## DISCUSSION

## I. *Respondeat Superior* Claims

The parties dispute whether Tardif maintains a New York state law *respondeat superior* claim against the City for assault and battery predicated on the alleged March 21, 2012, conduct of John Doe #8 and John Doe #9, and the alleged April 16, 2012, conduct of Lieutenant

Destefano and Officer Aminova.[2] The core of the disagreement is a sentence in the Court's

Reconsideration Opinion, which stated that Tardif's *respondeat superior* claim was preserved for

trial "only with respect to her underlying state law assault and battery allegation."

Reconsideration Op. 6. Tardif argues that the phrase "underlying state law assault and battery

allegation" includes all allegations in the TAC related to assault or battery. That is, Tardif

argues that (1) regardless of whether the Court earlier dismissed an assault and battery claim with

respect to an individual defendant, she maintains a *respondeat superior* claim against the City

predicated on the conduct on which that (dismissed) claim was founded, and (2) regardless of

whether she alleged an assault and battery claim against a given individual, she maintains a

*respondeat superior* claim against the City predicated on that individual's conduct. Defendants

contend that Tardif's only remaining *respondeat superior* claim is predicated on the alleged

March 21, 2012, conduct of Sergeant McManus. They argue that any other potential *respondeat*

*superior* claim was dismissed by the Court's Reconsideration Opinion. In the alternative, they

argue that because the Court dismissed all federal claims premised on the March 21, 2012,

conduct of John Does #8 and #9 and the April 16, 2012, conduct of Lieutenant Destefano and

Officer Aminova, the Court lacks subject matter jurisdiction over any putative state law

*respondeat superior* claim based on those incidents.

### A. Background

The details of Tardif's assault and battery allegations and their procedural history are

helpful to understanding the parties' dispute. In the TAC, Tardif alleged that on March 21,

2012, John Doe #8 forcefully pushed Tardif in the chest with his baton, causing Tardif to fall

---

[2] The parties agree that Tardif maintains a state-law *respondeat superior* claim against the City predicated on the alleged March 21, 2012, conduct of Sergeant McManus. *See* Mem. Law Supp. Defs.' Pos. on *Respondeat Superior* ("Defs.' Respondeat Superior Mem.") 2–3 (ECF No. 215).

6

backward. TAC ¶¶ 77, 204. John Doe #9 then allegedly grabbed Tardif at the neck and waist, picked her up, and tossed her to the ground. *Id.* ¶ 78. Based on these allegations, Tardif asserted claims for assault and battery under New York state law against John Does #8 and #9. *Id.* ¶¶ 204–05. According to Tardif, "it is undisputed" that John Doe #9 is Mattera. Pl.'s Reply Mem. Regard Respondeat Superior ("Pl.'s Respondeat Superior Mem.") 3 (ECF No. 216). However, Tardif never named Sergeant Mattera as an individual defendant in this suit. Tardif's assault and battery claims against John Does #8 and #9 were dismissed for failure to timely identify those individuals. *See* Summ. J. Op. 8.

Tardif also alleged that during her arrest on April 16, 2012, Lieutenant Destefano and Officer Aminova grabbed her by her hair and slammed her head against the pavement and against a brick wall.[3] TAC ¶¶ 107, 110. Officers Schmidt and Aminova then allegedly slammed her head against the pavement a second time. *Id.* ¶ 112. Despite these allegations, Tardif did not name Lieutenant Destefano as a defendant in this suit. *See id.* ¶¶ 16–34. Nor did she allege assault and battery claims against Officer Schmidt or Officer Aminova individually. *See id.* ¶¶ 199–209.

In the TAC, Tardif included *respondeat superior* as a cause of action, alleging that "defendant officers were engaged in governmental activity as on duty New York City police officers when they falsely arrested Tardif without probable cause, used excessive force in the course of arresting Tardif, were deliberately indifferent to Tardif's serious medical condition, and subjected Tardif to unconstitutional conditions of confinement." *Id.* ¶ 230. Tardif also alleged the acts were undertaken within the scope of the officers' employment, in furtherance of the

---

[3] Tardif alleged that Officer Schmidt was also involved in this event, but Tardif's *respondeat superior* briefing makes no reference to Officer Schmidt. *See* Pl.'s Respondeat Superior Mem. Accordingly, Tardif may not maintain a *respondeat superior* claim based on allegations related to Officer Schmidt.

7

interests of the City, and damaged Tardif. *Id.* ¶¶ 231–32. Initially, the Court dismissed all of Tardif's *respondeat superior* claims against the City because it viewed the TAC as predicating the City's *respondeat superior* liability on Tardif's § 1983 claims. Summ. J. Op. 11. As the Court explained, paragraph 230 of the TAC references false arrest, excessive force, deliberate indifference to medical needs, and unconstitutional conditions of confinement—all tort claims based on violations of the United States Constitution, for which municipal liability would require proof of a policy or custom under *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). Summ. J. Op. 10; *see also Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013) ("Establishing the liability of the municipality [under § 1983] requires a showing that the plaintiff suffered a tort in violation of federal law committed by the municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality."). However, in deciding the parties' subsequent cross-motions for reconsideration, the Court explained that despite Tardif's "deficient pleading," her *respondeat superior* claims should not have been dismissed because (1) Defendants did not address Tardif's *respondeat superior* claims in their summary judgment briefing, and (2) the record reflected Tardif's intention to seek *respondeat superior* liability with respect to her New York state law claim.[4] Reconsideration Op. 5–6. The Court then stated that Tardif's *respondeat superior* claim was preserved "only with respect to her underlying state law assault and battery allegation." *Id.* at 6. When the Court revived Tardif's *respondeat superior* claim, the only state law assault and battery claim remaining against an

---

[4] Defendants did not address Tardif's *respondeat superior* claims in their initial summary judgment briefing. (*See* ECF No. 165.) In their Reply brief, Defendants' argument on the *respondeat superior* claim was limited to a single sentence and an accompanying footnote arguing that Tardif could not maintain a claim based on the April 16, 2012, conduct because she had not timely filed a notice of claim with the City with respect to that incident. (ECF No. 177 at 1 & 1 n.1.)

individual defendant was Tardif's claim against Officer McManus.[5]  *See id.* at 11.

## B. Discussion

The Court's rationale for allowing Tardif to maintain her *respondeat superior* claim based on state law assault and battery applies equally to the allegations of misconduct by John Does #8 and #9, Lieutenant Destefano, and Officer Aminova.  First, Defendants did not address any of Tardif's *respondeat superior* claims in their summary judgment motion.  Therefore, Defendants never moved for summary judgment on *respondeat superior* claims based on the relevant March 21, 2012, conduct, or the April 16, 2012, conduct.  Second, throughout the litigation, Tardif has demonstrated her intent to bring *respondeat superior* claims predicated on the actions of John Does #8 and #9, Lieutenant Destefano, and Officer Aminova.  In its Reconsideration Opinion, the Court held that Tardif's Memorandum in Opposition to Defendants' Motion to Summary Judgment evinced Tardif's intent to bring *respondeat superior* claims predicated on state law assault and battery.  That memorandum describes Tardif's intent to seek *respondeat superior* liability for the assaults and batteries by NYPD officers, and explicitly references the March 21, 2012, and April 16, 2012, incidents in the context of the *respondeat superior* claim.  *See* ECF No. 174, at 16.  Accordingly, contrary to Defendants' contention, the Reconsideration Order does not bar Tardif from asserting these state law *respondeat superior* claims.  This conclusion is bolstered by the Second Circuit's view that district courts should construe complaints liberally.  *See Marbury Mgmt., Inc. v. Kohn*, 629 F.2d 705, 712 n.4 (2d Cir. 1980) ("Generally a complaint that gives full notice of the circumstances giving rise to the plaintiff's claim for relief need not

---

[5] As noted above, the Court had previously dismissed Tardif's assault and battery claims against John Does #8 and #9 because Tardif did not timely identify them.  *See* Summ. J. Op. 8–9.    Tardif never asserted claims for assault and battery against Aminova or Schmidt individually, and Lieutenant Destefano was never named as an individual defendant in this suit.  *See* TAC ¶¶ 16–34, 199–209.

9

also correctly plead the legal theory or theories and statutory basis supporting the claim."); *see also id.* at 712 (holding that it was error for the district court to refuse to allow a plaintiff to pursue liability on a *respondeat superior* theory where the facts alleged in the complaint and presented at trial supported liability on that theory, but the complaint did not allege a claim based on *respondeat superior*).

