UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------x

MARY M. TARDIF,

                       Plaintiff,

          -against-

CITY OF NEW YORK, POLICE OFFICER MARSHA
RUMBLE, POLICE OFFICER FELIX SCHMIDT, SERGEANT
THOMAS MCMANUS,

                       Defendants.

-------------------------------------------------------------------------------x

**JOINT PROPOSED
JURY CHARGE**

13 Civ. 4056 (KMW)(KNF)

       Plaintiff Mary Tardif and Defendants Sergeant Thomas McManus, Police Officer Marsha Rumble, Police Officer Felix Schmidt, and the City of New York, by their attorneys, in accordance with the rules of this Court and the Local Civil Rules of the United States District Court for the Southern District of New York, respectfully request, pursuant to Rule 51 of the Federal Rules of Civil Procedure, that the Court give the following instructions to the jury.[1][2,3][4]

---

[1]Defendants respectfully note that Plaintiff has included a number of lengthy arguments in response to legal authority provided by defendants. Defendants requested that Plaintiff remove these arguments from this submission, as this was not the appropriate place for these lengthy arguments. Nonetheless, Plaintiff insisted on including these arguments. In an effort to promote judicial economy, Defendants refrain from responding to these lengthy arguments in this submission and reserve all arguments and objections for the charging conference.

[2] Where the parties disagree, Plaintiff's proposed language is *italicized* and Defendants' proposed language is **bolded**. Defendants respectfully note that they object to Plaintiff's charge on the substantive law of this case in its entirety as Plaintiff fails to provide direct citations and provides general blanket citations.

[3] The parties respectfully reserve the right to include additional substantive jury charges, if necessary, at the time of trial based upon the course of the proceedings.

[4] Defendants have not included a proposed charge on their qualified immunity defense, because they respectfully submit that the issue of qualified immunity is one for the Court to decide, not the jury. Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir. 2007); Stephenson v. Doe, 332 F.3d

PART I:  GENERAL INSTRUCTIONS[5]

## I.      INTRODUCTORY REMARKS

### A.      JUROR ATTENTIVENESS

Members of the jury, you are about to begin your final duty, which is to decide the fact issues in this case.  Before you do that, I will instruct you on the law.  Please pay close attention to me.  I will go slowly and will be as clear as possible.

### B.      ROLE OF THE COURT[6]

Members of the jury, we now approach the critical time in this case—the time when the case will be handed over to you for your judgment and verdict on the facts.

It is my responsibility now to instruct you on the law.

I begin by explaining to you your role and my role.  The jury's role is to decide the questions of fact and, on that basis, to render its verdict.

You are the sole judges of the facts.  That is a very great responsibility that you are to exercise with an attitude of complete fairness and impartiality.  Your decision is to be based solely on the evidence or the lack of evidence.  It may not be influenced by bias, prejudice, or sympathy.

My job includes two basic functions.  First, I make rulings on disputed issues of

---

68, 80-82 (2d Cir. 2003).  Defendants respectfully request the opportunity to submit Special Interrogatories for the jury so that the jury can resolve any material issues of fact that will allow the Court to decide whether Defendants are entitled to the defense of qualified immunity as a matter of law.  See id.  Should the Court indicate that it intends to charge the jury on qualified immunity, the parties respectfully reserve the right to provide a proposed qualified immunity charge at that time.

[5] The parties have submitted general instruction charges while being mindful that the Court may have its own preliminary and general instructions for use at trial.

[6] Taken from instructions given by the Honorable Kimba M. Wood in Joshua Bahadur v. Detective William Vargas, et al., 15 Civ. 0978 (KMW) that were delivered on October 26, 2017.

law.  What rulings I have made should not concern you.  My second function is to instruct you on the law—that is, to explain to you the rules of law that govern your deliberations and to provide you with the questions you must answer in reaching your verdicts.  It is your duty to accept the law as I state it to you in these instructions, and to then apply it to the facts as you decide them.  If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You must not substitute any concept of what the law should be for what I tell you that the law is.  Just as you alone find the facts, I alone determine the law, and you are duty-bound to accept the law as I state it.

It is important for you to listen carefully to the instructions and apply the law to the evidence or lack of evidence in this case as I explain the law to you.

## C.    ROLE OF THE ATTORNEYS

It is the duty of the attorney for each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also has the right and duty to ask the court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  You should not show any prejudice against any attorney or party because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury, or asked me for a ruling on the law.

I also ask you to draw no inference from my rulings or from the way I addressed each attorney.  My rulings were no more than applications of the law and my questions were only intended for clarification or to expedite matters. You are expressly to understand that I have no opinion as to the verdict you should render in this case, and you should not infer any opinion from the way I interacted with the parties in this matter. The rulings I have made during the trial are not indicative of my views of what your decision should be as to whether the Plaintiff or the

Defendants have presented the more convincing case.

D.   **ROLE OF THE JURY**

As I told you at the start of this case, you have a crucial role in determining the outcome of this case. Now it is your duty to accept my instructions of law and apply them to the facts as you determine them.

As the jury, your role is to consider and decide the factual issues that are in this case. You must decide the factual issues in the case and arrive, if you can, at a verdict. You, the members of the jury, are the sole and exclusive judges of the facts. You pass upon the evidence; you determine the credibility or believability of the witnesses; you resolve whatever conflicts may be in the testimony; you draw whatever reasonable inferences and conclusions you decide to draw from the facts as you have determined them; and you determine the weight of the evidence. In determining the facts you must rely upon your own recollection of the evidence. None of what the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions, is evidence. Nor is anything I may have said evidence. It is your own independent recollection of the evidence that controls.

Because you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were intended only for clarification or to move things along. They were not intended to suggest any opinions on my part as to the verdict you should render or whether any of the witnesses may have been more credible or less credible than any of the other witnesses. It is important that you understand that I wish to convey no opinion as to the verdict you should render in this case, and that if I did convey such an opinion, you would not be obliged in any way to follow it.

You have a duty to remain impartial. You are to perform your duty of finding the facts without sympathy, bias, prejudice or passion as to any party. All parties are equal under the law. You are to perform your final duty in an attitude of complete fairness and impartially. You are not to be swayed by rhetoric or emotional appeals.

*The fact that the City of New York is a party in this matter does not mean that the City is entitled to greater credence.[7] Moreover, the fact that a party or a witness may be employed as a police officer does not mean that his or her testimony is deserving of more or less consideration. Rather, the testimony of a law enforcement officer should be considered by you just as any other evidence in this case. In evaluating an officer's credibility you should use the same guidelines which you apply to the testimony of any witness. You should recall his or her demeanor on the stand, his or her manner of testifying, the substance of his or her testimony, and weigh and balance it just as carefully as you would the testimony of any other witness. It is your decision, after reviewing all the evidence, whether to accept or reject all parts of the testimony of the law enforcement witnesses as you would any other witness and to give that testimony whatever weight, if any, you find it deserves.[8]*

It must be clear to you that if you were to let prejudice or bias or sympathy interfere with your thinking, there would be a risk that you would not arrive at a true and just verdict. Your verdict will be determined by the conclusions you reach, no matter whom the verdict helps or hurts. So do not be guided by anything except clear thinking and calm analysis

---

[7] Defendants object to the inclusion of this paragraph in its entirety.

[8] Adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017). Adapted from Avery, Rudovsky & Blum, *Police Misconduct: Law and Litigation*, Thompson West 2006 § 12:8. Evaluation of credibility language adopted from *Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357 at *68-69 (E.D.N.Y. June 27, 2016). Defendants respectfully note that there was no trial in <u>Nnodimele</u>, and thus this charge was never given to a jury.

of the evidence. You must base your decision solely on whether or not the Plaintiff has presented enough credible evidence to meet her "burden of proof."

### E. BURDEN OF PROOF

### Plaintiff's Proposed Language on Burden of Proof[9]

*The Plaintiff has the burden of proving each and every element of each of her claims by a preponderance of the evidence.*

*What does a "preponderance of the evidence" mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not the number of witnesses or documents. In determining whether a claim has been proven by a preponderance of the evidence, you should consider the testimony of all witnesses, regardless of who called them.*

*If, after considering all of the evidence, you are satisfied that the Plaintiff has carried her burden on each essential element of each of her claims, then you must find in Plaintiff's favor on that claim. If, after such consideration, you find that the evidence in favor of the Plaintiff is outweighed by the evidence against the Plaintiff's position, or that the credible evidence on a given issue is equally divided between the parties, then you must decide that issue against the Plaintiff. However, Plaintiff need prove no more than a preponderance. So, if you find that the scales tip, however slightly, in favor of the Plaintiff—that what she claims is more likely true than not, even by just a little—then that element will have been proven by a preponderance of the evidence.*

---

[9] Adapted from *Bahadur v. Vargas* et al., No. 15-cv-978 (KMW) (2017). Adapted from 4-73 Modern Federal Jury Instructions-Civil P 73.01 (2017) (citing Fischl v. Armitage, 128 F.3d 50 (2d Cir. 1997) (quoting Treatise); Larson v. JoAnn Cab Corp., 209 F.2d 929 (2d Cir. 1954)).

*The Defendants have the burden of proving each element of their affirmative defenses* [10] *by a preponderance of the evidence. I will instruct you on the elements of these defenses. If, after considering all of the evidence, you are satisfied that the Defendants have carried their burden on each essential element of each of their affirmative defenses, then you must find in Defendants' favor on that affirmative defense. If, after such consideration, you find that the evidence in favor of Defendants is outweighed by the evidence against the Defendants' position, or that the credible evidence on a given issue is equally divided between the parties, then you must decide that issue against the Defendants. However, Defendants need prove no more than a preponderance. So, if you find that the scales tip, however slightly, in favor of Defendants—that what Defendants claim is more likely true than not, even by just a little—then that element will have been proven by a preponderance of the evidence. If you find that any one of the elements of Defendants' defenses has not been proven by a preponderance of the evidence, you must disregard the defense.*

### Defendants' Proposed Language on Burden of Proof[11]

**As you know, this is a civil case. In order to prevail in a civil case, a party**

---

[10] While Defendants oppose Plaintiff's charge regarding the burden of proof in its entirety, the language concerning affirmative defense is not applicable, as the jury will not be deciding an issue such as probable cause or even qualified immunity as that is a legal determination.

Plaintiff notes, however, that at least three of Defendants' affirmative defenses raise factual issues: the third affirmative defense (contributory negligence); the ninth affirmative defense (alleging that Plaintiff provoked Defendants' conduct); and the eleventh affirmative defense (mitigation of damages). (Dkt. 138 at 23-27). By not requesting a charge to those defenses, Plaintiff asserts that Defendants have waived them. *See* Fed. R. Civ. P. 51(d)(1)(B).

Defendants contest Plaintiff's meritless suggestion that by not "proposing a charge" to those defenses, Defendants have somehow "waived" those defenses. There is absolutely no legal authority for Plaintiff's erroneous position, and Plaintiff cites to none.

[11] Adapted from instructions given by the Honorable Kimba M. Wood in <u>Joshua Bahadur v. Detective William Vargas, et al.</u>, 15 Civ. 0978 (KMW) that were delivered on October 26, 2017.

who is making a claim against another party has what we call the "burden of proof," which is the burden of establishing each of the essential elements of the claim by a preponderance of the credible evidence.

Here, the party that is making a claim is the Plaintiff Mary Tardif.  In this civil trial, it is Plaintiff's burden to establish each and every element of her claim by a preponderance of the credible evidence.  The "credible evidence" means such testimony, exhibits, or other evidence that you find worthy of belief.  To "establish by a preponderance of the credible evidence" means to prove that something is more likely true than not true.  A preponderance of the evidence means the greater weight of the evidence. The phrase refers to the quality and persuasiveness of the evidence in convincing you of its truth, not to the number of witnesses or documents. n determining whether a claim has been proven by a preponderance of the evidence, you should consider the testimony of all witnesses, regardless of who called them.. You may consider the testimony of all of the witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have introduced them.

If Plaintiff fails to prove, by a preponderance of the evidence, any element of her claims, then you must find for the Defendants on that claim.   If, after such consideration, you find that the evidence in favor of the Plaintiff is outweighed by the evidence against the Plaintiff's position, or that the credible evidence on a given issue is equally divided between the parties—that it is equally as probable that one side is right as it is that the other side is right—then you must decide that issue against the Plaintiff and for the Defendant.  Because the Plaintiff has the burden of proof, she must do more than simply produce evidence that is equal to the evidence of the other side.  In order to satisfy

her burden, she must prove each element of his claim by a preponderance of the evidence.

If you find that the credible evidence on an issue is evenly divided between the parties—that is, equally probable that one side is right as it is that the other side is right—then you must decide that issue against Plaintiff and in favor of the Defendants. That is because the party who has to shoulder the burden of proof must prove more than simple equality of evidence—the party must prove its claim by a preponderance of the credible evidence.

## F. EVIDENCE

The evidence before you consists of just three things: the testimony given by witnesses that was received in evidence, the exhibits that were received in evidence, and any stipulations of the parties that were received in evidence. Testimony consists of the answers that were given by the witnesses to the questions that were permitted either here in court or in the depositions that were read into evidence. Please remember that questions are never evidence; only answers are evidence. However, at times, during the course of this trial, counsel for the Plaintiff and Defendants may have incorporated into their questions statements that they have asked the witness to assume as true. If the witness denied the truth of these statements, and if no other evidence was introduced to prove the assumed fact was true, then you may not consider it to be true simply because it was contained in a lawyer's question. On the other hand, if the witness acknowledged the truth of the statement, you may, of course, consider the witness's answer as evidence that the statement is in fact true. Also, you may not consider any answer that I directed you to disregard or what I directed be stricken from the record. Likewise, you may not consider anything you heard about the contents of any exhibit that was not received in evidence.

### EVIDENCE TO BE CONSIDERED

The evidence upon which you are to decide what the facts are in this case comes

either from:

1. Sworn testimony of witnesses, including prior sworn testimony such as a deposition—both on direct and cross—examination and regardless of who called the witness.

2. Exhibits that the court received into evidence.

3. Stipulations, or agreements, among the parties that a certain fact is true. You must regard such facts as true.

### WHAT IS NOT EVIDENCE

In determining the facts, you must rely upon your own recollection of the evidence. What is evidence? Evidence consists primarily of the testimony of witnesses and the exhibits that have been received. It also includes facts that have been stipulated.[12]

*Finally, it includes judicially-noticed facts. Judicially-noticed facts are facts that are not subject to reasonable dispute. I have accepted these facts to be true, even though no direct evidence has been introduced proving them to be true. You are required to accept these facts as true in reaching your verdict.*[13]

What the lawyers have said in their opening statements, in their summations, in their objections, or in their questions is not evidence. You should bear in mind that a question put to a witness is never evidence. It is only the witness's answer that is evidence. However, you may not consider any answers that I have ordered stricken from the record.

The lawyers' arguments are intended to persuade you to draw certain conclusions from the evidence or lack of evidence. Those arguments are important. You should weigh and

---

[12] Adapted from instructions given by the Honorable Kimba M. Wood in Joshua Bahadur v. Detective William Vargas, et al., 15 Civ. 0978 (KMW) that were delivered on October 26, 2017.

[13] Defendants object to the inclusion of this paragraph.

evaluate them carefully.  But you must not confuse them with the evidence.  As to what the evidence was, it is your recollection that governs, not the statements of the lawyers.

You should draw no inference or conclusion for or against any party by reason of lawyers making objections or my rulings on such objections.  Counsel have not only the right, but the duty, to make legal objections when they think that such objections are appropriate.  You should not be swayed against the Plaintiff or the Defendants simply because the lawyers for either side have chosen to make an objection.  Similarly, statements made by the lawyers when arguing about the admissibility of evidence are not to be considered as evidence.

Nothing I say is evidence.  It is your recollection that governs.

Do not draw any inference from any of my rulings.  The rulings I have made during trial are not any indication of my view of what verdict you should render.  My rulings were based solely on issues of law.

Do not concern yourself with what was said at side bar conferences or during my discussions with counsel.  Those discussions related to rulings of law and not to matters of fact.

At times I may have admonished a witness or directed a witness to be responsive to questions, to keep his voice up, or to speak more clearly or slowly.  My instructions were intended only to facilitate the presentation of evidence.  You should draw no inference or conclusion, favorable or unfavorable, with respect to any witness or any party in the case, by reason of any comment, question, or instruction of mine.  Nor should you infer that I have any views as to the credibility of any witness, as to the weight of the evidence, or as to how you should decide any issue that is before you.  That is entirely your role.

