# Exhibit E

IBJ7TAR1

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

MARY M. TARDIF,

            Plaintiff,

         v.                           13 Civ. 4056 (KMW)

CITY OF NEW YORK, NEW YORK
CITY POLICE DEPARTMENT, et
al.,
                                      Trial
            Defendants.

------------------------------x
                                      New York, N.Y.
                                      November 19, 2018
                                      9:45 a.m.
Before:

                    HON. KIMBA M. WOOD,

                                      District Judge

                       APPEARANCES

COMMUNITY LEGAL ASSISTANCE CORP.
     Attorneys for Plaintiff
BY:  STEFAN H. KRIEGER
     - and -
LAW OFFICES OF KATHERINE E. SMITH
BY:  KATHERINE E. SMITH
     - and -
GIDEON O. OLIVER

NEW YORK CITY LAW DEPARTMENT
     Attorneys for Defendants
BY:  BRACHAH GOYKADOSH
     JOSHUA J. LAX

ALSO PRESENT:  David Rankin, Esq.
```

1           (Jury not present)
2           THE COURT:  Can the plaintiff leave so she can pick up
3    her children.
4           THE COURT:  Yes.
5           MR. KRIEGER:  We waive the presence of the plaintiff
6    during the voir dire.
7           THE COURT:  You do also, Ms. Tardif?
8           THE PLAINTIFF:  Yes, your Honor.
9           THE COURT:  Thank you.  You are free to go.
10          I need to make a final ruling on prior arrests.
11   Mr. Krieger has to make a record, and then we need to question
12   the photographer.
13          MR. KRIEGER:  Yes, but could we have like a two minute
14   bathroom break?
15          THE COURT:  Sure.
16          (Recess)
17          THE COURT:  OK.  Let me talk about arrests.  First, I
18   think the initial offer with respect to arrests was that it
19   affected plaintiff's credibility, and then as your second
20   tranche it was that she knew all about seatbelts in patrol
21   wagons.  Do you need a ruling on both or just on seatbelts?
22          MR. LAX:  At this point I don't think we need a
23   ruling.  I think we understand the Court's ruling.
24          THE COURT:  Well, the Second Circuit might not.  They
25   insist on very long 403 rulings.

IBJ7TAR7

1        MR. LAX:  OK.

2        THE COURT:  I'm sorry to bore you.

3        MR. LAX:  We just didn't want to take the Court's
4   time.

5        THE COURT:  I appreciate your desire to help me save
6   time.

7        With respect to the probative value of the plaintiff's
8   other Occupy Wall Street arrests or other arrests in general,
9   my view is that they've not been shown by defense counsel to
10  have any probative value other than the argument made with
11  respect to seatbelts.  And, as we heard, the plaintiff
12  testified that she had no knowledge of seatbelts in patrol
13  vans.

14       My 403 ruling is that given the slight, if any,
15  relevance of her other arrests -- maybe I better hear counsel
16  on what was the probative value of her other arrests.  I'm
17  sorry.

18       MR. LAX:  Your Honor, I think we laid it out in our
19  submissions, so I think the record is clear, but just briefly
20  we were arguing under 404(b) that there was established
21  knowledge about the circumstances of what is and what is the
22  design and layout of the interior of a prison transport.  We
23  were also asserting under 404(b) that because plaintiff's claim
24  throughout her testimony today and then in opening was that she
25  didn't know she was being arrested and she wasn't trying to

IBJ7TAR7

1    flee, we thought that that is appropriate rebuttal evidence
2    that since she had been arrested earlier in the day it would
3    give her a motive to try and resist and to try and flee.  So
4    that was the 404 bases that we had asserted.
5         As we've said several times we also think because of
6    the nature of the emotional injuries she is claiming, that
7    those arrests were proper to rebut her claim for damages.
8         THE COURT:  In other words, that she did not suffer
9    emotional damage from one arrest given that it was one among
10   many?
11        MR. LAX:  I suppose in part that's true, but also just
12   the claim was that she was having nightmares about being
13   trapped and things like that, and that we believe sort of as a
14   Rule 608 type analysis the fact that she had been arrested on
15   subsequent occasions, sometimes I think there was testimony at
16   the deposition that it was once a month -- or once a week in
17   June -- and her entire attitude about it was probative of her
18   lack of emotional injury.
19        THE COURT:  I have allowed in subsequent arrests.
20   What I was ruling out were prior arrests.
21        MR. LAX:  OK.
22        THE COURT:  You heard her testify about subsequent
23   arrests.
24        MS. GOYKADOSH:  Sorry, your Honor.  That wasn't clear
25   to me.  I thought I wasn't allowed to talk about any arrests.

IBJ7TAR7

1    She did testify about going to protests, but I didn't ask her
2    about any arrests after, because I thought --
3             THE COURT:  You're free to do that if you wish to.
4             MS. GOYKADOSH:  Thank you, your Honor.
5             THE COURT:  She can be recalled if you wish to do
6    that.
7             All right.  I understand your arguments with respect
8    to relevance.  I think you have made a moderately good showing
9    on that front, but that the prejudice from a jury hearing how
10   often she had been arrested I think makes her look like a
11   recidivist criminal, and hence I rule it out under Rule 403 as
12   being unduly and unfairly prejudicial.
13            OK.  Mr. Krieger, you wanted to make your record.
14            MS. SMITH:  Yes, your Honor.
15            THE COURT:  Or shall we have the photographer?
16            MS. SMITH:  May I with respect to the arrests?  Is it
17   your Honor's ruling that an arrest subsequent to what point are
18   permissible for counsel to inquire?
19            THE COURT:  Well, I have to hear what people want.
20   First I have to hear what the proffer is, and then I will rule.
21            MS. SMITH:  Because --
22            THE COURT:  There is a different rationale for
23   subsequent arrests.
24            MS. SMITH:  Understood.  I do believe that still with
25   respect to the line of case law that counsel has cited as to

1   its relevancy, because we're not claiming emotional pain and
2   suffering associated with false arrests, that subsequent
3   arrests would still be unduly prejudicial.  The same rationale
4   your Honor cited with respect to this implication of a
5   recidivist criminal would certainly hold true for arrests after
6   this incident.
7          THE COURT:  Well, the difference is -- excuse me for
8   interrupting, but the difference is is her willingness to
9   sustain subsequent arrests suggests that she's willing to
10  undergo the same amount of pain again and again willingly, in
11  other words, she is prepared to be arrested again and
12  presumably night terrors and nightmares might get worse.  I
13  will hear you on it when I hear the proffer.  I think she
14  should get the photographer in now.  Who would like to get her?
15         MR. LAX:  I think she is in the back.
16         THE COURT:  Oh, please come forward.  You call?
17         MR. LAX:  At this time defense calls Stacy Lanyon for
18  voir dire purposes.
19         THE COURT:  Thank you.  Ms. Lanyon, please raise your
20  right hand.
21         (.
22   STACEY LANYON,
23       called as a witness by the defendant,
24       having been duly sworn, testified as follows:
25         THE COURT:  Please have a seat.  Please state your