UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------x

MARY M. TARDIF,

                                     Plaintiff,

              -against-                        13 CV 4056 (KMW)(KNF)

CITY OF NEW YORK, SERGEANT THOMAS MCMANUS,
IN HIS INDIVIDUAL AND OFFICIAL CAPACITY,
Defendants-Appellees, NEW YORK CITY POLICE
DEPARTMENT, DEPUTY COMMISSIONER JOHN
O'CONNELL, DEPUTY INSPECTOR DANIEL MULLIGAN,
DEPUTY INSPECTOR EDWARD WINSKI, POLICE
OFFICER JAMES MCNAMARA, POLICE OFFICER ALENA
AMINOVA, POLICE OFFICER KENDAL CREER, POLICE
OFFICER MARSHA RUMBLE, POLICE OFFICER FELIX
SCHMIDT, JOHN DOE, NYPD OFFICERS #1-13, JOHN DOE,
NYPD OFFICERS #1-11, JOHN DOE, NYPD OFFICERS #1-9,
JOHN DOE, NYPD OFFICER #11,

                                 Defendants.

-----------------------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTIONS *IN LIMINE*


**HON. SYLVIA HINDS-RADIX**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendants*
100 Church Street
New York, New York 10007

By:    JOSHUA J. LAX, ESQ.
           *Senior Counsel*
           Special Federal Litigation Division
           (212) 356-3538

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT

      POINT I

            THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES, RANGA C. KRISHNA, M.D., GREGORY LAWLER, M.D., LINDA LAJTERMAN, AND MARK P. ZAPOROWSKIM, SHOULD BE PRECLUDED ....................................................... 2

            A.  Background and Legal Standard ........................................................ 2

            B.  The Experts Opinions Are Not Reliable ............................................ 5

            C.  The Proffered Opinions and Testimony Are Not Helpful or Relevant ..................................................... 9

      POINT II

            PLAINTIFF SHOULD BE BARRED FROM PRESENTING HER NEW TRAUMATIC BRAIN INJURY CLAIM BECAUSE SHE DOES HAVE NOT COMPETENT EVIDENCE NOR DID SHE PROPERLY COOPERATE IN DISCOVERY ....................................... 12

      POINT III

            THE JURY SHOULD LEARN THAT PLAINTIFF CLAIMED OTHER OFFICERS CAUSED HER INJURY AND THOSE CLAIMS WERE REJECTED ............................................................................ 14

      POINT IV

            PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO THE CITY OF NEW YORK ....................................... 15

**Page**

POINT V

      PLAINTIFF SHOULD BE PRECLUDED FROM
      REFERRING TO THE CITY OF NEW YORK ...................................... 17

POINT VI

      PLAINTIFF SHOULD BE PRECLUDED FROM
      CALLING STEPHANIE SHOCKLEY .................................................... 20

POINT VII

      PLAINTIFF SHOULD BE PRECLUDED FROM
      OFFERING EVIDENCE FOR HER
      ABANDONED JOHN DOE CLAIMS ..................................................... 20

POINT VIII

      THE COURT SHOULD ADHERE TO ITS PRIOR
      RULING ON PLAINTIFF'S OTHER ARRESTS
      AND CONVICTIONS ............................................................................ 21

POINT IX

      PLAINTIFF SHOULD BE PRECLUDED FROM
      ELICTING TESTIMONY OR ARGUING ABOUT
      OTHER INSTANCES OF ALLEGED POLICE
      ACTIONS RELATED TO THE OCCUPY WALL
      STREET MOVEMENT ........................................................................... 21

POINT X

      PLAINTIFF SHOULD BE PRECLUDED FROM
      ELICTING TESTIMONY OR ARGUING ABOUT
      OTHER INSTANCES OF ALLEGED POLICE
      ACTIONS GENERALLY ....................................................................... 22

POINT XI

      PLAINTIFF SHOULD BE PRECLUDED FROM
      ARGUING ABOUT WHAT DEFENDANTS
      COULD OR SHOULD HAVE DONE ......**Error! Bookmark not defined.**

**Page**

POINT XII

      DEFENDANTS  RESERVE  THEIR  RIGHT  TO
      FILE SUPPLEMENTAL MOTIONS *IN LIMINE* ................................. 244

CONCLUSION....................................................................................................... 24

## TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                                                                    **<u>Pages</u>**

<u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>,
    303 F.3d 256 (2d Cir. 2002)....................................................................................6, 7

<u>Astra Aktiebolag v. Andrx Pharms., Inc.</u>,
    222 F. Supp. 2d 423 (S.D.N.Y. 2002)..........................................................................5

<u>Blake v. City of New York</u>,
    05 Cv. 6652 (BSJ), 2007 U.S. Dist. LEXIS 95913
    (S.D.N.Y. July 13, 2007) ...........................................................................................15

<u>Bornstein v. Monmouth Cty. Sheriff's Office</u>,
    658 Fed. App'x 663 (3d Cir. 2016) ............................................................................18

<u>Boucher v. United States Suzuki Motor Corp.</u>,
    73 F.3d 18 (2d Cir. 1996) .........................................................................................6, 7

<u>Bourjaily v. United States</u>,
    483 U.S. 171 (1987)....................................................................................................5

<u>Bradley v. City of Ferndale</u>,
    148 Fed. App'x 499 (6th Cir. 2005) ..........................................................................18

<u>Bridgeway Corp. v. Citibank</u>,
    201 F.3d 134 (2d Cir. 2000).........................................................................................6

<u>Daubert v. Merrell Dow Pharms., Inc.</u>,
    509 U.S. 579 (1993)..............................................................................3, 4, 5, 6, 7, 8, 10

<u>DeRienzo v. Metro. Transp. Auth.</u>,
    694 F. Supp. 2d 229 (S.D.N.Y. 2010) (Leisure, J.) ....................................................8

<u>Desmond v. City of New York</u>,
    88 N.Y.2d 455, 669 N.E.2d 472, 646 N.Y.S.2d 492 (1996).....................................19

<u>Gen. Elec. Co. v. Joiner</u>,
    522 U.S. 136 (1997)....................................................................................................6

<u>Giles v. Rhodes</u>,
    No. 94 Civ. 6385 (CSH), 2000 U.S. Dist. LEXIS 13980
    (S.D.N.Y. Sept. 26, 2000)............................................................................................5

