UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARY TARDIF,

              Plaintiff,

   -v-

CITY OF NEW YORK,

              Defendant.
--------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  4/27/2022

13-CV-4056 (KMW)

**ORDER**

KIMBA M. WOOD, United States District Judge:

      Plaintiff Mary Tardif seeks to introduce testimony from four expert witnesses at the upcoming trial in this case: neuroradiologist Gregory J. Lawler, neurologist R.C. Krishna, life care planner Linda Lajterman, and economist Mark P. Zaporowski. Defendant moved *in limine* to preclude the testimony of each of these experts. (*See* Def. Mem. at 2–12, ECF No. 390.) It argues that the proposed testimony is not reliable within the meaning of Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), and not helpful or relevant pursuant to Rules 702 and 403 of the Federal Rules of Evidence.

      To assist the Court in determining the admissibility of the proposed expert testimony, the parties are ordered to submit supplemental affidavits in accordance with the following instructions.

**I.**     **Plaintiff's Submission**

      By May 4, 2022, Plaintiff must submit supplemental affidavits written by each of the expert witnesses she wishes to have testify at trial. These affidavits must address the topics specified in this Order.

**A. Dr. Lawler**

Dr. Lawler should address the following topics in his affidavit. The affidavit should specify whether each methodology used has been subject to peer review and publication, whether it has a known error rate, whether standards control the application of the methodology, whether it has gained general acceptance in the relevant community of experts, and any other consideration that pertains to the reliability of the methodology. Where applicable, the affidavit should direct the Court's attention to credible sources of information that support Lawler's responses and be accompanied by an attached copy of the pertinent text of each source.

(1) How reliable is the use of magnetic resonance imaging (MRI) without diffusion tensor imaging (DTI) to identify T2 white matter hyperintensity and axonal loss in an individual patient? In your response, provide a brief description of the process by which MRI images are generated and provide explanations of the terms "T2 white matter hyperintensity" and "axonal injury / axonal loss."

(2) How reliable is the use of magnetic resonance imaging (MRI) with diffusion tensor imaging (DTI) to identify T2 white matter hyperintensity and axonal loss in an individual patient? In your response, provide a brief description of the process by which DTI images are generated and how this differs from the process by which other MRI images are generated.

(3) Describe with specificity the methodology you employed to determine that a T2 white matter hyperintensity was evident on the March 24, 2012 MRI of Ms. Tardif's brain but not on the April 23, 2009 MRI. If that technique is not addressed in the prior two questions, provide evidence as to the reliability of that methodology.

(4) In concluding that Ms. Tardif was likely to have experienced head trauma, did you rely upon (a) your review of images of Tardif's brain, (b) Tardif's description of the cause of her alleged injury, or (c) both? If your conclusion relied in whole or in part upon your review of images of Tardif's brain, please describe with specificity the methodology you used to come to your conclusion.

(5) What is the relationship, if any, between the phrase "axonal injury / axonal loss after head trauma" used in the Impression section of your September 6, 2021 report and the condition of "traumatic brain injury"?

**B. Dr. Krishna**

Dr. Krishna should address the following topics in his affidavit. For each of the following conclusions in Krishna's report, the affidavit should describe with specificity (i) how Krishna came to that conclusion, including which methodology or methodologies he employed, and (ii) whether each methodology used has been subject to peer review and publication, whether it has a known error rate, whether standards control the application of the methodology, whether it has gained general acceptance in the relevant community of experts, and any other consideration that pertains to the reliability of the methodology. Where applicable, the affidavit should direct the Court's attention to credible sources of information that support Krishna's responses and be accompanied by an attached copy of the pertinent text of each source. The conclusions in question are:

(1) Your diagnosis that "[Ms. Tardif's] clinical findings are consistent with traumatic brain injury." (Lax Decl., Ex. A at 5, ECF No. 389-1.)

(2) Your conclusion that "the symptoms and injuries sustained by [Ms. Tardif]" are "causally related" to the incident with Sergeant Mattera on March 21, 2012. (*Id.* at 7.)

