# Supreme Court of the County of Suffolk
## State of New York - Part XL
### Memorandum Decision

PRESENT:
**HON. JAMES HUDSON**
*Acting Justice of the Supreme Court*

x------------------------------------------------------------x
DENISE BROUARD and GERALD BROUARD,

                            Plaintiffs,

               -against-

JAMES CONVERY, PV HOLDING CORP., and
AVIS RENT A CAR SYSTEM, INC.,

                            Defendants.
x------------------------------------------------------------x

INDEX NO.:028560/2005

SEQ. NO.:012-MD
        013-MG

BONNIE PETERS-LAWSTON, ESQ.
Attorney for Plaintiffs
P.O. Box 317
Ridge, NY 11961

FLOMENHAFT LAW FIRM, PLLC
Trial Counsel for Plaintiffs
By: Michael Flomenhaft, Esq.
90 Broad Street, Suite 1901
New York, NY 10004

WHITE, FLEISCHNER, FINO, ESQS.
Attorneys for Dependants
By: Matthew I. Toker, Esq.
61 Broadway, 18th Floor
New York, NY 10006

Based upon the papers submitted and the argument of counsel, it is

**ORDERED** that the Plaintiffs' motion (seq. no.:12) for the Court to take judicial notice of certain technology and for an order of preclusion is denied. Defendants cross-motion (seq. no.:13) for an order of preclusion concerning said technology is granted.

The matter at hand is an action for damages sounding in negligence. It arises from an automobile accident which occurred on December 14th, 2004 at an intersection in Stony Brook, County of Suffolk, State of New York. Plaintiffs Denise Brouard and Gerard Brouard, (hereinafter referred to as "the Brouards") allege, *inter alia*, that the Defendant, James Convery, was making a left-hand turn with his vehicle when he struck the front of

*Brouard v Convery, et al.*                                                              *Index No.:028560/2005*

Plaintiff Denise Brouard's car, causing mild traumatic brain injury ("MTBI"), as well as neck, back, shoulder and knee injuries.

Plaintiffs now move for an order from this Court for various relief: (1) to take judicial notice of the general acceptance and acceptability of technology known as Diffusion Tensor Imaging ("DTI") pursuant to *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923); and (2) to preclude Defendant from contesting any expert testimony put forth by Plaintiffs in this regard.

Defendants oppose the motion and cross-move pursuant to CPLR §4532-a for relief which consists of the following: (1) an order precluding certain neuroradiological studies including DTI to diagnose minor traumatic brain injury ("TBI") based upon the *Frye* standard; or (2) to conduct a *Frye* hearing to determine the admissibility of methods, technologies and theories for determining minor traumatic brain injury allegations. Alternatively, the Defendants seek an order of preclusion on the basis that Plaintiffs failed to respond to a prior Court Order directing disclosure and for failing to comply with CPLR §4532-a. If the Court declines to grant an order of preclusion, Defendants request an order directing Plaintiffs to disclose the actual data and information regarding the subject neuroradiological studies which Plaintiffs' experts relied upon in coming to their conclusions.

In the event that the above requests for relief are not viewed with favor by the Court, the Defendants ask that the Court hold a *Parker* hearing on the question of the reliability of the advanced radiological studies techniques and methods utilized by Plaintiffs' experts and whether there is sufficient probative value to allow its consideration by the jury.

The facts which have prompted the Plaintiffs to make the above referenced motion are that methodology and technology utilizing DTI was used to examine Plaintiff in 2008 and 2014. Plaintiffs claim that this specific technology enjoys general acceptance by the scientific and medical community and therefore passes the long-recognized rule contained in *Frye v. United States*, 54 App.D.C. 46, 293 F. 1013 (D. C. Cir. 1923). Given the status of DTI, Plaintiffs contend that the Defense must be precluded from adducing any expert testimony claiming that any MRI using DTI technology is not generally accepted by the scientific/medical community to investigate mild TBI's.

Oral argument was held before this Court between the two very capable and eloquent attorneys, Michael Flomenhaft, Esq. for the Plaintiffs and Matthew I. Toker, Esq. for the Defendants. The Court would be remiss if it did not thank learned counsel for their scholarly advocacy.

*Brouard v Convery, et al.*                                                        *Index No.:028560/2005*

        The march of science is inexorable. This has created a challenge for trial courts in deciding what "scientific" evidence is truly worthy of the name. How is a Judge, a presumed expert in jurisprudence, but a lay person in science, to make such a determination? It is the Court's solemn duty to winnow the proof, finding and separating the modern day alchemy from chemistry as a metallurgist would remove dross from gold. In the ninety-five years since *Frye* was handed down to us, case law and medicine have both developed. Other jurisdictions have abandoned the *Frye* analysis and embraced the reasoning in ***Daubert v. Merrell Dow Pharmaceuticals***, (509 U.S. 579 [1993], (*see* FRE Rule 702]). New York, however has continued to follow the *Frye* rule, wisely leaving innovation to scientists and legislators (*e.g.* ***Parker v. Mobil Oil Corp.***, 7 N.Y.3d 434, 824 N.Y.S.2d 584 [2006]; ***People v. Wesley***, 83 N.Y.2d 417, 611 N.Y.S.2d 97 [1994]).