Moreover, there is no requirement that *respondeat superior* liability be predicated on the conduct of an individual who is named as a defendant in the suit. *See Alli v. Steward-Bowden*, No. 11 CIV. 4952 (PKC) (KNF), 2013 WL 5229995, at *2 (S.D.N.Y. Sept. 17, 2013) (Castel, J.) ("[A] state law claim may proceed on a *respondeat superior* theory against a municipality, even though the individual employee who acted in a wrongful manner has not been identified."). A defendant may sue an individual's employer regardless of whether she sues the perpetrator of the wrongful conduct individually, or whether she sues the perpetrator as "John Doe." *See, e.g., Rodriguez v. City of New York*, No. 10 CIV. 9570 (PKC) (KNF), 2012 WL 1658303, at *4–5 (S.D.N.Y. May 11, 2012) (Castel, J.) (discussing a verdict finding the City liable on a *respondeat superior* theory for the actions of unidentified NYPD officers); *Universal Calvary Church v. City of New York*, No. 96 CIV. 4606 (RPP), 2000 WL 1538019, at *23 (S.D.N.Y. Oct. 17, 2000) (Patterson, J.) (denying summary judgment on *respondeat superior* claims based on assaults and batteries by John Doe officers because the City "[did] not cite any law holding that a plaintiff may not proceed on this claim as against unidentified defendant police officers"). Defendants' arguments to the contrary confuse the dismissal of a claim based on a substantive finding that there was not liability—i.e., that the elements of the underlying claim on which *respondeat superior* liability was predicated were not satisfied—with the posture here, which is that Tardif identified as "John Does" the individuals accused of committing the underlying torts. *Compare, e.g., Morales v. City of New York*, 59 F. Supp. 3d 573, 583 (S.D.N.Y. 2014) (Furman, J.)

10

("[B]ecause Plaintiff has not demonstrated any basis for liability on the part of any of the City's agents or employees, her respondeat superior claim also fails.") *with Universal Calvary Church*, 2000 WL 1538019, at \*23 n.35 ("Plaintiff could receive a judgment against the City if the jury finds that an unidentified officer assaulted and battered him, even though he could not receive judgment against any particular defendant."). In this situation, where there has not been a substantive finding of liability one way or another, there is no basis on which to dismiss the *respondeat superior* claims. Accordingly, Defendants' attempts to distinguish the allegations related to John Does #8 and #9, Lieutenant Destefano, and Officer Aminova from those related to Sergeant McManus are unavailing.

Defendants' argument that the Court lacks supplemental jurisdiction over the *respondeat superior* claims now at issue must also be rejected. Under 28 U.S.C. § 1367(a), a district court has supplemental jurisdiction over state law claims that are "so related [to a federal claim] . . . that they form part of the same case or controversy." In order to exercise supplemental jurisdiction, "the federal claim and state claim must stem from the same 'common nucleus of operative fact'; in other words, they must be such that the plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Montefiore Med. Ctr. v. Teamsters Local* 272, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Once it is determined that a supplemental claim is related to the claim within the court's original jurisdiction such that they form the same case or controversy, supplemental jurisdiction over the related claim is mandatory unless one of the enumerated exceptions in 28 U.S.C. § 1367(c) applies. *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 85 (2d Cir. 2018); *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 140 F.3d 442, 447 (2d Cir. 1998). Under §1367(c), the district court has the discretion to decline supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially

11

predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367.

In this case, there is no sound basis on which to decline to exercise supplemental jurisdiction over Tardif's state law *respondeat superior* claims. All of Tardif's claims arise from, and invite substantial proof concerning, alleged police misconduct perpetrated against Tardif during the Occupy Wall Street protests in March and April 2012. In the TAC, Tardif alleged several causes of action arising under 42 U.S.C. § 1983, which provided an independent basis for the Court's exercise of its original jurisdiction. *See* TAC ¶¶ 141–86; 28 U.S.C. §§ 1331, 1343. She also alleged state law assault and battery claims against certain individuals and *respondeat superior* claims against the City arising out of the same March and April 2012 conduct. All of Tardif's claims arise out of a single "common nucleus of operative fact," and there is no need for piecemeal analysis by pinpointing a precise corresponding federal claim for each *respondeat superior* claim. Nonetheless, out of caution and acknowledgment of the "limited jurisdiction" of the federal courts, the Court analyzes separately its supplemental jurisdiction over the *respondeat superior* claim predicated on the March 21, 2012, allegations and the claim predicated on the April 16, 2012, allegations. *See Young v. N. Y. C. Transit Auth.*, 903 F.2d 146, 163 (2d Cir. 1990).

      1.    <u>Supplemental Jurisdiction over the *Respondeat Superior* Claim based on the John Doe Defendants' March 21, 2012, Conduct</u>

In the TAC, Tardif alleged a § 1983 claim for excessive force based on the March 21, 2012, conduct of John Does #8 and #9. *See* TAC ¶¶ 151–53. This is the same conduct on which the March 21, 2012, *respondeat superior* claim is predicated. The two claims thus arise

12

from a common nucleus of operative fact, and so the district court has supplemental jurisdiction over the *respondeat superior* claim under 28 U.S.C. § 1367(a). *See, e.g., Kirschner v. Klemons*, 225 F.3d 227, 239 (2d Cir. 2000) ("Pendent jurisdiction applies where the state law claim in question arises out of the same set of facts that give rise to an anchoring federal question claim."). The dismissal of the federal excessive force claim against John Does #8 and #9 does not deprive the Court of jurisdiction over the state law *respondeat superior* claim. *See, e.g., Catzin*, 899 F.3d at 83 ("[W]e have upheld the exercise of supplemental jurisdiction even when all federal-law claims were eliminated prior to trial, for example, in long-pending cases presenting no novel issues of state law where 'discovery had been completed, dispositive motions had been submitted, and the case would soon be ready for trial.'") (quoting *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014)).

Even if the Court were to look only to Tardif's remaining federal claims as the anchor claims on which to base its exercise of supplemental jurisdiction—which it need not do—jurisdiction over the *respondeat superior* claim would still be proper. Officer McManus's alleged wrongful conduct, which forms the basis of one of Tardif's surviving § 1983 claims, occurred just hours after the alleged assault and battery by Does #8 and 9 on March 21, 2012. *See* Defs.' Respondeat Superior Mem. 5–6. In addition to the temporal proximity, the two events share a causal connection. After the alleged assault by Does #8 and 9, Tardif went to the hospital. Upon her release, she returned to the Occupy protest to determine the identities of the officers who assaulted her. It was at that point that the McManus assault occurred. The events occurred the same day, involved officers from the same police force, resulted in the same alleged injury, and followed in logical sequence from each other. They are thus part of the "same case or controversy," and Tardif "would ordinarily be expected to try them all in one judicial proceeding." *Montefiore*, 642 F.3d at 332 (quoting *Gibbs*, 383 U.S. at 725). Accordingly, for

13

the reasons above, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over Tardif's *respondeat superior* claim predicated on the March 21, 2012, conduct of John Does #8 and #9.

### 2. Supplemental Jurisdiction over the *Respondeat Superior* Claim based on Officer Aminova and Lieutenant Destefano's April 16, 2012, Conduct

The Court also has supplemental jurisdiction over the *respondeat superior* claim predicated on the April 16, 2012, conduct of Lieutenant Destefano and Officer Aminova. After the alleged assault by Destefano and Aminova, which occurred during Tardif's arrest, she was put in a police van for transport to the police station. Tardif alleges a § 1983 medical indifference claim arising from the conduct of officers during her time in the police van. The alleged assault and the alleged medical indifference were close in time, logically connected, and resulted in the same alleged injury, psychological damages. Accordingly, the alleged assault and battery during the precipitating arrest is a claim that "would ordinarily be expected [to be tried] all in one judicial proceeding" together with the medical indifference claim. *Montefiore*, 642 F.3d at 332 (quoting *Gibbs*, 383 U.S. at 725). Thus, even if the Court were to disregard the federal claims that have been dismissed—which it need not do—it would have supplemental jurisdiction over the *respondeat superior* claims arising out of the March 21, 2012, conduct of John Does #8 and #9, and the April 16, 2012, conduct of Lieutenant Destefano and Officer Aminova.

Moreover, contrary to Defendants' contention, there is no sound basis on which to decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c). Defendants rely on §1367(c)(4), which provides that a Court may decline to exercise supplemental jurisdiction if "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367. The Second Circuit has stated that "[t]he use of 'exceptional circumstances'

14

indicates that 'Congress has sounded a note of caution that the bases for declining jurisdiction should be extended beyond the circumstances identified in subsections (c)(1)-(3) only if the circumstances are quite unusual.'" *Itar-Tass*, 140 F.3d 442, 448 (2d Cir. 1998) (quoting *Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 24 F.3d 1545, 1558 (9th Cir. 1994), *overruled on other grounds, Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008)); *see also Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 215 (2d Cir. 2004) (noting that in *Itar-Tass*, the Second Circuit expressed caution concerning the use of subsection 1367(c)(4)). According to Defendants, in this case, the "exceptional circumstances" include the potential for (1) jury confusion because of the "sheer volume of assaults and batteries" forming the basis for Tardif's *respondeat superior* claims, and (2) jury prejudice, because jurors will assume the City has deep pockets, and will be biased toward finding liability as a result. Defs.' Respondeat Superior Mem. 9. These circumstances are not exceptional. Any potential for juror confusion or prejudice can be negated by appropriate limiting instructions. The Court notes that Defendants overstate the potential for jury confusion and bias; Tardif's *respondeat superior* claims are based, at most, on three incidents, which took place on two different days, and involved harm of a single type to a single individual. There is no reason to assume that jurors will have difficulty understanding these facts. Accordingly, there is no basis for the Court to decline to exercise supplemental jurisdiction over the *respondeat superior* claims under 28 U.S.C. § 1367(c).