*Exhibits that have been marked for identification must not be considered evidence until they have been received in evidence. Exhibits marked for identification may be used to*

*refresh a witness's memory. If these materials used to refresh a witness's recollections are not admitted into evidence they are not evidence you may consider. Statements I make about the quality of the evidence are not evidence.*

*I realize it may be difficult to ignore things that you have heard. You must only consider things in evidence and nothing else even if something else would answer a question you may have. Things I have excluded were excluded because they were not legally admissible into evidence. You must consider only legally admissible evidence so that we can ensure that all people receive the same fair and impartial trial.*

*If certain testimony was received for a limited purpose you must follow the limiting instructions I have given. An example of this is testimony admitted for the purpose of assessing whether the witness is giving reliable testimony.[14]*

## DIRECT AND CIRCUMSTANTIAL EVIDENCE

### Plaintiff's Proposed Language[15]

*In this civil case, there are two types of evidence you may use in determining the truth and your verdict. One is called "direct evidence" and the other is called "circumstantial evidence."*

---

[14] This section is generally adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017), except for the two italicized portions by Plaintiff to which Defendants objects. Plaintiff obtained the definition of judicially-noticed facts language adopted from 4-74 Modern Federal Jury Instructions-Civil P 74.02 (2017). Plaintiff also generally cites to Adapted from 4-74 Modern Federal Jury Instructions-Civil P 74.01 (2017) (citing *United States v. Aluminum Co. of America*, 1 F.R.D. 62 (S.D.N.Y. 1939)).

Defendants object to the final three paragraphs in this section.

[15] Adapted from *Nnodimele v. Derienzo*, 13-cv-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016). Defendants respectfully note that there was no trial in Nnodimele, and thus this charge was never given to a jury.

A witness testifying about something he or she knows because of his or her five senses is direct evidence. For example, if a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. An exhibit can also be direct evidence.

Circumstantial evidence is established based on an inference drawn from a chain of other facts or circumstances. For example, if someone walked into the courtroom wearing a raincoat, covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence allowing you to infer that it was raining without anyone testifying that it was raining.

You may consider both kinds of evidence. Direct evidence does not have any greater value than circumstantial evidence. Your job is to consider all the evidence and to decide how much weight to give the direct or circumstantial evidence.

<u>**Defendants' Proposed Language**</u>

**In deciding whether a party meets its burden of proof, you may consider both direct evidence and circumstantial evidence.**

**Direct evidence is evidence that proves a disputed fact directly. It does not require any other evidence. It does not require you to draw any inferences. A witness's testimony is direct evidence when the witness testifies to what he saw, heard, or felt. In other words, when a witness testified about what is known from his own personal knowledge by virtue of his own sense, what he sees, touched, or hears, that is direct evidence. The only question is whether you believe the witness's testimony. A document or physical object may also be direct evidence when it can prove a material fact by itself, without any other evidence or inference. You may, of course, have to determine the genuineness of the document or object.**

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts. To give a simple example, suppose that when you came into the courthouse today the sun was shining and it was a nice day, but that the courtroom blinds were drawn and you could not look outside. Then later, as you were sitting here, people began walking in with wet umbrellas and, soon after, others walked in with wet raincoats. You cannot look outside of the courtroom and you cannot see whether or not it is raining. So you have no direct evidence of that fact. But, on the combination of the facts about the umbrellas and the raincoats, it would be reasonable for you to conclude that it had begun raining. That is all there is to circumstantial evidence. Using your reason and experience, you infer from established facts the existence or the nonexistence of some other act.

The law makes no distinction between direct and circumstantial evidence. Circumstantial evidence is of no less value than direct evidence and you can consider either or both, and can give them such weight as you conclude is warranted. You are to consider all the evidence in the case, both direct and circumstantial, in determining what the facts are, and in arriving at your verdict.

### INFERENCES

During the trial you may have heard the attorneys use the term "inference," and in their arguments they may have asked you to infer, on the basis of your reason, experience, and common sense, from one or more proven facts, the existence of some other facts. An inference is not a suspicion or a guess. It is a logical conclusion that a disputed fact exists that we reach in light of another fact that has been shown to exist. There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of

guesswork or speculation. An inference is a deduction or conclusion that you, the jury, are permitted to draw—but not required to draw—from the facts that have been established by either direct or circumstantial evidence. In drawing inferences you should exercise your common sense.

While you are considering the evidence presented to you, you are permitted to draw, from the facts that you find to be proven, such reasonable inferences as would be justified in light of your experience. Keep in mind that the mere existence of an inference against the Defendants does not relieve the Plaintiff of the burden of establishing her case by a preponderance of the evidence. In order for the Plaintiff to obtain a verdict in her favor, you must still believe from the credible evidence that the Plaintiff has sustained the burden cast upon him.

G. **CREDIBILITY OF WITNESSES**

**Plaintiff's Proposed Language[16]**

*You have had the opportunity to observe the witnesses. You are the sole judges of the credibility of each witness and of the importance of his or her testimony. Decide what testimony to believe and what not to believe. Consider each witness's demeanor and manner of testifying; his or her opportunity to see, hear, and know about the events described; the witness's ability to recall and describe those things; and the reasonableness of the testimony in light of all the other evidence in the case. Consider whether part of a witness's testimony was contradicted or supported by other testimony, by what the witness said or did on a prior occasion, or by the*

---

[16] Adopted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017). Adapted from *Nnodimele v. Derienzo*, 13-cv-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, 2016 WL 337751 (E.D.N.Y. Jan. 27, 2016). Defendants respectfully note that there was no trial in Nnodimele, and thus this charge was never given to a jury.

*testimony of other witnesses or other evidence. Consider whether a witness had an opportunity to observe the facts about what he or she testified, and whether the witness's recollection of the facts stands up in light of other evidence in the case.*

*If you find that a witness has willfully testified falsely as to an important matter, you may disregard the witness's entire testimony, or you may accept as much of the testimony as you find to be true and disregard what you find to be false. A witness may have been mistaken or may have lied in part of his or her testimony while having been accurate and truthful in other parts.*

*What you must try to do in deciding credibility is to size up a person just as you would in any important matter in your own life when you are trying to decide if a person is truthful, straightforward, and accurate in his or her recollection.*

*You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve all or any part of the testimony of any witness. In evaluating the truthfulness and accuracy of the witness's testimony, you may consider the reasonableness or the likelihood of the testimony. You may consider whether the testimony has been supported or challenged by other reliable evidence.*

**<u>Defendants' Proposed Language</u>**

**You have had the opportunity to observe all the witnesses. These instructions apply to your determination of the credibility of the witnesses that testified during this trial. It is now your job to decide how believable each witness was in his or her testimony.**

**It must be clear to you by now that the parties are asking you to draw very different conclusions in the case. An important part of that decision will involve making judgments about the testimony of the witnesses you have listened to and observed. In**

making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you to decide the truth and the importance of each witness's testimony.

Your decision whether or not to believe a witness may depend on how that witness impressed you. Was the witness candid, frank and forthright; or did the witness seem to be evasive or suspect in some way? How did the way the witness testified on direct-examination compare with how the witness testified on cross-examination? Was the witness consistent or contradictory? Did the witness appear to know what he or she was talking about? Did the witness strike you as someone who was trying to report his or her knowledge accurately? These are examples of the kinds of common sense questions you should ask yourselves in deciding whether a witness is or is not truthful. In deciding whether to believe a witness, keep in mind that people sometimes forget things. You need to consider, therefore, whether the witness's testimony reflects an innocent lapse of memory or an intentional falsehood, and that may depend on whether it has to do with an important fact or with only a small detail.

How much you choose to believe a witness may also be influenced by the witness's bias. Does the witness have a relationship with any of the parties that may affect how he or she testified? Does the witness have some incentive, loyalty or motive that might cause him or her to shade the truth? Does the witness have some bias, prejudice or hostility that may cause the witness to give you something other than a completely accurate account of the facts he or she testified to? However, an interested witness is not necessarily less credible than a disinterested witness. It is for you to determine from the witness's

demeanor on the stand and such other tests as your experience dictates whether or not the witness's testimony has been colored, intentionally or unintentionally, by the witness's interest.

If you find that any witness has willfully testified falsely as to any material fact (that is, as to an important matter), the law permits you to disregard completely the entire testimony of that witness upon the principle that one who testifies falsely about one material fact is likely to testify falsely about everything. You are not required, however, to consider such a witness as totally unworthy of belief. You may accept so much of the witness's testimony as you deem true and disregard what you feel is false. As the sole judges of the facts, you must decide which of the witnesses you will believe, what portion of their testimony you accept, and what weight you will give to it.

### IMPEACHMENT BY PRIOR INCONSISTENT STATEMENTS

You have heard evidence that at some earlier time a witness has said or done something that counsel argues is inconsistent with the witness's trial testimony.

*If you find that the witness made an earlier statement that conflicts with his or her trial testimony, you may consider that fact in deciding how much weight, if any, to give to his or her trial testimony. The prior statement is admitted solely for your evaluation of the witness's credibility.*[17]

If you find that a witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if

---

[17] Adapted from *Nnodimele v. Derienzo*, 13-cv-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357, 2016 WL 337751 (E.D.N.Y. 2016). Defendants respectfully note that there was no trial in Nnodimele, and thus this charge was never given to a jury.

**any, to believe.**

In making this determination, you may consider whether there was, in fact, any inconsistency; whether the witness purposely made a false statement or whether it was an innocent mistake; whether the inconsistency concerns an important fact, or whether it had to do with a small detail; whether the witness had an explanation for the inconsistency, and whether that explanation appeals to your common sense. It is your duty, based upon all the evidence and your own good judgment, to decide how much weight to give to the inconsistency.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

A prior inconsistent statement of a witness who is not a party in these cases is not evidence you should consider in determining whether a Plaintiff has proved her case. The prior inconsistent statement was placed before you solely for the purpose of attacking the credibility of the witness. However, a prior statement of a Plaintiff *is* evidence if that statement was offered by the Defendants. Likewise, a prior statement of a Defendant is evidence if offered by a Plaintiff. In addition, you may consider such statements for any purpose, including assessing the credibility of that party as a witness.

<u>**Plaintiff's Proposed Testimony on Bias/Interest in Outcome**</u>[18]

*In deciding whether to believe a witness, you should take into account any evidence that shows that the witness may benefit in some way from the outcome of the case, such as a legal, financial, or personal interest. You should specifically note any evidence of hostility or affection which the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party.*

*It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view his or her testimony with caution, weigh it with care and subject it to close and searching scrutiny.*

<u>**Defendants' Proposed Testimony on Bias/Interest in Outcome**</u>

**In evaluating the credibility of the witnesses, you should take into account any evidence that a witness may benefit in some way from the outcome of this case. You should also take into account any evidence that the witness has an interest in testifying falsely for any other reason. Such interest in the outcome creates a motive to testify falsely and may sway a witness to testify in a way that advances the witness's own interest. Therefore, if you find that any witness whose testimony you are considering may have an interest in the outcome of this trial, then you should bear that factor in mind when evaluating the credibility of his or her testimony, and accept it with great care.**

**Keep in mind, however, that it does not automatically follow that testimony given by an interested witness is to be disbelieved. There are many people who, no matter**

---

[18] Adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017). Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, Modern Federal Jury Instructions (2012), Volume 4 (Civil), Instruction 76-2.

what their interest in the outcome of the case may be, would not testify falsely. It is for you to decide, based upon your own perceptions and common sense, to what extent, if at all, the witness's interest has affected his or her testimony.

## EXPERT OPINION [19, 20]

*A person who by education, study and experience has become an expert in any art, science, or profession, and who is called as a witness may give his opinion regarding any matter in which he has specific experience that is material to the case.*

*The Plaintiff has offered the testimony of an expert, Robert Goldman, a psychologist who has given testimony regarding the Plaintiff's mental illness, and psychological and emotional damages.* **Defendants have refuted Dr. Goldman's testimony by offering the expert testimony of Dr. Fayer, who has also provided you with his expert opinion as to the causation of Plaintiff's purported damages.[21]**

*An expert's testimony should be considered and weighed by you like any other evidence in the case. You are not bound by the testimony if the opinion is based on facts that have not*

---

[19] Defendants object to the inclusion of this portion in its entirety.

[20] 4-76 Modern Federal Jury Instructions-Civil P 76.01 (2017) (citing *United States v. Simon*, 425 F.2d 796, 806 (2d Cir. 1969)); Standardized Civil Jury Instructions for the District of Columbia 3-3.

[21] Defendants object to the inclusion of any summarizing of any proposed expert's testimony, but include proposed language to the extent the Court accepts plaintiff's proposal.

Plaintiff objects to Defendants' language that "Defendants have refuted Dr. Goldman's testimony." Plaintiff proposes the following alternative language, "In response to Dr. Goldman, Defendants offered the expert testimony of Dr. Fayer, who has also provided you with his expert opinion as to the causation of Plaintiff's purported damages."

*been established to your satisfaction by the evidence presented, however you should not reject it if it is un-contradicted and not inherently unreasonable.*

### H.   DISCREPANCIES IN TESTIMONY

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent mis-recollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

### I.   TESTIMONY UNDER OATH.[22]

Some of the testimony before you is in the form of depositions which have been received in evidence. A deposition is simply a procedure where the attorneys for one side may question a witness or an adverse party under oath before a court stenographer prior to trial. This is part of the pretrial discovery, and each side is entitled to take depositions. You should give this testimony the same consideration as to its weight and credibility as you give to the testimony of witnesses who testified here in court.

### J.   PREPARATION OF WITNESSES.[23], [24]

---

[22] Adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017). Adapted from Standardized Civil Jury Instructions for the District of Columbia 3-5; 4-74 Modern Federal Jury Instructions-Civil P 74.07 (2017).

[23] Defendants object to the inclusion of this language as unnecessary.

[24] Adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017).

*You heard evidence during the trial that witnesses discussed the facts of the case and their testimony with their lawyers before the witnesses appeared* **for a deposition or** *in court.*

*Although you may consider that fact when you are evaluating a witness's credibility, I should tell you that there is nothing either unusual or improper about a witness meeting with lawyers before testifying. At those meetings, the witness can become aware of the subjects he or she will be questioned about, focus on those subjects, and have the opportunity to review relevant exhibits before being questioned about them. Such consultation helps conserve your time and the Court's time. In fact, it would be unusual for a lawyer to call a witness without such consultation.*

*Again, the weigh you give to the fact or the nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.*

### K. NYPD PATROL GUIDE.[25]

### Plaintiff's Proposed Charge on the Patrol Guide[26]

*Sections of the NYPD Patrol Guide have been admitted into evidence.*

---

[25] Defendants object to the inclusion of this section but have nonetheless provided their own proposed instruction should the Court be inclined to include this instruction.

[26] *Tardif v. City of N.Y.*, No. 13 CV 4056 (KMW), 2018 WL 4735707 at *18 (S.D.N.Y. Oct. 1, 2018); *Tardif v. City of N.Y.*, No. 13 CV 4056 (KMW), 2017 U.S. Dist. LEXIS 135607 at 18-19 (S.D.N.Y. 2017); Ex. 8, *NYPD Patrol Guide Introduction* (2012); *Bah v. City of New York*, 319 F. Supp. 3d 698, 717 (S.D.N.Y. 2018). Unreasonableness language adopted from *Nnodimele v. Derienzo*, No. 13-CV-3461 (ARR)(RLM), 2016 U.S. Dist. LEXIS 83357 at *46-47 (E.D.N.Y. June 27, 2016) (incorporating Magistrate Judge Mann's decision at Dkt #123) (holding by Magistrate Judge Mann that testimony regarding guidelines and practices from the NYPD Patrol Guide was admissible because it was relevant and the defendants would suffer no unfair prejudice). Defendants respectfully note that there was no trial in <u>Nnodimele</u>, and thus this charge was never given to a jury.

*The NYPD Patrol Guide was created to ensure that all NYPD officers and supervisors are familiar with the procedures contained in it and serves as performance expectations so that supervisors and officers conform to the mission, values, strategies, objectives, policies, procedures, and legal requirements of the NYPD. You may consider the Patrol Guide as evidence of the standard of care to be exercised by a police officer. The procedures outlined in the Patrol Guide provide guidelines to NYPD officers on proper responses in certain situations. It does not, however, contain distinct instructions for every situation that arises. Moreover, **it is important to understand that the Patrol Guide and the federal constitution are not coextensive. A particular action could violate a provision of the Patrol Guide without violating the federal constitution. Similarly, an officer could violate the constitution without violating any portion of the Patrol Guide.** If you find that the Defendants violated an NYPD procedure as listed in the Patrol Guide, you may find that the Defendant Officer's actions were so unreasonable as to give rise to liability.*

**<u>Defendants' Proposed Charge on the Patrol Guide</u>**

**You have heard testimony regarding the New York City Police Department Patrol Guide and other NYPD polices.[27]  It is important to understand that the Patrol Guide and the federal constitution are not coextensive.[28]  A particular action could violate a provision of the Patrol Guide without violating the federal constitution.[29]  In this case, it is the federal**

---

[27] <u>Bah v. City of New York</u>, 319 F. Supp. 3d 698, 717 (S.D.N.Y. 2018).