<u>Graham v. Connor</u>,
    490 U.S. 386 (1989)..................................................................................................18

**Cases**                                                                                            **Pages**

Greenidge v. Ruffin,
    927 F.2d 789 (4th Cir. 1991) .................................................................................18

Highland Capital Mgmt., L.P. v. Schneider,
    379 F. Supp. 2d 461 (S.D.N.Y. 2005)...................................................................11

Estate of Jaquez v. City of New York.,
    104 F. Supp. 3d 414 (S.D.N.Y. 2015)..............................................................4, 6, 7

Jean-Laurent v. Hennessy,
    840 F. Supp. 2d 529 (E.D.N.Y. 2011) ..................................................................16

Kumho Tire Co., Ltd. v. Carmichael,
    526 U.S. 137 (1999)......................................................................................4, 5, 6

Lippe v. Bairnco Corp.,
    288 B.R. 678 (S.D.N.Y. 2003)................................................................................5

Major League Baseball Props., Inc. v. Salvino, Inc.,
    542 F.3d 290 (2d Cir. 2008).........................................................................3, 6, 7

Matthews v. Hewlett-Packard Co.,
    No. 15-CIV. 3922 (DAB), 2017 U.S. Dist. LEXIS 214075,
    2017 WL 6804075 (S.D.N.Y. Dec. 2017) (Batts, J.)................................................8

Nimely v. City of New York,
    414 F.3d 381 (2d Cir. 2005).......................................................................4, 6, 10

In re Rezulin Prods.,
    309 F. Supp. 2d at 541 .........................................................................................11

Romero v. Bd. Of Cty. Comm'rs,
    60 F.3d 702 (10th Cir. 1995) ...............................................................................19

Salim v. Proulx,
    93 F.3d 86 (2d Cir. 1996) .....................................................................................18

Schumer v. Caplin,
    241 N.Y. 346, 150 N.E. 139 (1925)......................................................................19

Shatkin v. McDonnell Douglas Corp.,
    727 F.2d 202 (2d Cir. 1994)...................................................................................7

Simpson v. City of New York,
    No. 12 Civ 6577 (KBF), 2015 U.S. Dist. LEXIS 138723
    (S.D.N.Y. Oct. 9, 2015) ..................................................................................15, 16

**Cases**                                                                                   **Pages**

Smith v. City of New York,
　No. 12 Civ. 4922 (NRB), 2015 U.S. Dist. LEXIS 102669
　(S.D.N.Y. Aug. 4, 2015) ................................................................................19

Smith v. Freland,
　954 F.2d 343 (6th Cir. 1992) ..........................................................................18

Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.),
　489 F. Supp. 2d 230 (E.D.N.Y. 2007) ................................................6, 9, 10, 11

Stern v. Shammas,
　No. 12 Civ. 5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879
　(E.D.N.Y. July 27, 2015) ...............................................................................16

Tardif v. City of New York,
　344 F. Supp. 3d 579 (S.D.N.Y. 2018)........................................................8, 15, 20

United States v. Amuso,
　21 F.3d 1251 (2d Cir. 1994)............................................................................11

United States v. Castillo,
　924 F.2d 1227 (2d Cir. 1991)...........................................................................10

United States v. Duncan,
　42 F.3d 97 (2d Cir. 1994) ...............................................................................11

United States v. Mulder,
　273 F.3d 91 (2d Cir. 2001)..........................................................................10, 11

United States v. Williams,
　506 F.3d 151 (2d Cir. 2007).............................................................................4, 5

Williams v. McCarthy,
　No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151
　(S.D.N.Y. Oct. 25, 2007) ...............................................................................16

Woods v. Jefferson Cty Fiscal Court,
　2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003)......................................18

**Statutes**

Fed. R. Civ. P. 37.............................................................................................13

Fed. R. Evid. 104(a)...........................................................................................5

Fed. R. Evid. 401 .......................................................................................10, 18

**Statutes**                                                                        **Pages**

Fed. R. Evid. 402 ...............................................................................17, 18, 20, 23

Fed. R. Evid. 403 .........................................................................10, 17, 20, 22, 23

Fed. R. Evid. 701(c) ............................................................................... 12-13

Fed. R. Evid. 702 ...........................................................................4, 6, 7, 9, 10, 11

Fed. R. Evid. 703 ............................................................................................7

Fed. R. Evid. 801(c) ....................................................................................22

§ 1983............................................................................................18, 19

## PRELIMINARY STATEMENT

Following a defense verdict and an appeal where plaintiff was largely unsuccessful, the Second Circuit remanded this matter for a new trial on one narrow issue: Whether the City of New York is liable for an assault and battery plaintiff alleges was committed by then Sergeant Giovani Mattera on March 21, 2012.  With regard to all other claims, defendants either prevailed at trial, defendants prevailed on appeal, or plaintiff abandoned those claims on appeal. Following the remand, plaintiff announced for the first time approximately nine years later that she experienced a traumatic brain injury as the result of the March 21, 2012 encounter with then Sergeant Mattera.

Defendants submit this memorandum of law in support of their motion seeking the following *in limine* relief: (1) testimony and evidence from plaintiff's experts should be precluded; (2) plaintiff should be barred from presenting her new traumatic brain injury claim based the exclusion of her experts and her unwillingness to cooperate in discovery; (3) to the extent this damages theory is allowed, adverse findings on plaintiff's other claims for excessive force, injuries, and trauma should be before the jury; (4) plaintiff should be barred from referring to the City of New York or to defense counsel as City attorneys; (5) evidence concerning the NYPD Patrol Guide should be precluded; (6) precluding evidence about John Does Number 8 and 9; (7) precluding Stephanie Shockley from testifying at trial; (8) the Court should adhere to its prior ruling that plaintiff's subsequent arrests and convictions are admissible; (8) eliciting testimony or arguing about other alleged instances of police misconduct related to Occupy Wall Street concerning plaintiff; (9) eliciting testimony or arguing about other alleged instances of police misconduct concerning plaintiff generally; (10) introducing testimony or argument about defendants' interactions with other arrestees; and (11) arguing about what Sergeant Mattera could

have or should have done. Plaintiff should be required to adhere to her prior stipulations on *in limine* issues in advance of the first trial.[1]