(3) Your prognosis that Ms. Tardif has serious, permanent injuries that will significantly limit her working and social activities and that will require a home health aide.

(4) Your recommendations for future life care for Ms. Tardif and the dollar values attributed to each type of care.

3

Additionally, Dr. Krishna's affidavit should answer the following questions:

(5) Did you personally and independently identify hyperintensities in the images of Ms. Tardif's brain, or are the statements under the header Diagnostic Testing in your report written in reliance upon determinations made by Dr. Lawler? Which images of Tardif's brain did you personally review before completing your September 6, 2021 report?

(6) In your report, you write, "No person or entity has caused, directed, or encouraged me to submit a report that differs substantially from my professional opinion." Is this use of the word "substantially" a standard convention within the medical community? Did any person or entity cause, direct, or encourage you to submit a report that differed from your professional opinion to a degree that you considered less than substantial?

**C. Ms. Lajterman**

Ms. Lajterman should address the following topics in her affidavit.

(1) Describe with specificity the methodology by which you developed the aspects of your recommended life care plan for Ms. Tardif other than the types of care recommended by Dr. Krishna. For example, what methodology did you use to develop the recommendation that Tardif receive two-to-four hours of homemaker assistance per week, for life? Describe whether the methodology you used in creating the recommended life care plan has been subject to peer review and publication, whether it has a known error rate, whether standards control the application of the methodology, whether it has gained general acceptance in the relevant community of experts, and any other consideration that pertains to the reliability of the methodology.

(2) What is the reliability of the sources that you used to identify cost estimates for the types of care included in the recommended life care plan for Ms. Tardif? Please address the provenance of these sources, whether they have been subject to peer review and professional scrutiny, whether they have gained general acceptance among life care planning experts, and any other consideration that pertains to the

reliability of these sources. In particular, please be sure to discuss reliability of the Physicians Fee Reference 2021 book and the tool on Genworth.com for estimating the costs of homemaker assistance.

(3) In several instances, your calculations rely on cost estimates provided by Dr. Krishna rather than cost estimates found in the Physicians Fee Reference 2021 book or another third-party source. For example, this is true of "MRI of the brain," under Table 2, and "Occipital nerve block," under Table 7. Please state whether cost estimates for these types of care can be found in third-party sources and attach the text of such sources. Describe the methodology you used to decide which cost estimates to use in your calculations.

### D. Prof. Zaporowski

Prof. Zaporowski should address the following topics in his affidavit.

(1) Describe with specificity the Bureau of Labor Statistics data that you used in generating the inflation projections listed on page 2 of your report. (Lax Decl., Ex. A at 29.) Attach a copy of those data.

(2) Describe with specificity the methodology by which you used the Bureau of Labor Statistics data identified above to generate projected rates of future inflation in categories such as "cost of medical services" and "cost of physician's services."

(3) Describe the reliability of the methodology that you used. Please address whether the methodology used has been subject to peer review and publication, whether it has a known error rate, whether standards control the application of the methodology, whether it has gained general acceptance in the relevant community of experts, and any other consideration that pertains to the reliability of the methodology. If you rely upon the text of any source of information, attach to your affidavit a copy of the pertinent text of that source.

## II. Defendant's Submission

By May 11, 2022, Defendant may submit a factual memorandum (not a memorandum of law) addressing the methodologies described in the affidavits written by Plaintiff's experts. This

memorandum should be limited to factual issues such as whether each methodology has been subject to peer review and publication, whether it has a known error rate, whether standards control the application of the methodology, whether it has gained general acceptance in the relevant community of experts, and any other consideration that pertains to the reliability of the methodology.

## CONCLUSION

Plaintiff must submit its experts' affidavits by May 4, 2022. Defendant must submit its response, if any, by May 11, 2022.

SO ORDERED.

Dated: New York, New York
April 27, 2022

*/s/ Kimba M. Wood*
KIMBA M. WOOD
United States District Judge