        As *Frye* evolved, its progeny added the refinement that the term "general acceptance" did not refer to a mere head-count of experts. Instead, it became clear that there should be a clinical (not just scientific) consensus, and that the proper foundation be laid as well as acceptable methods employed in each particular case (***Parker v. Mobil Oil Corp.***, *supra*, ***Sadek v. Westley***. 117 A.D.3d 193 [1st Dept. 2014] 986 N.Y.S.2d 25 *aff'd* 27 N.Y.3d 982, 32 NYS 3d 42 [2016]). This is the analysis we apply to the instant controversy.

        This case began in 2005 and in the intervening passage of time, DTI technology and the scientific/medical literature discussing it has proceeded apace. Early indications of approbation, however, have given way to doubt regarding acceptance of DTI technology to evaluate mild brain trauma injuries.

        A significant case cited by Plaintiffs is ***LaMasa v. Bachman***, 56 A.D. 3d 340, 869 N.Y.S.2d 17 [1st Dept. 2008]. The Appellate Court found that DTI technology met the *Frye* standard. At first glance this would seem to end the inquiry. On the contrary, ***La Massa*** was followed by a "white paper" in 2014 which cast the First Department holding into doubt (M. Wintermark, P.C. Sanelli, Y. Anzai, A.J. Tsiouris and C.T. Whitlow on behalf of the American College of Radiology Head Injury Institute, Imaging Evidence and Recommendations for Traumatic Brain Injury: *Advanced Neuro- and Neurovascular Imaging Techniques, American Journal of Neuroradiology, November 2014*). Immediately after its publication, it gained notoriety among the Neuroradiology community. This white paper (supported and endorsed by members of the scientific/clinical medical community) holds that new advances in neuro-imaging techniques are showing promising results in group comparison analyses (DTI, PET, Q EEG, etc.). Nevertheless, the article concludes that there is insufficient evidence supporting the routine clinical use of advanced neural imaging for diagnoses and/or prognostications at the individual patient level.

*Brouard v Convery, et al.*                                    *Index No.:028560/2005*

In deciding the significance of the white paper (whose authenticity is not questioned), the Court is guided by the recent holding in ***Dovberg v. Laubach***, 154 A. D. 3d 810, 63 N.Y.S.3d 417 [2nd Dept.2017].

***Dovberg*** emphasized that the burden of proving general acceptance of scientific principles or procedures for the admissibility of expert testimony rests upon the party offering the disputed expert testimony. That general acceptance of scientific principles or procedures which are required for admissibility of expert testimony can be demonstrated through scientific or legal writings, judicial opinions, or expert opinions other than the proffered expert. In addition to the requirement that the technology be generally accepted (and supported by adequate documentation), the movant must meet the standards of ***Parker v. Mobil Oil Corp.***, *supra*.

Applying the prior precedents in ***Dovberg***, the Second Department found the proposed "expert testimony" to be inadmissible based on the Defendant not meeting his burden of proof. Specifically, the Second Department found that the expert testimony did not meet generally accepted scientific principles (***Frye***). The Court noted that the proffered evidence failed to make reference to any empirical data or any peer-reviewed journals, and did not provide the names of the authors and years of publication (***Parker***) [***Dovberg***, *supra* at 813-814]).

The parallels between this case and ***Dovberg*** are clear and dispositive. The white paper by M. Wintermark *et al.* makes it clear that DTI technology is not generally accepted as yet in the field of neurology for use in the clinical treatment of individual patients. The rule in ***LaMasa v. Bachman***, ***supra,*** though superbly researched and written, has been outpaced by current scientific knowledge. Accordingly, evidence of DTI technology must be shielded from the jury's review.

Consequently, based on the issue of general acceptability in a given field, the Court finds that DTI does not (at the time of this writing) have a general acceptance to be used as the standard in clinical/medical treatment of individual patients who are being treated for TBI's.

As additional arguments against Plaintiffs being permitted to have their expert testify that DTI technology is generally acceptable, Defendants proffer other arguments including Plaintiffs failure to respond to a prior Court Order to comply with CPLR §4532-a, and a failure to produce the underlying data which Plaintiff's experts relied on in which the Defendants' experts would need to do an independent review of their own, for a possible "***Frye***" and/or a "***Parker***" hearing. We also find these arguments to be compelling. All of the foregoing obliges the Court to the following conclusion:

*Brouard v Convery, et al.* *Index No.:028560/2005*

    Under the circumstances presented, the Court denies Plaintiff's motion in its entirety. The Defendants' cross-motion to preclude Plaintiff from using DTI technology by their expert is granted. While Defendant has other requests for relief which are meritorious, they are rendered moot by this Court's decision and need not be further addressed.

    The foregoing Memorandum Decision is also the Order of the Court.

**DATED: FEBRUARY 9th, 2018**
**RIVERHEAD, NY**

_____
HON. JAMES HUDSON, A.J.S.C.