Therefore, for the reasons above, Tardif's *respondeat superior* claims predicated on the March 21, 2012, conduct of John Does #8 and #9, and the April 16, 2012, conduct of Lieutenant Destefano and Officer Aminova survive for trial.

## II. Motions in Limine Seeking to Preclude Expert Testimony

Defendants have moved to exclude the testimony of Tardif's expert, Dr. Robert Goldman

15

(ECF No. 227), and Tardif has moved to exclude the testimony of the Defendants' expert, Dr. Steven Fayer (ECF No. 244).

## A. Legal Standard

The admissibility of expert testimony in the federal courts is governed principally by Rule 702 of the Federal Rules of Evidence, which provides in relevant part that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify" to his or her opinion if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, the district court is "the ultimate gatekeeper" of expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007).

The threshold question under Rule 702 is whether the witness is qualified to provide expert testimony on the subject matter at hand. To make this determination, a court "must first ascertain whether the proffered expert has the educational background or training in a relevant field, by looking at the totality of the witness's background." *Arista Records LLC v. Lime Grp. LLC*, 06-CV-5936 (KMW), 2011 WL 1674796, at *2 (S.D.N.Y. May 2, 2011) (Wood, J.) (citations and quotations omitted). Experts may be qualified based on any of the qualities listed in Rule 702, namely, knowledge, skill, experience, training or education. Fed. R. Evid. 702. The court must then "compare the area in which the witness has superior knowledge, education, experience, or skill with the subject matter of the proffered testimony." *Id.* (quoting *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004)).

16

If the expert is qualified, the district court must also ascertain whether his or her testimony is reliable. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). "[R]eliability within the meaning of Rule 702 requires a sufficiently rigorous analytical connection between [the expert's] methodology and the expert's conclusions." *Id.* The analysis must be reliable "at every step." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* "A minor flaw in an expert's reasoning or a slight modification of an otherwise reliable method will not render an expert's opinion *per se* inadmissible." *Id.* Rather, "[t]he judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 746 (3d Cir. 1994)). But "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Id.* at 266.

Finally, if an expert is qualified and his or her testimony is reliable, "Rule 702 requires the district court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist the trier of fact.'" *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 702). The testimony must be relevant, and it should not be "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help." *Arista Records*, 2011 WL 1674796, at *4 (quoting *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001)).

It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions. *Nimely*, 414 F.3d at 395. Although the proponent of expert testimony

17

bears the burden of demonstrating that the proffered testimony meets Rule 702's requirements, exclusion of such testimony is "the exception rather than the rule." *Floyd v. City of New York*, 861 F. Supp. 2d 274, 287 (S.D.N.Y. 2012) (Scheindlin, J.) (internal quotation marks omitted). As the *Daubert* Court explained, "the traditional and appropriate means of attacking shaky but admissible evidence" are not exclusion, but rather "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." 509 U.S. at 596 n.10.

## B.     Dr. Goldman's Expert Report and Proposed Testimony

Tardif offers Dr. Robert Goldman as an expert. In Dr. Goldman's expert report, he first describes Tardif's life up until the 2012 protests, and then recounts Tardif's account of her participation in the Occupy protests, including the "psychological injuries" she allegedly sustained as a result of Defendants' conduct. Decl. Stefan H. Krieger, Ex. 1 ("Goldman Report") 2–4 (ECF No. 257). Dr. Goldman then discusses the psychometric testing that he administered to Tardif and concludes that she has post-traumatic stress disorder ("PTSD"), major depressive disorder and generalized anxiety disorder. *Id.* at 10. Although Dr. Goldman acknowledges that Tardif "initially suffered with PTSD" as a result of other traumas, he concludes that her March 17, 2012 and April 16, 2012, arrests and the April 16, 2012, alleged denial of medical attention "are what currently render [her] traumatized [and] faced with great difficulty in her daily functioning."[6] *Id.* In addition to his diagnosis of Tardif, and his conclusion that her PTSD was exacerbated by Defendants' conduct, he also proposes to testify that "the symptoms of PTSD can increase the likelihood that individuals may unwittingly place [themselves] in harm's way of another traumatic event." *Id.*

Defendants argue Dr. Goldman should be precluded from testifying because (1) he is not

---

[6] No claims remain in relation to Tardif's March 17, 2012, arrest.

18

an expert in PTSD; (2) he did not review Tardif's psychiatric records from prior to January 2012 and in his report he does not explain how he was able to differentiate the PTSD linked to Tardif's arrests and alleged maltreatment, in contrast to the PTSD linked to earlier events in Tardif's life; and (3) his proffered testimony simply reiterates Tardif's experiences at the Occupy protests and therefore will not be helpful to a jury. Defendants also raise for the first time on reply that Dr. Goldman relied on inapt psychological literature in forming his opinion that individuals with PTSD are at an elevated risk of reexposure to trauma. *See* Defs.' Reply Mem. Supp. Defs.' Mot. Preclude Expert Op. Robert Goldman, PsyD ("Defs.' Daubert Reply") 6 (ECF No. 270). Because this argument was raised for the first time on reply, and Tardif has not had an opportunity to respond, the Court does not consider this objection at present. Defendants may renew the objection at trial.

        1.    Qualification

      Tardif has met her burden to show that Dr. Goldman is qualified to offer testimony on PTSD, but just barely. According to his curriculum vitae ("CV"), Dr. Goldman is a licensed psychologist. Goldman Report 14. He received a doctor of psychology degree in school-community psychology from Hofstra University in New York in 2004. *Id.* He also received a J.D. from Touro College in in New York in 1992. *Id.* Goldman's advanced degree in psychology and his psychologist license suggest that he has broad background knowledge in mental health and mental conditions; however, Tardif fails to direct the Court to any record evidence describing the content of Dr. Goldman's psychology training or explaining the state licensure requirements, both of which would have been helpful to the Court in making findings on Dr. Goldman's potential qualification as a psychological expert. According to Dr. Goldman's CV, he has presented at eleven conferences, but the titles of the lectures given suggest several of the presentations were on legal topics, not psychology. *Id.* at 14–15. In

addition, his CV lists three publications, but it is not clear whether they have anything to do with psychology. *Id.* at 17. Finally, the CV does not indicate that he has any specific education or training related to PTSD, and Dr. Goldman has never been qualified to testify as an expert in a case involving PTSD. *See* Decl. Brachah Goykadosh Ex. B ("Goldman Dep."), at 9:6–7 (ECF No. 231).

In addition to his academic credential in psychology, Dr. Goldman also has some experience treating individuals with PTSD. At the time Dr. Goldman examined Tardif, he had been a supervising psychologist at the Suffolk County Mental Health Unit for just over one year.[7] Goldman Report 13. Dr. Goldman estimates that ten to twenty percent of the jail inmates he sees in his role as the supervising psychologist for the Suffolk County Mental Health Unit have some form of "PTSD traits or actual PTSD." Goldman Dep. at 17:8–17:10. Dr. Goldman appears to have indicated at his deposition that he sees ten to fifteen patients per day at the jail.[8] Decl. Stefan H. Krieger Ex. 2, at 17:1 (ECF No. 257). Based on this statement, Tardif speculates that Dr. Goldman has seen at least 208 patients with PTSD in his career. *See* Mem. Opp'n Defs.' Mots. Lim. ("Pl.'s Daubert Opp'n") 4 (ECF No. 260). Tardif also points to Dr. Goldman's professional experience "provid[ing] therapy, therapeutic visitations, individual counseling, and forensic evaluations" but fails to explain how these experiences are relevant to Dr. Goldman's expertise diagnosing mental conditions. *Id.* at 3. She leaves the Court to infer what these experiences actually entail. Prior to his role as a supervising psychologist at the

---

[7] Tardif states that Dr. Goldman has been a supervising psychologist at the Suffolk County Mental Health Unit for over four years. Pl.'s Daubert Opp'n 3. However, his resume states that he took on that role in July 2013, and his expert report was authored on December 11, 2014. Therefore, for the purposes of this motion, the duration of his experience as a supervising psychologist for Suffolk County is more accurately described as one year.