[28] <u>Id.</u>

[29]<u>Id.</u>  Plaintiff notes that Defendants have inexplicably eliminated the following sentence from the *Bah* decision:  **"Similarly, an officer could violate the constitution without violating any portion of the Patrol Guide."  *Bah* at 717.**

constitution that controls.[30]  Therefore, you must determine whether the plaintiff's constitutional rights were violated, not whether all parties complied with the rules and regulations of the NYPD.[31]  While Plaintiff may have admitted some sections of the Patrol Guide as evidence, I instruct you that your role is to determine whether a plaintiff suffered from a constitutional violation in this action and not necessarily a Patrol Guide violation.[32] The Patrol Guide is a guide; it is not law.[33]

I further instruct you that you should carefully pay attention to the constitutional law which I will instruct you on in just one moment.  That is the law that governs this case and your determination.

---

[30] Id.

[31] Id. at 717 -718.

[32] Id. at 718.

[33] Brown v. City of New York, No. 13-cv-1018 (KBF), 2016 U.S. Dist. LEXIS 53365, at *23 (S.D.N.Y. Apr. 20, 2016), aff'd Brown v. City of New York, 862 F.3d 182 (2d Cir. 2017), quoting Galapo v. City of New York, 95 N.Y.2d 568, 744 N.E.2d 685, 721 N.Y.S.2d 857 (App. Div. 2000) ("In fact, New York courts have held that the patrol guide does not 'prescribe the specific action to be taken in each situation encountered by individual officers, but rather is intended to serve as a guide for members of the Police Department.'").  See also Williams v. City of New York, 2 N.Y.3d 352, 811 N.E.2d 1103, 1108, 779 N.Y.S.2d 449 (N.Y. 2004).

## PART II: SUBSTANTIVE LAW[34]

**Plaintiff's Proposed Language**

In this case, the Plaintiff, Mary Tardif, has brought a claim of Deliberate Indifference to a Serious Medical Condition against Defendants Rumble and Schmidt. Plaintiff has also brought a claim of Unconstitutional Conditions of Confinement against Defendants Rumble and Schmidt. Finally, Plaintiff has brought a claim of Excessive Force against Defendant McManus. You must consider the possible liability of each Defendant separately.

**Defendants' Proposed Language**

**I will now instruct you on the substantive law to be applied to this case. Plaintiff has asserted claims against Defendants under federal and state law. You should consider each claim separately and determine whether Plaintiff has proven the elements of that claim by a preponderance of the evidence. You must consider the possible liability of each Defendant separately.[35]**

## I.      CLAIMS

*Plaintiff's Preliminary Instructions on the Claims.*

*Plaintiff asserts these claims pursuant to 42 U.S.C. § 1983, This statute prohibits agents of the government from depriving a person of their due process rights under the Constitution. In order to prevail in this case on all three claims, Plaintiff must first prove by a preponderance of the evidence that:*

---

[34] Defendants object to Plaintiff's charges in its entirety.

[35] Adapted from instructions given by the Honorable Kimba M. Wood in Joshua Bahadur v. Detective William Vargas, et al., 15 Civ. 0978 (KMW) that were delivered on October 26, 2017.

1.    The Defendant you are considering was acting under color of law at the time of the incident on March 21, 2012, or April 16, 2012, respectively.

*Acting under Color of State Law as Agent of the Government*

*Acting under color of state law means acting in one's capacity as a police officer. It means that the actors were acting in their official role as an agent of the government. For each of Plaintiff's claims, Plaintiff must prove Defendants acted as agents of the government. In this case, there is no dispute that, at the time of the alleged violations, Defendants Rumble, Schmidt, and McManus were employees of the New York City Police Department, and were acting under color of state law. Therefore, I instruct you that the first element of Plaintiff's §1983 claims has been met.*

*I will now walk through the elements of Plaintiff's due process claims:*

*Deprivation of a Constitutional Right*

*The conduct of the Defendant you are considering deprived Plaintiff of a right protected by the Constitution of the United States.*

**Defendants' Preliminary Instructions on the Claim.**

**I will now turn to my instructions on the substantive law to be applied in this case. Plaintiff brings this claim pursuant to Federal Law under Section 1983 of Title 42 of the United States Code (which I will call "Section 1983") for excessive force and deliberate indifference. I will describe each of these claims in greater detail shortly.**

**Although the Defendants in this trial are being represented by the same counsel, you should consider each Defendant separately. You should consider the evidence related to each Defendant and ask whether Plaintiff has proven the elements of her claim**

against each Defendant by a preponderance of the evidence.

To support a claim under Section 1983, the Plaintiff must establish, by a preponderance of the credible evidence, each of the following elements:

First, that the alleged incident happened as Plaintiff claims, and that such conduct deprived the Plaintiff of a right protected by the Constitution of the United States, and

Second, that the conduct of the Defendants was the proximate cause of the injuries and damages sustained by Plaintiff.

I will explain these elements to you.


A.      FIRST ELEMENT:  DEPRIVATION OF CONSTITUTIONAL RIGHT

You must first determine whether Defendants committed the acts as alleged by Plaintiff.  The law imposes liability only upon a Defendant who "subjects, or causes to be subjected" any person to the deprivation of any federal right.  For Plaintiff to prevail on her claims, there must be some evidence of personal involvement by Defendants.  Under the law, a Defendant is considered to have been personally involved in a constitutional violation if the Defendant in question directly participated in the alleged wrongful acts. Therefore, you must first make a determination of personal involvement by each Defendant for the constitutional violations alleged by Plaintiff.

If you find that a Defendant was not personally involved in the deprivation of Plaintiff's constitutional rights, then you must find for the defendant on that alleged violation.   If, however, you find that a Defendant was personally involved in the

deprivation of Plaintiff's constitutional rights, then you must go on to determine whether Plaintiff has proven the other elements of her claims regarding the deprivation of her constitutional rights against that Defendant. Although there are three Defendants in this case, each Defendant is entitled to fair, separate, and individual consideration without regard to your decision as to the other Defendant.

Second, if you determine that a Defendant committed the acts as alleged by the Plaintiff, you must determine whether those acts caused the plaintiff to suffer the loss of a federal right.

Third, Plaintiff must establish that each Defendant acted intentionally or recklessly. An act is intentional if it is done voluntarily and deliberately, and not because of mistake, accident, negligence, or other innocent reason. An act is reckless if done in conscious disregard of its known probable consequences. In determining whether a Defendant acted with the requisite state of mind, you should remember that, while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to rely on your understanding of what was done, what the people involved said was in their minds, and your belief or disbelief with respect to those facts and statements.

B.    SECOND ELEMENT: PROXIMATE CAUSATION[36]

If you find that Defendants violated one or more of Plaintiff's constitutional rights, you must consider the second element of a Section 1983 claim. The second element that the Plaintiff must prove by a preponderance of the credible evidence is that Defendants proximately caused the injury that Plaintiff alleges to have sustained.

---

[36] Adapted from instructions given by the Honorable Kimba M. Wood in Joshua Bahadur v. Detective William Vargas, et al., 15 Civ. 0978 (KMW) that were delivered on October 26, 2017.

Proximate cause means that there must be a sufficient causal connection between an act or omission of the Defendants and any injury or damage sustained by a Plaintiff. If you find that any of Defendants' acts or omissions were a substantial factor in bringing about or actually causing Plaintiff's injury, that is, if the injury was a *reasonably foreseeable* consequence of any of Defendants' acts or omissions, then Defendants' acts or omissions were a proximate cause of Plaintiff's injuries. If an injury was a direct result or a reasonably probable consequence of Defendants' acts or omissions, it was proximately caused by such acts or omissions. Stated another way, if Defendants' act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the Plaintiff must show by a preponderance of the credible evidence that such injury would not have occurred without the conduct of the Defendants. If you find that the Plaintiff's injury would have occurred even in the absence of the Defendants' conduct, you must find that the Defendants did not proximately cause the injury.

A proximate cause need not always be the nearest cause either in time or space. In addition, there may be more than one proximate cause of an injury. Many factors or the conduct of two or more people may operate at the same time, either independently or together to cause an injury. Defendants are not liable if they did not cause Plaintiff's injuries or if Plaintiff's injuries were caused by a new or independent source that intervened between the Defendants' acts or omissions and Plaintiff's injuries and produced a result that was not immediately foreseeable by Defendants.

### C. THIRD ELEMENT: INTENT

As set forth above, to find a deprivation of a constitutional right for purposes of section 1983, Plaintiff must establish not only (a) that a Defendant committed the acts alleged and (b) that those acts caused Plaintiff to suffer the loss of a constitutional right, but also (c) that in performing the alleged acts, that a Defendant acted intentionally or recklessly.

An act is intentional if it is done knowingly — that is, if it is done voluntarily and deliberately and not because of mistake, accident, negligence, or another innocent reason. An act is reckless if done in conscious disregard of its known probable consequences.

In determining whether a Defendant acted with the requisite knowledge or recklessness, you should remember that while witnesses may see and hear and so be able to give direct evidence of what a person does or fails to do, there is no way of looking into a person's mind. Therefore, you have to depend on what was done and what the people involved said was in their minds and your belief or disbelief with respect to those facts.

Finally, it is not necessary to find that Defendants specifically intended to deprive Plaintiff of her civil rights in order to find in favor of that Plaintiff. Again, Plaintiff will have established a deprivation of a constitutional right for purposes of section 1983 if you find that in performing the acts that caused the loss of Plaintiff's constitutional right, the Defendant acted intentionally or recklessly, as I have explained the meaning of those terms.

## II.     EXCESSIVE FORCE [37, 38, 39]

---

[37] Defendants object to Plaintiff's proposed charge in its entirety.

[38] Defendants oppose the jury being charged on plaintiff's state law claims of assault and battery as said claims are duplicative of plaintiff's excessive force claim. Courts in this Circuit have

emphasized that the elements of assault and battery in New York are "substantially identical to those of a Section 1983 claim for excessive force. " <u>Caravalho v. City of New York</u>, No. 13 Civ. 4174 (PKC), 2016 U.S. Dist. LEXIS 44280, at *71 (S.D.N.Y. Mar. 31, 2016), quoting <u>Posr v. Doherty</u>, 944 F.2d 91, 95 (2d Cir. 1991). <u>See</u> also Bogart v. City of New York, No. 13 Civ. 1017 (NRB), 2016 U.S. Dist. LEXIS 128350, at *39 (S.D.N.Y. Sep. 6, 2016). "Federal excessive force claims and state law assault and battery claims against police officers are nearly identical." <u>Kennedy v. Arias</u>, No. 12 Civ. 4166 (KPF), 2017 U.S. Dist. LEXIS 103576, at *33-34 (S.D.N.Y. July 5, 2017), <u>quoting</u> <u>Graham v. City of New York</u>, 928 F. Supp. 2d 610, 624 (E.D.N.Y. 2013) (citing <u>Humphrey v. Landers</u>, 344 F. App'x 686, 688 (2d Cir. 2009) (summary order)). <u>See</u> <u>also</u> Lloyd v. City of New York, 246 F. Supp. 3d 704 (S.D.N.Y. Mar. 31, 2017); <u>Castro v. County of Nassau</u>, 739 F. Supp. 2d 153, 178, n.17 (E.D.N.Y. 2010) (same standard applies for § 1983 excessive force claim and state law assault and battery claims); <u>Tianshu Li v. United States</u>, 05 Civ. 6237 (NRB), 2009 U.S. Dist. LEXIS 96945, at *5, n.2 (S.D.N.Y. Oct, 8, 2009) ("As against law enforcement personnel, assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest.") (citation omitted). Indeed, this is the law of this case. <u>Tardif v. City of New York</u>, No. 13 Civ. 4056 (KMW), 2017 U.S. Dist. LEXIS 135607, at *17 (S.D.N.Y. Aug. 23, 2017), citing <u>Posr v. Doherty</u>, 944 F.2d 91, 95 (2d Cir. 1991) (holding that pairing excessive force with assault and battery is appropriate since the "essential elements of the two claims in each pair were substantially identical."). Accordingly the assault and battery claim should not be charged separately from the excessive force claim. If however, this Court chooses to charge the jury on plaintiff's state law claims for assault and battery, defendants have included language for both claims as well as for a justification defense *infra*.

Plaintiff's position is that Plaintiff's state assault and battery claims are not duplicative of her fourteenth amendment-based excessive force claims.

The cases relied on by Defendants to support their view that Plaintiff's fourteenth amendment-based excessive force claims and her assault and battery claims are duplicative all relate to fourth amendment excessive force claims in cases where there was probable cause to arrest, and therefore justification under New York law. Those cases do not deal with fourteenth amendment-based excessive force claims and their similarities or differences with New York law-based assault and battery claims at all.

Under New York law, when an officer uses force on or arrests a person without probable cause, that officer commits a *per se* battery, which may not amount to a use of force sufficient to trigger the fourth amendment's protections. Under New York law, *any* force used to make an arrest without probable cause is excessive. *See, e.g., Niles v. City of Oneida*, 06-CV-1492(GTS/GHL), 2009 WL 799971, at *9 (N.D.N.Y. March 25, 2009) (where probable cause to effectuate an arrest is lacking, use of a non-lethal weapon on an individual constitutes battery, and gesturing as if one intends to use such weapon on an individual may constitute assault) (citing cases). Yet under the fourth amendment standard, reasonableness is the touchstone whether or not there is probable cause to arrest. *Jones v. Parmley*, 465 F.3d 46, 61-62 (2nd Cir. 2006); *see also Arbuckle v. City of New York*, 14 Civ. 10248 (ER), 2016 WL 5793741, at *8 n. 4 (SDNY Sept. 30, 2016).

## Plaintiff's Proposed Excessive Force Charge[40]

*As for Plaintiff's first claim of a deprivation of her due process rights, Plaintiff claims*

*that Defendant McManus violated her rights on March 21, 2012 by using excessive force on her.*

Beyond that, the cases cited by Defendants do not say that fourth amendment-based excessive force claims and assault and battery claims are identical. They say that state law assault and battery claims are "substantially" or "nearly…identical" to fourth amendment-based excessive force claims where there is a lawful arrest. That is so because N.Y. Penal Law § 35.30(1) ("Justifiable Use of Force to Make an Arrest or Prevent an Escape") justifies certain uses of force as a matter of law in the context of lawful arrests. Under New York law, outside the context of an arrest, the justifications available for "reasonable" uses of force by officers are the same as those available to citizens generally. *See, e.g.,* PL 35.05 ("Justification; generally").

Additionally, the causation element is different for each. For fourteenth amendment excessive force claims, the plaintiff must prove that the defendant's conduct *proximately caused* damages. *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999); *Martin v. City of N.Y.*, 793 F. Supp. 2d 583, 589 (E.D.N.Y. 2011). For a battery claim, however, the plaintiff must prove merely that the defendant's conduct was the *cause in fact* of the damages. *See* N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Battery). A proximate cause element requires proof that the conduct was a substantial factor in causing the damages and was foreseeable. *See Gierlinger v. Gleason*, 160 F.3d 858, 872 (2d Cir. 1998); *Townes v. City of N.Y.*, 176 F.3d 138, 146 (2d Cir. 1999); *Martin v. City of N.Y.*, 793 F. Supp. 2d 583, 589 (E.D.N.Y. 2011). A cause in fact element only requires that "but for" the tortious conduct, the damages would not have resulted. *See* N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Battery).

[39] Similarly, Defendants assert that the jury need not be charged on Plaintiff's *respondeat superior* claim. <u>See</u> <u>Jaquez v. Flores (In re Estate of Jaquez)</u>, No. 10 Civ. 2881 (KBF), 2016 U.S. Dist. LEXIS 34521, *37-38 (S.D.N.Y. Mar. 17, 2016) ("The jury will not be instructed on any theory by which it could find the City directly liable; instead, the City's liability, if any, is solely derivative of the actions taken by its employees within the scope of their duties. As such, there is no need to inform the jury that the City remains potentially liable on a derivative theory[.]" <u>See</u> <u>also</u> Defendants' Motions in Limine. If the Court choose to charge the jury on plaintiff's four separate instances of *respondeat superior*, defendants have included a charge on *respondeat superior infra*.