## ARGUMENT

### POINT I

### THE TESTIMONY OF PLAINTIFF'S EXPERT WITNESSES, RANGA C. KRISHNA, M.D., GREGORY LAWLER, M.D., LINDA LAJTERMAN, AND MARK P. ZAPOROWSKIM, SHOULD BE PRECLUDED

**A.    Background and Legal Standard**

Following the remand by the Second Circuit, the Court permitted plaintiff develop a new theory of damages.  Plaintiff claims she sustained a traumatic brain injury on March 21, 2012, the symptoms of which arose in November 2020.  To support this claim, plaintiff offers two experts, R.C. Krishna, M.D., and Gregory Lawler, M.D.  Dr. Krishna purports to have examined plaintiff and reviewed a selection of medical records from 2009 to present.  Dr. Krishna opines on plaintiff's condition at the time of his examination and review. Dr. Krishna concludes, however, with no explanation, that plaintiff's injury is causally related to the incident on March

---

[1] Plaintiff stipulated that:

- Plaintiff will not argue any failed theories of liability.
- Plaintiff will not suggest that the individual defendants will be indemnified by the City of New York.
- Plaintiff will not suggest any dollar amount for damages to the jury.
- Plaintiff will not introduce evidence about the exacerbation of her epilepsy.
- Plaintiff will not mention her epilepsy or seizures when testifying about the March 21, 2012 incident.
- Plaintiff will not elicit testimony or argue about other instances of alleged police misconduct, against persons other than plaintiff, related to the Occupy Wall Street movement.
- Plaintiff will not elicit testimony or argue about other instances of alleged police misconduct, against persons other than plaintiff, generally.
- Plaintiff will not inquire about defendants' disciplinary histories.

Therefore, defendants do not move on these issues.

21, 2012.  (See Report of R.C. Krishna, Undated, Plaintiff's Expert Reports, annexed to the Declaration of Joshua J. Lax, Esq. as Exhibit "A" ("Krishna Report"), at p. 6).  Dr. Lawler appears to have conducted imaging of plaintiff's brain and something referred to as "DTI," which is not explained anywhere in his report, or the data he relies on to reach any conclusion on the "DTI."  Dr. Lawler provides no opinion on causation.  (See Radiology Report, dated September 6, 2021, Plaintiff's Expert Reports, annexed to the Declaration of Joshua J. Lax, Esq. as Exhibit "A" ("Lawler Report"), at p. 1).  Plaintiff's third expert is a life care plan expert, who largely relies on Dr. Krishna's report as a basis to calculate costs of projected medical care.  . (See Report of Linda Lajterman, dated September 6, 2021, Plaintiff's Expert Reports, annexed to the Declaration of Joshua J. Lax, Esq. as Exhibit "A" ("Lajterman Report"), p. 7-9).  Lajterman makes a number of conclusions about plaintiff's future medical needs, but it is unclear what the basis for her opinions for medication costs are based on.  (Ibid).  Finally, plaintiff offers a table by an economist for the total future life care expenses, which is derivative of the Lajterman report.  (See Report of Mark P. Zaporowski, dated September 7, 2021, Plaintiff's Expert Reports, annexed to the Declaration of Joshua J. Lax, Esq. as Exhibit "A" ("Lajterman Report"), p. 2). Zoporowski makes certain assumptions about the growth of certain costs year to year based "on an analysis of pas Consumer Price Index inflation data," but fails to provide that analysis or the specific data relied on to do that analysis.  (Ibid).

The Supreme Court has assigned to district courts a "gatekeeping" role with respect to expert opinion testimony.  Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993) (holding that it is the district court's responsibility to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable").  See also Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008).  This "gatekeeping" function applies

whether the expert testimony is based on scientific, or on technical or "other specialized" knowledge.  Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999).  "The 'overarching subject' of the Rule 702 inquiry is 'the evidentiary relevance and reliability—of the principles that underlie a proposed submission.  The focus, of course, must be solely on principles and methodology, not on the conclusions they generate.'"  Estate of Jaquez v. City of New York., 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), quoting Daubert, 509 U.S. at 595.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The Court's inquiry to determine whether a proposed expert's testimony passes muster under Rule 702 therefore focuses on three issues:  (1) whether the witness is qualified to be an expert; (2) whether the opinion is based upon reliable data and methodology; and (3) whether the expert's testimony on a particular issue will assist the trier of fact.  Nimely v. City of New York, 414 F.3d 381, 396-97 (2d Cir. 2005).

The party seeking to rely on expert testimony—plaintiff here—bears the burden of establishing a preponderance of the evidence, that all the requirements have been met.  See Daubert, 509 U.S. at 593, n.10; United States v. Williams, 506 F.3d 151, 160 (2d Cir. 2007).  "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied."  Pension Comm., 691 F.

4

Supp. 2d at 468 n.111 (quoting <u>United States v. Williams</u>, 506 F.3d 151, 161 (2d Cir. 2007)).

<u>See also</u> <u>Lippe v. Bairnco Corp.</u>, 288 B.R. 678, 685 (S.D.N.Y. 2003) ("It is the proponent's

burden to establish admissibility, rather than the opponent's burden to establish inadmissibility."

(internal citations omitted)); <u>Astra Aktiebolag v. Andrx Pharms., Inc.</u>, 222 F. Supp. 2d 423, 487

(S.D.N.Y. 2002) (citing Fed. R. Evid. 104(a) and <u>Bourjaily v. United States</u>, 483 U.S. 171, 175-

76 (1987)); <u>Giles v. Rhodes</u>, No. 94 Civ. 6385 (CSH), 2000 U.S. Dist. LEXIS 13980, at *61

(S.D.N.Y. Sept. 26, 2000) (proponent of expert testimony bears the burden of demonstrating that

it is "competent and reliable").   For the reasons described <i>infra</i>, plaintiff fails to meet this

burden.[2]

## B.  The Experts Opinions Are Not Reliable

The Court must ensure that the witness is proposing to testify to knowledge that both

"rests on a reliable foundation and is relevant to the task at hand."  <u>Daubert</u>, 509 U.S. at 597.  In

<u>Daubert</u>, the Supreme Court identified factors that may bear upon the reliability of proposed

scientific testimony, including: (1) whether the theory or technique can be, and has been, tested;

(2) whether it has been subjected to peer review and publication; (3) the known or potential error

rate of the technique; (4) the existence and maintenance of standards controlling the technique's

operation; and (5) whether the technique or theory has gained widespread acceptance in the

relevant scientific community.  <u>Daubert</u>, 509 U.S. at 593-94 (noting that these factors do not

constitute "a definitive checklist or test").  In <u>Kumho</u>, the Supreme Court held that a court may

apply the <u>Daubert</u> factors, as appropriate, in cases dealing with technical or "other specialized,"

but non-scientific testimony.  <u>Kumho</u>, 526 U.S. at 141.