[8] The parties submitted only excerpts, not the full transcript, from Dr. Goldman's deposition. The sole reference to the actual number (as opposed to percentage) of patients that Goldman sees at the jail is the sentence fragment "the jail, I see ten to fifteen clients a day." Goldman Dep. 17:1.

Suffolk County Mental Health Unit, Dr. Goldman was a supervising psychologist at the Suffolk County Department of Probation for just under eight years. Goldman Report 13. This may be relevant to Dr. Goldman's qualifications, but again, Tardif fails to provide record evidence of what Dr. Goldman's role entailed, or to explain how these experiences demonstrate Dr. Goldman's qualifications to diagnose mental conditions.

Nonetheless, although Tardif's development of the record leaves something to be desired, Dr. Goldman is qualified to testify on the issue of PTSD. His advanced education in psychology and his work experience qualify as "specialized knowledge" gained through "experience, training, or education" within the meaning of Rule 702. *See* Fed. R. Evid. 702. Moreover, the "liberal thrust" of the Federal Rules of Evidence and their "general approach of relaxing the traditional barriers to opinion testimony counsels in favor of admissibility." *Daubert*, 509 U.S. at 588–89 (quotations and citations omitted). Defendants' argument to the contrary, which focuses on Dr. Goldman's lack of specialization, fails.

Defendants contend that because Dr. Goldman does not specialize in PTSD, major depressive disorder, or generalized anxiety disorder, he is not qualified to testify on those issues. *See* Mem. Law Supp. Defs.' Mot. Preclude Expert Op. Robert Goldman, PsyD ("Defs.' Daubert Mem.") 6 (ECF No. 229). But a lack of specialization is not a *per se* bar to qualification as an expert. "If an expert has educational and experiential qualifications in a general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent." *Arista Records*, 2011 WL 1674796, at *3 (quoting *In re Zyprexa Prod. Liab. Litig.*, 489 F. Supp. 2d 230, 282 (E.D.N.Y. 2007) (Weinstein, J.) (citing *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 80 (2d Cir. 1997))). The Second Circuit acknowledged in *Stagl v. Delta Air Lines* that there may be circumstances in which "a district court may properly conclude that witnesses are

21

insufficiently qualified . . . because their expertise is too general." 117 F.3d at 81. But the *Stagl* Court ultimately indicated that Rule 702 does not demand that a witness's expertise be perfectly tailored to the facts of the case. *See id.* (holding that it was error for the trial court to exclude testimony concerning defects in baggage claim design from a witness who lacked specific expertise in airport terminal design or baggage claim systems, but who was an expert on human-machine interaction); *see also Washington v. Kellwood Co.*, 105 F. Supp. 3d 293, 308 (S.D.N.Y. 2015) (Dollinger, M.J.) (holding that a witness with expertise in business valuation need not have specific expertise in the apparel industry in order to testify to the valuation of an apparel-related enterprise); *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 142 (S.D.N.Y. 2003) (Leisure, J.) (rejecting the argument that an accountant lacking experience in the healthcare industry was unqualified to testify to the financial condition of a healthcare company). The primary decisions on which Defendants rely are inapposite. For example, in *Estate of Jaquez v. City of New York*, 104 F. Supp. 3d 414, 430–31 (S.D.N.Y. 2015) (Forrest, J.), *aff'd sub nom. Estate of Jaquez by Pub. Adm'r of Bronx Cty. v. City of New York*, 706 F. App'x 709 (2d Cir. 2017), an emergency room physician proposed to testify about the extent to which bullet wounds would have limited the plaintiff's ability to move after he was shot by two New York City police officers—specifically, that the plaintiff would no longer have posed a threat. The testimony about the effect of the bullet wounds on the plaintiff was intertwined with testimony by the physician about the bullet's trajectory. *Id.* at 430. Citing the physician's admission that had seen four or five gunshot wounds during the course of his 25-year hospital career and had no other experience with the topic, the Court held that the physician was not qualified to testify to the effect of the gunshot wounds on the plaintiff. *Id.* at 429. Here, unlike an emergency room doctor testifying to bullet trajectories, Dr. Goldman, a psychologist, seeks to testify on a matter squarely within the field of psychology. *Bah v. City of New York*, No. 13-CV-6690 (PKC), 2017

22

WL 435823, at *10 (S.D.N.Y. Jan. 31, 2017) (Castel, J.) is similarly inapposite, because it involved a witness who was a forensic pathologist and a medical examiner, but sought to testify on psychiatry and the behavior of emotionally disturbed persons, topics outside of the witness's field.

In sum, Tardif has demonstrated by a preponderance of the evidence that Dr. Goldman is qualified to testify on the subject of PTSD on the basis of his advanced education in psychology and his experience working with at least some inmates who have PTSD. Dr. Goldman's lack of specialization in PTSD is an appropriate subject for cross examination, but is not a sufficient reason to exclude his testimony under Rule 702.

2. Reliability

Defendants' next contention is that Dr. Goldman's conclusions are unreliable and so his testimony should be precluded for that reason. The Court agrees in part. Specifically, for the reasons explained below, Dr. Goldman's opinion as to his diagnosis of Tardif's current mental disorders is based on reliably applied, well-accepted methodology in his field and is therefore admissible. But his conclusion that these disorders were caused (or "exacerbated," to use Tardif's term) by Defendants' conduct during the Occupy, rather than by earlier traumas in Tardif's life, involves "too great an analytical gap between the data and the opinion proffered," and is therefore unreliable. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Dr. Goldman bases his diagnosis of Tardif's mental health conditions on a variety of data points. To prepare his report, Dr. Goldman (1) observed Tardif and conducted three two-hour clinical interviews of her during December 2014; (2) reviewed Tardif's medical records from January 12, 2012, to April 17, 2012; (3) reviewed a November 6, 2014, deposition of Tardif; and (4) reviewed records from Tardif's neurologist from 2009 to 2010. Goldman Report 2. This is generally a reliable way to reach an expert opinion related to a psychological condition. *See*

23

*O'Loughlin v. USTA Player Dev. Inc.*, No. 14 CV 2194 (VB), 2016 WL 5416513, at \*5

(S.D.N.Y. Sept. 28, 2016) (Briccetti, J.) (admitting a psychiatrist's expert testimony, which was

based on his review of the plaintiff's medical records, deposition testimony, and a 75-minute

interview of plaintiff and her mother); *Tchatat v. City of New York*, 315 F.R.D. 441, 445

(S.D.N.Y. 2016) (Gorenstein, M.J.) (accepting the argument that "it is generally accepted

practice in the field of psychiatry for a diagnosis to be made based on an examination of the

individual being assessed"); *Schoolcraft v. City of New York*, No. 10 CIV. 6005 (RWS), 2015

WL 6444620, at \*2 (S.D.N.Y. Oct. 23, 2015) (Sweet, J.) (admitting testimony about a plaintiff's

PTSD diagnosis that was based on a 90-minute interview with the plaintiff, a review of

depositions by the doctors that assessed the plaintiff, and a review of medical records). As part

of Dr. Goldman's interviews of Tardif, he administered the Millon Clinical Multiaxial Inventory-

III ("MCMI-III"). According to Dr. Goldman, the MCMI-III tests an individual's "level of

personality functioning." Goldman Report 7. In his report, Dr. Goldman applies the criteria for

PTSD described in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition

(DSM-V) to the information he gleaned from his interviews with Tardif in order to arrive at his

diagnoses of her. *See id.* at 7–9. Dr. Goldman testified that the MCMI-III is "the gold-standard

test[] of personality inventory." Decl. Stefan H. Krieger Ex. 2, at 50:14–16 (ECF No. 257).

Although Tardif does not refer the Court to any record evidence related to the DSM-V, the Court

is aware that the DSM is "one of the basic texts used by psychiatrists and other experts." *Hall v.

Fla.*, 134 S. Ct. 1986, 1990 (2014); *see also United States v. Finley*, 301 F.3d 1000, 1012 (9th

Cir. 2002) (holding that a diagnosis involving the use of the DSM-IV was reliable under

*Daubert*); *Makinen v. City of New York*, 53 F. Supp. 3d 676, 697 (S.D.N.Y. 2014) (discussing

whether the DSM criteria was reliably applied under *Daubert*); *Munafo v. Metro. Transp. Auth.*,

No. 00-CV-0134 (ERK), 2003 WL 21799913, at \*21 (E.D.N.Y. Jan. 22, 2003) (Korman, J.)

24

(holding that a qualified psychiatrist's conclusion that plaintiff suffered from clinical depression was reliable because it appeared to be based on the criteria set forth in the DSM–IV). Moreover, Defendants do not question Dr. Goldman's use of the MCMI-III and DSM-V to *diagnose* Tardif, rather, they argue that his methodology does not allow him to draw conclusions about the *causation* of her current symptoms. *See* Defs.' Daubert Mem. 12. Accordingly, because Dr. Goldman has used reliable methodology to conclude that Tardif suffers from PTSD, major depressive disorder, and generalized anxiety disorder, he may testify to those conclusions, assuming they are relevant.