[40] *Adapted from* language used from Judge Wood's approved Jury Charges in *Joshua Bahadur v. Detective William Vargas, et al.,* 15-CV-978 (KMW) (2017); *Edrei v. City of New York*, 892 F.3d 525 (2[d] Cir. June 13, 2018); *Kingsley v. Hendrickson,* 135 S. Ct. 1039 (2015); *Johnson v Glick,* 481 F.2d. 1028 (2d Cir. 1973); Eighth Circuit Committee on Model Criminal Jury Instructions, 4.41 *Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit* (2017); 7.09 *Manual of Model Civil Jury Instructions for the District Courts of the Seventh Circuit* (2017); *NYPD Patrol Guide,* D773-774 (2012).

Due Process prohibits police officers from using excessive force against the public. To establish this claim, Plaintiff must prove the following by a preponderance of the evidence:

1.    Defendant used force against Plaintiff;

2.    Defendant's use of force was objectively unreasonable; and,

3.    Defendant's conduct harmed Plaintiff.

If Plaintiff has proven these elements by a preponderance of the evidence, then she has proven enough for you to render a verdict in her favor on this claim. I will now walk you through the requirements of each of these elements.

### Defendant used force against Plaintiff

In regard to the first element, Plaintiff claims that Defendant McManus used force against her when he shoved her off of her crutches on March 21, 2012. In determining whether Defendant used force against Plaintiff, you must evaluate the record carefully. Plaintiff need only prove that the Defendant used some amount of force intentionally or recklessly. Plaintiff does not have to prove that Defendant McManus intended to violate her constitutional rights or intended to use excessive force. You may only consider what was done at the time of incident, based on evidence presented throughout trial.

### Defendant's use of force was objectively unreasonable

In regard to the second element, Plaintiff claims that the force Defendant McManus used was objectively unreasonable in light of the facts and circumstances confronting the Defendant at the time, without regard to the Defendant's underlying intention or motivation. In other words, you must decide whether the amount of force used by Defendant McManus would have been objectively reasonable  under the same circumstances. In making this determination, you may consider contextual factors such as "the 'relationship between the need for the use of

*force and the amount of force used;' 'the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.'"[41] You may also consider the NYPD Patrol Guide which provides guidelines to Police Officers in regard to the use of force and when to use force.*

*Defendant's conduct harmed Plaintiff[42]*

*In regard to the third element, Plaintiff claims Defendant McManus's conduct caused harm when Defendant McManus shoved her to the ground, and she struck the ground, became dizzy, and lost consciousness. In determining whether Defendant McManus's conduct actually harmed Plaintiff, you may consult the evidentiary record in evaluating whether or not the injury sustained by Plaintiff was a substantial factor of Defendant McManus's conduct and was reasonably foreseeable by him.*

## **Defendants' Proposed Excessive Force Charge**

**Plaintiff asserts that on March 21, 2012, her rights were violated by Defendant Sergeant McManus. Specifically, she claims that Defendant Sergeant McManus used excessive force. Defendant Sergeant McManus disputes this allegation. In this case, Plaintiff must prove by a preponderance of the evidence that Defendant Sergeant McManus's actions, as alleged by Plaintiff, were objectively unreasonable.[43][44]**

---

[41] _Holmes v. City of N.Y._, No. 17cv3874, 2018 U.S. Dist. LEXIS 150257, at *14 (S.D.N.Y. Sep. 4, 2018) (quoting _Edrei,_ 892 F.3d at 534) (quotation marks omitted).

[42] _See supra_ note 1.

[43] In the event of a Plaintiff's verdict, Defendants note that the proper inquiry for a qualified immunity analysis is not whether Defendant Sergeant McManus's alleged actions were objectively unreasonable but whether those alleged actions "shock the conscience." The reason for this is that "officers cannot have fair warning of rights that are not yet established" and a qualified immunity analysis "must examine the precedent in existence at the time of the events."

To determine if Defendant Sergeant McManus's actions, as alleged by Plaintiff, were objectively unreasonable, you must ask what Defendant Sergeant McManus's state of mind was with respect to his physical acts.[45] I instruct you that a while acts committed purposefully, knowingly, or perhaps recklessly are subject to Fourteenth Amendment liability; accidental or negligent acts are not subject to Fourteenth Amendment liability.[46] You must consider "the series of physical events that might take place in the world," and bear in mind that that "liability for negligently inflicted harm" is below the threshold required for a constitutional violation.[47] If you find that Defendant Sergeant McManus's actions as alleged by Plaintiff were just an accident, you must find that any alleged use of force was not excessive and you must return a verdict in Defendant

---

*Abujayyab v. City of New York*, No. 15 Civ. 10080 (NRB), 2018 U.S. Dist. LEXIS 140914, at *21 (S.D.N.Y. Aug. 20, 2018), quoting *Edrei v. Maguire*, 892 F.3d 525, 539. (2d Cir. 2018) (citation omitted).

[44] Plaintiff objects to Defendants' statement that that the proper qualified immunity analysis should be based on a heightened "shocks the conscience" standard rather than the objective reasonableness standard discussed in *Kingsley (*and *Glick*). Plaintiff notes that, in *Edrei*, the Second Circuit explicitly rejected Defendants' argument and made clear that "purposeful, knowing or (perhaps) reckless action that uses an objectively unreasonable degree of force *is* conscience-shocking" and has been so at least since *Johnson v. Glick* was decided in 1973. *Edrei,* 892 F.3d at 534-537, 539.

[45] *Edrei*, 892 F.3d at 534.

[46] *Id.*

[47] *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015), quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("Consider the series of physical events that take place in the world—a series of events that might consist, for example, of the swing of a fist that hits a face, a push that leads to a fall, or the shot of a Taser that leads to the stunning of its recipient. No one here denies, and we must assume, that, as to the series of events that have taken place in the world, the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind. That is because, as we have stated, 'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'"(emphasis in *Kingsley*)).

Sergeant McManus's favor.[48]

You must also consider Defendant Sergeant McManus's state of mind with respect to if his use of force, as alleged by Plaintiff, was excessive.[49]  As part of your analysis, you can look to whether any alleged use of force by Defendant Sergeant McManus was rationally related to a legitimate government objective.[50]  You may also consider whether the alleged use of force by Defendant Sergeant McManus was "applied maliciously and sadistically for the very purpose of causing harm."[51] [52]

---

[48] Kingsley, 135 S. Ct. at 2472 ("Thus, if an officer's Taser goes off by accident or if an officer unintentionally trips and falls on a detainee, causing him harm, the pretrial detainee cannot prevail on an excessive force claim.").

[49] Edrei, 892 F.3d at 534, quoting Kingsley, 135 S.Ct. at 2772.

[50] Edrei, 892 F.3d at 536 ("To repeat, the central inquiry has always been whether the government action was rationally related to a legitimate government objective.") (citation omitted) .

[51] Edrei, 892 F.3d at 537, quoting Kingsley, 135 S.Ct. at 2476 (explaining that while this factor is not a necessary condition for liability it is simply one consideration that might help show if the use of force was excessive.)

[52] Plaintiff objects to the inclusion of this entire paragraph because it confuses the applicable standards and because it would confuse the jury. The only consideration of Defendant McManus's state of mind that the jury must consider is whether the challenged uses of force were purposeful, knowing, or reckless, as opposed to accidental or merely negligent. Further emphasis on the Defendant's state of mind would take the jury's focus off its job of determining whether the force used was "objectively unreasonable." The second paragraph of Defendants' proposed instruction already contains language to guide the jury in making that determination. Additionally, Defendants' proposed language in this paragraph would lead the jury to believe that a subjective "malicious and sadistic" state of mind is required to make out an excessive force claim. The Edrei Court rejected that argument, explaining: ""we have never treated malice or sadism as a requirement for stating (or proving) an excessive force claim under a due process theory." Edrei, 892 F.3d at 534. Relatedly, in its analysis of Kingsley, the Court stated that "'the defendant's state of mind with respect to whether his use of force was 'excessive[]'' … merely requires showing that 'the force purposely or knowingly used against him was objectively unreasonable.'" Id., quoting Kinglsey, 135 S.Ct. at 2472-73; see also id. (confirming that "the objective standard" with respect to state of mind discussed "in Glick and some of this Court's other precedents is not a necessary showing"); 892 F.3d at 536 n. 2 (rejecting argument that an excessive force claim must include "an allegation of malice or sadism" explaining "a

Even if you find that there was some forcible contact between the Plaintiff and Defendant, that mere fact would not be sufficient by itself to demonstrate that Defendant violated Plaintiff's constitutional rights.[53]

If you find that Defendant McManus's actions were "*de minimus*, necessary, appropriate, and benign,"[54] then you must return a verdict for Defendant Sergeant McManus. You should note that "evil intentions" will not be considered excessive force if the force that was used was in fact reasonable.[55] In other words, a police officer's good intentions will not make an excessive use of force permissible and his bad intentions will not make a reasonable use of force excessive.[56] [57]

---

government actor's use of force violates due process when it is objectively excessive"); *id.* at 537 (noting that *Kingsley* explained that "the fourth *Glick* factor, whether the force was applied 'maliciously and sadistically for the very purpose of causing harm,' … is not a 'necessary condition for liability,'…[i]nstead it is simply one consideration 'that *might* help show that the use of force was excessive"); *id.* at 540 (evidence of "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm' … has never been necessary for a Fourteenth Amendment excessive force claim.")

[53] See Graham v. Connor, 490 U.S. 386, 396 (1989); Saucier v. Katz, 533 U.S. 194, 208 (2001); see also instructions given by Hon. Judge Robert P. Patterson in Butler v. Kibel, et al., 10 Civ. 7974 (S.D.N.Y. – delivered on February 17, 2012).

[54] Edrei v. City of New York, No. 16. Civ. 1652 (RWS), 2017 U.S. Dist. LEXIS 83269, at *10 (S.D.N.Y. May 31, 2017), quoting Johnson v. Newburgh Enlarged School Dist., 239 F.3d 246, 252 (2d Cir. 2001).

[55] See Graham, 490 U.S. at 397; Anderson v. Branen, 17 F.3d 552, 559 (2d Cir. 1994); Kash v. Honey, 38 Fed. Appx. 73, 76 (2d Cir. 2002).

[56] Adapted from the instructions given by Hon. Brian M. Cogan in Ivan Kimbrough v. Detective John R. Nixon, et al., 10 CV 1088 (E.D.N.Y.); see also instructions given by Hon. Judge Andrew L. Carter in Thomas v. City of New York, et al., 09 CV 3162 (S.D.N.Y. – delivered on July 5, 2012). See also Edrei, 892 F.3d at 534 (citation omitted) ("But we have also found excessive force under the Fourteenth Amendment without ever examining an officer's subjective intent").

Also in deciding whether any alleged use of force by Sergeant McManus was objectively unreasonable, you must make this determination from the perspective of a reasonable officer at the scene.[58]  You should not make this determination by considering how facts appear when assessed with 20/20 hindsight.[59]  You should take into account the fact that police officers are often required to make split-second decisions about their actions and the amount of force that is necessary in a particular situation under tense, rapidly evolving circumstances. [60]   Not every push or shove by a police officer constitutes excessive force, even if it may later seem unnecessary in the peace and quiet of this courtroom.[61] [62]

---

[57] Plaintiff objects to the inclusion of the previous two sentences regarding "good" and "evil" intentions for the reasons set forth in note 52, *supra*. Re-treading on this already-covered ground would over-emphasize it to the jury.   Defendants believe that Plaintiff's objection is frivolous.

[58] Kingsley, 135 S. Ct. at 2473.

[59] Id.

[60] Adapted from the instructions given by the Honorable Tucker L. Melancon in Fryar v. Zhen, et al., 10 CV 5879 (E.D.N.Y.) that were delivered on September 21, 2011.

[61] Graham v. Connor, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989).

[62] Plaintiff objects to the inclusion of the the last two sentences in this paragraph. Including them would lead to jury confusion, particularly where, as here, there is no evidence that Defendant McManus needed to make a "split-second decision … under tense, rapidly evolving circumstances", given the fact that the claim against McManus involves a shove, and because Defendants have proposed other language above that covers this same ground. Re-treading on this already-covered ground would over-emphasize it to the jury.   Defendants believe that plaintiff's objection is premature as there will be an appropriate factual predicate for this charge at trial.   Moreover, this is language from the Supreme Court and should be included.

# III.    DELIBERATE INDIFFERENCE CLAIM[63, 64]

---

[63] Defendants object to Plaintiff's proposed charge in its entirety.

[64] Defendants contend that Plaintiff's claims of deliberate indifference to medical needs and unconstitutional conditions of confinement are duplicative. (See Docket Entry No. 178 at 34, explaining that Plaintiff's "allegations […] concerning Rumble's and Schmidt's conduct, on April 16, 2012, are duplicative of her allegations of deliberate indifference to her medical needs."). Indeed, these separate "claims" arise from the same nucleus of facts. The jury should not be charged twice on this. To be clear, the Court should not allow Plaintiff to stroll down two separate avenues of liability. If Plaintiff feels that the jury should consider different aspects of any alleged conduct by Defendants resulting in damages to her, she can argue so on summation. Defendants respectfully refer the Court to their pre-trial memorandum, which further addresses this issue.

Plaintiffs assert that this Court could reject this argument and consider these two claims for relief as separate and should instruct the jury separately on each.

The elements for each of these claims are distinct. On the one hand, for the Conditions of Confinement claim, Plaintiff must prove: (1) Defendant detained Plaintiff; (2) the conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health; (3) Defendant acted with deliberate indifference to those conditions; and (4) Plaintiff was harmed by those conditions. See _Darnell v. Pineiro_, 849 F.3d 17, 29 (2d Cir. 2017). On the other hand, for the Deliberate Medical Indifference claim, Plaintiff must prove: (1) Plaintiff had a serious medical condition; (2) Plaintiff was at risk of harm due to her serious medical condition; (3) Defendant either knew of Plaintiff's serious medical condition or should have known that Plaintiff needed medical assistance; (4) Defendant failed to take reasonable measures to address Plaintiff's medical needs; and (5) Plaintiff was harmed by Defendant's failure to take reasonable measures to address her medical needs. See _Gersbacher v. City of NY_, No. 1:14-CV-7600-GHW, 2017 WL 4402538 (S.D.N.Y. Oct. 2, 2017).

Comparing the elements of each of these claims, it is clear that the element of a serious medical condition is not a requirement for a Conditions of Confinement claim, and the element of a detention is not a requirement for a Deliberate Medical Indifference claim. Therefore, for example, if an arrestee's serious medical condition is disregarded before her confinement, there can be a Deliberate Medical Indifference claim but not a Conditions of Confinement claim. Likewise, an arrestee can be subject to unconstitutional conditions of confinement even without suffering a serious medical condition. Thus, in this case, if the jury finds that Plaintiff did not experience a serious medical condition in the patrol wagon on April 16, 2012, it could still find that Defendants Rumble and Schmidt subjected her to unconstitutional conditions of confinement when they left her to roll around in her vomit in the back of the patrol wagon.

Moreover, the case law demonstrates these two claims are distinct. See _Hodge v. Sidorowicz_, 2012 U.S. Dist. LEXIS 29691 (S.D.N.Y. Mar. 5, 2012) (recognizing a Medical Indifference claim for a delay in post-surgical follow-up visits to an eye surgeon and denial of various medications and a Conditions of Confinement claim for inadequate heating and hot water

---

at the correction facility; _Benjamin v. Kooi_, 2010 U.S. Dist. LEXIS 25014 (N.D.N.Y. Feb. 25, 2010) (recognizing a Deliberate Medical Indifference for a denial of appropriate pain medication and diagnostic testing after plaintiff's and a Conditions of Confinement claim for inadequate accommodations).

[65]This Court could reject this argument and consider these two claims for relief as separate and should instruct the jury separately on each.

The elements for each of these claims are distinct. On the one hand, for the Conditions of Confinement claim, Plaintiff must prove: (1) Defendant detained Plaintiff; (2) the conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health; (3) Defendant acted with deliberate indifference to those conditions; and (4) Plaintiff was harmed by those conditions. See Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017). On the other hand, for the Deliberate Medical Indifference claim, Plaintiff must prove: (1) Plaintiff had a serious medical condition; (2) Plaintiff was at risk of harm due to her serious medical condition; (3) Defendant either knew of Plaintiff's serious medical condition or should have known that Plaintiff needed medical assistance; (4) Defendant failed to take reasonable measures to address Plaintiff's medical needs; and (5) Plaintiff was harmed by Defendant's failure to take reasonable measures to address her medical needs. See Gersbacher v. City of NY, No. 1:14-CV-7600-GHW, 2017 WL 4402538 (S.D.N.Y. Oct. 2, 2017).