---

[2] This motion focuses on the reliability of plaintiff's expert's opinions, but defendant reserves the
right to raise additional objections based on subsequent rulings and evidence.

At the same time, under the court's "gatekeeping" function, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho, 526 U.S. at 152. "Subjective methodology, as well as testimony that is insufficiently connected to the facts of the case" can serve as "grounds for rejection of expert testimony." Souther v. Eli Lilly & Co. (In re Zyprexa Prods. Liab. Litig.), 489 F. Supp. 2d 230, 284 (E.D.N.Y. 2007).

The Supreme Court has stressed that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. Even "otherwise qualified experts may not simply offer conclusory opinions." Jaquez, 104 F. Supp. 3d at 426, citing Major League Baseball, 542 F.3d at 311; Bridgeway Corp. v. Citibank, 201 F.3d 134, 142 (2d Cir. 2000). "Conclusory opinions are a form of 'ipse dixit,' and often provide an insufficient basis upon which to assess reliability." Jaquez, 104 F. Supp. 3d at 426, citing Nimely, 414 F.3d at 396.

A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997). See also Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008) (holding that expert testimony should be excluded when it is "speculative or conjectural" (quoting Boucher v. United States Suzuki Motor Corp., 73 F.3d 18, 21 (2d Cir. 1996))). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, Daubert and Rule 702 mandate the exclusion of that unreliable opinion testimony." Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 266 (2d Cir. 2002).

"Furthermore, an opinion that is speculative or conjectural does not satisfy Rule 702 and should be excluded." Jaquez, 104 F. Supp. 3d at 427, citing Daubert, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation."); Major League Baseball, 542 F.3d at 311. "While the Daubert inquiry is 'flexible' and intended to give the Court the 'discretion needed to ensure that the courtroom door remains closed to junk science,' […] to warrant admissibility, 'it is critical that an expert's analysis be reliable at every step.'" Jaquez, 104 F. Supp. 3d at 427, quoting Amorgianos 303 F.3d at 267 (2d Cir. 2002).

Expert testimony should be excluded if it is speculative or conjectural. Boucher v. U.S. Suzuki Motor Corp., 73 F.3d 18, 21 (1996). A district court has discretion under Rule 703 "to determine whether the expert acted reasonably in making assumptions of fact upon which he would base his testimony." Silvestro, 2009 U.S. Dist. LEXIS 134117, at *7, quoting Shatkin v. McDonnell Douglas Corp., 727 F.2d 202, 208 (2d Cir. 1994). Here, each of the purported experts opinions are not reliable.

With regard to Dr. Krishna, he concludes that plaintiff has a traumatic brain injury and that it was caused nine years before on March 21, 2012. The report is devoid of any discussion of the method or science by which Dr. Krishna arrived at that conclusion. Dr. Krishna merely asserts that plaintiff's current symptoms are causally related to the incident on March 21, 2012. Dr. Krishna identifies no actual data or information he used to arrive at his conclusion other than plaintiff's own statements to him. This is not an expert opinion; rather, it is repeating plaintiff's claim and improperly vouching for her credibility.

Similarly, Dr. Lawler refers to testing, the results of which he does not include nor does he explain how he arrived at his conclusions from the underlying data. Dr. Lawler simply asserts that plaintiff has a T2 Hyperintensity that is the result of trauma, but fails to explain how he

arrives at that conclusion.  In other words, both doctors offer *ispe dixit* conclusions with no supporting scientific methodoly.

Further, neither doctor addresses any other potential cause of this injury.  As this Court has noted  in a prior decision in the matter, """While an expert need not rule out every potential cause in order to satisfy Daubert, the expert's testimony must at least address obvious alternative causes and provide a reasonable explanation for dismissing specific alternate factors identified by the defendant.""  Tardif v. City of New York, 344 F. Supp. 3d 579, 601 (S.D.N.Y. 2018) (*quoting* Matthews v. Hewlett-Packard Co., No. 15-CIV. 3922 (DAB), 2017 U.S. Dist. LEXIS 214075, 2017 WL 6804075, at *5 (S.D.N.Y. Dec. 2017) (Batts, J.) (*quoting* DeRienzo v. Metro. Transp. Auth., 694 F. Supp. 2d 229, 236 (S.D.N.Y. 2010) (Leisure, J.)).  "The requirement that an expert rule out obvious alternative causes is often met through the use of a differential diagnosis, which apparently was not performed here."  (Ibid).  Neither attempted to rule out alternative causes or perform a differential diagnosis.

Here, alternative causes abound.  Indeed, plaintiff claimed at least four other instances alone of head trauma.  Plaintiff claimed she was pushed over later the same day by another police sergeant; she claimed that in one incident on Wall Street on April 16, 2012 an officer slammed her head into a wall, yanked her head back by her hair, and that she was thrown to the ground during that incident; plaintiff also claimed she had a seizure and started vomiting while rolling around on the floor of a police van.[3]  Plaintiff also claimed she collapsed in a police cell following her March 17, 2012 arrest.  Tardif v. City of New York, 991 F.3d 394, 399 (2d Cir. 2021).  More recently, plaintiff testified that she fell in 2019 during a seizure and was told she hit her head on a chair. (Deposition of Mary Tardif, dated January 18, 2022, annexed to the Lax

---

[3] As discussed infra, plaintiff's counsel would not let plaintiff discuss these other incidents and why she does not believe them to also be a cause at plaintiff's most recent deposition.

Declaration as Exhibit "B" ("Plaintiff Dep."), p. 62:15-63:8).  Similarly, plaintiff reported a mild concussion from being hit with a surf board one month before the symptoms her current damages claim is based on began.  (See UCLA Medical Record, dated November 23, 2020, annexed to the Lax Declaration as Exhibit "C").  Finally, neither doctor addresses plaintiff's history of epilepsy or past drug use as alternative causes.  For these reasons, neither doctor's opinions is reliable, and therefore, inadmissible.