However, Dr. Goldman may not testify to his conclusion about causation, *i.e.*, that Defendants' conduct is what currently render[s] [Tardif] traumatized." Goldman Report 10. This conclusion does not meet Rule 702 and *Daubert*'s reliability requirements. Dr. Goldman acknowledges that Tardif initially suffered from PTSD when⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

⎯⎯⎯⎯and that she has experienced a great deal of traumatic experiences throughout her life. *See id.* 7–9. Yet he then concludes that her current suffering was caused by Defendants' conduct, without providing any basis for ruling out Tardif's other traumatic experiences as the source of her injuries. *Id.* at 10. The Committee Notes to Rule 702 explain that "[w]hether the expert has adequately accounted for obvious alternative explanations" for a plaintiff's condition is a factor in the reliability inquiry. Fed. R. Evid. 702 advisory committee's note fo 2000 amendment. "'While an expert need not rule out every potential cause in order to satisfy *Daubert*, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant.'" *Matthews v. Hewlett-Packard Co.*, No. 15 CIV. 3922 (DAB), 2017 WL 6804075, at *5 (S.D.N.Y. Dec. 22, 2017) (Batts, J.) (quoting *DeRienzo v. Metro. Transp. Auth.*, 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (Leisure, J.)).

The requirement that an expert rule out obvious alternative causes is often met through the use of a differential diagnosis, which apparently was not performed here.[9]  *See O'Loughlin*, 2016 WL 5416513, at \*5 (noting that "when a medical expert is asked to opine on causation, as distinguished from merely a diagnosis, the expert typically performs additional analyses or tests, such as a 'differential diagnosis' test, to isolate other potential causes of the illness").  Dr. Goldman's expert report, and his deposition testimony, fail to explain the basis for his conclusion that Defendants' conduct, and not other traumatic experiences in Tardif's life, caused her current injuries.  As Defendants point out, Dr. Goldman did not review any of Tardif's pre-2012 mental health records, despite his awareness that plaintiff ██████████████████ and other traumas before 2012.  Accordingly, Dr. Goldman's causation opinion is based on Tardif's 2014 account of her conditions, which she provided during the pendency of this litigation, and her 2012 medical records.  In response to the question of whether Tardif's prior psychiatric records were necessary to a proper psychological evaluation, Dr. Goldman stated that "it would have been helpful but I still felt comfortable what I with given with what I had."  Goldman Dep. 98:12–13.  The expert "feel[ing] comfortable," without more, is not a sound methodology under *Daubert*.  Although differences in symptomology could perhaps provide a basis for a sound causation opinion, in this respect Dr. Goldman states vaguely that "the symptomatology that [Tardif] reports to have is different than what she had" as a result of ██████████████ ██████████  Goldman Dep. 121:1–4 (emphasis added).  But Dr. Goldman does not indicate how he determined the substance of Tardif's earlier symptoms, other than through Tardif's own accounting of her disorders.  This renders his opinion on causation unreliable.

---

[9] "A differential diagnosis is a patient-specific process of elimination that medical practitioners use to identify the most likely cause of a set of signs and symptoms from a list of possible causes."  *Ruggiero v. Warner-Lambert Co.*, 424 F 3d 249, 254 (2d Cir 2005) (quotation marks and citation omitted).

The court is aware that the absence of a differential diagnosis is not always fatal to an expert's causation opinion. In *Matthews v. Hewlett-Packard*, Judge Batts surveyed the caselaw in this district and found that in some instances, courts have admitted causation testimony in the absence of a differential diagnosis. Specifically, a differential diagnosis may not be required (1) when the expert is plaintiff's treating physician; (2) when the link between the injury and its cause is obvious to even a lay person, such as with a car accident and a broken leg; and (3) when there are "other sufficient indicia of reliability," such as literature reviews, reviewing medical records, and interviews with the plaintiff. 2017 WL 6804075 at *4–5. Neither of the first two categories applies here, and "other sufficient indicia of reliability" are lacking, given Dr. Goldman's failure to opine on Tardif's pre-2012 psychiatric records or explain his reliance on Tardif's accounting of her conditions. Moreover, when faced with the weaknesses in Dr. Goldman's expert opinion, Tardif provided no further useful evidence on the question. *See Tchatat*, 315 F.R.D. 441 at 446 (S.D.N.Y. 2016) (noting that while it may be "understandable" for an expert to fail to explain his methodology in his initial report, "there is no justification for the fact that the defendants, when confronted in plaintiff's moving papers with this claimed defect in methodology, declined to offer any admissible evidence on the question"). Instead, Tardif rests on the argument that she seeks only to have Dr. Goldman show that Defendants' conduct "exacerbated" her PTSD, not that their conduct caused it. Pl.'s Daubert Opp'n 9. Therefore, in her view, Dr. Goldman need not consider any information about Tardif's pre-2012 mental health. *Id.* at 10. This parsing is unhelpful. Regardless of the original cause of Tardif's mental disorders (or predisposition to such illnesses), to conclude that Defendants' conduct exacerbated Tardif's PTSD requires a finding that Defendants *caused* that exacerbation. Accordingly, under circumstances of this case, the failure to engage in some form of a differential diagnosis is fatal to Dr. Goldman's opinion on causation or "exacerbation."

The determination that Dr. Goldman's conclusion as to causation is unreliable and therefore inadmissible does not apply to his conclusion that Tardif currently suffers from PTSD, depression, and anxiety. As explained above, Dr. Goldman applied field-standard diagnostic tools to evaluate Tardif, satisfying *Daubert*'s reliability requirement as to his observations of Tardif and his diagnosis of her current mental conditions. To the extent there are weaknesses in Dr. Goldman's reasoning with respect to his observation and diagnosis, they are not sufficient to exclude Dr. Goldman's testimony on those topics. *See Amorgianos*, 303 F.3d at 267 ("The judge should only exclude the evidence if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions.") (quoting *In re Paoli*, 35 F.3d at 746). However, Dr. Goldman may not offer an opinion on the causation or exacerbation of Tardif's mental disorders.

### 3. Helpfulness

Defendants challenge Dr. Goldman's testimony as unhelpful to the jury, arguing that his report simply restates Tardif's perceptions of her conditions. Indeed, the bulk of pages 2–5 of Dr. Goldman's report recites Tardif's own narration of her personal history, which is not based on Dr. Goldman's expert knowledge or experience.[10] To the extent Dr. Goldman refers to Tardif's 2012 medical records in those pages, he quotes from them without adding any expert analysis. The Court has no reason to assume, and Tardif does not provide a reason, that Tardif's personal history and medical records cannot be understood by a lay juror. *See Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 135 (2d Cir. 2013) (stating that to be admissible "expert testimony must "be helpful to the trier of fact in comprehending and deciding issues beyond the understanding of a layperson") (quoting *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir. 2005) (alterations omitted)). Because factual narrative from an expert is unnecessary, and Dr.

---

[10] Page 2 begins with the subheading "Background Via Clinical Interview." Goldman Report 2.

Goldman has no personal knowledge of the underlying facts, Dr. Goldman may not offer the testimony contained in pages 2–5 of his report. *See, e.g., Matthews*, 2017 WL 6804075, at *4 (precluding the testimony of a psychologist that consisted of the "bald repetition" of facts the plaintiff shared during the psychologist's examination of him); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (precluding expert testimony that consisted of a "narrative of the case which a juror is equally capable of constructing").[11] The remainder of Dr. Goldman's report describes the psychological tests that he administered, the diagnostic criteria for PTSD, and his diagnosis of Tardif. It also states Dr. Goldberg's opinion that suffering from PTSD may "increase the likelihood" that an individual experiences another traumatic event. Goldman Report 9. To the extent that the remainder of his report addresses those topics, which are proper subjects of expert testimony, it is admissible; the portions containing facts he learned from Tardif are inadmissible.[12]

For the foregoing reasons, Defendants' *Daubert* motion is GRANTED in part and DENIED in part. Dr. Goldman is precluded from testifying about the cause of Tardif's PTSD or other mental disorders, including that those disorders were "exacerbated" by Defendants' conduct. He is also precluded from testifying to facts he learned from Tardif and from providing a factual narrative of Tardif's personal history and the events at issue in this suit. However, Dr. Goldman may testify to his observations and diagnosis of Tardif, namely, that Tardif suffers from

---

[11] Tardif counters that the testimony will aid the jury in understanding Tardif's damages claim by "explaining what PTSD is[,] . . . how it affects Tardif, and how the events in question exacerbated Tardif's preexisting PTSD. *See* Pl.'s Daubert Opp'n 5. But the only mention of PTSD in pages 2–5 is in reference to medical records from January and February 2012 stating that Tardif exhibited symptoms of PTSD at those times. *See* Goldman Report 3.