Comparing the elements of each of these claims, it is clear that the element of a serious medical condition is not a requirement for a Conditions of Confinement claim, and the element of a detention is not a requirement for a Deliberate Medical Indifference claim. Therefore, for example, if an arrestee's serious medical condition is disregarded before her confinement, there can be a Deliberate Medical Indifference claim but not a Conditions of Confinement claim. Likewise, an arrestee can be subject to unconstitutional conditions of confinement even without suffering a serious medical condition. Thus, in this case, if the jury finds that Plaintiff did not experience a serious medical condition in the patrol wagon on April 16, 2012, it could still find that Defendants Rumble and Schmidt subjected her to unconstitutional conditions of confinement when they left her to roll around in her vomit in the back of the patrol wagon.

Moreover, the case law demonstrates these two claims are distinct. See Hodge v. Sidorowicz, 2012 U.S. Dist. LEXIS 29691 (S.D.N.Y. Mar. 5, 2012) (recognizing a Medical Indifference claim for a delay in post-surgical follow-up visits to an eye surgeon and denial of various medications and a Conditions of Confinement claim for inadequate heating and hot water at the correction facility; Benjamin v. Kooi, 2010 U.S. Dist. LEXIS 25014 (N.D.N.Y. Feb. 25, 2010) (recognizing a Deliberate Medical Indifference for a denial of appropriate pain medication and diagnostic testing after plaintiff's and a Conditions of Confinement claim for inadequate accommodations).

*Plaintiff's second claim of a deprivation of her due process rights is deliberate indifference to a serious medical condition by Defendants Rumble and Schmidt on April 16, 2012. Due process requires that police officers attend to the needs of persons in their custody when they experience a serious medical condition. Plaintiff claims that Defendants Rumble and Schmidt were deliberately indifferent to Plaintiff's serious medical condition when she experienced an epileptic seizure in the back of the patrol wagon that Defendants Rumble and Schmidt were in on April 16, 2012, and they did not provide her with prompt medical assistance.*

*In order to prove Defendants Rumble and Schmidt deprived Plaintiff of her Due Process rights by their indifference to her medical condition, Plaintiff must prove the following elements by a preponderance of the evidence:*

1. *Plaintiff had a serious medical condition;*

2. *Plaintiff was at risk of harm due to her serious medical condition;*

3. *Defendant either:*

   a. *Knew of Plaintiff's serious medical condition; or,*

   b. *Should have known that there was a substantial risk of harm to Plaintiff and that Plaintiff needed medical assistance;*

---

[66] Adapted from 42 U.S.C. § 1983. Serious medical condition language adopted from *Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998). Risk to health language adopted from *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). Awareness language adopted from *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Failure to take reasonable measures language adopted from Schwartz and Pratt, Section 1983 Litigation, Jury Instructions, 2d Ed., Vol. 4, §10.01. Causation language adopted from *Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998); 3B Fed. Jury Prac. & Instr. § 165:50 (6th ed.).

*4.     Defendant failed to take reasonable measures to address Plaintiff's medical needs;  and,*

*5.     Plaintiff was harmed by Defendant's failure to take reasonable measures to address her medical needs.*

*If Plaintiff has proven these elements by a preponderance of the evidence, she has proven enough so that you may render a verdict in her favor on this claim.  On this claim, you may find both Defendants Rumble and Schmidt liable, either one of them liable, or neither of them liable.*

*I will now walk you through the requirements of each of these elements for the claims against Defendants Rumble and Schmidt.*

*Serious medical condition*

*In regard to the first element, Plaintiff claims that the seizure she experienced while in custody was a serious medical condition. When determining whether her seizure was a serious medical condition, you may consider (1) whether her seizure was considered worthy of treatment by a doctor; (2) whether her seizure significantly affected her ability to sit upright or care for herself while in the patrol wagon; or (3) whether her seizure caused her substantial pain.*

*Risk to Plaintiff's health*

*In regard to the second element, Plaintiff claims that the seizure she experienced while in custody posed a substantial risk to her health. In order to prove that there was a substantial risk to Plaintiff's health, you must find that Plaintiff's suffering a seizure while in custody in a moving vehicle posed a risk to Plaintiff's health. You may consider whether the NYPD had any standards or guidelines that recognized the risks associated with having seizures.*

*Defendant was aware of Plaintiff's condition*

In regard to the third element, Plaintiff claims that Defendants Rumble and Schmidt were aware of Plaintiff's need for medical assistance. Plaintiff must show either that (1) Defendants Rumble and Schmidt knew that Plaintiff had a serious medical condition when she experienced the seizure in the patrol wagon; or (2) Defendants Rumble and Schmidt were aware of circumstances indicating that Plaintiff required medical assistance. You may consider both direct and circumstantial evidence on this element equally as the law does not weigh one more than the other. An example of direct evidence of awareness would be if you find that Defendant saw Plaintiff having a seizure. Circumstantial evidence requires you to draw an inference.

For example, if you find that Plaintiff's co-arrestees shouted for help, Defendant Rumble could hear the cries for help, and Defendant Rumble radioed for an ambulance, you may infer that Defendant was aware that Plaintiff required medical assistance. Or if you find that Plaintiff's co-arrestees shouted for help, and Defendant Schmidt heard Defendant Rumble radio for an ambulance, you may infer that Defendant Schmidt was aware that Plaintiff required medical assistance.

*Defendant's Failure to take reasonable measures*

In regard to the fourth element, Plaintiff claims that Defendants Rumble and Schmidt failed to act to obtain prompt medical assistance for Plaintiff. To meet her burden on this element, Plaintiff must show that Defendants Rumble and/or Schmidt were deliberately indifferent to Plaintiff's need for medical assistance. Deliberate indifference means that Defendants Rumble and Schmidt knew about or were aware of circumstances that would indicate that Plaintiff had a serious medical condition and needed medical care, yet failed to act or take

*reasonable steps to provide that care promptly. In determining whether Defendants Rumble and Schmidt failed to take reasonable and prompt measures to provide medical assistance, you may consider the NYPD's own Patrol Guide's guidelines on treatment of arrestees with serious medical conditions.*

*Defendant harmed Plaintiff[67]*

*In regard to the fifth element, Plaintiff claims that Defendants' failure to act caused her harm. To prove this element, Plaintiff must show that she suffered physical, mental, and emotional harm when Defendants failed to obtain medical assistance when she experienced the seizure in the back of the patrol wagon. Plaintiff may show her harm or damage was caused by Defendants' failure to act if it appears that Defendants Rumble and Schmidt's failure to obtain medical assistance played a substantial part in bringing about or actually causing the harm to Plaintiff, and that the harm resulted from this failure to act. In regard to this element, you may consider, based on the Defendant's knowledge of the Plaintiff's condition, whether or not it was foreseeable that the Plaintiff would need medical assistance based on her medical condition and Defendant's knowledge of the condition.*

*If you find by a preponderance of the evidence that the Plaintiff suffered from a serious medical condition that required medical attention, and that Defendants Rumble and/or Schmidt failed to arrange for such medical attention, then you must return a verdict for the plaintiff against Defendants Rumble and Schmidt on this claim.*

---

[67] *See supra* note 1.

## Plaintiff's Proposed Deliberate Indifference Unconstitutional Conditions of Confinement Charge.[68]

As for Plaintiff's third claim of a deprivation of her due process rights, Plaintiff claims that Defendants Rumble and Schmidt violated her rights by creating unconstitutional conditions of confinement while she was in their custody. Due Process prohibits police officers from confining detainees under conditions that are excessively harsh, or unsafe. Plaintiff claims that Defendant Rumble's and Schmidt's confinement of her in their patrol wagon on April 16, 2012, was unsafe because she experienced a seizure while in their custody and they did not provide her with prompt medical assistance.

To establish this claim, Plaintiff must show by a preponderance of the evidence that:

1. Defendant detained Plaintiff;

2. The conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health;

3. Defendant acted with deliberate indifference to those conditions; and

4. Plaintiff was harmed by those conditions.[69]

If Plaintiff has proven these elements by a preponderance of the evidence, she has proven enough so that you may render a verdict in her favor. On this claim, you may find both Defendants Rumble and Schmidt liable, either one of them liable, or neither of them liable.

I will now walk you through the requirements of each of these elements for this claim

---

[68] Adapted from A 42 U.S.C. § 1983; Plaintiff was detained from *Conway v. County of Camden,* 2017 WL 3782623 (D.N.J. 2017); The conditions of Plaintiff's detention created unreasonable risks to Plaintiff's health from *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017), Defendant acted with deliberate indifference to those conditions from *Mora v. Hughes*, 238 F. Supp 3. 438 (W.D.N.Y 2017) and Plaintiff was harmed by those conditions from *Villarreal v. City of Monterey*, 2017 WL 2311406 (N.D. Cal. 2017).

[69] *See supra* note 1.

*against Defendants Rumble and Schmidt.*

*Plaintiff was detained*

     *In regard to the first element, it is undisputed that Plaintiff was detained by Defendants Rumble and Schmidt in the patrol wagon.*

*The conditions of the detention posed an unreasonable risk to Plaintiff's health*

     *In regard to the second element, Plaintiff claims that she suffered conditions of hardship when Defendants Rumble and Schmidt failed to provide prompt medical assistance, creating conditions of confinement that posed unreasonable risks to her health.*

     *In making this determination, you may consider whether Defendants Rumble and Schmidt's denial of prompt medical assistance for Plaintiff's seizure posed an unreasonable risk of serious damage to Plaintiff's health, including her physical and/or mental soundness.*

     *In making this determination, you may consider the conditions created by the denial of prompt medical care to Plaintiff as she was having a seizure in light of contemporary standards of decency.*

*Defendant acted with deliberate indifference to those conditions*

     *In regard to the third element, Plaintiff claims that Defendants Rumble and Schmidt's acted with deliberate indifference in failing to provide Plaintiff with prompt medical assistance. Deliberate indifference roughly means recklessness. Recklessness can be defined by what a person actually knew, and disregarded, or by what a reasonable person in their circumstances would know, or should have known.*

*Plaintiff was harmed by the conditions*

     *In regard to the fourth element, Plaintiff claims that she was harmed by the conditions of her confinement in the police wagon when she had a seizure and could not access prompt*

*medical care. If conditions of Plaintiff's confinement played a substantial part in bringing about harm to Plaintiff, you may find that this element has been met. In regard to this element, you may consider, based on the Defendant's knowledge of the Plaintiff's condition, whether or not it was foreseeable that the Plaintiff would need medical assistance based on her medical condition and Defendant's knowledge of the condition.*

*If you find that Plaintiff suffered from a serious medical condition and Defendants Rumble and Schmidt failed to provide Plaintiff with prompt medical condition, thereby harming Plaintiff, then you may return a verdict for Plaintiff on this claim.*

### **Defendants' Proposed Deliberate Indifference Charge**

**Plaintiff also claims that Defendants Schmidt and Rumble were deliberately indifferent to her medical condition on April 16, 2012.[70] To prove this claim, Plaintiff must show[71] "a sufficiently serious deprivation of adequate medical care"[72] and that Defendants acted with deliberate indifference of a "sufficiently culpable state of mind."[73] Plaintiff**

---

[70] In his Report and Recommendation, which was issued on February 6, 2017, Judge Fox relied on Caiozzo v. Koreman, 581 F.3d 63 (2d Cir. 2009) for the deliberate indifference to medical needs standard. Caiozzo is no longer good law in this Circuit. On February 21, 2017, only a few weeks after Judge Fox's Report and Recommendation, the Second Circuit decided Darnell v. Pineiro, 849 F.3d 17 (2d Cir. 2017), which sets forth the new standard for a deliberate indifference claim under the Fourteenth Amendment. See also Lewis v. Cavanugh, 685 F. App'x 12, 13-14 (2d Cir. 2017). This Court did not consider Darnell in its analysis in its summary judgment order or upon reconsideration. See generally Lloyd v. City of New York, 246 F. Supp. 3d 704 (S.D.N.Y. 2017) (explaining the Second Circuit's new standard for a deliberate indifference claim and that the reasoning in Darnell applies to claims of deliberate indifference to medical needs under the Fourteenth Amendment).

[71] See Gersbacher v. City of New York, No. 14 Civ. 7600 (GHW), 2017 U.S. Dist. LEXIS 162707, at *34 (S.D.N.Y. Oct. 2, 2017), citing Darnell v. Pineiro, 849 F.3d 17, 29 (2d Cir. 2017).

[72] Spavone v. New York State Dep't of Correctional Servs., 719 F.3d 127, 139 (2d Cir. 2013).

[73] Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).

must meet both of these prongs in order to satisfy this test.[74]

        First, for you to find for Plaintiff, Plaintiff must prove to you preponderance of the credible evidence that she suffers from an objectively serious medication condition. This means that she must prove to you that she suffers from a "condition of urgency, one that may produce death, degeneration, or extreme pain."[75]  Your inquiry is whether calling an ambulance to meet the police wagon at the precinct instead of taking Plaintiff directly to the hospital posed a sufficiently serious deprivation.  To prove this, Plaintiff must show that the conditions, either alone or in combination, posed an unreasonable risk of serious damage to her health.[76]  Because Plaintiff not claiming that she was denied medical care, only that there was a temporary delay in medical care, your focus should be on whether the delay was sufficiently serious.[77]  I am instructing you that short-term delays in medical care generally fall short of the level of seriousness that Plaintiff's claim requires.[78]  I am also instructing you that if Plaintiff fails to prove by a preponderance of

---

[74] "If a plaintiff  "fails to satisfy either prong as set forth in <u>Darnell</u>, his or her deliberate indifference claim must be dismissed"  <u>Villafane v. Sposato</u>, No. 16-cv- 3674 (JFB) (AKT), 2017 U.S. Dist. LEXIS 135453, at *57 (E.D.N.Y. Aug. 22, 2017).

[75] <u>Gersbacher</u>, 2017 U.S. Dist. LEXIS 162707, at *35, quoting <u>Hathaway</u>, 99 F.3d at 553.

[76] <u>Walker v. Schult</u>, 717 F.3d 119, 125 (2d Cir. 2013).

[77] <u>Smith v. Outlaw</u>, No. 15 Civ. 9961 (RA), 2017 U.S. Dist. LEXIS 163693, at *7-8 (S.D.N.Y. Sep. 30, 2017), quoting <u>Smith v. Carpenter</u>, 316 F.3d 178, 186-7 (2d Cir. 2003). (emphasis original).

[78] <u>Cuffee v. City of New York</u>, No. 15 Civ. 8916 (PGG) (DF), 2017 U.S. Dist. LEXIS 31604, at *24 (S.D.N.Y. Mar. 3, 2017), citing <u>DeMeo v. Koenigsmann</u>, No. 11 Civ. 7099 (HBP), 2015 U.S. Dist. LEXIS 35551 (S.D.N.Y. Mar. 20, 2015) (stating that, "[a]lthough a delay in providing necessary medical care may in some cases constitute deliberate indifference, [the Second Circuit] has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for three days, or delayed major surgery for over two years," although also noting that "[t]hese categories are not exclusive" (internal quotation marks and citations omitted)).

the credible evidence that the delay in providing medical attention neither was the underlying cause of Plaintiff's condition nor contributed to a worsening in her condition, she has not proven this claim.[79]

In addition to that, Plaintiff must also prove by a preponderance of the credible evidence that Defendants Rumble and Schmidt were "reckless" or in other words, she must prove that Defendants Rumble and Schmidt knew or should have known that their conduct posed an excessive risk to Plaintiff's health or safety.[80]  Your job as a jury is to answer the narrow question of whether it is objectively unreasonable for Defendants Rumble and Schmidt to call for an ambulance to meet them at the precinct instead of taking Plaintiff directly to the hospital.  When making this determination, you should also ask whether Plaintiff was actually deprived of medical care.[81]  You should also remember that police officers are not doctors.  Therefore, "not every lapse in medical care is a constitutional wrong."[82]  You should ask whether defendants Rumble and Schmidt knew or should have known that their conduct posed an excessive risk to plaintiff's health or

---

[79] Cuffee, 2017 U.S. Dist. LEXIS 31604, at *2, citing Smith v. City of New York, No.  15 Civ. 7160 (GHW), 2016 U.S. Dist. LEXIS 179482 (S.D.N.Y. Dec. 28, 2016).

[80] Gersbacher, 2017 U.S. Dist. LEXIS 162707, at *35,citing Lloyd v. City of New York, 246 F. Supp. 3d 704 (S.D.N.Y. 2017), quoting Darnell, 849 F.3d at 33, 35; Youngblood v. City of New York, Nos. 15 Civ. 3541 (RA), 16 Civ. 6100 (RA), 2017 U.S. Dist. LEXIS 115683 (S.D.N.Y. July 24, 2017).

[81] Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006), holding that "[d]etermining whether a deprivation is an objectively serious deprivation entails two inquiries. The first inquiry is whether the prisoner was actually deprived of adequate medical care."  Defendants respectfully note that Salahuddin involved an Eighth Amendment claim, and not a Fourteenth Amendment claim.