Lajterman and Zaporowski's opinions are derivative of the doctors, particularly Dr. Krishna, and since the doctor's opinions are inadmissible these two expert's opinions should be precluded.  In addition, Lajterman's opinions are based on recommendations by Dr. Krishna that have no basis in anything other than conjecture, and Lajterman admits that plaintiff's actual doctors refused to contribute to Lajterman's report.  Further, Lajterman fails to provide any method she used to arrive at her calculations, in particular with regard to the cost of medication and household support. For these reasons, Lajterman's opinions should be precluded.

Finally, Zaporowski fails to provide the method by with he arrived at the annual growth in prices for the various categories he addresses.  He only states generally that he performed an analysis of Consumer Price Index Inflation data, but fails to explain any aspect of which data he used, any assumptions he made, or the calculations of the data he employed.  He simply states a conclusion as to what he believes the annual rate will be.  Here again, plaintiff offers an expert report that is merely a conclusion with no indication of the method employed.  As a result, this expert should also be precluded.

## C.     The Proffered Opinions and Testimony Are Not Helpful or Relevant

Plaintiff must also demonstrate that the expert testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. This inquiry essentially looks to whether the testimony is relevant.  See In re Zyprexa, 489 F. Supp. 2d at 283.

Under the Federal Rules of Evidence, evidence is relevant if it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401.  See also Daubert, 509 U.S. at 591-92 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility").  This is the "primary issue." In re Zxprexa, 489 F.Supp. 2d at 282.

A court should not admit expert testimony that is "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help."  United States v. Mulder, 273 F.3d 91, 104 (2d Cir. 2001) (quoting United States v. Castillo, 924 F.2d 1227, 1232 (2d Cir. 1991)).  Furthermore, "expert testimony may not usurp the province of the judge to instruct on the law, or of the jury to make factual determinations." Travelers Ind. Co., 2014 U.S. Dist. LEXIS 14981, at *11 (citations omitted).

Expert testimony must also adhere to the other Federal Rules of Evidence, including Rule 403, which provides that relevant evidence may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." FED. R. EVID. 403.  The Rule 403 inquiry is particularly important in the context of expert testimony, "given the unique weight such evidence may have in a jury's deliberations." Nimely, 414 F.3d at 397.  See Daubert, 509 U.S. at 595 ("'Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'"  (quoting Jack B.

Weinstein, Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended, 138 F.R.D. 631, 632 (1991)).

"Expert testimony should not merely reiterate arguments based on inferences that can be drawn by laypersons; those can properly be advanced by the parties in their summations.  Neither should it include conclusory testimony that 'undertakes to tell the jury what result to reach . . . [or] attempts to substitute the expert's judgment for the jury's." In re Zyprexa, 489 F. Supp. 2d at 283, quoting United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994).  "Freely admitted is expert testimony that is likely to substantially assist the average person in understanding the case--even if it simply explains facts and evidence already in the record." In re Zyprexa, 489 F. Supp. 2d at 283, citing Mulder, 273 F.3d at 101-02.

It is not appropriate for an expert to present a mere "narrative of the case which a juror is equally capable of constructing." In re Rezulin, at 551 (internal citation omitted); accord Highland Capital Mgmt., L.P. v. Schneider, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).  Factual narratives by experts have been excluded on the grounds that they "supplant the role of counsel in making argument at trial or the role of the jury in interpreting the evidence." In re Rezulin Prods., 309 F. Supp. 2d at 541 (citation omitted).  "An expert who simply regurgitates what a party has told him provides no assistance to the trier of fact through application of specialized knowledge." Arista Records, 608 F. Supp. 2d at 424-25.  The Second Circuit has noted that "[a] district court may commit *manifest error* by admitting expert testimony where the evidence impermissibly mirrors the testimony offered by fact witnesses, or the subject matter of the expert's testimony is not beyond the ken of the average juror." United States v. Amuso, 21 F.3d 1251, 1263 (2d Cir. 1994) (emphasis added).

Here, Dr. Krishna, in opining on causation, is merely parroting plaintiff's claim without any underlying support.  Further, the lack of any methodology renders this testimony useless as far as helping the trier of fact understand the evidence.  Dr. Lawler's opinions are similarly devoid of any indication as to how he concludes plaintiff's condition is due to trauma.  Since both doctors chose to ignore the differential diagnosis, neither can help the jury understand how plaintiff's condition suddenly manifested itself eight and one half years after the incident supposedly causing the injury.

Moreover, since neither doctor can link plaintiff's current condition to an incident eight and one half years prior, whatever their other opinions are about plaintiff now are not relevant in this trial.  For this reason, plaintiff's life care and economist evidence is also irrelevant and not reliable.  Lajterman and Zaporowski should also be precluded as witnesses because they are derivative of Dr. Krishna's inadmissible opinions.

### POINT II

**PLAINTIFF SHOULD BE BARRED FROM PRESENTING HER NEW TRAUMATIC BRAIN INJURY CLAIM BECAUSE SHE DOES NOT HAVE COMPETENT EVIDENCE NOR DID SHE PROPERLY COOPERATE IN DISCOVERY**

Because plaintiff's only evidence supporting her new damages claim is the inadmissible opinions and testimony discussed in Point I, *supra*, plaintiff has no other admissible evidence that links her current symptoms with the incident on March 21, 2012.  Plaintiff testified that the symptoms supporting her new damages claim began in November 2020.  (Plaintiff Dep. at p. 22:19-24:16).  Indeed, discovery was reopened following the remand because plaintiff's counsel represented they had no way of knowing about this potential avenue of recovery.  (See e.g. Docket Entry No. 373).  In these circumstances, plaintiff is not competent to testify under FED.