[12] Defendants also object that Dr. Goldman's testimony is needlessly cumulative, citing Fed. R. Evid. 403. With respect to pages 2 through 5 of the Goldman report, the 403 objection is moot because that portion of the report is excluded under Rule 702. Defendants' 403 objection to the remainder of the report is granted to the extent that it recites facts not observed by him.

PTSD, anxiety, and depression. Consistent with the foregoing, Defendants may renew or raise specific objections to Dr. Goldman's testimony at trial.[13]

## C. Dr. Fayer's Report and Proposed Testimony

Defendants offer Dr. Steven Fayer as an expert in psychiatry. Tardif does not question Dr. Fayer's expert qualifications, and the Court is satisfied that Dr. Fayer is qualified to testify on the subject of PTSD given his academic credentials and experience in psychiatry. *See* Decl. Brachah Goykadosh Opp'n Pl.'s Daubert Mot. Ex. A (ECF No. 253). Tardif does, however, challenge the reliability and helpfulness of Dr. Fayer's testimony.

### 1. Reliability

Dr. Fayer's diagnosis of Tardif—specifically, that she does not have PTSD—is reliable. Dr. Fayer's opinion is based on conventional methods for rendering a psychiatric diagnosis, namely, a review of Tardif's medical records and his own 4.5-hour examination of Tardif. *See Tchatat,* 315 F.R.D. at 445–46 ("[I]t is generally accepted practice in the field of psychiatry for a diagnosis to be made based on an examination of the individual being assessed.") (collecting decisions). As part of his examination of Tardif, Dr. Fayer administered the MCMI-III, the same examination administered by Tardif's expert. Fayer Report 25–26. He specifically opines that her willing participation in the protests and continued return to the site of the protests "is not consistent with her having [PTSD]." *Id.* at 28, 30. He also opines that based on his observations of Tardif, she did not demonstrate symptoms of PTSD. *Id.* According to Dr. Fayer's report, Tardif's only symptom of PTSD is her complaint that she suffers from nightmares

---

[13] For example, Defendants request the Court preclude Dr. Goldman from testifying to the March 21, 2012, incidents because he does not discuss them in his report. Because it is speculative at this stage whether Dr. Goldman will attempt to testify to the events of March 21, 2012, the Court need not rule on the request at present. In addition, as noted above, the Court declines to rule at present on Defendants' objection to Dr. Goldman's opinion that individuals with PTSD are at a heightened risk of re-exposure to trauma.

(which he, of course, could not verify independently). *Id.*

Contrary to Plaintiff's argument, Dr. Fayer's failure to undertake a differential diagnosis does not render his opinion inadmissible. A differential diagnosis is relevant when an expert opines on causation. Here, because Dr. Fayer concludes that Tardif does not exhibit symptoms consistent with PTSD at all, the concept of causation is irrelevant to his opinion. Tardif's argument that Dr. Fayer's conclusion conflicts with those of Dr. Goldman or Tardif's other doctors does not render his opinion unreliable. *See In re Mirena IUD Prod. Liab. Litig.*, 169 F. Supp. 3d 396, 421 (S.D.N.Y. 2016) (Seibel, J.) (stating that criticisms of an expert's conclusion "go to the weight, not the admissibility, of his testimony and are best addressed on cross-examination"). Tardif's other arguments with respect to reliability—that Dr. Fayer failed to read the articles relied on by Dr. Goldman in forming his expert opinions, and did not account for the events of March 21, 2012 (which Dr. Goldman also did not reference)—similarly go to the weight, not the admissibility, of his testimony. Any weaknesses that Tardif perceives in Dr. Fayer's opinion may be explored on cross-examination.

### 2. Helpfulness

Dr. Fayer's opinions would likely be helpful to the finder of fact. If a juror believes Dr. Fayer that Tardif exhibits no symptoms of PTSD, he or she may conclude that the arrests neither caused nor exacerbated her PTSD. Tardif's argument that causation is not in issue is plainly incorrect. To demonstrate that the Defendants' conduct exacerbated her condition requires her to prove that Defendants caused her PTSD to worsen. Accordingly, because Dr. Fayer is qualified to offer an expert opinion on Tardif's mental condition, his testimony is reliable, and his testimony would be helpful to a finder of fact, Defendants' motion to preclude his testimony is DENIED. Consistent with the foregoing, Tardif may renew or raise specific objections to Dr. Fayer's testimony at trial.

31

## III. Tardif's Other Motions in Limine

Tardif has filed several motions in limine ("MILs") seeking to preclude certain evidence and requesting other relief from the Court. (ECF No.246.)  The Court addresses each below.

### A. Tardif's MILs #1 and 2: The Causes of Tardif's PTSD Prior to January 2012 and Tardif's Mental Health History Prior to January 2012

Tardif moves to preclude all testimony regarding causes of her alleged PTSD prior to January 2012, pursuant to Fed. R. Evid. 403.  She also seeks to preclude testimony on the content of medical records relied on by Defendants' expert, Dr. Fayer, in reaching his expert opinion.  Tardif argues that the probative value of this evidence is low because she is willing to stipulate that she experienced PTSD and received mental health treatment prior to January 2012. She further contends that the records will cause undue confusion and delay because she will need to present evidence explaining why Defendants' conduct—not other events—resulted in an exacerbation of her PTSD.  Pl's. Mots. Lim. Mem. 4.  However, this evidence is relevant to both liability and damages.  Therefore, any delay or confusion resulting from having to present this evidence is not "undue," as Tardif claims.  Nonetheless, there may be individual instances in which the introduction of evidence about Tardif's mental health history is not relevant. Accordingly, for these reasons, this motion is DENIED without prejudice to Tardif raising particular objections at trial.

### B. Tardif's MIL #3: Past Recreational Drug Use

Tardif moves to preclude all testimony regarding her past use of recreational drugs, pursuant to Fed. R. Evid. 403.  The Court agrees that testimony about Tardif's past recreational drug use has little, if any, probative value.  Neither party alleges that Tardif was under the influence of drugs at the time of the relevant incidents.  Moreover, Defendants offer no explanation for how the drug use is relevant to Tardif's damages.  Defendants argue that

testimony on Tardif's past drug use "relate[s]" to her PTSD claim, and specifically that their expert, Dr. Fayer, "considered" Tardif's drug use in crafting his expert report. Mem. Law Opp'n Pl.'s Mots. Lim. 3 (ECF No. 256). But Dr. Fayer's expert report mentions the drug use only in passing when it summarizes Tardif's medical records, and Defendants do not provide any other reason for offering testimony on Tardif's past drug use. Accordingly, for these reasons, Tardif's motion is GRANTED.

## C. Tardif's Motion #4: Paving Stone Dimensions

Tardif asks the Court to take judicial notice under Fed. R. Evid. 202 that (1) New York City regulations require the hexagonal paving stones used in city parks to be 8 inches between parallel sides, and (2) that the stones in the photograph in Tardif's Trial Exhibit 31 are that size. Exhibit 31 is a photograph taken at Union Square Park on March 21, 2012, depicting Sergeant McManus and Tardif, along with other police officers and unidentified protestors. Pl.'s Notice Mots. Lim. Ex. 5 (ECF No. 246). In support of this motion, Tardif directs the Court to two sets of City regulations. First, the 2016 City of New York Parks and Recreation Tree Planting Standards ("Tree Standards") state that "[a]ll pavement or pavers must conform to Department of Transportation (DOT) standards (Refer to DOT for materials and specifications)." *See id.* Ex. 6, at 7–8. Second, § 3.1.7 of the New York City Department of Transportation Street Design Manual (Updated 2015) ("Street Design Manual") states that the size of hexagonal asphalt paver stones is "8 inches between parallel sides." *Id.* Ex. 7, at 3.

Tardif has not offered any proof that these standards and regulations were in effect at the time when the park was paved. Nor has Tardif offered any evidence showing that the stones in Union Square Park conform to the City's standards. Therefore there is no basis for taking judicial notice of the size of the Union Square Park stones. Accordingly, the Court DENIES the request to judicially notice the size of the paving stones. With respect to Tardif's request that

33

the Court judicially notice the Tree Planting Standards and the Street Design Manual, the Court DENIES this request without prejudice to renewal if Tardif can demonstrate their relevance.

### D. Motion #5: NYPD Communications Division Staff Member

Tardif moves to preclude testimony from "an NYPD Communications Division staff member," whom Defendants list on their proposed witness list, because Defendants did not identify the individual in their initial disclosures as required by Rule 26 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(a)(1). The staff member is expected to testify to the contents of the "SPRINT Report," which is an NYPD document that was properly disclosed to Tardif. *See* Defs.' Opp'n 7. Defendants concede that they have no explanation for why this witness was not disclosed in a timely manner, but argue that there is no prejudice to Tardif in allowing the testimony. Because Tardif fails to demonstrate prejudice from Defendants' failure to disclose this witness in compliance with Rule 26, this motion is DENIED without prejudice to renewal.