[82] Villafane v. Sposato, No. 16-cv-3674 (JFB) (AKT), 2017 U.S. Dist. LEXIS 135453, at *57 (E.D.N.Y. Aug. 22, 2017), quoting Salahuddin v. Goord, 467 F.3d 263, 279 (2d Cir. 2006).

safety.[83]

        If you find that Defendants Rumble and Schmidt were negligent in providing medical care to Plaintiff, that is insufficient for a deliberate indifference claim, and you should find in their favor.[84] Moreover, if you find that Defendants Rumble and Schmidt "offered" Plaintiff medical assistance, then Plaintiff has not proven by a preponderance of the evidence that Defendants were deliberately indifferent to her medical needs.[85]

## IV. SUMMARY

        I will summarize for you very briefly the three elements that Plaintiff must prove by a preponderance of the evidence in order to prove her claims against Defendants. First, that the particular Defendant's conduct deprived the plaintiff of a constitutional right. Second, that the particular Defendant's acts or omissions proximately caused the plaintiff's injuries. And third, that in performing the alleged acts, that the particular Defendant acted intentionally or recklessly. If Plaintiff fails to prove <u>any</u> of these elements with respect to the Defendant that you are considering, then you must find in favor of that Defendant.

---

[83] <u>Lloyd v. City of New York</u>, 246 F.Supp. 3d 704, 719 (S.D.N.Y.) (Woods, J.) (internal quotation marks and citations omitted).

[84] <u>Villafane</u>, 2017 U.S. Dist. LEXIS 135453, at *57, quoting <u>Grimmett v. Corizon Med. Assocs. of New York</u>, No. 15 Civ. 7351 (JPO) (SN), 2017 U.S. Dist. LEXIS 79794, at *13 (S.D.N.Y. May 24, 2017), citing <u>Darnell</u>, 849 F.3d at 36.

[85] <u>See</u> <u>Lloyd</u>., 246 F. Supp. 3d 704 (S.D.N.Y. 2017), 2017 U.S. Dist. LEXIS 49526, at *29-30 (March 31, 2017) (holding that a "reasonable jury could not find that the City Defendants were deliberately indifferent to Plaintiff's serious medical needs, because they repeatedly offered her medical assistance.").

# V.    STATE LAW CLAIMS.[86]

## Plaintiff's Proposed State Law Language

### *General Assault Instruction* [87]

*Plaintiff claims that Defendant McManus and Defendant City of New York's NYPD officers assaulted her in March and April, 2012.  The purpose of assault laws is to deter people from committing threatening acts against others. To establish an assault claim, the Plaintiff must show the following by a preponderance of the evidence:*

1. *Defendant intended to place Plaintiff in fear of harmful or offensive physical contact; and*

2. *Plaintiff feared imminent harmful or offensive contact from Defendant.*

3. *Defendant actually caused Plaintiff to fear imminent harmful or offensive contact.*

*If the Plaintiff has proven these elements by a preponderance of the evidence, then she has proven enough for you to render a verdict in her favor.*

### *Assault against Defendant McManus on March 21, 2012*[88]

---

[86] Defendants strongly object to the jury being charged on assault and battery and *respondeat superior* for the reasons described at the footnote associated with Defendants' proposed excessive force charge.   Nonetheless, should the Court be inclined to charge the jury on Plaintiff's *respondeat superior* claim and the underlying assault and battery claims, Defendants have provided this proposed language for the Court's convenience.   Furthermore, Defendants object to the jury being charged on the state law claims four separate times as Plaintiff has proposed.

[87] Adapted from *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dept. 1998), citing *United Natl Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2nd Cir. 1993); *see also* N.Y. Penal Law Section 35.05 ("Justification generally"); N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Assault).

[88] Adapted from *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dept. 1998), citing *United Natl Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2nd Cir. 1993); *see also* N.Y. Penal Law Section 35.05 ("Justification generally"); N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Assault).

*Plaintiff claims that Defendant McManus assaulted her as she was merely standing, speaking to people, on March 21, 2012. I will now walk you through the requirements of each of these element for the assault claim against Defendant McManus.*

*Defendant intended to place Plaintiff in fear of offensive or wrongful conduct*

*In regard to the first element, Plaintiff claims that Defendant McManus intended to place Plaintiff in fear by approaching Plaintiff with his hands outstretched, appearing authoritative and threatening, ultimately shoving her to the ground. In order to prove Defendant's intent, Plaintiff need only show that the Defendant purposefully caused Plaintiff to experience fear. It is not necessary to consider whether Defendant McManus' intent was malicious, or whether he intended to cause an injury. In regard to assault, it is extremely rare that a defendant will directly admit to the element of intent.*

*In determining whether Defendant McManus intended to place Plaintiff in fear of conduct that was offensive or wrongful, you may consider the following factors: whether Plaintiff was committing a crime any crime at the time of Defendant McManus's action, whether Plaintiff posed a safety threat to Defendant McManus, and whether Plaintiff was under arrest at the time of the incident.*

*Plaintiff feared imminent harmful or offensive contact from Defendant*

*In regard to the second element, Plaintiff claims that she became anxious and fearful at the sight of Defendant McManus quickly approaching her, ultimately shoving her to the ground. In determining whether Plaintiff feared imminent harmful or offensive contact from Defendant, you need only evaluate Plaintiff's subjective point of view at the time of the incident.*

---

Causation-in-fact language adapted from Univ. of Tex. Southwestern Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013) (Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim); see also,

*Defendant actually caused Plaintiff to fear imminent harmful or offensive contact*

In regard to the third element, Plaintiff claims she actually feared imminent harmful or offensive contact when Defendant McManus quickly approached her, ultimately shoving her. In determining whether Defendant actually caused Plaintiff to fear imminent harmful or offensive contact, you must determine that Plaintiff's fear was caused by, or related to, the actions of Defendant.

<u>*Respondeat Superior against Defendant City of New York for Its Officers' Assaults*</u>

Plaintiff also claims that Defendant City of New York is liable for the actions of its officers, Mattera, Aminova, John Doe #8, Sergeant McManus and Lieutenant DeStefano, when in the course of acting on behalf of the City, they assaulted Plaintiff.

An employer is liable for its employees' wrongful conduct when that conduct was done while the employees were acting on behalf of the employer.

In order to prove Defendant City of New York is liable for the assaults of Sergeant Mattera, Officer Aminova, John Doe #8, Sergeant McManus and/or Lieutenant DeStefano against Plaintiff, Plaintiff must prove the following elements by a preponderance of the evidence:

1. Defendant is an employer;

2. Employees of Defendant committed the challenged conduct;

3. Defendant's employees acted within the scope of employment;

4. Defendant's employees intended to place Plaintiff in fear of imminent harmful or offensive contact; and

5. Plaintiff was placed in fear of imminent harmful or offensive contact by Defendant's employees.

6. *Defendant's employee's conduct actually caused Plaintiff to fear imminent harmful or offensive contact.*

If Plaintiff has proven these elements by a preponderance of the evidence, she has proven enough so that you may render a verdict in her favor on this claim.

The first three elements of this claim against Defendant City of New York are undisputed.

<u>*Liability for Assault by Sergeant Mattera and John Doe #8 on March 21, 2012*</u>

I will now walk you through the requirements of each of the remaining elements in regard to the alleged assault by Sergeant Mattera and John Doe # 8.

*Defendant's employee intended to place Plaintiff in fear of imminent harmful or offensive contact*

In regard to the fourth element, Plaintiff claims that John Doe #8 intended to place Plaintiff in fear by approaching Plaintiff and shoving her in the chest with his baton. Plaintiff then claims that Sergeant Mattera intended to place Plaintiff in fear by approaching Plaintiff from behind and grabbing her from within the crowd of protesters and ultimately throwing her to the ground. In order to prove John Doe #8 and Sergeant Mattera's intent, Plaintiff need only show that John Doe # 8 and Sergeant Mattera purposefully caused Plaintiff to experience fear. It is not necessary to consider whether John Doe #8 and Sergeant Mattera's intent was malicious, or whether he intended to cause an injury.

In determining whether John Doe #8 and Sergeant Mattera intended to place Plaintiff in fear of offensive or wrongful conduct, you may consider among other factors:  the relationship of John Doe #8 and Sergeant Mattera to Plaintiff, whether the John Doe #8 and Sergeant Mattera abused a position of authority over Plaintiff, whether the Plaintiff was especially vulnerable and John Doe #8 and Sergeant Mattera knew of the vulnerability, the motivation of John Doe #8 and Sergeant Mattera, and whether the conduct was repeated or prolonged.

*Plaintiff feared imminent harmful or offensive contact from Defendant's Employee*

In regard to the fifth element, Plaintiff claims that John Doe #8 shoved her in the chest with his baton. Plaintiff also claims that Sergeant Mattera rushed toward her as she stood within a crowd of protesters, ultimately throwing her to the ground. In determining whether Plaintiff feared imminent harmful or offensive contact from John Doe #8 and Sergeant Mattera, you need only evaluate Plaintiff's subjective point of view.

*Defendant's employee's conduct actually caused Plaintiff to fear imminent harmful or*
*offensive contact.*

In regard to the sixth element, in determining whether John Doe #8 and Sergeant Mattera actually caused Plaintiff to fear imminent harmful or offensive contact, you must determine that Plaintiff's fear was caused by, or related to, the actions of John Doe #8 and Sergeant Mattera. In other words, if you determine that the harm would not have occurred in the absence of John Doe #8 and Sergeant Mattera's conduct, you must find that Defendant employee's conduct actually caused Plaintiff to fear imminent harmful or offensive contact.

<u>Liability for Assaults by Defendants Aminova and DeStefano on April 16, 2012</u>

I will now walk you through the requirements of each of the remaining elements in regard to the alleged assaults by Officer Aminova and Lieutenant DeStefano.

*Defendant's employee intended to place Plaintiff in fear*

In regard to the fourth element, Plaintiff claims that Officer Aminova intended to place Plaintiff in fear by approaching Plaintiff, climbing on top of her, and shoving her onto the sidewalk. She also claims that Lieutenant DeStefano intended to place Plaintiff in fear by pursuing Plaintiff with arms outstretched, and then slamming into her side, pushing her into the side of a building, swinging her by the hair, and jerking her head back. In order to prove the officers' intent, Plaintiff must only show that Officer Aminova and Lieutenant DeStefano acted

*purposefully, willfully, and knowingly to place Plaintiff in fear. You do not have to consider*

*malicious intent, or an intent to actually cause an injury to Plaintiff.*

*Officers Aminova and Lieutenant DeStefano were arresting Plaintiff when they*

*approached her. In making a lawful arrest, a police officer may only use such force as is*

*reasonable under all of the circumstances. Reasonable force means the amount of force a*

*reasonable and prudent police officer would use under the same facts and circumstances,*

*without considering the intent or motivation of the officer who actually used the force.*

*In determining whether a Defendant used more force than was necessary in making a*

*lawful arrest in this case, you should consider all of the facts known to the officer, and other*

*relevant circumstances at the time any force was used, including the severity of the crime at*

*issue and whether Plaintiff posed an immediate threat to the safety of police or others.*

*In determining whether a Defendant used more force than was necessary in making a*

*lawful arrest in this case, you must keep in mind that a police officer is not permitted to use any*

*force beyond that reasonably necessary to accomplish a lawful purpose. In determining whether*

*a Defendant used more force than was necessary in making a lawful arrest in this case, you may*

*consider the NYPD Patrol Guide, which provides guidelines to Police Officers in regard to the*

*use of force and when to use force.*[89]

---

[89]  *Respondeat superior* language adapted from *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006); *Williams v. City of New York*, 121 F. Supp. 3d 354 (S.D.N.Y. 2015); Everett v. Eastchester Police Dep't., 127 A.D. 3d 1131 (2d Dep't 2015).

Causation-in-fact language adapted from *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) (Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim).

Assault outside the context of a lawful arrest language adapted from *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dept. 1998), citing *United Natl Ins. Co. v. Waterfront N.Y. Realty Corp.*,

*Defendant's employee's conduct actually caused Plaintiff to fear imminent harmful or offensive contact.*

In regard to the sixth element, in determining whether Officer Aminova and/or Lieutenant DeStefano actually caused Plaintiff to fear imminent harmful or offensive contact, you must determine that Plaintiff's fear was caused by, or related to, the actions of Officer Aminova and Lieutenant DeStefano.

<u>Liability for Assault by Sergeant Mattera and John Doe #8 on March 21, 2012</u>

I will now walk you through the requirements of each of the remaining elements in regard to the alleged assault by Sergeant Mattera and John Doe # 8.

*Defendant's employee intended to place Plaintiff in fear of imminent harmful or offensive contact*

In regard to the fourth element, Plaintiff claims that John Doe #8 intended to place Plaintiff in fear by walking over to her and hitting her in the chest with his baton. Then Plaintiff claims that Sergeant Mattera intended to place Plaintiff in fear by approaching Plaintiff from behind and grabbing her from within the crowd of protesters and ultimately throwing her to the ground. In order to prove John Doe #8 and Sergeant Mattera's intent, Plaintiff need only show that John Doe #8 and Sergeant Mattera purposefully caused Plaintiff to experience fear. It is not

---

994 F.2d 105, 108 (2d Cir. 1993); *see also* N.Y. Penal Law Section 35.05 ("Justification generally"); N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Assault); Restatement (Third) of Torts § 46 cmt. d (Am. Law Inst. 2012).

Assault within the context of a lawful arrest language adapted from *Graham v. Connor*, 490 U.S. 386 (1989); *Caravalho v. NYC*, 13-cv-4174 (PKC), 2016 WL 1274575, at 9-12 (2016); *see also* N.Y. Penal Law Section 35.30(1) ("Justifiable Use of Force to Make an Arrest or Prevent an Escape"); N.Y. Pattern Jury Instr. – Civil – PJI 2:235 (Vicarious or Derivative Responsibility – Employer-Employee – Scope of Employment).

necessary to consider whether John Doe #8 or Sergeant Mattera's intent was malicious, or whether he intended to cause an injury.

In determining whether John Doe #8 and Sergeant Mattera intended to place Plaintiff in fear of offensive or wrongful conduct, you may consider among other factors: the relationship of John Doe #8 and Sergeant Mattera to Plaintiff, whether John Doe #8 and Sergeant Mattera abused a position of authority over Plaintiff, whether the Plaintiff was especially vulnerable and John Doe #8 or Sergeant Mattera knew of the vulnerability, the motivation of John Doe #8 and Sergeant Mattera, and whether the conduct was repeated or prolonged.

*Plaintiff feared imminent harmful or offensive contact from Defendant's Employee*

In regard to the fifth element, Plaintiff claims that John Doe #8 shoved her in the chest with his baton. Then Plaintiff claims that Sergeant Mattera rushed toward her as she stood within a crowd of protesters, ultimately throwing her to the ground. In determining whether Plaintiff feared imminent harmful or offensive contact from John Doe #8 or Sergeant Mattera, you need only evaluate Plaintiff's subjective point of view.

*Defendant's employee's conduct actually caused Plaintiff to fear imminent harmful or offensive contact.*

In regard to the sixth element, in determining whether John Doe #8 or Sergeant Mattera actually caused Plaintiff to fear imminent harmful or offensive contact, you must determine that Plaintiff's fear was caused by, or related to, the actions of Officer John Doe #8 and Sergeant Mattera. In other words, if you determine that the harm would not have occurred in the absence of John Doe #8 and Sergeant Mattera's conduct, you must find that Defendant employee's conduct actually caused Plaintiff to fear imminent harmful or offensive contact.

*General Battery Instruction*[90]

 *Plaintiff claims that Defendant McManus and Defendant City of New York's NYPD*

*officers battered her in several incidents in March and April, 2012. The purpose of battery laws*

*is to deter people from committing physical acts of violence against others. To establish a battery*

*claim outside the context of a lawful arrest, the Plaintiff must show the following by a*

*preponderance of the evidence:*

 *(1) Defendant intended to make wrongful physical contact with Plaintiff;*

 *(2) Plaintiff did not consent to the physical contact; and*

 *(3) Defendant caused harm to Plaintiff.*

 *If the Plaintiff has proven these elements by a preponderance of the evidence, then she*

*has proven enough for you to render a verdict in her favor.*

*Battery against Defendant McManus – March 21, 2012*[91]

---

[90] Battery outside the context of a lawful arrest language adapted from *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dept. 1998), citing *United Natl Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2nd Cir. 1993); *see also* N.Y. Penal Law Section 35.05 ("Justification generally"); N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Battery); see also Restatement of Torts, 2d, §13;

Causation-in-fact language adapted from *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013) (Causation in fact—i.e., proof that the defendant's conduct did in fact cause the plaintiff's injury—is a standard requirement of any tort claim).