12

R. EVID. 701(c) because such opinion testimony requires specialized knowledge, which plaintiff does not have.

In addition, plaintiff should be precluded from presenting this damages theory under FED. R. CIV. P. 37. At plaintiff's deposition, defendants tried to explore how plaintiff will explain how she sustained the injury that she now says caused traumatic brain injury and why other instances of potential head trauma were not potential causes of plaintiff traumatic brain injury. Plaintiff's counsel instructed the plaintiff not to answer. Defendant was not able to find out if plaintiff continues to claim that she had an impact with head during these other instances. (Plaintiff Dep. at pp. 25:9-26:1, 59:6-60:7, 61:4-8,. 67:4-11, and 68:2-69:10). After correspondence on this issue and a conferral by the parties, plaintiff's counsel agreed to reproduce plaintiff to answer these questions. The deposition was planned for February 8, 2022, and confirmed the day before on February 7, 2022. About a half hour before the deposition was scheduled to start, plaintiff's counsel cancelled the deposition to an emergency on plaintiff's part and promised to provide a new date in the next several days. No new proposal came, and defendant asked plaintiff for additional dates by electronic mail on February 17, 2022. Plaintiff's counsel asked for defendant's availability on February 23, 2022 for the subsequent two weeks, which was provided on February 25, 2022, but no deposition has been scheduled. If plaintiff is reproduced, defendant will so state in their reply, and withdraw the Rule 37 grounds from this motion.

Counsel instructed their client not to answer legitimate lines of inquiry which they later conceded should have been answered. Plaintiff now is not cooperating in this discovery, causing unfair prejudice to defendants. As a result, plaintiff should be precluded from presenting her new damages claim.

**POINT III**

**THE JURY SHOULD LEARN THAT PLAINTIFF CLAIMED OTHER OFFICERS CAUSED HER INJURY AND THOSE CLAIMS WERE REJECTED**

As noted above, plaintiff claimed numerous instances where she was either mistreated by police or subjected to excessive force in circumstances causing impacts or injuries to her head. Defendants intend to use these other claims to attack the credibility of plaintiff's current assertion that the March 21, 2021 incident and only that incident are the cause of her current symptoms. This evidence is probative of plaintiff's credibility on this essential issue for several reasons. First, the fact that plaintiff made numerous claims that were ultimately rejected in the years between March 21, 2021 and the remand in this case helps explain why plaintiff asserted in this litigation for the first time that she had a traumatic brain injury that was only caused by this incident. Without this history, plaintiff would allowed to leave the impression that this was all part of the natural progression of the case as opposed to a new avenue of recovery formulated once all others had been foreclosed. In addition, the fact that plaintiff made claims for excessive force with injuries concerning her head that were ultimately found to be unsupported go to plaintiff's credibility in this matter. The extent to which she made claims about police officers that were rejected also demonstrates her bias and motivation to bring this case. For these reasons, the adverse findings on plaintiff's other claims should be presented to the jury in the new trial.

## POINT IV

## PLAINTIFF SHOULD BE PRECLUDED FROM REFERRING TO THE CITY OF NEW YORK

Following the remand, the only remaining claim is a state law claim is a state law claim of *respondeat superior* against the City of New York based on Sergeant Mattera's alleged actions on the March 21, 2012.  Tardif, 991 F.3d at 418.  Thus, the focus in this matter is on Sergeant Mattera, as his actions are the only basis to find liability against the City.  Moreover, in the first trial the jury was never asked to make a determination based regarding the City of New York, only the actions of the individual officer.  As a result, there is no reason to reference the City of New York during the new trial.  See Blake v. City of New York, 05 Cv. 6652 (BSJ), 2007 U.S. Dist. LEXIS 95913, *5-6 (S.D.N.Y. July 13, 2007) (Because the individual defendants were acting within the scope of their employment when the events at issue took place, "should they be found liable no further determination need be made by the jury to establish plaintiffs' *respondeat superior* claim against the City and under these circumstances, referring to the City as a named defendant is unnecessary and could confuse the [j]ury").

Plaintiff should be precluded referring to defense counsel as "City attorneys."  This request is a "standard request in these types of actions" and the concerns underlying this request are "valid."  Simpson v. City of New York, No. 12 Civ. 6577 (KBF), 2015 U.S. Dist. LEXIS 138723, at *16 (S.D.N.Y. Oct. 9, 2015).  First, any reference would be inaccurate as it fails to account for the individual officer.  Second, referring to defense counsel as City attorneys would be prejudicial to the jury's consideration of the officer's actions, as it may create the impression that the City—often viewed as a deep pocket—will pay any potential verdict.  Thereby, the jury may not "critically" assess liability or damages.  Simpson, 2015 U.S. Dist. LEXIS 138723, at *16.

To offset this potential prejudice, defendants propose that defense counsel be identified as defense counsel or attorneys from the Corporation Counsel.  See Williams v. McCarthy, No. 05 Civ. 10230 (SAS), 2007 U.S. Dist. LEXIS 79151, at *24-25 (S.D.N.Y. Oct. 25, 2007).  Courts have routinely done this in several recent cases.  See e.g. Stern v. Shammas, No. 12 Civ. 5210 (NGG) (RER), 2015 U.S. Dist. LEXIS 97879, at *27 (E.D.N.Y. July 27, 2015); Jean-Laurent v. Hennessy, 840 F. Supp. 2d 529, 550 (E.D.N.Y. 2011).  Therefore, plaintiff should be precluded from referring to defense counsel as "City attorneys."

Should the jury be advised that the City of New York is a defendant under the circumstances presented herein it would be highly prejudicial to the individual defendants.  The simple fact that state law claims may remain does not in form a basis for why the jury should be constantly reminded that the City of New York is still a defendant in this case.  Moreover, as noted, whether or not the City of New York is a defendant under state law has no bearing on the jury's ultimate determination.

At the risk of speculation, plaintiff's insistence on endless references before the jury to the City of New York on the verdict sheet is so that the jury would be inclined to award plaintiff more money under the assumption that the City of New York is a "deep pocket" who can afford to pay a higher judgment than the individual officers would be able to on their own.  This would be highly prejudicial especially considering the fact that the mention of the City of New York is completely unnecessary in order for the jury to decide the claims at issue.  While the City of New York is still involved in this action for the purpose of a *respondeat superior* determination only, "that fact is irrelevant to the determination of liability and damages which should be based solely on the facts and law."  Simpson, 2015 U.S. Dist. LEXIS 138723, at *16.  Accordingly, the

jury should not be advised of the fact that the City of New York is a defendant beyond the limited need to give the name of the case at the start of the trial or on a caption cover-sheet.

Finally, as there is no claim for municipal liability in this action, plaintiff should be precluded from inquiring about any New York City Police Department training or from mentioning any alleged New York City Police Department policy or practice. Any inquiries or statement by plaintiff would be irrelevant, confuse the jury, and waste time. See FED. R. EVID. 402.