### E. Tardif's MIL #6: Stipulation of Uncontested Facts

Tardif asks the Court to compel defendants to stipulate to the facts set forth in Exhibit 10 to their Notice of Motions in Limine, relying on Rule 16 of the Federal Rules of Civil Procedure. Among other things, Plaintiff proposes the parties stipulate that the officers described in the TAC are NYPD employees and were acting in the scope of their employment during the events complained of, that certain individuals were present at the Occupy protest on April 16, 2012, and to facts related to Tardif's health. *See* Defs.' Notice Mots. Lim, Ex. 10. Tardif cites no authority from this Circuit suggesting that the Court has the power to order this relief. *See* Pl.'s Mots. Lim. Mem. 11. At least one Circuit court that considered the issue held that Rule 16 "does not authorize a court to force parties to stipulate facts to which they will not voluntarily agree." *J. F. Edwards Const. Co. v. Anderson Safeway Guard Rail Corp.*, 542 F.2d 1318, 1322

(7th Cir. 1976). Although the Court encourages the parties to stipulate to undisputed facts so as to avoid unnecessary proof, it will not order Defendants to make stipulations at this time. This request is therefore DENIED.

## F.    Tardif's MIL #7 and 8: Witnesses' Names

Tardif moves to require both parties to refer to Tardif's witness, formerly known as James Amico, as Mari.Tade Storm Summers, and to use the pronouns "she," "her," and "hers" when identifying or addressing Ms. Summers at trial. Tardif makes the same request with respect to her witness, formerly known as Tony Zilka, and now known as Mandy Quinn. Defendants do not contest this motion. *See* Mem. Law Opp'n Pl.'s Mots. Lim. 13. ("[D]efendants have no objection to referring to these witnesses—and any person—by whatever name and pronoun they prefer."). Therefore, the motion is DENIED as MOOT. Defendants do, however, raise the concern that the use of masculine pronouns or names may be necessary for clarity when referring to the 2012 events that are the subject of this suit, for example if Ms. Summers and Ms. Quinn are asked to identify themselves in video footage of the events. As a general matter, the parties are required to use witness's preferred pronouns and names. The parties should use great caution and limit any use of witnesses' 2012 names to those that are necessary to avoid confusion.

## G.    Tardif's MIL #9: Trial Director Software

Finally, Tardif moves to use "Trial Director Software" to project exhibits at trial. A motion in limine is not the appropriate vehicle for this request. To the extent Tardif wishes to use software that differs from the usual audiovisual technology employed by litigants, Tardif is

35

directed to contact the audiovisual staff at the courthouse. Accordingly, this motion is DENIED.

## IV. Defendants' Other Motions in Limine

Defendants have filed several motions in limine seeking to preclude certain evidence and requesting other relief from the Court. (ECF No. 230.) The Court addresses each below, adopting the numbering used in the parties' Proposed Joint Pre-Trial Order. (*See* ECF No. 224 at 33–34.)

### A. Defendants' MIL #1: Evidence on Failed Theories of Liability

Defendants' first motion in limine includes four separate requests. The Defendants' first two requests are to preclude Tardif from introducing evidence concerning failed claims and from testifying about alleged damages arising from failed claims. Tardif has stipulated that she will not argue any failed theories of liability. *See* Defs.' Mem. Supp. Defs.' Mots. Lim. ("Defs.' Mots. Lim. Mem.") 2 n.2 (ECF No. 232); Pl.'s Mem. Opp'n Defs.' Mots. Lim. ("Pl.'s Opp'n Defs.' Mots. Lim.") 12 (ECF No. 266). Accordingly, these motions are DENIED as MOOT.

Defendants' request to preclude testimony related to any police officer other than McManus, Rumble, or Schmidt (*see* Defs.' Mots. Lim. Mem. 5) is also DENIED. In this Opinion and Order, the Court holds that at trial, Tardif may assert *respondeat superior* claims against the City based on the conduct of John Does #8 and #9 on March 21, 2012, and the conduct of Officer Aminova and Lieutenant Destefano on April 16, 2012. Accordingly, Tardif may present evidence on those claims, which may include testimony related to those individuals.

Defendants' motion to instruct the jury that Tardif's April 16, 2012, arrest was lawful, is DENIED without prejudice to renewal. This motion is more appropriately addressed as part of Defendants' proposed jury charge.

36

## B. Defendants' MIL #2: Referring to Tardif's Counsel as Students or Interns

Defendants move to preclude Tardif from referring to her legal counsel as students or interns and to preclude Tardif from referring to the Hofstra Law Clinic, arguing that this could cause the jury to forgive weaknesses in Tardif's case due to sympathy for the law students' novice status. Defs.' Mots. Lim. Mem. 6–8. The Court agrees this is a valid concern. Moreover, the involvement of law students and of the Hofstra Law Clinic is not relevant to the issues of liability or damages. Tardif barely contests this motion, stating only that she "has no intent to introduce evidence" on the matter and that she "believes the Court is in the best position to determine whether the jury should be informed" of the status of Tardif's attorneys. *See* Pl.'s Opp'n Defs.' Mots. Lim. 5–6. Accordingly, Defendants' motion to preclude Tardif from referring to her legal counsel as students or interns and to preclude Tardif from referring to the Hofstra Law Clinic is GRANTED.

## C. Defendants' MIL #3: Using the Terms "City of New York" and "City Attorneys"

Defendants move to preclude Tardif from referring to defense counsel as City attorneys, from including the City of New York in the caption to this action on the verdict sheet, and from referring to any alleged New York City Police Department policy or practice, arguing that there is no claim for municipal liability in this action. Because the City is a defendant in this action, this motion is DENIED.

## D. Defendants' MIL #4: The NYPD Patrol Guide

Defendants move to preclude Tardif from offering the NYPD Patrol Guide into evidence, arguing that any violation of the Patrol Guide is irrelevant to whether Tardif's constitutional rights were violated. Although Defendants rely on Fed .R. Evid.  402 and 403 for this motion, all of their arguments relate to relevance. Tardif's excessive force claim will require a jury to

37

consider whether the conduct of the Defendants was unreasonable. The NYPD Patrol Guide is relevant to the question of whether the Defendants behaved reasonably. *See, e.g., Collado v. City of New York*, No. 11 CIV. 9041 (DAB), 2017 WL 4533772, at *3 (S.D.N.Y. Sept. 27, 2017) (Batts, J.) (collecting cases, and acknowledging that "a violation of the Patrol Guide is not necessarily a violation of constitutional rights" but is nonetheless relevant to an excessive force claim). Therefore, because the Patrol Guide is relevant and its probative value is not outweighed by prejudice or delay, Defendants' motion is DENIED.

## E. Defendants' MIL #5: Specific Witnesses

### 1. Sergeant Mattera and Officer Destefano

Defendants move to preclude Sergeant Mattera and Officer Destefano from testifying on the ground that they lack personal knowledge related to the claims in this case. This motion is DENIED because the Court holds in this Opinion and Order that Tardif may assert *respondeat superior* claims against the City based on the conduct of John Does #8 and #9 (the latter identified as Mattera) on March 21, 2012, and the conduct of Officer Aminova and Lieutenant Destefano on April 16, 2012.

### 2. Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxine Dade

Defendants initially argued that the testimony of Mandy Quinn,[14] Daniel Shockley, Stephanie Shockley, and Maxime Dade should be precluded because Tardif failed to provide contact information for these witnesses, in violation of Rule 26(a) of the Federal Rules of Civil Procedure. In their Reply papers, Defendants conceded that Tardif did, in fact, provide this information. Reply Mem. Law Supp. Defs.' Mots. Lim. ("Defs.' Mots. Lim. Reply") 7 (ECF

---

[14] Mandy Quinn is formerly known as Tony Zilka. Defs.' Mots. Lim. Mem. 16.

38

No. 269). Defendants nonetheless contend for the first time on reply that the testimony should be precluded because Tardif allegedly violated other aspects of Rule 26. Fed. R. Civ. P. 26(a)(1)(A)(i) provides, in relevant part, that a party is obligated to disclose to the opposing party "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--that the disclosing party may use to support its claims or defenses." Where a party fails to comply with Rule 26(a), the "party is not allowed to use that . . . witness . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Defendants first contend that Tardif violated Rule 26 by failing to disclose the subject of the discoverable material possessed by these witnesses. Defs.' Mots. Lim. Reply 7. But Defendants do not point to any prejudice that resulted from this alleged omission. Accordingly, even assuming Tardif failed to disclose the subject of the discoverable material, that omission was harmless and does not warrant preclusion under Rule 37(c)(1). Defendants alternately argue that the testimony should be precluded because Defendants were "unable to get in touch with [the witnesses]." *Id.* at 16. Defendants' inability to reach Tardif's proposed witnesses, without more, does not provide a basis for a Rule 26 violation. Absent such a violation, preclusion of testimony is not warranted under Rule 37(c)(1). Defendants also raise the argument that "it is not clear" whether any of these individuals have personal knowledge of the events giving rise to Tardif's claims. *See id.* at 18. Defendants' argument is speculative at this stage. At trial, if the witnesses testify to matters outside of their personal knowledge, Defendants may object on that ground. Defendants' motion to preclude the testimony of Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxime Dade is therefore DENIED.