Battery within the context of a lawful arrest language adapted from *Graham* v. Connor, 490 U.S. 386 (1989); *Caravalho v. NYC*, 13-cv-4174 (PKC), 2016 WL 1274575, at *9-12 (citing cases); *see also* N.Y. Penal Law Section 35.30(1) ("Justifiable Use of Force to Make an Arrest or Prevent an Escape"); N.Y. Pattern Jury Instr. – Civil - PJI 3:4 (Battery Committed in Performance of Public Duty or Authority).

[91] *Respondeat superior* language adapted from *Green v. City of New York*, 465 F.3d 65 (2d Cir. 2006); *Williams v. City of New York*, 121 F. Supp. 3d 354 (S.D.N.Y. 2015); Everett v. Eastchester Police Dep't., 127 A.D. 3d 1131 (2d Dep't 2015).

Battery outside the context of a lawful arrest language adapted from *Charkhy v. Altman*, 252 A.D.2d 413, 414 (1st Dept. 1998), citing *United Natl Ins. Co. v. Waterfront N.Y. Realty Corp.*,

*Plaintiff claims that Defendant McManus battered her as she was merely standing, speaking to people, on March 21, 2012.*

*I will now walk you through the requirements of each of the elements of the battery claim against Defendant McManus.*

*Defendant McManus intended to make wrongful physical contact with Plaintiff*

*In regard to the first element, Plaintiff claims Defendant McManus intended to wrongful physically contact Plaintiff by approaching her with his palms facing out and ultimately shoving her. In determining whether Defendant intended to wrongfully contact Plaintiff, you must find that Defendant purposefully made physical contact with Plaintiff. To be found liable for battery, Defendant must only intend to make physical contact with Plaintiff. In regard to battery, it is extremely rare that a defendant will directly admit to the element of intent.*

*In determining whether Defendant McManus's physical contact was wrongful, you may consider the following factors: whether Plaintiff was committing a crime any crime at the time of Defendant McManus's action, whether Plaintiff posed a safety threat to Defendant McManus, and whether Plaintiff was under arrest at the time of the incident.*

*Plaintiff did not consent to the physical contact*

*As to the second element, it is undisputed that physical contact was not consented to by Plaintiff on March 21, 2012.*

---

994 F.2d 105, 108 (2nd Cir. 1993); *see also* N.Y. Penal Law Section 35.05 ("Justification generally"); N.Y. Pattern Jury Instr. – Civil - PJI 3:2 (Intentional Torts – Interference with Person or Property – Battery); *see also* Restatement of Torts, 2d, §13.

Battery within the context of a lawful arrest language adapted from *Graham v. Connor*, 490 U.S. 386 (1989); *Caravalho v. NYC*, 13-cv-4174 (PKC), 2016 WL 1274575, at *9-12 (citing cases); *see also* N.Y. Penal Law Section 35.30(1) ("Justifiable Use of Force to Make an Arrest or Prevent an Escape"); N.Y. Pattern Jury Instr. – Civil - PJI 3:4 (Battery Committed in Performance of Public Duty or Authority).

*Defendant actually harmed Plaintiff*

*In regard to the third element, Plaintiff claims that she was harmed when Defendant McManus shoved her to the ground. In determining whether Defendant caused harm, you must find that the injury or damage was actually caused by Defendant's action, or inaction.*

### *Respondeat Superior against Defendant City of New York for Its Officers' Batteries*

*Plaintiff also claims that Defendant City of New York is liable for the actions of its officers, John Doe #8, Mattera, Aminova, and Lieutenant DeStefano, when in the course of acting in the City's interests, they battered Plaintiff. Like the assault claims against Defendant City of New York, the City is liable for its employees' wrongful conduct when that conduct was done while the employees were acting on behalf of the City.*

*In order to prove Defendant City of New York is liable for the batteries of John Doe #8, Sergeant Mattera, Officer Aminova, and Lieutenant DeStefano against Plaintiff, Plaintiff must prove the following elements by a preponderance of the evidence:*

1. *Defendant is an employer;*

2. *Employees of Defendant committed the conduct;*

3. *Defendant's employees acted within the scope of employment;*

4. *Defendant's employees intended to make wrongful physical contact with Plaintiff;*

5. *Plaintiff did not consent to the contact; and,*

6. *Defendant's employees harmed Plaintiff.*

*If Plaintiff has proven these elements by a preponderance of the evidence, she has proven enough so that you may render a verdict in her favor on this claim.*

*The first three elements of this claim that Defendant City of New York is an employer,*

*Employees of Defendant City of New York committed the conduct, and Defendant City of New*

*York acted within the scope of their employment, are all undisputed.*

<u>*Liability for Battery by Sergeant Mattera on March 21, 2012*</u>

*I will now walk you through the requirements of each of the remaining elements in*

*regard to the alleged battery by John Doe #8 and Sergeant Mattera.*

*Defendant's employee intended to make wrongful physical contact with Plaintiff*

*In regard to the fourth element, Plaintiff claims John Doe #8 intended to make wrongful*

*physical contact with her when he shoved her in the chest with his baton. Plaintiff then claims*

*that Sergeant Mattera intended to make wrongful physical contact with her when he*

*unexpectedly approached her from behind, grabbed her by the hips and neck, and then slammed*

*her to the ground. In determining whether John Doe #8 and Sergeant Mattera intended to make*

*wrongful physical contact with Plaintiff, you must find that John Doe #8 and Sergeant Mattera*

*willfully, purposefully, and knowingly acted to make physical contact with Plaintiff. To be found*

*liable for battery, Defendant must only intend to make physical contact with Plaintiff, regardless*

*of whether any injury or harm was caused or threatened.*

*In determining whether John Doe #8 and Sergeant Mattera's physical contact was*

*wrongful, you may consider among other factors: the relationship of the John Doe #8 and*

*Sergeant Mattera to Plaintiff, whether John Doe #8 and Sergeant Mattera abused a position of*

*authority over Plaintiff, whether the Plaintiff was especially vulnerable and John Doe #8 and*

*Sergeant Mattera knew of the vulnerability, the motivation of John Doe #8 and Sergeant*

*Mattera, and whether the conduct was repeated or prolonged.*

*Plaintiff did not consent to the physical contact*

As to the fifth element, it is undisputed that Plaintiff did not consent to be physically contacted by John Doe #8 and Sergeant Mattera on March 21, 2012.

*Defendant actually harmed Plaintiff*

In regard to the sixth element, Plaintiff claims John Doe #8 actually caused harm to her when he shoved her in the chest with his baton. Plaintiff also claims Sergeant Mattera actually caused harm to her when he picked her up and slammed her to the ground, causing a concussion. In determining whether John Doe #8 and Sergeant Mattera actually harmed Plaintiff, you must find that the injury or damage was caused by John Doe #8 and Sergeant Mattera's action, or inaction. In making this determination, you may consider the NYPD Patrol Guide which provides guidance to police officers in regard to the proper use of force by police officers. You may also consult the evidentiary record in evaluating whether or not Plaintiff would have sustained injuries had John Doe #8 and Sergeant Mattera not been present. If you find that John Doe #8 and Sergeant Mattera's interaction with Plaintiff was the sole reason for Plaintiff's injuries, you must find that Defendant's conduct harmed Plaintiff.

### Defendants' Proposed State Law Language

Plaintiff alleges state law claims, the specifics of which I will explain to you momentarily. However, before I do so, I want to explain that for the purposes of this trial, the plaintiff are only making state law claims against the City of New York as the municipality that employed Lieutenant Mattera, John Doe No. 8, Lieutenant DeStefano, Police Officer Aminova, and Sergeant McManus. You should consider the evidence against the City of New York separately from the evidence against these officers. You must ask whether plaintiffs have proved the elements of the claim against the defendant City of New York by a preponderance of the evidence. The City of New York is entitled to a fair

consideration of the evidence relating to the claims against the City and whether or not you believe the officers did anything wrong, should not prejudice any finding you make for or against the defendant City of New York. You should note that as plaintiff does not allege that the City of New York has violated any federal claims, the only claims I will explain to you are the state law claims.[92]

### *Respondeat Superior*[93]

#### a. Scope of Employment

In order to find the City of New York liable for *respondeat superior*, you must first find that each of the officers—Lieutenant Mattera, John Doe No. 8, Lieutenant DeStefano, Police Officer Aminova, and Sergeant McManus—was acting in the scope of their employment with the City of New York when he interacted with the plaintiff, and then you also must find that each of the officers assaulted the plaintiff. I will explain the elements of assault to you shortly.[94]

An employer is generally responsible for the action of its employee if the act is in furtherance of the employer's business and is within the scope of the employee's authority. An act is within the scope an employee's authority if it is performed while the

---

[92] Plaintiff objects to the inclusion of all but the first sentence in this paragraph because Defendants' proposed language misstates the law regarding *respondeat superior* liability and including it would lead to jury confusion. For example, the jury cannot and should not "consider the evidence against the City of New York separately from the evidence against" the officers whose conduct forms the basis for holding the City liable under *respondeat superior*.

[93] Adapted from the New York Pattern Jury Instructions on Employer Employee liability.

[94] Plaintiff objects to the language in this paragraph, and the rest of Defendants' proposed charges regarding Plaintiff's state law claims, to the extent that it says or implies that Plaintiff can only prevail on a *respondeat superior* theory of liability if Plaintiff proves that *each* or *all* of the JD#8, Mattera, DeStefano, Aminova, and McManus committed an assault or battery against her. Plaintiff can recover on a *respondeat superior* theory of liability for each and every assault and battery committed against her by one of those officers.

employee is engaged generally in the performance of his assigned duties or if the act is reasonably necessary or incidental to the employment. Among the factors you may consider in deciding whether the officers were acting within the furtherance of the City's business and within the scope of their authority, whether the officers were on or off duty when the allegedly wrongful conduct occurred, whether they acted with the employer's interests in mind or their own, whether the employer stood to benefit from their conduct, whether the conduct alleged is one commonly done by such an employee, the extent of departure from normal methods of performance and whether the specific conduct is such that the City could have reasonably anticipated it.

If you find that the plaintiff has proved by a preponderance of the evidence that any of the four officers-that is, Lieutenant Mattera, Lieutenant DeStefano, Sergeant McManus or Police Officer Aminova—committed an assault and battery against the plaintiff, then you will find that the City of New York is also liable for that assault and battery. On the other hand, if you find that the plaintiff has failed to prove that any of these officers is liable for assault and battery against the plaintiff, then you will find that the City of New York is not liable for that assault and battery against the plaintiff.[95]

---

[95] This paragraph is adapted from jury charges delivered by the Honorable John G. Koeltl in Scott Eden v. City of New York, et al., 12 Civ. 5904.

### b.  Assault and Battery.[96] [97]

The tort that underlies plaintiff's claims for *respondeat superior* is for assault and battery.

An assault is an intentional placing of another person in apprehension of imminent harmful or offensive contact.[98]   A person is liable for assault when he intentionally causes another person to become concerned that the person is about to cause a harmful or offensive bodily contact.[99]   Threatening words without some action are not enough to constitute an assault.  There must be some menacing act or gesture that causes the plaintiff to believe that a harmful or offensive bodily contact is about to occur.

A person who intentionally touches another person without that person's consent, and causes an offensive bodily contact, commits a battery.[100]

---

[96] Defendants assert that with "the exception of the state actor requirement, the elements of a Section 1983 excessive force claim and state law assault and battery claims are substantially identical."  Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991).  Therefore, Defendants again respectfully reiterate that the jury should not separately be charge on assault and battery. Plaintiff disagrees.  *See* note 38 *supra*.

[97] Plaintiff objects to Defendants' characterizations of "assault and battery" as a single tort, here and throughout Defendants' proposed instructions regarding the state law claims. Assault and battery are separate torts with separate elements. Referring to or treating them as the same tort does not correctly state the law and is likely to lead to jury confusion.

[98] Gould v. Rempel, 99 A.D.3d 759, N.Y.S.2d 633 (2d Dep't 1974).

[99] Plaintiff objects to the inclusion of this sentence. It misstates the law and including it would lead to jury confusion. A person need not *intend* to cause another person to become concerned that the actor is about to cause a harmful or offensive bodily contact. They only need to act *intentionally* rather than accidentally.

[100] Adapted from jury charges delivered by the Honorable John G. Koeltl in Scott Eden v. City of New York, et al., 12 Civ. 5904.  See also Nimely v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005), citing Laurie Marie M. v. Jeffrey T.M., 159 A.D.2d 52, 55, 559 N.Y.S.2d 336 (2d Dep't 1990).

Finally, plaintiff must prove to you that the officers' conduct was not reasonable.[101] I instruct you that a police officer, in the course of effecting or attempting to effect an arrest, or in preventing or attempting to prevent a person to escape, when the police officer reasonably believes that a person may have committed an offense can use physical force when and to the extent he or she reasonably believes such to be necessary to effect the arrest or to prevent the person from escaping from custody, or in self-defense or to defends a third person from what he or she reasonably believes to be the use of physical force.[102]'

Furthermore, when an arrest is supported by probable cause, an officer will not be liable for the use of physical force when and to the extent that she or he reasonably believes that it is necessary to effect the arrest. [103] [104]

---

[101] Nimely v. City of New York, 414 F.3d 381, 391 (2d Cir. 2005). ("Additionally, Nimely was required to prove that Muirhead's conduct was not reasonable within the meaning of the New York statute concerning justification of law enforcement's use of force in the course of their duties. See N.Y. Penal Law § 35.30(1)"). See also Brunelle v. City of New York, 269 A.D.2d 347, 348, 702 N.Y.S.2d 648 (2d Dep't 2000).

[102] See New York Penal Law § 35.30. Justification; use of physical force in making an arrest or in preventing an escape.

[103] Lawrence v. City of Rochester, No. 09-CV-6078-FPG, 2015 U.S. Dist. LEXIS 14638, at *40-41 (W.D.N.Y. Feb. 6, 2015) (citations and quotations omitted). Cunningham v. United States, 472 F. Supp. 2d 366, 383 (E.D.N.Y. 2007); Wyllie v. District Attorney of County of Kings, 2 A.D. 3d 714, 718-19, 770 N.Y.S.2d 110 (2d Dep't 2003).

[104] Plaintiff objects to the inclusion of the two preceding paragraphs. The use of the phrase "not reasonable" in the first sentence of the first paragraph is misleading and confusing, particularly given the different standards regarding what is "reasonable" under a fourteenth amendment-based excessive force claim, and New York law-based assault and battery claims. The use of the language "that she or he reasonably believes that it is necessary to effect the arrest" in the last sentence is similarly misleading. It is further misleading because it makes it sound as if the officer's *subjective* believe that the force the officer used was necessary renders the use of force itself objectively "reasonable" – which is not the correct standard. In general, the "reasonableness" in question with respect to the assault and battery claims is governed by the justification sections of the New York Penal Law, which provide different standards for when

I instruct you that Plaintiff's arrest on April 16, 2012 was lawful and support by probable cause and cannot be the basis for the finding of any liability. Therefore, as there was probable cause for Plaintiff's arrest on that date, you cannot find that there was an assault or battery unless you find that plaintiff has proven the amount of force used to effectuate her arrest was more than necessary or unreasonable. I also instruct you that Plaintiff was not arrested on March 21, 2012, and therefore you need not consider the legality of any arrest on that date.

## PART III: DAMAGES[105]

### A. CAUTIONARY INSTRUCTIONS

I have a few cautionary instructions to give you before I discuss damages. First, even though I am going to instruct you on damages, it does not mean I have any opinion on whether or not Defendants should be held liable. Second, with respect to Plaintiff's claims, you may only award him damages if she has proven liability according to the standards I have just set forth.

Damages must be based on evidence, not on speculation or sympathy, and you may only award damages for those injuries that Plaintiff actually suffered as a result of the officer's conduct. You cannot award Plaintiff for injuries she may have suffered at the hands of others or those that she may have caused himself. The damages that you award must be fair compensation, no more and no less. It is the Plaintiff who bears the burden of

---

uses of force are justifiable, depending on whether there is a lawful arrest (*see* PL 35.30) or not (*see,* 35.05 ("Justification; generally"). Defendants note that Plaintiff cites to no legal authority for her untenable position. Furthermore, the first paragraph that Plaintiff objects to is identical to the Court's instruction in <u>Bahadur</u>. Moreover, the first sentence of the second paragraph is also identical to the Court's instruction in <u>Bahadur as are the last two sentences.</u>

[105] Defendants the right to include additional jury charges regarding damages at the time of trial.

proving her damages by a preponderance of the credible evidence.