**POINT V**

**PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE CONCERNING THE NEW YORK CITY POLICE DEPARTMENT PATROL GUIDE**

Plaintiff should be precluded from referring to and offering any evidence of NYPD procedure or patrol guide provision. In this case—where plaintiff brings a federal civil rights lawsuit alleging a Fourteenth Amendment violation and not a Patrol Guide violation—the Constitution controls. The jury must determine whether plaintiff's constitutional rights were violated and not whether all parties complied with the rules and regulations set forth by the New York City Police Department. Alleged violations of NYPD procedure by the individual defendants are irrelevant to the determination of whether plaintiff's constitutional rights were violated. Thus, any NYPD procedure or patrol guide provision should be precluded pursuant to Fed. R. Evid. 402 and 403.

First, plaintiff was permitted to use a patrol guide provision in the first trial. Her use of these exhibits were offered no real benefit to the jury and only wasted time in violation of FED. R. EVID. 403. At best, the patrol guide was used to the make obvious and unremarkable point that if an officer used excessive force it was a violation of the patrol guide. Further, plaintiff's

17

counsel only served to confuse the issues before the jury when they stated in opening that the officers subjectively determined they should violate the patrol guide and go against their training, and later asserted that the jury should not have considered an officer's subjective intent despite plaintiff's counsel's invitation to do so.

In light of plaintiff's claim now that only the objective reasonableness of the officer's actions matter in determining if her rights were violated, any NYPD guidelines, whether or not followed to the letter, are irrelevant to the determination of whether there was an assault and battery construed under excessive force jurisprudence.  See FED. R. EVID. 401, 402.  See Smith v. Freland, 954 F.2d 343, 347 (6th Cir. 1992) ("[u]nder § 1983, the issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force.") ; Salim v. Proulx, 93 F.3d 86, 92 (2d Cir. 1996) (violations of police rules regarding backup and radios not relevant to excessive force); Greenidge v. Ruffin, 927 F.2d 789, 791-92 (4th Cir. 1991) (violation of procedure in failing to call for backup or use a flashlight irrelevant to excessive force claim); Woods v. Jefferson Cty Fiscal Court, 2003 U.S. Dist. LEXIS 605 (W.D. Ky. January 8, 2003) (in excessive force claim "whether an officer followed or violated police department policy or guidelines is not relevant under Graham v. Connor, 490 U.S. 386 (1989)").

Simply, a violation of the Patrol Guide is not equivalent to or even evidence of a violation of plaintiff's constitutional rights or a lack of justification for an assault and battery. See e.g. Bornstein v. Monmouth Cty. Sheriff's Office, 658 Fed. App'x 663, 668 (3d Cir. 2016) (noting that in a § 1983 case, "the issue is not whether they violated internal prison policies but whether they violated the Constitution"); Bradley v. City of Ferndale, 148 Fed. App'x 499 (6th Cir. 2005) ("Officials become liable for damages only to the extent that there is a clear violation of the statutory rights that give rise to the cause of action for damages…[U]nder § 1983, the

issue is whether [the officer] violated the Constitution, not whether he should be disciplined by the local police force." (internal quotations omitted)); <u>Romero v. Bd. Of Cty. Comm'rs</u>, 60 F.3d 702, 705 (10th Cir. 1995) (noting that "violations of state law and police procedure generally do not give rise to a § 1983 claim."). Thus, the Patrol Guide has no bearing on the jury's determination of whether a violation of plaintiff's constitutional liberties occurred. It is therefore irrelevant and should be precluded.

Even if the Patrol Guide were relevant to the jury's determination and would not confuse the jury, it should still be excluded because it would not cogently advance the jury's analysis of whether plaintiff suffered an intentional constitutional violation or assault and battery construed under these principals. As the Court in <u>Smith v. City of New York</u>, No. 12 Civ. 4922 (NRB), 2015 U.S. Dist. LEXIS 102669, at *10 (S.D.N.Y. Aug. 4, 2015) cautioned: "the Patrol Guide does not establish a legal duty beyond the common law's 'reasonable person' standard, and that a Patrol Guide violation does not give rise to a presumption of negligence." <u>Smith</u>, 2015 U.S. Dist. LEXIS 102669, at *10 n.5, <u>citing</u> <u>Lubecki</u>, 758 N.Y.S.2d at 617 (App. Div. 2003); <u>Schumer v. Caplin</u>, 241 N.Y. 346, 150 N.E. 139 (1925) (holding that the violation of an administrative rule is only "some evidence of negligence"); <u>cf.</u> <u>Desmond v. City of New York</u>, 88 N.Y.2d 455, 464-65, 669 N.E.2d 472, 477, 646 N.Y.S.2d 492 (1996) (holding that an internal NYPD policy does not constitute a "requirement" that would support a police officer's statutory claim). Surely, if a purported Patrol Guide violation does not give rise to a presumption of mere *negligence*, it will not meet the bar of *intentional* conduct required for a civil rights violation.

For these reasons the NYPD Patrol Guide should be precluded from use at trial.

## POINT VI

## PLAINTIFF SHOULD BE PRECLUDED FROM CALLING STEPHANIE SHOCKLEY

At the first trial, plaintiff called Stephanie Shockley, to testify about the March 21, 2012 incident.  Stephanie Shockley proved to have almost no probative evidence that was not either cumulative of other evidence, or irrelevant to the issues relating to Sergeant Mattera.  (See generally Trial Transcript for November 15, 2018, annexed to the Lax Decl. as Exhibit "D") ("Ex. D), at  p. 199-207).  Indeed, plaintiff's counsel appeared more preoccupied with the fact that she was a member of the clergy as opposed to any information that could aid the jury in its determination.  (See Ex. D at pp. 199:19-22, 206:8-13).  This witness conceded she did not see any of the events that led to plaintiff falling to the ground.  (See Ex. D at p. 207:8-11).  For these reasons, Stephanie Shockley should be precluded.