In a footnote, Defendants request permission to depose Quinn, the Shockleys, and Dade, if the Court denies Defendants' motion to preclude those individuals' testimony. *See id.* 19 n.4.

Fed. R. Civ. P. 16(b)(4) provides that a discovery schedule "may be modified only for good cause and with the judge's consent." During the discovery phase of this case, Defendants had the names and contact information for these individuals, and had ample time to seek Court assistance, if needed, in contacting them. Trial is now imminent. Defendants offer no explanation for their failure to pursue discovery from these individuals prior to the close of discovery. Therefore, Defendants' request to depose Mandy Quinn, Daniel Shockley, Stephanie Shockley, and Maxime Dade is DENIED.

## F. Defendants' MIL #6: Tardif's Use of Depositions in her Case in Chief

Defendants move to preclude Tardif from offering deposition testimony of ten NYPD employees, arguing (1) Tardif should be required to have those individuals testify in court because the Second Circuit has a "preference" for live testimony; and (2) in some instances, the testimony is not relevant because it pertains only to dismissed claims. Fed. R. Civ. P. 32 provides that depositions may be offered in lieu of live testimony in certain circumstances. Defendants do not dispute that those circumstances are met here. But, as Defendants indicate, there is a "well-established" and "sensible" preference for live testimony in this Circuit. *See, e.g., In re: Gen. Motors LLC Ignition Switch Litig.,* No. 14-MC-2543 (JMF), 2016 WL 4493863, at *2 (S.D.N.Y. Aug. 24, 2016) (Furman, J.) (noting the potential for juror boredom when depositions are played in court). Although that preference is shared by this Court, because Rule 32 does not bar the use of deposition testimony under these circumstances, the Court will not compel Tardif to call the witnesses live. Further, given the Court's ruling that the *respondeat superior* claims predicated on the alleged March 21, 2012, assault by John Does #8 and #9 and the alleged April 16, 2012, assault by Lieutenant Destefano and Officer Aminova survive for trial, Defendants' relevance argument fails, at least in the aggregate version they presented in their briefing. *See* Defs.' Mots. Lim. Mem. 19–20. Therefore, the motion is DENIED without

40

prejudice to raising particular objections at trial.

### G. Defendants' MIL #7: Causation of Tardif's Seizures or Medical Damages

Defendants move to preclude Tardif from offering evidence relating to the cause of her seizures or to "medical damages," the latter of which the Court takes to refer to medical expenses related to her seizures and/or her epilepsy. *See id.* at 19–20. Tardif has stipulated that she will not mention her epilepsy or seizures when testifying about March 21, 2012, and will not introduce testimony about the purported exacerbation of her epilepsy. *See id.* at 2 n.2. She also states that does not seek damages based on the causation of her seizures. Pl.'s Opp'n Defs.' Mots. Lim. 20. Therefore, Defendants' motion is DENIED as MOOT.

### H. Defendants' MIL #8: Tardif's Status as a Medic

Defendants move to preclude Tardif from testifying about or introducing any evidence related to Tardif's training or activities as a "medic," arguing that such information is irrelevant or will mislead the jury into thinking Tardif possesses some expert knowledge, skill, or training. Defs.' Mots. Lim. Mem. 23. Tardif argues that testimony on this topic will help the jury understand why, even after her alleged PTSD was exacerbated by Defendants' conduct, she nonetheless returned to the site of the protests—that is, she wanted to provide medical support to the protesters. To the extent that Defendants argue that her return to the protests shows that her alleged PTSD was not exacerbated by the Defendants' conduct, this testimony could refute that argument. This motion is therefore DENIED without prejudice to Defendants raising particular objections at trial.

### I. Defendants' MILs #9: Defendants' Interactions with Other Arrestees

Defendants move to preclude testimony or argument about Defendants' interactions with other arrestees, relying on Fed. R. Evid. 402 and 403. Because Defendants' argument is vague and unspecific, this motion is DENIED without prejudice to Defendants raising particular

objections at trial.

## J. Defendants' MILs #10 and 11: Other Instances of Alleged Police Actions Related to Occupy Wall Street and Unrelated Police Actions

Defendants move to preclude Tardif from eliciting testimony or arguing about other instances of alleged police actions related to the Occupy Wall Street movement, or about other police actions generally. Because Tardif has stipulated that she will not elicit testimony or argue about other instances of alleged police misconduct against persons other than herself, this motion is DENIED as MOOT. *See* Defs.' Mots. Lim. Mem. 2 n.2.

## K. Defendants' MIL #12: What Defendants Could or Should Have Done

Defendants move to preclude Tardif from offering testimony on what she believes Defendants could or should have done. Defendants' argument on this point is speculative; they point to no specific testimony that Tardif plans to offer on this topic. Moreover, what the Defendants could or should have done may be relevant to the question of whether the individual defendants acted reasonably. Accordingly, the motion is DENIED without prejudice to Defendants raising particular objections at trial.

## L. Defendants' MIL #13: Questioning Defendants about the Appropriate Conduct for "Human Beings"

Defendants move to preclude Tardif from questioning Defendants on the appropriate way to treat "human beings," arguing that the topic is not relevant. Defendants note that when Tardif deposed Officer Rumble, Tardif asked Officer Rumble whether he was concerned about Tardif, since she is another human being. *See* Decl. Brachah Goykadosh Ex. G at 160:22–25 (ECF No. 231 Ex. 7). However, Tardif has not designated that deposition testimony for trial. *See* Pl.'s Proposed Deposition Excerpts (ECF No. 236). Accordingly, this objection is premature because Tardif has not sought to introduce testimony on this topic. Accordingly, for the reasons above, the motion is DENIED without prejudice to Defendants raising particular objections at trial.

42

## M.    Defendants MIL #14: Additional Motions in Limine

Defendants request leave to file additional motions in limine.    This motion is GRANTED.    Should Defendants file additional motions in limine, they are directed to focus their requests on specific evidence that Tardif has stated she plans to offer at trial.

## V.    Tardif's Motion to Seal

On January 9, 2018, Tardif submitted a letter motion requesting leave to file under seal the motion in limine papers which contain Confidential Material as defined by Local Civil Rule 83.10 ("the 1983 Plan") and paragraph 11 of the Plan's Protective Order.    (ECF No. 219.) Defendants oppose this request.    (ECF No. 223).    The parties are ordered to submit redacted copies of Tardif's medical records for public filing.    However, subject to future rulings made pursuant to Fed. R. Evid. 403, the jury will be permitted to view unreacted copies of the records and to hear related testimony.

## CONCLUSION

Tardif's state law *respondeat superior* claims based on the March 21, 2012, conduct of John Does #8 and #9, and the April 16, 2012, conduct of Officer Aminova and Lieutenant Destefano survive for trial.

Defendants' motion to preclude the testimony and expert report of Dr. Goldman (ECF No. 227) is DENIED in part and GRANTED in part.    Specifically, Dr. Goldman may testify to his diagnosis of Tardif as having PTSD, but not to the cause of the exacerbation of her PSD.

Tardif's motion to preclude the testimony of Dr. Fayer (ECF No. 224) is DENIED.

Tardif's motion in limine #3 (ECF No. 246) is GRANTED.    Tardif's motions in limine #1, 2, 4, 5, 6, 7, 8, and 9 (*id.*) are DENIED.

Defendants' motions in limine #2 and #14 (ECF No. 230) are GRANTED.    Defendants' motions in limine # 1, 3, 4, 5, 6, 7, 8, 8, 10, 11, 12, 13, and 14 (*id.*) are DENIED.

Tardif's motion to seal her medical records (ECF No. 219) is GRANTED, subject to future rulings under Fed. R. Evid. 403.

The Clerk of Court is hereby directed to terminate the motions at ECF Nos. 219 (Tardif's motion to seal), 227 (Defendants' *Daubert* motion to preclude Dr. Fayer), 230 (Defendants' motions in limine), 244 (Tardif's *Daubert* motion to preclude Dr. Goldman), and 246 (Tardif's motions in limine).

SO ORDERED.

Dated: New York, New York
October 1, 2018

*Kimba M. Wood*

KIMBA M. WOOD
United States District Judge

44