B.    COMPENSATORY DAMAGES

**Plaintiff's Proposed Charge on Compensatory Damages**[106]

*If Plaintiff has proven liability against any Defendant on any claim, you must determine*

*the damages to which Plaintiff is entitled.*

*The purpose of the law of damages is to award, as far as possible, sufficient damages to*

*compensate a plaintiff for any injury and any loss proximately caused by the Defendants'*

*conduct. These are known as "compensatory damages." Compensatory damages seek to make a*

*Plaintiff whole—that is, to compensate her for the damage suffered.  Compensatory damages are*

*not only for expenses that a Plaintiff may have borne. A prevailing Plaintiff is entitled to*

*compensatory damages for physical injury, pain and suffering, emotional and mental anguish,*

*and shock and discomfort that she has suffered because of the Defendants' conduct.*

*The law does not require a Plaintiff to prove the amount of her losses with mathematical*

*precision. I cannot give you a yardstick by which to measure the dollar amount of pain or injury.*

---

[106] Adapted from Sand, Siffert, Loughlin, Reiss, Allen and Rakoff, 5 *Modern Federal Jury Instructions* (2012 Civil), Instructions 77-1 and 77-3; *Kerman v. City of New York*, 374 F.3d 93, 124-31 (2d Cir. 2004) (holding that facts with regard to Plaintiff's deprivation of liberty demonstrated basis for compensatory damages despite failure to have compensatory damages instruction); *Raysor v. Port Authority of New York and New Jersey*, 768 F.2d 34, 38-39 (2d Cir. 1985) (holding that a failure to instruct the jury as to the plaintiff's entitlement to compensatory damages for loss of liberty was deemed a fundamental error by the court); *Wheatley v. Beetar*, 637 F.2d 863, 868 (2d Cir. 1980) (holding that compensatory damages is required and defendant's liability has been determined); *Kerman v. City of N.Y.*, 374 F.3d 93, 122 (2d Cir. 2004) (holding that the plaintiff was entitled to a compensatory damages instruction as a matter of law); *Calamia v. New York*, 879 F.2d 1025, 1027 (2d Cir. 1989) (holding that erroneous jury instructions required a new trial on the claim for use of excessive force and damages.); *Atkins v. New York City*, 143 F.3d 100, 103 (2d Cir. 1998) (holding that the district judge erred in distinguishing *Wheatley* therefore holding that a compensatory damages instruction was needed).

*You heard Plaintiff's testimony and the testimony of the other witnesses, and have seen the documentary evidence concerning damages. If you award compensatory damages you will have to determine, based on your common sense and experience, that amount of money that will fairly and reasonably make Plaintiff whole or compensate her for the injuries and pain and suffering that she sustained, and may continue to sustain, as a consequence of any acts that violated her rights.*

*You are to use your sound discretion in fixing an award of compensatory damages, drawing all reasonable inferences where you deem appropriate from the facts and circumstances in evidence. In sum, your award of compensatory damages should reasonably compensate Plaintiff for such injury and damage as you find that Plaintiff has sustained or is reasonably likely to sustain in the future.*

*Emotional Damages*

*If you find any of the Defendants liable on any of the claims against them, you must consider whether Plaintiff suffered any emotional injury because of that Defendant's conduct.*

*You may compensate Plaintiff for any type of emotional injury including, trauma, humiliation, psychological injury, mental anguish, loss of enjoyment in life, or emotional distress that you find they experienced or continue to experience as a result of a Defendant's conduct.*

*It is not necessary for Plaintiff to present evidence that she lost money or sought medical treatment in order to be compensated for emotional distress. While Plaintiff has presented the testimony of Dr. Robert Goldman, Plaintiff does not have to present medical evidence of mental or physical symptoms. Emotional distress may be established solely by Plaintiff's testimony.*

*Negative emotional effects may include the following: sadness, lethargy, insecurity, self-depreciation, anger, anxiety, frustration, resentment, insomnia, nightmares, depression, hostility, irritability, indecision, inability to enjoy life or withdrawal from contact with others.*

## Defendants' Proposed Charge on Compensatory Damages[107]

**You may award compensatory damages only for injuries that the Plaintiff proves were caused by Defendants' allegedly wrongful conduct. The damages that you award must be fair compensation, no more and no less. You may not award compensatory damages for speculative injuries, but only for those injuries that Plaintiff proves she actually suffered as a result of Defendants' unlawful actions.**

**In other words, you may only award damages for those injuries which you find that Plaintiff has proven by a preponderance of the evidence. Moreover, you may not simply award actual damages for any injury suffered by the Plaintiff—you must award**

---

[107] Defendants respectfully note that Plaintiff cites to a number of inapposite cases in her misguided authorities. She attempts to mislead the Court. Specifically, Kerman v. City of New York, 374 F.3d 93, 124-31 (2d Cir. 2004)  and Raysor v. Port Authority of New York and New Jersey, 768 F.2d 34, 38-39 (2d Cir. 1985), which are about compensation for loss of liberty damages in a false arrest context. Cases pertaining to "loss of liberty" and compensatory damages associated with any loss of liberty are not applicable in this instant matter (and Plaintiff cites to no case holding that loss of liberty damages can or should be awarded in the excessive force or deliberate indifference contexts), where plaintiff has no viable claim for false arrest. Indeed, the Court has determined that Plaintiff's arrests were lawful.

Plaintiff responds that she has cited both *Kerman* and *Raysor* merely for the general proposition that "where the jury has found a constitutional violation and there is no genuine dispute that the violation resulted in some injury to the plaintiff, the plaintiff is entitled to an award of compensatory damages as a matter of law." *Kerman,* 374 F.3d at 124; *see also Raysor*, 768 F.2d at 39. The nature of the constitutional violation—the basis of Defendants' purported distinction of these cases—is irrelevant to that general proposition. As is clear from Plaintiff's proposed instruction on compensatory damages does not include language about loss-of-liberty damages,

 Defendants note that Plaintiff has no legal authority for the position that the jury should not be charge on nominal damages in a case that does not involve false arrest.

actual damages for those injuries that are a direct result of actions by a Defendant whom you have found is liable to the Plaintiff. You must distinguish between the existence of a violation of a Plaintiff's right and the existence of injuries naturally and proximately resulting from that violation. Thus, even if you find that a Defendant deprived the Plaintiff of his right, you must ask whether the Plaintiff has proven by a preponderance of the evidence that the deprivation actually and proximately caused each of the damages that he claim to have suffered.

If you find that before this occurrence the Plaintiff had pre-existing injuries, she is not entitled to recover for any physical ailment or disability which existed prior to the occurrence or for any injuries from which she may now be suffering which were not caused or contributed to by the alleged unlawful actions of the Defendants. Plaintiff can recover only for damage caused by aggravation of the pre-existing condition, not the condition itself. Plaintiff should be compensated only to the extent that you find her condition was made worse by the Defendants' alleged unlawful conduct.

In determining the amount of any damages that you decide to award, you should be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. You must use sound discretion in fixing an award of damages, drawing reasonable inferences from the facts in evidence. You may not award damages based on sympathy, speculation, or guesswork. On the other hand, the law does not require that the Plaintiff prove the amount of her "damages/losses" with mathematical precision, but only with as much definiteness and accuracy as circumstances permit. Your award must be fair and just. It should

**neither be excessive nor inadequate, but should be reasonable.**[108]

      C.      **Nominal Damages**[109]

      Now let's turn to nominal damages.  If you return a verdict for Plaintiff on her claims but then find that she failed to prove by a preponderance of the credible evidence that she suffered any actual damages, then you may return an award of damages in some nominal or token amount not to exceed the sum of one dollar.  This is called nominal damages.

      Nominal damages are awarded when a Plaintiff has been deprived by a Defendant of a constitutional right, but has proved no compensatory damages as a natural consequence of that deprivation.  The mere fact that a constitutional deprivation occurred is an injury to the person entitled to be free from such action, even when no actual damages flow from the deprivation.  Therefore, if you find that Plaintiff did not prove injuries as a result of the Defendants' conduct other than the fact of a constitutional deprivation, you must award nominal damages not to exceed one dollar.

      D.      **PUNITIVE DAMAGES**

---

[108] Adapted from Instruction 18.0.1 Section 1983 Litigation, Jury Instructions, Martin A. Schwartz, George C. Pratt, 2003.

[109] Plaintiff does not include a proposed charge on nominal damages.  Plaintiff objects to any reference to nominal damages because if the jury finds that plaintiff's constitutional rights were violated, his damages would compensatory in nature and nominal damages would be inappropriate. *Haywood v. Koehler*, 78 F.3d 101, 104 (2d Cir. 1996) ("If it is clear from the undisputed evidence that a plaintiff's injuries were caused by a defendant's use of excessive force, the jury's failure to award some compensatory damages will be set aside and a new trial ordered.") (emphasis added); *Kerman v. City of New York*, 374 F.3d 93,123 (2004) ("A jury could reasonably find that only nominal damages are appropriate where, for example, a plaintiff's testimony as to his injuries lacks objective support or credibility, or where both justified force and unjustified force were used, either of which could have caused his injuries, or where some of the plaintiff's injuries could have been caused by a codefendant who was not found to have used excessive force.").  Defendants respectfully refer the Court to their response on the issue on nominal damages at footnote 111 *supra*.

## Plaintiff's Proposed Charge on Punitive Damages[110]

*In addition to compensatory damages, if you find in Plaintiff's favor in connection with her claims, you may choose to make a separate and additional award of punitive damages. Punitive damages are awarded, in the discretion of the jury, to punish a defendant for extreme or outrageous conduct, and to deter or prevent a defendant and others like him from committing such conduct in the future.*

*You may award punitive damages if you find that the acts or omissions of a Defendant were done maliciously or wantonly. An act or failure to act is maliciously done if it is prompted by ill will or spite towards the injured person. An act or failure to act is wanton if it is done with a reckless or callous disregard for the rights of the injured person. Plaintiff has the burden of proving, by a preponderance of the evidence that the Defendants acted maliciously or wantonly with regard to Plaintiff's rights.*

*If you find by a preponderance of the evidence that a Defendant acted with malicious intent to violate Plaintiff's rights, or if you find that the Defendants acted with a callous or reckless disregard of Plaintiff's rights, then you may award punitive damages. An award of punitive damages, however, is discretionary; that is, if you find that the legal requirements for punitive damages are satisfied, then you may decide to award punitive damages, or you may decide not to award them.*

*In making this decision, you should consider the underlying purpose of punitive damages. Punitive damages are awarded in the jury's discretion to punish a defendant for outrageous conduct or to deter him and others like him from performing similar conduct in the future. Thus, in deciding whether to award punitive damages, you should consider whether Defendants may be*

---

[110] Adapted from <u>Bahadur v. Vargas et al.,</u> No. 15-cv-978 (KMW) (2017).

*adequately punished by an award of actual damages only, or whether the conduct is so extreme*

*and outrageous that actual damages are inadequate to punish the wrongful conduct.  You should*

*also consider whether actual damages, standing alone, are likely to deter or prevent Defendants*

*from similar wrongful conduct in the future, if it was in fact wrongful, or whether punitive*

*damages are necessary to provide deterrence.  Finally, you should consider whether punitive*

*damages are likely to deter or prevent other persons from performing wrongful acts similar to*

*those Defendants may have committed.*

*If you decide to award punitive damages, these same purposes should be*

*kept in mind as you determine the appropriate sum of money to be awarded as punitive damages.*

*That is, in fixing the sum to be awarded, you should consider the degree to which the Defendants*

*should be punished for the wrongful conduct, and the degree to which an award of one sum or*

*another will deter the Defendants or persons like them from committing wrongful acts in the*

*future.*

### <u>Defendants' Proposed Charge on Punitive Damages</u>[111]

**Plaintiff also seeks punitive damages in this case.  If Plaintiff has proven by**

**the preponderance of the evidence that a particular Defendant is liable, then you may, but**

**you are not required, to determine whether the Plaintiff is entitled to punitive damages.**

**In order to be entitled to punitive damages, you must find that the Plaintiff**

**has clearly established that the acts of the Defendant causing the proven injury were**

**wanton or showed a callous or reckless disregard for the rights of others.  The purpose of**

---

[111] Although Defendants contend that, after hearing the evidence, the Court will determine that no rationale jury could find punitive damages against Defendants in this case, Defendants propose the following language on punitive damages should the Court find that the charge is necessary.

punitive damages is to punish for shocking conduct and to set an example to deter others from the commission of similar offenses in the future.

However, punitive damages are not awarded as a matter of right but are awarded only if you believe a particular Defendant acted so outrageously and evidenced such a degree of malice or callousness that an example and deterrent needs to be provided to assure that the Defendant and others will be less likely to engage in such conduct in the future.

If you do decide to award punitive damages, the amount of punitive damages should be reasonable and should be proportionate only to the need to punish and deter.

### E.     Attorneys' Fees[112]

Federal law provides for an award of attorneys' fees to a Plaintiff when he or she prevails in a civil rights action. The award of attorneys' fees is a matter to be determined by the Court. Accordingly, if you award any damages to Plaintiff, including nominal damages, you should not take into consideration the fees that Plaintiff may have to pay her attorneys.

## PART IV: CONCLUDING INSTRUCTIONS

### A.     SELECTION OF FOREPERSON; RIGHT TO SEE EXHIBITS AND HEAR TESTIMONY

You will shortly retire to the jury room to begin your deliberations. As soon as you get to the jury room, please select one of your number as the foreperson, to preside over your deliberations and to serve as your spokesperson if you need to communicate with the Court.

You will be bringing with you into the jury room a copy of my instructions of

---

[112] Plaintiff objects to inclusions of any language regarding attorneys' fees, particularly because here, Plaintiff asserts state law claim in addition to federal claims. Should the Court wish to charge the jury on fees plaintiff suggests the following language adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017): *"You should not take into consideration attorneys' fees or court costs, which will be decided by the Court."*

law.  I will shortly send you as well a verdict form on which to record your verdict.  If you want any of the testimony, that can also be provided, either in transcript or read-back form.  But, please remember that it is not always easy to locate what you might want, so be as specific as you possibly can be in requesting portions of testimony.

**NOTE-TAKING BY JURORS**

Some of you have taken notes during parts of the trial. Notes can be useful to focus a note-taker's attention and may aid the recollection of the note-taker.  Note-taking may, however, distract a note-taker from hearing or seeing other important evidence.  Thus, the best way to assist your recall is to ask to have a transcript of the testimony sent to you, not to rely on notes. Please remember that just because one juror may have notes does not mean the notes are any more accurate than any other juror's recollection.[113]

**B.    COMMUNICATIONS WITH THE COURT**

Any of your requests, in fact any communication with the Court, should be made to me in writing, signed by your foreperson, and given to the marshal, who will be available outside the jury room throughout your deliberations.  After consulting with counsel, I will respond to any question or request you have as promptly as possible, either in writing or by having you return to the courtroom so that I can speak with you in person.

**C.    VERDICT; NEED FOR UNANIMITY; DUTY TO CONSULT**

You should not, however, tell me or anyone else how the jury stands on any issue until you reached your verdict and recorded it on your verdict form.

Each of you must decide the case for yourself, after consideration, with your fellow jurors, of the evidence in the case; and your verdict must be unanimous.  In deliberating,

---

[113] Adapted from *Bahadur v. Vargas et al.*, No. 15-cv-978 (KMW) (2017).

bear in mind that while each juror is entitled to his or her opinion, each should exchange views with his or her fellow jurors. That is the very purpose of jury deliberation: to discuss and consider the evidence; to listen to the arguments of fellow jurors; to present your individual views; to consult with one another; and to reach a verdict based solely and wholly on the evidence.

If, after carefully considering all the evidence and the arguments of your fellow jurors, you entertain a conscientious view that differs from the others, you are not to yield your view simply because you are outnumbered. On the other hand, you should not hesitate to change or modify an earlier opinion that, after discussion with your fellow jurors, no longer persuades you.

In short, the verdict must reflect each juror's conscientious determination and it must also be unanimous.

Dated: New York, New York
      October 23, 2018

Community Legal Assistance Corp.

\_\_/s/_____

Stefan H. Krieger (SK1748)
Theo Liebmann (TL3075)
108 Hofstra University
Joan F. Axinn Hall
Hempstead, New York 11549
lawshk@hofstra.edu
(516) 463 6078

Gideon Orion Oliver (GO 8799)
277 Broadway, Suite 1501
New York, New York 10007
Gideon@GideonLaw.com
(646) 263-3495

Katherine E. Smith (KS8707)
Law Office of Katherine E. Smith
The Woolworth Building
233 Broadway, Suite 1800
New York, New York 10279
Tel/Fax: (347)-470-3707

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
*Attorney for Defendants*
100 Church Street
New York, New York 10007
(212) 356-3523

By: _____/s/\_\_\_\_/s/_____
Brachah Goykadosh
Joshua J. Lax
*Assistant Corporation Counsel*
*Senior Counsel*
Special Federal Litigation Division