## POINT VII

## PLAINTIFF SHOULD BE PRECLUDED FROM OFFERING EVIDENCE FOR HER ABANDONED JOHN DOE CLAIMS

In the first trial, plaintiff pursued claims against defendant for the alleged conduct of John Doe Number 8 and Number 9.  Further, plaintiff offered testimony that other officers assaulted and battered her without justification on March 21, 2012.  This evidence should be precluded since it is irrelevant, unduly prejudicial, a waste of time, and confusing to the jury.  See FED. R. EVID. 402 & 403.  The jury at the first trial found in favor of defendant on these John Doe claims. Plaintiff appears to have only appealed her claim based on the conduct of Sergeant Mattera arising from March 21, 2012, and the Second Circuit only vacated the judgment "as to the respondeat superior claim against the City relating to Sergeant Mattera's alleged assault and battery.  Tardif, supra, 991 F.3d at 418.  Because the only claim on remand relates to plaintiff's

allegations about Sergeant Mattera's conduct, plaintiff should be precluded from presenting evidence about other wrongs plaintiff may have claimed.

## POINT VIII

### THE COURT SHOULD ADHERE TO ITS PRIOR RULING ON PLAINTIFF'S OTHER ARRESTS AND CONVICTIONS

At the first trial, the Court determined that plaintiff's subsequent arrests were admissible based on the nature of her claims. Here, plaintiff is claiming similar emotional injuries, in particular physical pain, nightmares, and other emotional trauma. In particular, plaintiff is expected to testify that she had nightmares of being trapped as a result of the March 21, 2021 incident. Plaintiff continued, for example, to participate in Occupy Wall Street activities in a manner that subjected to her arrest and conviction. This includes plaintiff's conduct and arrest at the April 16, 2012 protest that was the subject of some of plaintiff's now defunct claims. As a result of plaintiff's damages claim, the Court ultimately ruled that plaintiff's subsequent arrests and convictions were admissible. (See Trial Transcript for November 19, 2018, annexed to the Lax Decl. as Exhibit "E" ("Ex. E"), at p. 705:17-709:14). Because the basis for the admission of this evidence will continue at the second trial, the Court should adhere to its ruling.

## POINT IX

### PLAINTIFF SHOULD BE PRECLUDED FROM ELICITING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE ACTIONS RELATED TO THE OCCUPY WALL STREET MOVEMENT

The Court should preclude plaintiff from eliciting testimony or arguing about other instances of alleged police misconduct related to the "Occupy Wall Street" movement concerning plaintiff. During this trial, plaintiff and her counsel may attempt to reference other cases involving the police during Occupy Wall Street related to plaintiff. Allegations of

21

misconduct by non-party officers that plaintiff claims to have witnessed as a protestor, that have been reported in the media, or that are related to the Occupy Wall Street movement should be precluded.  Moreover, plaintiff or her counsel may try to highlight alleged conflicts between the police and protestors during this period.   This would confuse and inflame the jury.   Such evidence is highly prejudicial and has no probative value as to the facts and circumstances of plaintiff's apprehension.   Whether some officer at some time allegedly violated the rights of plaintiff or another person's rights has no capacity to establish or refute the facts of this matter. While Occupy Wall Street provides the backdrop for the events that plaintiff complains of, it has no bearing on plaintiff's claims.   Therefore, plaintiff should be precluded from glamorizing Occupy Wall Street, dramatizing police action during Occupy Wall Street, or talking in general terms about what happened—to her or anyone else—during the Occupy Wall Street, beyond these two limited incidents.

## POINT X

### PLAINTIFF SHOULD BE PRECLUDED FROM ELICTING TESTIMONY OR ARGUING ABOUT OTHER INSTANCES OF ALLEGED POLICE ACTIONS GENERALLY

Similarly, the Court should preclude plaintiff from referring to other unrelated purported instances of police misconduct.   Whether some other officer at some other time allegedly violated the constitutional rights of plaintiff or another person has no capacity to establish or refute the salient facts of this matter.   Furthermore, defendants in this case are also unable to defend or reject the conduct of other officers or events in other municipalities. FED R. EVID. 403. Lastly, allowing plaintiff's counsel to make such references would allow inadmissible hearsay because plaintiff would be seeking to offer out of court statements for their truth.  FED. R. EVID. 801(c).

22

Plaintiff should similarly be barred from using terminology and colloquialisms that may inflame the jury, or from asking the jury to "send a message."  Such statements are also highly prejudicial and inflammatory.  Because these terms are based on conjecture and emotion and not based on any evidence presented in this case, the defendant officers have no means to defend against their use or refute the characterization implied by the speaker.  Further, usage of these terms as well as other allegations of misconduct turn plaintiff's counsel into a witness because counsel implies that they have some special knowledge of the goings on of police officers.  Any potential argument from counsel to the jury that they should "send a message" misleads them into thinking it is their role to do so when their role is simply to compensate the plaintiff should they find that she proved her case.  As a result, the Court should bar plaintiff from referencing to any of these phrases or terms, other police actions generally, other lawsuits, or events reported in the media.

**POINT XI**

**PLAINTIFF SHOULD BE PRECLUDED FROM QUESTIONING DEFENDANTS ABOUT THE APPROPRIATE CONDUCT FOR "HUMAN BEINGS"**

During her deposition, former defendant Rumble was questioned about the appropriate conduct for human beings.  Specifically, plaintiff's counsel inquired of defendant Rumble about whether since plaintiff is "another human being," defendant Rumble was concerned about her.  This line of questioning is not only borderline harassment, it is irrelevant.  This is not a court of feelings but a court of law.  That plaintiff believes she was entitled to more concern or sympathy from defendants does not create a constitutional violation.  Moreover, by questioning defendants about the appropriate conduct for "human beings," plaintiff attempts to detract from the duties and responsibilities of law enforcement officers.  This line of questioning has no probative value

beyond inflaming the jury. It invites the jury to engage in rank speculation. It was inappropriate—and objected to—when asked at the deposition. It should be precluded at trial.

## POINT XII

### DEFENDANTS RESERVE THEIR RIGHT TO FILE SUPPLEMENTAL MOTIONS *IN LIMINE*

Defendants respectfully reserve their right to object to any *in limine* motions submitted by plaintiff and to file supplemental motions *in limine*.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant their motions in their entirety, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 28, 2022

**HON. SYLVIA HINDS-RADIX**
CORPORATION COUNSEL OF THE CITY OF NEW YORK
*Attorney for Defendant*
100 Church Street
New York, New York 10007
(212) 356-3538

By: ＿＿＿＿＿＿＿＿ /s/ ＿＿＿＿＿＿＿＿
JOSHUA J. LAX
*Senior Counsel*
Special Federal Litigation Division

cc:     All counsel of record (by ECF only)